WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Garrett A. Fail
Matthew P. Goren
Philip L. DiDonato

*Proposed Attorneys for the Debtors*
*And Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                 :
**In re**                                        :    **Chapter 11**
                                                 :
**BROADWAY REALTY I CO., LLC, *et al.*,**        :    **Case No. 25-11050 (DSJ)**
                                                 :
                      **Debtors.[1]**            :    **(Jointly Administered)**
                                                 :
---------------------------------------------------------------x

### DECLARATION OF EPHRAIM DIAMOND
### PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2 IN SUPPORT
### OF DEBTORS' CHAPTER 11 PETITIONS AND FIRST DAY RELIEF

I, Ephraim Diamond, pursuant to section 1746 of title 28 of the United States Code,

hereby declare that the following is true and correct to the best of my knowledge, information, and

belief:

1.      I am the Chief Restructuring Officer ("**CRO**") of Broadway Realty I Co.,

LLC and each of the other Debtors in the above-captioned chapter 11 cases (collectively, the

"**Debtors**" and, together with their non-debtor affiliates, the "**Company**"), each, an indirect

subsidiary of non-Debtor The Zarasai Group Limited ("**Zarasai**").   After working for the

---

[1]    The last four digits of Broadway Realty I Co., LLC's tax identification number is 5426.  A complete list of the Debtors in these Chapter 11 cases is attached hereto as <u>Annex 1</u>.  The Debtors' mailing addresses are located at 2 Grand Central Tower, 140 East 45th St 12th Floor, New York, NY 10017.

Company on restructuring initiatives for the last seven months, I was appointed as CRO on May 22, 2025.

2.      I also am the founder and managing member of Arbel Capital Advisors LLC ("**Arbel**"), an advisory firm specializing in business restructurings and workouts, bankruptcy, and litigation planning, including chapter 11 reorganizations and independent and fiduciary oversight for distressed and special situations. I have over 20 years of restructuring and crisis management experience and have appeared on behalf of debtors in numerous bankruptcy cases across the country, including in the Southern and Eastern Districts of New York. I am currently acting as a restructuring officer or independent fiduciary for several cases pending in this district.

3.      I have worked on numerous real estate related restructurings, including other Israeli public companies with British Virgin Islands holding company structures similar to the Company. Specifically, I previously served as Associate Restructuring Officer for All Year Holdings Limited and its affiliated companies, and Associate Restructuring Officer and General Counsel for Brookland Capital LLC and its affiliated companies, each complex New York based real estate companies. In addition, I serve as an independent director for several companies, both inside and outside of distressed situations, and serve various roles for the post-confirmation litigation/creditor trusts for Endo Pharmaceuticals, Mallinckrodt and the Nine West Litigation Trust. From January 2008 through June 2018, I served as a director and senior legal analyst at Davidson Kempner Capital Management, LP. Prior to that, I was a corporate bankruptcy associate at Paul, Weiss, Rifkind, Wharton & Garrison, LLP from 2001 through 2007.

4.      I was retained by the Debtors in September 2024 to assist with, among other things, the negotiation of a potential restructuring of the mortgage debt with the Debtors' main mortgage lender. In March 2025, following the initiation by the lender of foreclosure and

receivership proceedings (described in more detail below), it became desirable to modify my role to include my current position as CRO.  Prior to and since my retention as CRO, I have been intimately involved with the Debtors on a day-to-day basis, helping to plan and prepare the Debtors for their chapter 11 cases.

5.       On May 21, 2025 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

6.       I am knowledgeable and generally familiar with the business, financial affairs, and financial books and records of the Debtors.  The facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents including the financial books and records of the Debtors, information provided to me by employees of the Company working under my supervision, the Company's advisors, or my opinions based upon experience, knowledge, and information concerning the Debtors.  If called upon to testify, I would testify competently to the facts set forth in this Declaration.

7.       This Declaration is submitted pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**") to apprise the Court and other parties in interest of the circumstances that compelled the commencement of the Debtors' voluntary cases under the Bankruptcy Code, in support of their chapter 11 petitions, and in support of certain first day applications.  I am authorized to submit this Declaration as an authorized signatory and representative of the Debtors.

8.       This Declaration is intended to provide a summary overview of the chapter 11 cases, and is organized as follows:

- A preliminary statement with a general overview;

3

- **Section I** further describes the Debtors' business and operations;

- **Section II** further describes the Debtors' and the Company's prepetition capital structure;

- **Section III** further describes the key events that led to the commencement of these chapter 11 cases;

- **Section IV** describes the proposed Budget for use of cash collateral during these chapter 11 cases; and

- **Section V** sets forth certain additional information about the Debtors, as required by Local Bankruptcy Rule 1007-2.

### Preliminary Statement

9.      The eighty-two (82) Debtors collectively own approximately 5,200 residential units, have approximately 130 employees, and enter these cases with approximately 155 creditors (excluding tenants). The Debtors' top twenty largest unsecured creditors hold approximately $3 million of unsecured claims. The Debtors are indirect subsidiaries of, and a majority of the overall enterprise and operations of Zarasai, a holding company organized under the law of the British Virgin Islands. Through the Debtors and other non-Debtor subsidiaries, Zarasai focuses on the purchase, operation, management, development, betterment, and leasing of income-producing residential real estate, as well as the sale of residential apartments in the New York City area. As of the Petition Date, the Company has approximately $1.1 billion of outstanding funded debt obligations comprised of (i) two series of Israeli-issued bonds, and (ii) property level mortgage debt.

10.      The Company's property portfolio is held across the Company's more than 140 U.S.-based subsidiaries, and includes approximately 8,100 residential units in New York City, with an aggregate net book value of approximately $1.4 billion as of December 2024. The Company's residential units are located across four of New York City's boroughs: Manhattan, Brooklyn, the Bronx, and Queens. Approximately 96% of the Company's tenants are entitled to

statutory rent stabilization protection, and 2% are entitled to statutory rent control protection. As of the Petition Date, the Company's average occupancy rate is approximately 95%.

11.    As of the Petition Date, the Debtors' ninety-three (93) properties (collectively, the "**Debtor Properties**") are encumbered by approximately $564 million of aggregate mortgage debt, all with Flagstar Bank N.A. ("**Flagstar**"), as lender. The book value of the Debtor Properties encumbered by the Flagstar mortgages, based on December 2024 independent appraisals performed by Bowery Valuation, and reflected in the Company's most recent publicly filed financial statements, is approximately $826 million, substantially in excess of the outstanding Flagstar mortgage debt.[2]

12.    Prior to 2024, the Debtors serviced their debt primarily through rental income cash flows. Rental income is also used to pay employees and to provide essential services to maintain the Debtors' properties, including ordinary course maintenance, utilities, repairs, trash removal, managerial and related services. While the Debtor Properties primarily service residential tenants, nineteen (19) of the Debtor Properties also include commercial tenants, including retail, grocery, and family office businesses. The Debtors have consistently ensured the Debtor Properties are well maintained, and have the intent and wherewithal to continue to maintain those properties during the chapter 11 cases.

13.    Historically, substantially all of the Debtor Properties generated positive cashflow before debt service on an annual basis. In 2024, in aggregate, the Debtors collectively

---

[2]    The Company updates its appraisals periodically in the ordinary course for purposes of its public reporting obligations, and, as of the Petition Date, is in the process of preparing updated financial statements based on refreshed appraisals. These financial statements, including any appraisal information therein, are material non-public information until they are publicly disclosed.

generated approximately $27 million of net cashflow before debt service (after accounting for operating expenses, capital expenditures, overhead).

14.    Like many landlords of New York multi-family, primarily rent stabilized properties, the Debtors struggled to service their mortgage debt as interest rates rose rapidly and significantly through 2024.  Since 2022, a large portion of the Debtors' mortgage debt's interest rates sky-rocketed from a range of approximately 3.0-4.0% to up to 7.5% and 10.25% in certain circumstances.  The Debtors' annual debt service in 2023 totaled approximately $26 million, including approximately $20 million of interest.    In 2024, those amounts increased to approximately $36 million and $25 million, respectively.  In 2025, the Debtors project an increase in debt service to approximately $45 million, with approximately $35 million of interest, representing a 75% increase in interest expense from 2023.  The Debtors' current and projected revenues became insufficient to fully service the Flagstar debt and satisfy expenses necessary to operate and maintain their rental assets.

15.    Further, given the high concentration of rent regulated tenants within its portfolio, the Company has been especially impacted by changes to New York state rent laws.  In particular, the June 2019 amendments to the Tenant Protection Act ("**TPA**") placed restrictions on the Company's ability to raise rents upon the departure of a tenant from a rent regulated unit or to recover necessary improvements made to regulated units.  Those amendments also limited the ability to convert apartment buildings to condominiums, a mainstay and successful component of the Company's business plan prior to the TPA amendments.  These legislative changes put further strain on the Company's and the Debtors' cash flow, and significantly slowed their condominium conversion initiatives.  Despite these restrictions, the Company sold 143 units (not encumbered by Flagstar mortgages) for an aggregate consideration of approximately $65 million over two years

prior to the Petition Date.  Conversion allows the Company to monetize portions of the Company's portfolio, generating significant profits and free cash flow after satisfying underlying mortgage debt.

16.     The Debtors' operational and cashflow problems were further exacerbated by rising inflation, resulting in higher operational expenses and lower-than-anticipated rent collections throughout their portfolio, despite the Debtors' strategic portfolio management, opportunistic asset dispositions, and other cost-cutting initiatives.

17.     Leading up to and into early 2025, these financial challenges came to a head as the Debtors were no longer able to service the debt on their Flagstar mortgages from income. In fiscal year 2024, despite generating positive net operating income before debt service, the Debtors realized negative net cash flows of approximately $12 million, driven primarily by higher debt service expenses.  Based on current projections, which include further interest rate increases and higher utility costs, the Debtors anticipated further negative cash flows and greater net losses in 2025.

18.     In light of the totality of the circumstances, the Debtors proactively reached out to Flagstar in the fall of 2024 regarding potential out-of-court solutions, culminating in an in-person meeting in December 2024, as it became clear that making the scheduled payments on the Flagstar debt would be challenging beginning in January 2025 without substantial outside resources.  Despite these ongoing discussions, on March 14, 2025, Flagstar delivered a notice of default with respect to each of the Debtors' properties and several other affiliates.  Soon thereafter, Flagstar commenced foreclosure actions in four counties in New York state courts with respect to the Debtors' properties.

19.     Importantly, Flagstar sought relief in the New York County action, on an *ex parte* basis, for a receiver to take possession of the Debtors' Manhattan properties, to collect rents, and to operate and manage the businesses.  Similar relief was subsequently sought in Flagstar's actions pending in Brooklyn, Queens, and the Bronx.  Because the relief requested by Flagstar theoretically could have been granted by the New York State court at any time without notice, the Debtors prepared to commence these chapter 11 cases on an emergency basis while continuing to engage with Flagstar regarding a standstill and potential out-of-court solutions to address the alleged defaults.

20.     Unable to consensually extend the timeline with respect to the relief sought in Flagstar's state court actions, the Debtors commenced these chapter 11 cases on an expedited basis to prevent confusion and disruption for their tenants and the inevitable value destruction and business disruption that would be caused by a receiver taking control of all of the Debtors' assets piecemeal.  These chapter 11 cases will provide the Debtors with the breathing spell needed to develop and execute a business strategy that will maximize value for all of their stakeholders, including unsecured creditors, avoid disruption for their tenants, and provide a framework for continuing necessary discussions with Flagstar and other parties in interest to reach a consensual resolution regarding the Debtors' capital structure and go-forward business.

21.     Given the Debtors' view that the appointment of receivers would immediately harm values and operations, the Debtors commenced their chapter 11 cases on an emergency basis by filing their petitions.  Given the nature of this filing, the Debtors have not yet requested substantive "first day" relief from the Bankruptcy Court other than (i) the use of cash collateral on an interim basis for four (4) weeks, (ii) the continued use of the Debtors' cash management system in the ordinary course of business until it can be modified as needed, and

8

(iii) a motion seeking an extension of the deadline to file schedules of assets and liabilities and statements of financial affairs. The Debtors will seek approval of only these motions at the "first day" hearing. I have reviewed each of the foregoing motions with Debtors' counsel, and I believe that the relief sought in each of motions is narrowly tailored to meet the goals described herein and will be necessary and critical as a first step to enable to the Debtors to successfully execute a restructuring which will be in the best interests of the Debtors' estates and all creditors.

22.    In the meantime, the Debtors are working to prepare traditional operational and administrative first day motions and anticipate filing those to minimize possible adverse effects on its business, and to allow the Debtors to meet necessary obligations and fulfill their duties as debtors in possession for the purposes of preserving value for all stakeholders.

23.    In chapter 11, the Debtors intend to continue managing, developing and maintaining their properties, and pursuing potential condominium conversion activities and other asset sales, which could lead to alternative financing for their properties or a more advantageous monetization of portions of the Debtors' assets in excess of current The Debtors intend to use the period immediately following the commencement of these cases to further the above goals.

## I.

## The Debtors' Business and Operations

24.    The Debtors are New York and Delaware limited liabilities companies that own a substantial portion of the Company's overall residential property portfolio. Each of the Debtors is a member managed limited liability corporation. All of the Debtors are indirect subsidiaries of Zarasai, an entity incorporated in the British Virgin Islands in 2012 as a private company in accordance with the BVI Business Companies Act.

25.    Zarasai was founded by Mr. Joel Wiener, who serves as the chairman of the Board of Directors and President of Zarasai. The common shares of Zarasai are owned by or held

in trust for Mr. Wiener and certain members of his family or entities otherwise controlled by them and by certain officers of Zarasai.

26.    The Company is managed pursuant to a management services agreement between Zarasai and Pinnacle Managing Co. LLC ("**Pinnacle**"), a non-debtor affiliate of Zarasai. Under the Management Agreement, Pinnacle provides Zarasai with the following officers:

|    | Name | Title |
|----|------|-------|
| 1) | Joel Wiener | President |
| 2) | Moshe Weinberger | Chief Financial Officer, Vice President |
| 3) | Adam Kaplan | Internal Legal Counsel, Vice President |
| 4) | Neil Wiener | Vice President |
| 5) | Darren Landy | Vice President |

27.    Pinnacle also renders various management and operating services to the Debtors under similar agreements.  Under those management agreements, Pinnacle provides the Debtors with various services to assist with the day-to-day operations of the properties, including: collecting rent, maintenance and improvement of the properties, supervising employees, and other services required in the operations of the properties while minimizing costs to the extent possible. In exchange, the Debtors pay to Pinnacle a monthly fee of approximately 3.0-4.0% of total incomes generated from the applicable properties' rents.

28.    As of the Petition Date, the Debtors collectively employ approximately 130 employees to provide certain building-related services, including, oversight and maintenance of vacant apartments, superintendent services, lobby guard services, engineering, and related services.

29.    In addition to managing and leasing apartments, the Company generates income through "condo conversion" and sponsor unit sales activities.  In 2024, the Company sold fifty-six (56) units out of its apartment inventory (not encumbered by Flagstar mortgages) for total consideration of $26.3 million.  The Company and actively manages the inventory of converted

apartments for resale, and continuously assess their remaining properties for conversion eligibility and opportunities.

## II.

### The Debtors' Corporate and Capital Structure

**A.  Corporate Structure.**

30.    An organizational chart depicting the corporate ownership structure of the Debtors and certain of their non-Debtor affiliates is attached hereto as **Exhibit A**.

**B.  The Debtors' Capital Structure.**

31.    The Debtors' sole funded debt obligations consist of approximately $564 million of secured first lien property level mortgage debt held by Flagstar (the "**Flagstar Mortgages**").  The Flagstar Mortgages are generally entered into on an individual basis and evidenced by separate mortgage agreements at each Debtor.  The Flagstar Mortgages are secured by, among other things, the property, fixtures, improvements, rents, leases, and other earnings, royalties, and accounts receivable associated with the applicable properties.

**C.  The Company's Capital Structure.**

32.    As of the Petition Date, the Company has approximately $1.1 billion of outstanding funded debt obligations comprised of (i) two series of bonds issued by non-Debtor Zarasai, and (ii) property level mortgage debt to various lenders, including the Debtors' approximately $564 million.

33.    As of the Petition Date, the Debtors have approximately $4.1 million of outstanding trade debt.

## III.

### The Need for Chapter 11 Relief and
### The Events Leading to the Debtors' Chapter 11 Filing

34.     As previously stated, the persistent high-interest rate and inflationary environment has severely impacted the Debtors.  The Debtors financed their expansive property portfolio primarily with loans with interest rates that reset after five years.  As a result, as interest rate hikes began in 2022 and continued through the first half of 2024, the Debtors began struggling to service their mortgage debt as their rates reset at higher rates, necessitating discussions with their lender regarding a path forward to avoid value-destructive foreclosure actions.  Because substantially all of the Company's tenants are entitled to protections from rent regulation, the Company was unable to effectively offset its rising interest and other operational expenses through rent increases.

35.     Leading up to and into January 2025, the Debtors were unable to continue servicing their mortgage debt from internal sources.  On March 14, Flagstar delivered a Notice of Default purporting to accelerate all amounts outstanding with respect to the Flagstar mortgages held by the Debtors, and shortly thereafter commenced four separate foreclosure proceedings in four separate New York State courts against the related properties.

36.     On March 24, 2025, Flagstar filed a complaint (the "**Manhattan Complaint**") in the Supreme Court of the State of New York (New York County) commencing a foreclosure action against twenty-one (21) consolidated mortgages secured by Debtor properties in Manhattan.  The Manhattan Complaint sought, among other things, foreclosure on the twenty-one properties secured by approximately $150 million of Flagstar mortgages, and appointment of a receiver.  On April 1, 2025, in conjunction with filing the Manhattan Complaint, Flagstar filed a

proposed form of order on an *ex parte* basis for the immediate appointment of a receiver with the authority to, among other things, take control of and manage the applicable Manhattan properties.

37.    Upon discovery of the *ex parte* request, the Debtors filed an opposition because they believed the appointment of a receiver would have a material detrimental impact on the operations and value of their businesses and assets.    Faced with the imminent risk of receivership over significant assets in their property portfolio, the Debtors were compelled to rapidly divert their efforts to preparing a defensive chapter 11 filing to preserve the value of their enterprise.

38.    During their brief preparation period, the Debtors and their advisors quickly attempted to engage with Flagstar in a cooperative process to explore a potential standstill and restructuring alternatives for the Company without a receivership and without the need for a chapter 11 filing.    On April 4, Flagstar filed three additional complaints to continue its foreclosure actions in Queens, Brooklyn, and the Bronx, seeking foreclosure with respect to the balance of the properties subject to its mortgages.[3]

39.    On April 27, 2025, the Debtors engaged FTI Consulting, Inc. ("**FTI**") to assist with their discussions with Flagstar and concurrent contingency preparation.    On April 29, Flagstar's request for a receiver was denied without prejudice in the New York County action. With FTI's assistance, the Company attempted to use the additional time provided by the court's denial of Flagstar's motion to engage in discussions with Flagstar regarding potential out-of-court solutions to address the alleged defaults and a go-forward business plan.

---

[3]    The complaints filed in the four Flagstar actions are: (i) *Flagstar Bank, N.A. v. 193 Street Realty Co LLC*, No. 850128/2025 (N.Y. Sup. Ct. N.Y. Cnty. Mar. 24, 2025), ECF No. 3; (ii) *Flagstar Bank N.A. v. 225 Parkside LLC*, No. 509749/2025 (N.Y. Sup. Ct. Kings Cnty. Apr. 4, 2025), ECF No. 3; (iii) *Flagstar Bank, N.A. v. 30 Road Realty Co*, No. 708290/2025 (N.Y. Sup. Ct. Queens Cnty. Apr. 4, 2025), ECF No. 3; and (iv) *Flagstar Bank, N.A. v. 3410 Kingsbridge LLC*, No. 806530/2025E (N.Y. Sup. Ct. Bronx Cnty. Apr. 4, 2025), ECF No. 3.

40.     Despite these attempts, on May 2, 2025, Flagstar filed a renewed motion and proposed order seeking appointment of a receiver in the New York County action, again on an *ex parte* basis.  On May 13, Flagstar filed a substantially identical motion seeking appointment of a receiver in the Bronx County action.  Similar motions were filed in the Kings County and Queens County actions in the following days.  Finally, on May 16, an order was entered in the New York County action appointing a receiver with respect to twenty-one (21) of the Debtors' Manhattan properties.

41.     The Debtors were faced with the potential for immediate loss of control of a sizeable portion of their property portfolio based on the May 16 order entered in the New York County action, which would have caused significant disruption for their tenants and harm to the value of their assets and operations.  Unable to reach a satisfactory resolution with Flagstar on this expedited timeline, the Debtors were forced to commence these chapter 11 cases to avoid disruption to tenants services, retain control of their restructuring process, and safeguard their assets for the benefit of all of their creditors and other parties in interest.

42.     The chapter 11 cases will provide the Debtors with the time needed to formulate a restructuring strategy, and engage with their creditors and other parties in interest, to allow the Debtors to effectuate a value-maximizing restructuring in an orderly manner.

**IV.**

**<u>Budget</u>**

43.     Contemporaneously herewith, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Scheduling Final Hearing, and (III) Granting Related Relief* (the "**Cash Collateral Motion**"), seeking, among other things, authority to use Cash Collateral (as defined under section 363 of the Bankruptcy Code) of

Flagstar to maintain and operate the Debtors' properties in the ordinary course and pay other administrative expenses in accordance with the budget attached to the proposed Interim Order as Annex 1 (the "**Budget**").   The Budget reflects that the Debtors currently project to remain cashflow positive on an operational basis (*i.e.*, without debt service) through the four-week period set forth therein.

44.     The Budget was prepared by FTI with the assistance of myself and members of the Company's management team based upon our collective review of relevant documents and information provided by employees of the Company.  The Budget represents my understanding of the Debtors' current financial situation and expected cashflow during the first four weeks of these chapter 11 cases.  If called upon to testify, I would testify competently to the facts set forth in the Budget.

## V.

## Information Required by Local Bankruptcy Rule 1007-2

45.     In accordance with Local Bankruptcy Rule 1007-2, the schedules attached hereto provide certain information related to the Debtors.

46.     Pursuant to Local Bankruptcy Rule 1007-2(a)(3): no committee organized prior to the Petition Date.

47.     Pursuant to Local Bankruptcy Rule 1007-2(a)(4), **Schedule 1** hereto lists the following information with respect to each of the holders of the Debtors' twenty (20) largest unsecured claims, excluding claims of insiders: the creditor's name, address, and telephone number; the name(s) of persons(s) familiar with the Debtors' accounts, the approximate amount of the claim, and an indication of whether the claim is contingent, unliquidated, disputed, or partially secured.

48.     Pursuant to Local Bankruptcy Rule 1007-2(a)(5), **Schedule 2** hereto provides the following information with respect to each of the holders of the five (5) largest secured claims against the Debtors: the creditor's name, address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), and telephone number; the approximate amount of the claim; a brief description of the collateral securing the claim; an estimate of the value of the collateral, and whether the claim or lien is disputed.

49.     Pursuant to Local Bankruptcy Rule 1007-2(a)(6), **Schedule 3** hereto provides a summary of the (unaudited) assets and liabilities for the Debtors.

50.     Pursuant to Local Bankruptcy Rule 1007-2(a)(7), **Schedule 4** hereto provides the following information: the number and classes of shares of stock, debentures, and other securities of the Debtors that are publicly held and the number of record holders thereof; and the number and classes of shares of stock, debentures, and other securities of the Debtors that are held by the Debtors' directors and officers, and the amounts so held.

51.     Pursuant to Local Bankruptcy Rule 1007-2(a)(8), **Schedule 5** hereto provides a list of all of the Debtors' property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, secured creditor, or agent for any such entity, giving the name, address, and telephone number of each such entity and the location of the court in which any proceeding relating thereto is pending.

52.     Pursuant to Local Bankruptcy Rule 1007-2(a)(9), **Schedule 6** hereto provides a list of the premises owned, leased, or held under other arrangement from which the Debtors operates its business.

53.     Pursuant to Local Bankruptcy Rule 1007-2(a)(10), **Schedule 7** hereto provides the location of the Debtors' substantial assets, the location of its books and records, and

the nature, location, and value of any assets held by the Debtors outside the territorial limits of the United States.

54.    Pursuant to Local Bankruptcy Rule 1007-2(a)(11), **Schedule 8** hereto provides a list of the nature and present status of each action or proceeding, pending or threatened, against the Debtors or their property where a judgment against the Debtors or a seizure of their property may be imminent.

55.    Pursuant to Local Bankruptcy Rule 1007-2(a)(12), **Schedule 9** hereto provides a list of the names of the individuals who comprise the Debtors' existing senior management, their tenure with the Debtors, and a brief summary of their relevant responsibilities and experience.

56.    Pursuant to Local Bankruptcy Rule 1007-2(b)(1)-(2)(A), **Schedule 10** hereto provides the estimated amount of weekly payroll to the Debtors' employees (not including officers, directors, stockholders, and partners) and the estimated amount to be paid to officers, stockholders, directors, members of any partnerships, and financial and business consultants retained by the Debtors for the thirty (30) day period following the filing of the Debtors' chapter 11 petition as the Debtors intends to continue to operate its business.

57.    Pursuant to Local Bankruptcy Rule 1007-2(b)(3), **Schedule 11** hereto provides, for the thirty (30) day period following the filing of the chapter 11 petition, a list of estimated cash receipts and disbursements, net cash gain or loss, obligations, and receivables expected to accrue that remain unpaid, other than professional fees.

## V.

## <u>Conclusion</u>

58.     The above illustrates the factors that have precipitated the commencement of the Chapter 11 Case and the need for the Debtors to obtain a breathing spell to restructure its financial affairs.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.


Dated: May 27, 2025
        New York, New York

                                          /s/  *Ephraim Diamond*
                                          **Ephraim Diamond**
                                          Authorized Signatory
                                          Chief Restructuring Officer

**<u>Exhibit A</u>**

**Organizational Chart**



Debtors' Organizational Structure Chart

**Annex 1**

**List of Debtors**

| Debtors | | |
|---|---|---|
| Broadway Realty I Co., LLC | 1362 Ocean LLC | 43-60 Baychester, LLC |
| 193 Street Realty Co., LLC | 147 Realty Co., LLC | 45-35 Realty LLC |
| 2 West 120th Realty Co. LLC | 1535 Ocean LLC | 457 Schenectady LLC |
| 25/35 Hillside Associates LLC | 1554 Ocean LLC | 470 Realty NY LLC |
| 402-412 West 148 LLC | 1597 Realty LLC | 481 Eastern LLC |
| Hillside Realty I Co., LLC | 1601 Realty LLC | 529 East 22 LLC |
| 509 Realty Co. LLC | 1617 Realty LLC | 607 Rugby LLC |
| 281/295 Wadsworth Associates, LLC | 17 Realty LLC | 63-94 Austin Realty, LLC |
| 241 Sherman LLC | 176 Clarkson Ave LLC | 681 Ocean LLC |
| West 50th Street Realty Co., LLC | 18 Street Realty Co., LLC | 706 Realty NY LLC |
| 58 Elizabeth NY LLC | 1820 Realty LLC | 85 Clarkson LLC |
| 207 Realty LLC | 2102 Realty LLC | 85-05 35 Avenue Realty Co., LLC |
| 34 Seaman Associates, LLC | 222 Lenox Rd LLC | 915 Realty LLC |
| 233 Realty NY LLC | 225 Parkside LLC | 916 Carroll St LLC |
| Audobon Realty LLC | 2340 Valentine Avenue Realty Co., LLC | 932 Carroll LLC |
| 536 Realty Co. LLC | 2400 Realty NY LLC | 94-06 34th Avenue Realty Co., LLC |
| 237 Realty NY LLC | 2513 Newkirk LLC | 94-06 34th Road Realty Co., LLC |
| Manhattan Realty Co. LLC | 28-30 Argyle LLC | 990 Realty NY LLC |
| 349 Realty NY LLC | 292 St. Johns LLC | 991 Carroll St LLC |
| 1023 Realty LLC | 30 Road Realty Co., LLC | Clinton Property Co., LLC |
| 1038 Realty LLC | 307 12 St LLC | Fieldstone NY LLC |
| 1042 Realty LLC | 330 Realty NY LLC | Forest Parkway Realty Co., LLC |
| 1048 Realty LLC | 3301 Farragut LLC | Heath Realty LLC |
| 1060 Realty LLC | 34 Avenue Realty Co., LLC | Kingston Place Realty Co., LLC |
| 115 East 21 Realty Co., LLC | 3410 Kingsbridge LLC | Park Lane South Realty Co., LLC |
| 1171 President LLC | 40-15 Hampton LLC | Treger Management LLC |
| 1280 Realty NY LLC | 405 Realty LLC | |
| 1296 Realty LLC | 426 East 22 St LLC | |

**Schedule 1**

**Consolidated List of 20 Largest Unsecured Claims (Excluding Insiders)**

Pursuant to Local Bankruptcy Rule 1007-2(a)(4), the following chart lists, to the best of the Debtors' knowledge, belief, and understanding, the twenty (20) largest unsecured claims against the Debtors, excluding insiders, and with respect to each claimholder, the claimholder's name, address, telephone number, e-mail address, the names of person(s) familiar with the Debtors' account, the amount of the claim, and an indication of whether the claim is contingent, unliquidated, disputed, or partially secured.

| No. | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of Claim | Amount of Unsecured claim |
|---|---|---|---|---|
| 1 | LIFTCO ELEVATOR GROUP P.O. BOX 1413 SPRING VALLEY, NY 10977 | Dov Glick (212) 444-9199 dispatch0@liftcoelevator.com | Trade Debt | $367,482.19 |
| 2 | SENTRY ELEVATOR CORP. P.O. BOX 320162 BROOKLYN, NY 11232 | Joel Litchman (718) 704-1644 service@sentryelevator.com | Trade Debt | $345,220.97 |
| 3 | EASTERN ELEVATOR OF NEW YORK 1236 MCDONAL AVENUE BROOKLYN, NY 11230 | Joel Matyas (718) 215-5510 aviva@easternelevatorny.com | Trade Debt | $322,794.41 |
| 4 | GW MECHANICAL CORP. 854 HUMBOLDT STREET BROOKLYN, NY 11222 | Garry Gurevtich (718) 383-0294 gwmechanical@verizon.net | Trade Debt | $297,332.35 |
| 5 | GK DEAN CONTRACTING CORP. 239 19 88TH AVENUE BELLEROSE, NY 11426 | Sunny Dean (917) 939-0616 panjabisports@yahoo.com | Trade Debt | $196,000.00 |
| 6 | STEINMAN PIPING AND HEATING CORP. 3000 KINGSBRIDGE AVENUE SUITE 1B BRONX, NY 10463 | Sherky Sahiti (718) 275-1417 steinmanph@yahoo.com | Trade Debt | $165,782.93 |
| 7 | NATIONAL GRID USA SERVICE COMPANY, INC. 2 HANSON PLACE BROOKLYN, NY 11217 | (718) 643-4050 | Utility | $138,902.27 |
| 8 | ANTIQUE CONTRACTING CORP 88-20 MOLINE STREET QUEENS VILLAGE, NY 11427 | Sunny Dean (516) 263-4958 anicorp24@yahoo.com | Trade Debt | $129,126.00 |
| 9 | EAGLE GENERAL CONSTRUCTION 1684 WEST 1 STREET SUITE A4 BROOKLYN, NY 11223 | Dzafer Mujovic (646) 403-6125 arbgeneral@aol.com | Trade Debt | $121,570.00 |
| 10 | NYC WATER BOARD P.O. BOX 11863 NEWARK, NJ 07101-8163 | (718) 595-7000 customerservice@dep.nyc.gov | Utility | $102,450.00 |
| 11 | FOSTER CONTRACTING INC 705 FOSTER AVENUE BROOKLYN, NY 11230 | Muhammed Halim (917) 254-5532 mohammed@halim.build | Trade Debt | $94,700.00 |
| 12 | HORING WELIKSON ROSEN & DIGRUGILLIERS, P.C. 11 HILLSIDE AVENUE WILLISTON PARK, NY 11596 | Phil Rosen (718) 575-3838 prosen@hwrpc.com | Professional Services | $88,205.45 |

| 13 | G BAUER SERVICE, INC.<br>1624 WEBSTER AVE<br>BRONX, NY 10457-8016 | (718) 299-1650<br>bauer1624@yahoo.com | Trade Debt | $86,357.07 |
|---|---|---|---|---|
| 14 | RAPID CONTRACTING, INC.<br>314 DEER PARK ROAD<br>DIX HILLS, NY 11746 | Aftab Khan<br>(718) 772-7374<br>rapidcontractor@aol.com | Trade Debt | $82,500.00 |
| 15 | CORNER HARDWARE<br>2266 NOSTRAND AVENUE<br>BROOKLYN, NY 11210 | (718) 927-4300<br>adeutsch@cohdny.com | Trade Debt | $80,029.94 |
| 16 | CONSOLIDATED EDISON CO. OF N.Y. INC.<br>ATT. LAW DEPARTMENT<br>4 IRVING PLACE RM 1875<br>NEW YORK, NY 10003 | (800) 752-6633 | Utility | $79,042.68 |
| 17 | BERGER BOILER CORP<br>10013 FOSTER AVENUE<br>BROOKLYN, NY 11236 | Ada Lora<br>(718) 282-1448<br>service@bergerboiler.com | Trade Debt | $76,545.74 |
| 18 | PS GENERAL CONSTRUCTION<br>CORPORATION<br>98 LILY POND AVENUE<br>STATEN ISLAND, NY 10305 | Galam Sarwar<br>(347) 270-6759<br>psgneralcorp@gmail.com | Trade Debt | $74,400.00 |
| 19 | EXIT MOLD & EXIT LEAD<br>10 BROWER AVENUE<br>WOODMERE, NY 11598 | Sam Stern<br>(516) 512-7877<br>info@exitmold.net | Trade Debt | $59,879.73 |
| 20 | MBA SUPPLY CO.<br>847 E 52ND STREET<br>BROOKLYN, NY 11203 | (718) 245-0077 | Trade Debt | $59,672.53 |

## Schedule 2

**List of Holders of Five Largest Secured Claims**

Pursuant to Local Bankruptcy Rule 1007-2(a)(5), to the best of the Debtors' knowledge, belief, and understanding, the following chart lists, with respect to each of the holders of the five (5) largest secured claims against the Debtors, the name, address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), claim amount, a brief description and an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed.

| No. | Creditor | Contact Mailing Address | Approximate Amount of Claim | Brief Description and Estimated Value of Collateral | Disputed |
|---|---|---|---|---|---|
| 1 | Flagstar Bank N.A. | Chris Burson 102 Duffy Avenue Hicksville, NY 11801  Justin Rawlins; Brett Lawrence Paul Hastings LLP 200 Park Avenue New York, NY 10166 | $564,000,000 | Residential properties of the Debtors listed in Schedule 6 below. | No. [1] |

---

[1]    The Debtors reserve all rights to challenge the amount and secured status of Flagstar's claims, and nothing herein shall be, or shall be deemed or construed to be, an admission of the amount or priority of such claims.  A collateral and perfection review has not been completed.

## Schedule 3

Pursuant to Local Bankruptcy Rule 1007-2(a)(6), the following provides a summary of the [(unaudited)] consolidated assets and liabilities for the Debtors.

### Debtors' Consolidated Balance Sheet

| | As of March 31, 2025 |
|---|---|
| | USD thousands (Unaudited) |
| **Assets** | |
| Cash and cash equivalents | 236,305 |
| Restricted cash | 17,251,899 |
| Rents receivable | 6,175,045 |
| Prepaid expenses and other | 6,709,862 |
| Fixed Assets – FMV | 827,383,710 |
| Other Assets | 14,136,163 |
| **Total Assets** | **871,892,984** |
| | |
| **Liabilities & Members' Equity** | |
| Accounts payable / accrued expenses | 7,584,508 |
| Accrued interest expense | 9,766,100 |
| Deposits | 6,958,145 |
| Mortgages Payable | 563,826,935 |
| Other Liabilities | 1,634,267 |
| **Total Liabilities** | **589,769,955** |
| **Total Members' Equity** | **282,123,029** |
| **Total Liabilities and Members' Equity** | **871,892,984** |

**<u>Schedule 4</u>**

**Publicly Held Securities**

Pursuant to Local Bankruptcy Rule 1007-2(a)(7), to the best of the Debtors' knowledge, belief, and understanding, the Debtors have not issued shares of stock, debentures or other securities that are publicly held.

For completeness, the Debtors note that non-debtor parent company, The Zarasai Group Limited, has issued two tranches of Israeli bonds, Series C Bonds and Series E Bonds, with approximately USD $243 million and USD $78 million aggregate principal amount outstanding, respectively.

## Schedule 5

**Debtors' Property Not in the Debtors' Possession**

Pursuant to Local Bankruptcy Rule 1007-2(a)(8), the following chart lists, to the best of the Debtors' knowledge, belief, and understanding, as of the Petition Date, all of the Debtors' property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity, giving the name, address, and telephone number of each such entity and the court in which any proceeding relating thereto is pending.

| Type of Property | Person or Entity Possessing Property | Address and Telephone Number of Person or Entity Possessing Property | Location of Court Proceeding, if Applicable |
|---|---|---|---|
| Debt Service Coverage Reserve Accounts<br><br>Real Estate Tax Escrow Account<br><br>Utilities Escrow Account | Flagstar Bank N.A. | Chris Burson<br>102 Duffy Avenue<br>Hicksville, NY 11801<br>(516) 683-4420<br><br>Justin Rawlins; Brett Lawrence<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, NY 10166<br>(212) 318-6000 | N/A |

## Schedule 6

Pursuant to Local Bankruptcy Rule 1007-2(a)(9), the following chart lists, to the best of the Debtors' knowledge, belief, and understanding, as of the Petition Date, the premises owned, leased or held under other arrangement from which the Debtors operate their business.

| Debtor Entity | Address | Owned / Leased |
|---|---|---|
| 25/35 Hillside Associates LLC | 25/35 Hillside Avenue, New York NY | Owned |
| 34 Seaman Associates, LLC | 34-44 Seaman Avenue, New York NY | Owned |
| 281/295 Wadsworth Associates, LLC | 281/295 Wadsworth Avenue, New York NY | Owned |
| 30 Road Realty Co., LLC | 25-10/20 30 Road, Queens NY | Owned |
| Forest Parkway Realty Co., LLC | 85-50 Forest Pkwy, Queens NY | Owned |
| Park Lane South Realty Co., LLC | 86-20 Park Lane South, Queens NY | Owned |
| 34 Avenue Realty Co., LLC | 76-09 34th Avenue, Queens NY | Owned |
| 85-05 35 Avenue Realty Co., LLC | 85-05 35th Avenue, Queens NY | Owned |
| Broadway Realty I Co., LLC | 4530 Broadway, New York NY | Owned |
| Hillside Realty I Co., LLC | 11 Hillside Avenue, New York NY | Owned |
| 193 Street Realty Co., LLC | 671-681 West 193th Street, New York NY | Owned |
| 18 Street Realty Co., LLC | 240 East 18th Street, Brooklyn NY | Owned |
| 94-06 34th Road Realty Co., LLC | 94-06 34th Road, Queens NY | Owned |
| 94-06 34th Avenue Realty Co., LLC | 94-06 34th Avenue, Queens NY | Owned |
| 63-94 Austin Realty, LLC | 63-94 Austin Street, Queens NY | Owned |
| Kingston Place Realty Co., LLC | 87-50 Kingston Place, Queens NY | Owned |
| 2340 Valentine Avenue Realty Co., LLC | 2340 Valentine Avenue, Queens NY | Owned |
| West 50th Street Realty Co., LLC | 544 West 50th Street, New York NY | Owned |
| West 50th Street Realty Co., LLC | 546 West 50th Street, New York NY | Owned |
| West 50th Street Realty Co., LLC | 548 West 50th Street, New York NY | Owned |
| 2400 Realty NY LLC | 2400 Nostrand Avenue, Brooklyn NY | Owned |
| 147 Realty Co., LLC | 35-19 147th Street, Queens NY | Owned |
| 115 East 21 Realty Co., LLC | 115 East 21st Street, Brooklyn NY | Owned |
| 509 Realty Co. LLC | 509 West 155th Street, New York NY | Owned |

| Debtor Entity | Address | Owned / Leased |
|---|---|---|
| Treger Management LLC | 815 Gravesend Neck Road, Brooklyn NY | Owned |
| 43-60 Baychester, LLC | 4360 Baychester Avenue, Bronx NY | Owned |
| Heath Realty LLC | 2800 Heath Avenue, Bronx NY | Owned |
| Audobon Realty LLC | 155 Audubon Avenue, New York NY | Owned |
| 207 Realty LLC | 639-645 West 207th Street, New York NY | Owned |
| 241 Sherman LLC | 241/251 Sherman Avenue, New York NY | Owned |
| 402-412 West 148 LLC | 402 West 148th Street, New York NY | Owned |
| 402-412 West 148 LLC | 412 West 148th Street, New York NY | Owned |
| Fieldstone NY LLC | 244 Fieldstone Terrace, Bronx NY | Owned |
| 1171 President LLC | 1171-1179 President Street, Brooklyn NY | Owned |
| 1362 Ocean LLC | 1362 Ocean Avenue, Brooklyn NY | Owned |
| 1535 Ocean LLC | 1535 Ocean Avenue, Brooklyn NY | Owned |
| 1554 Ocean LLC | 1554 Ocean Avenue, Brooklyn NY | Owned |
| 176 Clarkson Ave LLC | 176 Clarkson Avenue, Brooklyn NY | Owned |
| 222 Lenox Rd LLC | 222 Lenox Road, Brooklyn NY | Owned |
| 225 Parkside LLC | 225 Parkside Avenue, Brooklyn NY | Owned |
| 28-30 Argyle LLC | 28 Argyle Road, Brooklyn NY | Owned |
| 28-30 Argyle LLC | 40 Argyle Road, Brooklyn NY | Owned |
| 292 St. Johns LLC | 292 St. Johns Place, Brooklyn NY | Owned |
| 307 12 St LLC | 307 12th Street, Brooklyn NY | Owned |
| 3301 Farragut LLC | 3301 Farragut Road, Brooklyn NY | Owned |
| 426 East 22 St LLC | 426-430 East 22nd Street, Brooklyn NY | Owned |
| 457 Schenectady LLC | 457 Schenectady Avenue, Brooklyn NY | Owned |
| 481 Eastern LLC | 481 Eastern Parkway, Brooklyn NY | Owned |
| 481 Eastern LLC | 489 Eastern Parkway, Brooklyn NY | Owned |
| 481 Eastern LLC | 497 Eastern Parkway, Brooklyn NY | Owned |
| 529 East 22 LLC | 529 East 22nd Street, Brooklyn NY | Owned |
| 607 Rugby LLC | 607 Rugby Road, Brooklyn NY | Owned |

| Debtor Entity | Address | Owned / Leased |
|---|---|---|
| 607 Rugby LLC | 615 Rugby Road, Brooklyn NY | Owned |
| 607 Rugby LLC | 619 Rugby Road, Brooklyn NY | Owned |
| 607 Rugby LLC | 625 Rugby Road, Brooklyn NY | Owned |
| 681 Ocean LLC | 681 Ocean Avenue, Brooklyn NY | Owned |
| 85 Clarkson LLC | 85 Clarkson Avenue, Brooklyn NY | Owned |
| 916 Carroll St LLC | 916 Carroll Street, Brooklyn NY | Owned |
| 932 Carroll LLC | 932 Carroll Street, Brooklyn NY | Owned |
| 991 Carroll St LLC | 991-993 Carroll Street, Brooklyn NY | Owned |
| 3410 Kingsbridge LLC | 3410 Kingsbridge Avenue, Bronx NY | Owned |
| 706 Realty NY LLC | 706 Lefferts Avenue, Brooklyn NY | Owned |
| 990 Realty NY LLC | 990 Montgomery Street, Brooklyn NY | Owned |
| 1296 Realty LLC | 1296 Pacific Street, Brooklyn NY | Owned |
| 915 Realty LLC | 915 Washington Avenue, Brooklyn NY | Owned |
| 1038 Realty LLC | 1038 Union Street, Brooklyn NY | Owned |
| 1042 Realty LLC | 1042 Union Street, Brooklyn NY | Owned |
| 1048 Realty LLC | 1048 Union Street, Brooklyn NY | Owned |
| 1060 Realty LLC | 1060 Union Street, Brooklyn NY | Owned |
| 1023 Realty LLC | 1023 Carroll Street, Brooklyn NY | Owned |
| 1601 Realty LLC | 1601 Bedford Avenue, Brooklyn NY | Owned |
| 1597 Realty LLC | 1597 Bedford Avenue, Brooklyn NY | Owned |
| 470 Realty NY LLC | 470 Ocean Avenue, Brooklyn NY | Owned |
| 2102 Realty LLC | 2102 Beverly Road, Brooklyn NY | Owned |
| 405 Realty LLC | 405 East 16th Street, Brooklyn NY | Owned |
| 1820 Realty LLC | 1820 Cortelyou Road, Brooklyn NY | Owned |
| 330 Realty NY LLC | 330 East 19th Street, Brooklyn NY | Owned |
| 1280 Realty NY LLC | 1280 Ocean Avenue, Brooklyn NY | Owned |
| 1617 Realty LLC | 1617 President Street, Brooklyn NY | Owned |
| 2513 Newkirk LLC | 2513-2523 Newkirk Avenue, Brooklyn NY | Owned |

| Debtor Entity | Address | Owned / Leased |
|---|---|---|
| 17 Realty LLC | 416 East 17th Street, Brooklyn NY | Owned |
| 17 Realty LLC | 422 East 17th Street, Brooklyn NY | Owned |
| 237 Realty NY LLC | 237 West 18th Street, New York NY | Owned |
| 349 Realty NY LLC | 349 East 51st Street, New York NY | Owned |
| 233 Realty NY LLC | 233 East 77th Street, New York NY | Owned |
| 58 Elizabeth NY LLC | 58-60 Elizabeth Street, New York, NY | Owned |
| 58 Elizabeth NY LLC | 146 Hester Street, New York NY | Owned |
| 40-15 Hampton LLC | 40-15 Hampton Avenue, Queens NY | Owned |
| 536 Realty Co. LLC | 536 Isham Street, New York NY | Owned |
| 45-35 Realty LLC | 45-35 44th Street, Queens NY | Owned |
| Clinton Property Co., LLC | 314 Clinton Avenue, Brooklyn NY | Owned |
| 2 West 120th Realty Co. LLC | 2 West 120th Street, New York NY | Owned |
| Manhattan Realty Co. LLC | 85 8th Ave Garage, New York NY | Owned |

## Schedule 7

### Location of Debtor's Assets, Books, and Records

Pursuant to Local Bankruptcy Rule 1007-2(a)(10), the following chart lists, to the best of the Debtors' knowledge, belief, and understanding, the locations of the Debtors' substantial assets, the location of its books and records, and the nature, location, and value of any assets held by the Debtor outside the territorial limits of the United States.

| Location of Debtor's Substantial Assets |
|---|
| *See Schedule 6.* |

### Books and Records

| Debtor | Address |
|---|---|
| All Debtors | 140 East 45th Street, 12th Floor, New York NY 10017 |

| Debtor's Assets Outside the United States |
|---|
| *None.* |

**Schedule 8**

**Litigation**

Pursuant to Local Bankruptcy Rule 1007-2(a)(11), to the best of the Debtors' knowledge, belief, and understanding, as of the Petition Date, the following is a list of the nature and present status of each action or proceeding, pending or threatened, against the Debtors or their properties where a judgment against the Debtors or a seizure of their property may be imminent.[1]

| Entity Initiating Proceeding | Nature of Proceeding | Status of Proceeding |
|---|---|---|
| Flagstar Bank N.A. | Four (4) foreclosure proceedings initiated in the Supreme Court of the State of New York in counties New York, Kings, Queens, and Bronx. | Pending |
| Various tenants / individuals | Lawsuits claiming personal injury; covered by insurance. | Pending |

---

[1]    The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtors.

**Schedule 9**

**Senior Management**

Pursuant to Local Bankruptcy Rule 1007-2(a)(12), the following provides the names of the individuals who comprise the Company's existing senior management as of the Petition Date, a description of their tenure with the Company, and a brief summary of their relevant responsibilities and experience.

As described in the First Day Declaration, the Company is managed pursuant to a management services agreement between non-debtor parent company, The Zarasai Group Limited, and non-debtor affiliate, Pinnacle Managing Co. LLC ("**Pinnacle**"). Each of the below officers, with the exception of Ephraim Diamond, are provided by Pinnacle.

| Name & Position | Responsibilities & Experience |
|---|---|
| Joel Wiener<br><br>*President and Chairman* | Joel Wiener serves as Chief Executive Officer. Mr. Wiener founded Pinnacle and has led the development and growth of the company. He oversees all aspects of the Company. |
| Neil Wiener<br><br>*Vice President* | Neil Wiener serves as Vice President. Mr. Wiener has been employed by Pinnacle since graduation from Yeshiva University, Sy Sims School of Business. His area of focus is operations, technology and management. |
| Darren Landy<br><br>*Vice President* | Darren Landy serves as Vice President. Prior to employment with Pinnacle, Mr. Landy was employed in the marketing department of a Fortune 500 company. His primary area of operations is sales, leasing and management. |
| Moshe Weinberger<br><br>*Chief Financial Officer* | Moshe Weinberger serves as Chief Financial Officer. Mr. Weinberger is a certified accountant in Israel and the United States. He oversees accounting, financing and reporting for Company assets. |
| Ephraim Diamond<br><br>*Chief Restructuring Officer* | Ephraim Diamond serves as Chief Restructuring Officer of each of the Debtors. He is the founder and managing member of Arbel Capital Advisors LLC, an advisory firm specializing in business restructurings/workouts, bankruptcy, and litigation planning. Mr. Diamond has over 20 years of restructuring and crisis management experience and has appeared on behalf of debtors in numerous bankruptcy cases across the country. He oversees the Debtors' restructuring efforts, including negotiations with third-parties relating to the restructuring. |

**Schedule 10**

**Payroll**

Pursuant to Local Bankruptcy Rule 1007-2(b)(1)-(2)(A) and (C), the following provides the estimated amount of weekly payroll to the Debtors' employees (not including officers, directors, and stockholders) and the estimated amount to be paid to officers, stockholders, directors, and financial and business consultants retained by the Debtors for the 30-day period following the filing of the chapter 11 petition.

| | |
|---|---|
| **Estimated amount of weekly payroll to employees (exclusive of officers, directors, stockholders and partners) for 30 day period following chapter 11 filing** | $643,378.49 |
| **Amount paid and proposed to be paid for services for the (30) day period following chapter 11 filing to officers, stockholders, and directors** | $0[1] |
| **Amount paid and proposed to be paid for services for the (30) day period following chapter 11 filing to financial and business consultants** | $0[2] |

---

[1]    Fees of the Chief Restructuring Officer, Ephraim Diamond, not included as such fees are paid through Arbel Capital Advisors LLC.

[2]    Pursuant to the retention applications to be filed by the Debtors' professionals, and the applicable Bankruptcy Rules and Local Bankruptcy Rules, the Debtors will not make any payments in the 30-day period following the filing of the chapter 11 petitions.

## Schedule 11

### Cash Receipts and Disbursements,
### Net Cash Gain or Loss, Unpaid Obligations and Receivables

Pursuant to Local Bankruptcy Rule 1007-2(b)(3), the following provides, for the 30-day period following the filing of the chapter 11 petition, the estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid, other than professional fees.

| | |
|---|---|
| **Cash Receipts** | $7,778,080 |
| **Cash Disbursements** | $7,433,351[1] |
| **Net Cash Gain (Loss)** | $344,729 |
| **Unpaid Obligations** | $705,515 |
| **Uncollected Receivables** | $2,717,501 |

---

[1]   Includes accrual of Professional Fees, though such fees are not contemplated to be paid in the 30-day period following the filing of the chapter 11 petitions.