## <u>Exhibit 1</u>

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **BROADWAY REALTY I CO., LLC,** *et al.*, | : | **Case No. 25-11050 (DSJ)** |
| | : | |
| Debtors. [1] | : | **(Jointly Administered)** |

---------------------------------------------------------------x

## BIDDING PROCEDURES

### Overview

On May 21, 2025, Broadway Realty I Co., LLC and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). The chapter 11 cases have been consolidated for procedural purposes under the lead case: *In re Broadway Realty I Co., LLC., et al.*, Case No 25-11050.

On [●], 2025, the Bankruptcy Court entered an order (ECF No. [●]) (the "**Bidding Procedures Order**"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (the "**Bidding Procedures**") for the consideration of the highest or otherwise best bid to sell or refinance their portfolio of residential properties, including the sale or refinancing of all or a number of apartment buildings located in New York City (together, the "**Assets**")[2] on the terms and conditions set forth herein. The Debtors are seeking bids from investors or purchasers for all of the Assets as a portfolio and bids on individual Assets or for any combination of the Assets.[3]

These Bidding Procedures describe, among other things: (i) the procedures for Potential Bidders to submit Bids for an acquisition of all or a portion of the Assets pursuant to a chapter 11 plan or stand-alone sale or refinancing Transaction; (ii) the manner in which Potential Bidders and Bids become Qualified Bidders and Qualified Bids (iii) the procedures for the Debtors' designation of Stalking Horse Bidder(s); (iv) the process for negotiating the Bids received; (v) the conduct of an auction, to be held if the Debtors receive multiple Qualified Bids for certain Assets; (vi) the procedure for the ultimate selection of any Successful Bidder; and (vii) the process for approval

---

[1]  The last four digits of Broadway Realty I Co., LLC's tax identification number is 5426. A complete list of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/BroadwayRealty. The Debtors' mailing addresses are located at 2 Grand Central Tower, 140 East 45th St., 12th Floor, New York, NY 10017.

[2]  A list of the Debtors' properties is attached hereto as **Annex 1**.

[3]  All capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures Order.

of a potential Transaction at the Sale Hearing (each as defined herein).  **These Bidding Procedures are subject to the consent and consultation rights set out in the Final Cash Collateral Order.[4]**

### Tenants at Debtor Properties

**A Transaction for any of the Asset(s) will not impact the existing tenant leases at any of the Debtors' properties.  The Debtors' properties may be subject to federal, state, and local statutes, regulations, and rules or regulatory agreements (collectively, and to the extent enforceable in the chapter 11 cases, the "Regulatory Restrictions").  During the marketing process, the Debtors' buildings will continue to operate, and tenant services will continue to be provided, uninterrupted and in the ordinary course.  In accordance with these Bidding Procedures, any Potential Bidder that seeks to purchase or refinance all or a portion of the Assets will be required to do so subject to the existing tenant leases and applicable Regulatory Restrictions.**

### Reservation of Rights

**Except as otherwise set forth herein, the Debtors reserve the right and are authorized, in their reasonable business judgment, upon the joint recommendation of the Debtors' Chief Restructuring Officers (the "CROs"), and with the reasonable consent of Flagstar, in a manner consistent with their fiduciary duties, to: (a) modify these Bidding Procedures, including to modify the requirements with regard to any Good Faith Deposit (as defined below); (b) waive terms and conditions set forth herein with respect to all Potential Bidders; (c) extend the deadlines set forth herein; (d) announce at the Auction modified or additional procedures for conducting the Auction; (e) alter the assumptions set forth herein; and (f) provide reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Debtors' business, in each case, to the extent not materially inconsistent with these Bidding Procedures and the Bidding Procedures Order.  All parties reserve their rights to seek Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline) (each as defined herein).**

### Fiduciary Out

Nothing in  these Bidding Procedures will require the Debtors' CROs, board of directors, board of managers, or such similar governing body of a Debtor to take any action or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body reasonably determines in good faith, in consultation with outside counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

---

[4]    "**Final Cash Collateral Order**" means the consensual agreement on cash collateral that was approved by the Court on September 22, 2025 [ECF No. 551].

**Summary of Important Dates**

| Key Event | Deadline |
|---|---|
| Deadline to Submit Non-Binding Indications of Interest | **November 21, 2025, at 5:00 p.m. (prevailing Eastern Time)** |
| **Bid Deadline** | **December 12, 2025, at 5:00 p.m. (prevailing Eastern Time)** |
| Selection of Stalking Horse Bid(s) / Deadline for Debtors to Notify Bidders of Status as Qualified Bidders | **December 16, 2025, at 5:00 p.m. (prevailing Eastern Time)** |
| Auction(s) (if necessary) | **January 8, 2026, at 10:00 a.m. (prevailing Eastern Time)** |
| Deadline to File Notice of (a) Successful Bid and Back-Up Bid and (b) Identity of Successful Bidder and Back-Up Bidder | **1 business day following conclusion of the applicable Auction(s)** |
| Deadline to File Objections to (a) Identity of Successful Bidder, (b) Transaction, (c) Cure Costs, and (d) Adequate Assurance of Future Performance | **January 11, 2026, at 5:00 p.m. (prevailing Eastern Time)** |
| Deadline to File Reply to Objections | **5:00 p.m. (prevailing Eastern Time) one day prior to the Sale Hearing** |
| Sale Hearing(s) or Confirmation Hearing (as applicable) | **On or before January 15, 2026** |
| Closing of Transaction(s) | **On or before February 12, 2026.** |

**Transactions Pursuant to Chapter 11 Plan(s) or Section 363**

The Bidding Procedures are intended to provide the Debtors with flexibility to solicit proposals, negotiate Transactions, hold auctions, and proceed to consummate potential Transactions. The Debtors assume most, if not all, purchasers will require that Transactions be consummated pursuant to a chapter 11 plan or plans to utilize the transfer and recording tax efficiencies provided for under section 1146 of the Bankruptcy Code. Accordingly, the Debtors anticipate filing a chapter 11 plan or plans and disclosure statement in parallel to the Marketing Process; however the procedures also provide for the possibility of consummating stand-alone sales or refinancings pursuant to section 363 of the Bankruptcy Code.

**Assets to be Acquired[5]**

The Assets to be acquired are listed in **Annex 1** to these Bidding Procedures. The Debtors are seeking bids from investors or purchasers for all of the Assets as a portfolio and bids on individual Assets or for any combination of the Assets.

---

[5]    For the avoidance of doubt, a sale or refinancing of the assets of any non-debtor entities will not be entitled to any relief under the Bankruptcy Code.

## Due Diligence

The Debtors have posted copies of material documents related to the Assets to the Debtors' confidential electronic data room (the "**Data Room**") maintained by the Debtors' real estate advisors, Eastdil Secured L.L.C. ("**Eastdil**"). To access the Data Room, a party must submit to the Eastdil:

    i.      an executed confidentiality agreement in form and substance that is customary and reasonably satisfactory to the Debtors (unless such party is already a party to an existing customary confidentiality agreement with the Debtors that is reasonably acceptable to the Debtors for this due diligence process, in which case such agreement shall govern); and

    ii.     sufficient information, as reasonably determined by the Debtors, to allow the Debtors to determine, in their reasonable business judgment, that the interested party (a) has the financial wherewithal to consummate a Transaction and (b) intends to access the Data Room for a bona fide purpose consistent with these Bidding Procedures.

An interested party that meets the aforementioned requirements to the reasonable satisfaction of the Debtors shall be a "**Potential Bidder**." As soon as practicable, the Debtors will provide such Potential Bidder access to the Data Room. The Debtors may restrict or limit access of a Potential Bidder to the Data Room if the Debtors determine, based on their reasonable business judgment, that certain information in the Data Room is sensitive, proprietary or otherwise not appropriate for disclosure to such Potential Bidder.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate a Transaction.

All requests for access to the Data Room or any additional due diligence requests shall be directed to Eastdil (Attn: Daniel Parker (dparker@eastdilsecured.com)). Until the Bid Deadline, and except as otherwise provided herein, the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any additional information requested by Potential Bidders (subject to any restrictions pursuant to applicable law or these Bidding Procedures) that the Debtors believe in their reasonable business judgment to be reasonable and appropriate under the circumstances.

In the event that any such additional information is in written form and provided to a Potential Bidder, the Debtors shall simultaneously provide such additional information to all other Potential Bidders, as well as any Stalking Horse Bidder(s) (as defined below).

Access to the Data Room and the availability of additional due diligence to a Potential Bidder may be terminated by the Debtors in their reasonable discretion at any time for any reason whatsoever, including if (i) the Potential Bidder does not become a Qualified Bidder, (ii) these Bidding Procedures are terminated, (iii) the Potential Bidder breaches any obligations under its confidentiality agreement or (iv) the Debtors become aware that information submitted by the Potential Bidder for requesting access to the Data Room is inaccurate or misleading.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person or entity who (i) is not a Potential Bidder, (ii) does not comply with the participation requirements set forth herein, or (iii) in the case of competitively sensitive information, is a competitor of the Debtors, in the reasonable business judgment of the Debtors. The Debtors and their representatives shall not be obligated to furnish any due diligence information after the applicable Bid Deadline (as defined herein). Due diligence shall be completed on or before the applicable Bid Deadline.

Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the applicable Assets prior to making a bid; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and the applicable Assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the applicable Assets or the completeness of any information provided in connection therewith, except as expressly stated in these Bid Procedures.

## Designation of Stalking Horse Bidder

Designation of Stalking Horse Bidder. The Debtors may, upon the joint recommendation of the CROs, designate one or more stalking horse bidder(s) (any such bidder, a "**Stalking Horse Bidder**" and, any such bid, a "**Stalking Horse Bid**") with respect to any of the Assets and enter into an asset purchase agreement with each such Stalking Horse Bidder (any such agreement, a "**Stalking Horse Agreement**") on **or before** December 16, 2025 at 5:00 p.m. (prevailing Eastern Time). While December 16, 2025 is the outside date for the selection of Stalking Horse Bid(s), the Debtors may designate Stalking Horse Bid(s) at any time prior to the Bid Deadline. To the extent the Debtors, upon joint recommendation of the CROs, designate any Stalking Horse Bidder(s), the Debtors shall promptly upon execution of a Stalking Horse Agreement, and in no event more than one (1) calendar day following such execution, file with the Bankruptcy Court, serve on the Sale Notice Parties (as defined below), and cause to be published on the website maintained by the Debtors' claims and noticing agent in these chapter 11 cases, located at https://cases.stretto.com/broadwayrealty (the "**Case Website**"), a notice that contains information about the Stalking Horse Bidder, the Stalking Horse Bid, and attaches the proposed Stalking Horse Agreement (the "**Notice of Stalking Horse Bidder**").

Stalking Horse Bid Protections. The Debtors may, upon the joint recommendation of the CROs: (i) establish initial overbid minimum and subsequent bidding increment requirements and (ii) offer a Stalking Horse Bidder a break-up fee in an amount to be mutually agreed upon among the CROs, but not to exceed 2% of the proposed Purchase Price (a "**Termination Payment**" together with the other bid protections described in this paragraph, the "**Stalking Horse Bid Protections**"). The Stalking Horse Bid Protections shall be described in detail, including the amount and calculation of such Stalking Horse Bid Protections, in the Notice of Stalking Horse Bidder.

For all purposes under the Bidding Procedures, a Stalking Horse Bidder approved as such pursuant to the above-mentioned Order shall be considered a Qualified Bidder, and the Stalking Horse Bid shall be considered a Qualified Bid. Subject to the other provisions of these Bidding Procedures,

in the event that a Stalking Horse Bid is the only Qualified Bid received by the Debtors by the Bid Deadline, the Stalking Horse Bidder may be deemed the Successful Bidder.

### Sale Notice Parties

The "**Sale Notice Parties**" shall include the following persons and entities:

    i.    Flagstar Bank, N.A., 102 Duffy Avenue, Hicksville, New York 11801;

    ii.    counsel to Flagstar Bank, N.A., Paul Hastings LLP, MetLife Building, 200 Park Avenue, New York, New York 10166 (Attn.: Harvey A. Strickon, Esq., Brett Lawrence, Esq., Nicholas A. Bassett, Esq., and Justin Rawlins, Esq.);

    iii.    William K. Harrington, the U.S. Department of Justice, Office of the U.S. Trustee, One Bowling Green, Suite 534, New York, New York 10004 (Attn.: Rachael Siegel, Esq. and Paul Schwartzberg, Esq.);

    iv.    counsel to Mishmeret Trust Company Ltd., Chapman and Cutler LLP, 1270 Avenue of the Americas, 30th Floor, New York, New York 10020 (Attn.: Michael Friedman, Esq.);

    v.    all parties to executory contracts or unexpired leases to be assumed and assigned, or rejected as part of the Transaction;

    vi.    the Internal Revenue Service; and

    vii.    the United States Attorney's Office for the Southern District of New York.

### Non-Binding Indications of Interest

Parties interested in purchasing the Assets are encouraged to submit, in writing, a non-binding indication of interest (each a "**Non-Binding Indication of Interest**") to the Debtors by **November 21, 2025 at 5:00 p.m. (prevailing Eastern Time)**.

Non-Binding Indications of Interest should be sent to the Debtors' real estate advisors, Eastdil (Attn: Daniel Parker (dparker@eastdilsecured.com)), and should contain information pertaining to the following:

    i.    experience with rent-stabilized apartments;

    ii.    purchase or refinancing price;

    iii.    proposed Good Faith Deposit (as defined below);

    iv.    capitalization sources;

    v.    closing conditions;

vi.      approval process;

vii.     any remaining due diligence the offer may be subject to.

Submitting a Non-Binding Indication of Interest by the deadlines listed herein does not obligate the interested party to consummate a Transaction, submit a formal bid or to participate in the bidding process, nor does it cause such party to be deemed to be a Potential Bidder.  It also does not exempt such party from having to submit a Qualified Bid by the Bid Deadline or comply with these Bidding Procedures to participate in the subsequent Auction, if any, all as described below. For the avoidance of doubt, a party that does not submit a Non-Binding Indication of Interest is not precluded from submitting a Qualified Bid by the Bid Deadline.

## **Bid Deadline**

A Potential Bidder that desires to make a bid to purchase all or a portion of the Assets shall deliver electronic copies of its bid so as to be received no later than **December 12, 2025 at 5:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**"); provided that, the Debtors may, upon joint recommendation of the CROs, and subject to the Final Cash Collateral Order, extend the foregoing Bid Deadline with respect to any Assets without further order of the Bankruptcy Court subject to providing notice to all Potential Bidders and any Stalking Horse Bidder(s).  **The submission of a bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the Asset(s) specified in such bid.**  Any party that does not submit a bid by the Bid Deadline will not be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in the Auction.

Bids should be submitted by email to the following Debtor representatives:

i.       counsel to the Debtors, Weil, Gotshal & Manges LLP (Attn: Gary T. Holtzer (Pinnacle@weil.com))

ii.      real estate advisor to the Debtors, Eastdil Secured, L.L.C. (Attn: Daniel Parker (dparker@eastdilsecured.com)).

## **Form and Content of Qualified Bid**

A bid is a signed document from a Potential Bidder received by the Bid Deadline that identifies the purchaser by its legal name and the legal name of any other party that will be participating in connection with the bid (a "**Bid**").  To constitute a "**Qualified Bid**" a Bid must include, at a minimum, the following:[6]

i.       Identification of Bidder.  Each Bid must identify (a) the party submitting the bid (and any equity holders or other financial investors in such party or such bid, in the case of a Qualified Bidder which is an entity specially formed for the purpose of effectuating the applicable contemplated Transaction) and the representatives thereof who are authorized to appear

---

[6]   The Debtors may  waive any of the following requirements for a Bid to constitute a Qualified Bid to the extent reasonably necessary to promote bids and a robust auction so long as any such waiver is not materially inconsistent with these Bidding Procedures.

and act on its behalf for all purposes regarding the applicable contemplated Transaction, and (b) the material terms of any such participation, including any agreements, arrangements, undertakings, contractual obligations or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid.

ii.     <u>Proposed Agreement</u>.  Each Bid must include an agreement (the "**Proposed Agreement**") or plan term sheet ("**Proposed Term Sheet**") for the acquisition or refinancing of the applicable Assets, together with a redline comparing the Proposed Agreement or Proposed Term Sheet to the corresponding form agreement made available to Potential Bidders in the Data Room.

iii.    <u>Purchase Price; Form of Consideration; Cash Requirements; Assumed Liabilities</u>.  Each Bid must clearly set forth, as applicable:

(a)     <u>Purchase or Refinancing Price</u>.  Each Bid must clearly identify the purchase and/or refinancing price (the "**Purchase Price**) to be paid for each Asset.  With respect to a Bid for acquiring two or more Assets, including a credit bid by Flagstar, the Bid must clearly state the allocation of Purchase Price between the Assets.

(b)     <u>Credit Bid</u>.  Flagstar shall be entitled to submit a credit bid for all or a portion of its respective Prepetition Flagstar Obligations (as defined in the Cash Collateral Order) on the corresponding Asset(s) in accordance with section 363(k) of the Bankruptcy Code.  Flagstar will be deemed a Qualified Bidder for each of the Assets for which it timely submits a credit bid in accordance with these Bidding Procedures.

(c)     <u>Cash Requirements</u>.  Each Bid must provide cash consideration for the payment of any applicable Termination Payment in cash in full.  Any credit bid must include a cash component sufficient to pay any applicable Termination Payment.  For the avoidance of doubt, nothing in these Bidding Procedures shall be construed as Flagstar's pre-consent, or as obligating Flagstar to consent, to any terms that may be contained in a chapter 11 plan.

(d)     <u>Assets Purchased</u>: Each Bid, including a credit bid by Flagstar, must clearly identify the particular Asset(s) the Potential Bidder seeks to acquire or refinance.

(e)     <u>Assumed Liabilities</u>: Each Bid must clearly identify, in writing and as applicable, the particular liabilities, if any, the Bidder seeks to assume.  For the avoidance of doubt, a Qualified Bid may include a bid for less than all of the Debtors' liabilities.

iv.     <u>Unconditional Offer / Contingencies</u>.  A statement that the Bid is formal, binding, and unconditional, is not subject to any further due diligence or financing contingency, and shall be irrevocable until the Debtors notify the Potential Bidder in writing that such Bid is not a Successful Bid or a Back-Up Bid, or until the first business day after the close of a Transaction.  A Bid may not be materially less favorable than the terms of the Stalking Horse Agreement, if any.

v.      <u>Proof of Financial Ability to Perform / No Material Conditions</u>.  Each Bid must contain such financial and other information that allows the Debtors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Transaction including, without limitation, such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's ability to perform under any executory contracts and unexpired leases that are assumed and assigned to such party.  Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of third-party financing commitments (including any governmental financing sources) if needed to consummate the Transaction (not subject to any material conditions, as determined in the reasonable business judgment of the CROs), contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Debtors, as necessary to demonstrate adequate assurance of future performance and to demonstrate that such Potential Bidder has the ability to consummate the respective Transaction in a timely manner.

vi.     <u>Designation of Contracts and Leases</u>**.**  Each Bid must identify with particularity each and every executory contract and unexpired lease, the assumption and assignment of which is a condition to closing a Transaction; <u>provided</u> <u>that</u>, the Bid may allow for the Potential Bidder to remove executory contracts and unexpired leases from the list of contracts to be assumed and assigned any time prior to the closing of a Transaction; <u>provided</u> <u>further</u>, that to the extent the Debtors identify any additional executory contracts or unexpired leases after the Bid is submitted, the Bid may allow for the Potential Bidder to add such executory contracts and unexpired leases to the list of contracts to be assumed and assigned any time from and after the Bid is submitted.  As soon as reasonably practicable, the Debtors shall provide notice to the applicable contract counterparties of such removal and/or addition of such counterparty's executory contracts and unexpired leases.  **Notwithstanding the foregoing, each Bid must provide for the assumption of all existing tenant leases at the applicable Asset(s) subject to all applicable Regulatory Restrictions.**

vii.    <u>Required Approvals</u>.  A statement or evidence (a) that the Potential Bidder has made or will make in a timely manner all necessary filings under the

Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, or other antitrust laws, as applicable, and pay the fees associated with such filings; (b) of the Potential Bidder's plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals; and (c) that the Bid is reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid or as the Back-Up Bid, within a time frame acceptable to the Debtors. A Potential Bidder further agrees that its legal counsel will coordinate in good faith with Debtors' legal counsel to discuss and explain such Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable.

viii.     <u>Corporate Authorization</u>. Each Bid must include evidence of corporate authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a Bid, participation in the Auction, and closing of the Transaction(s) contemplated by the Potential Bidder's Proposed Agreement in accordance with the terms of the Bid and these Bidding Procedures.

ix.     <u>No Entitlement to Expense Reimbursement or Other Amounts</u>. With the exception of any Stalking Horse Bid, each Bid must expressly state that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

x.     <u>Disclosure of Connections</u>. Each Bid must fully disclose any connections to or agreements with the Debtors and their non-Debtor affiliates, Flagstar, any other known Potential Bidder and/or any officer or director of the Debtors and their non-Debtor affiliates.

xi.     <u>Joint Bids</u>. The Debtors may approve joint Bids in their reasonable discretion on a case-by-case basis.

xii.     <u>Transaction Structure</u>. Each Bid must expressly state whether the Transaction it proposes will be consummated pursuant to a refinancing, chapter 11 plan, or a sale exclusively under section 363 of the Bankruptcy Code.

xiii.     <u>Credit Bid</u>. Any credit bid must (a) provide for the payment to Eastdil of any applicable Transaction Fee, as defined in that certain engagement letter providing for the employment of Eastdil, dated as of August 15, 2025 (the "**Eastdil Engagement Letter**") and (b) identify the relevant Asset(s), the credit bid price, and the amount of the debt that is credit bid on a price-per-asset basis.

xiv.    <u>Representations and Warranties</u>. Each Bid must include the following representations and warranties:

(a)    a statement that the Potential Bidder agrees to assume all existing tenant leases subject to the applicable Regulatory Requirements at the applicable Asset(s);

(b)    a statement that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the applicable Asset(s) prior to submitting its Bid;

(c)    a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents, as well as the Assets and liabilities to be assumed (as applicable), in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets or liabilities or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Proposed Agreement ultimately accepted and executed by the Debtors;

(d)    a statement that the Potential Bidder agrees to serve as Back-Up Bidder (as defined below), if its Bid is selected as the next highest or next best bid after the Successful Bid with respect to the applicable Asset(s);

(e)    a statement that the Potential Bidder has not engaged in any collusion with respect to the submission of its Bid;

(f)    a statement that all proof of financial ability to consummate a Transaction in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

(g)    a statement that the Potential Bidder agrees to be bound by the terms of the Bidding Procedures.

A Potential Bidder must also accompany its Bid with:

xv.    a Good Faith Deposit (as defined below);

xvi.    the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Potential Bidder; and

xvii.        a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements.

## **Good Faith Deposit**

Except for any authorized credit bid, a Qualified Bid must be accompanied by a deposit (each, a "**Good Faith Deposit**") in an amount mutually acceptable to the CROs, up to ten percent (10%) of the proposed purchase price, and must be deposited in the form of cash. Each Good Faith Deposit must be deposited, prior to the applicable Bid Deadline, with an escrow agent (the "**Escrow Agent**") selected by the Debtors pursuant to a customary and reasonable escrow agreement to be provided by the Debtors. To the extent a Qualified Bid is modified before, during, or after the Auction, the Debtors reserve the right, upon the joint recommendation of the CROs, to require that such Qualified Bidder increase its Good Faith Deposit so that it equals the initially agreed upon percentage of the enterprise value of the Asset(s) to be purchased or refinanced through the Bid, as implied by the Purchase Price. If a Qualified Bidder is required to increase its Good Faith Deposit, its status as a Qualified Bidder shall be suspended pending satisfaction of such adjustment.

## **Review of Bids; Designation of Qualified Bids**

The Debtors will evaluate Bids that are timely submitted and may engage in negotiations with Potential Bidders who submitted Bids as the Debtors deem appropriate in the exercise of their reasonable business judgment, based upon the Debtors' evaluation of the content of each Bid.

A Bid that is reasonably determined by the Debtors to meet the requirements set forth herein will be considered a "**Qualified Bid**" and any bidder that submits a Qualified Bid (including any Stalking Horse Bid) will be considered a "**Qualified Bidder**."

By no later than, **December 16, 2025 at 5:00 p.m. (prevailing Eastern Time)** (the "**Qualified Bid Deadline**") the Debtors shall determine, in their reasonable business judgment, which of the Bids received by the Bid Deadline qualifies as a Qualified Bid. The Debtors shall notify each Bidder who submits a Qualified Bid of its status as a Qualified Bidder by the Qualified Bid Deadline.

The Debtors shall determine, after consultation with the Debtors' financial and legal advisors, which of the Qualified Bids is the highest or best bid for the applicable Asset(s) (each, an "**Initial Highest Bid**").

In evaluating the Bids and determining highest or best Bid or value, the Debtors may take into consideration the following non-exhaustive factors:

i.        the Purchase Price set forth in the Bid;

ii.        the amount and nature of the consideration, including any obligations to be assumed;

iii.    the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account any Stalking Horse Bidder's rights to any Termination Payment;

iv.    the executory contracts and unexpired leases of the Debtors, if any, for which assumption and assignment or rejection is required, and the costs and delay associated with any litigation concerning executory contracts and unexpired leases necessitated by such Bid, including with regard to any union or labor contracts;

v.    any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities;

vi.    the assets and liabilities excluded from the Bid and any executory contracts or leases or other liabilities proposed to be assumed;

vii.    the Transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals;

viii.    the impact on employees and employee claims against the Debtors, including with regard to any union or labor contracts;

ix.    the impact on trade creditors;

x.    the number of separate Transactions, including across multiple Debtors, that would be required to consummate the Transaction and the attendant costs and risks;

xi.    the impact that consummating the Bid may have on other Bids;

xii.    the number, type and nature of any changes to a Form Purchase Agreement or a Stalking Horse Agreement, as applicable, requested by each Qualified Bidder;

xiii.    the extent to which such modifications are likely to delay closing of the sale or refinancing of the applicable Assets and the cost to the Debtors of such modifications or delay;

xiv.    the likelihood of the Qualified Bidder being able to close the proposed Transaction (including (a) assessment of financing commitment letters and (b) obtaining any required regulatory or other approvals) and the timing thereof;

xv.    the net benefit to the Debtors' estates;

xvi.    the impact on the Debtors' operational infrastructure; and

xvii.        any other factors the Debtors may reasonably deem relevant consistent with their fiduciary duties.

The Debtors reserve the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid.

Persons who collectively are referred to as a Qualified Bidder need not be affiliates and need not act in concert with one another, and the Debtors may aggregate separate bids from unaffiliated persons to create one bid from a Qualified Bidder; *provided*, *however*, that all bidders shall not take any actions to aggregate bids with any unaffiliated person absent the Debtors' consent and remain subject to the provisions of Bankruptcy Code section 363(n) regarding collusive bidding and the applicable Confidentiality Agreement.

Without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid for the Debtors during the period that such Qualified Bid remains binding as specified herein; provided that, any Qualified Bid may be improved at the Auction as set forth in these Bidding Procedures.

### Failure to Receive Qualified Bids Other Than Stalking Horse Bid

If, by the Qualified Bid Deadline, (i) there is no applicable Stalking Horse Bid designated in accordance with the Bidding Procedures, and only one Qualified Bid is received with respect to certain Assets, or (ii) no Qualified Bid other than an applicable Stalking Horse Bid is received with respect to certain Assets, then the Debtors will not conduct an Auction for such Assets, and shall file a notice with the Bankruptcy Court by **January 7, 2026, at 5:00 p.m. (prevailing Eastern Time)** indicating that no Auction will be held with respect to such Asset(s).  The Debtors shall also publish such notice on the Case Website.

### Auction Procedures

With respect to each sale or refinancing process, in the event that (i) the Debtors timely receive one or more Qualified Bids with respect to a specific Asset(s) or (ii) a Stalking Horse Bidder is selected and the Debtors receive a Qualified Bid for the applicable Assets that the Debtors, in their business judgment and upon the joint recommendation of the CROs, determine to be the Initial Highest Bid, the Debtors shall conduct an auction (the "**Auction**") with respect to such Qualified Bids.  The Auctions, if required, shall commence at **10:00 a.m. (prevailing Eastern Time) on January 8, 2026**, and will (unless the Debtors provide notice otherwise) be conducted electronically via video/telephone, or at such later time or other place as designated by the Debtors, or approved by order of the Court, and of which the Debtors will notify the auction participants. Only a Qualified Bidder will be eligible to participate at the Auction, subject to such limitations as the Debtors may impose in good faith.  In addition, professionals and/or other representatives of the Debtors and Flagstar shall be permitted to attend and observe the Auction in accordance with these Bidding Procedures.  Each Qualified Bidder shall be required to confirm, both before and after the Auction, that it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction.

The following auction rules shall apply to the Auction to promote a spirited robust Auction (the "**Auction Rules**").  All bids in the Auction will be made and received on an open basis, and all other Qualified Bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder placing a bid at the Auction will be fully disclosed to all other Qualified Bidders participating in the Auction and that all material terms of a Qualified Bid submitted in response to any successive Bids made at the Auction will be disclosed to all other Qualified Bidders

Each Qualified Bidder will be permitted an appropriate amount of time, as reasonably determined by the  Debtors, to respond to the previous bid at the Auction.  The Auction will be conducted openly and shall be transcribed or recorded.

Round-skipping, as described herein, is explicitly prohibited.  To remain eligible to participate in the Auction for a particular Asset, in each round of bidding, (i) each Qualified Bidder must submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding and (ii) to the extent a Qualified Bidder fails to bid in such round of bidding or to submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding, as determined by the Debtors in their reasonable business judgment and in consultation with Flagstar, such Qualified Bidder shall be disqualified from continuing to participate in the Auction for such Asset; provided that, the Debtors may utilize Auction procedures other than the foregoing procedure for any round of bidding.

To the extent the Debtors conduct multiple auctions for different subgroupings of the Debtors' assets (each, a "**Sub-Auction**") at any Auction and a Qualified Bidder declines to participate in any specific Sub-Auction or Sub-Auctions, or any round of bidding for such specific Sub-Auctions, such Qualified Bidder shall still be permitted to offer a Bid in subsequent Sub-Auctions, including bids that include assets subject to a prior Sub-Auction, which includes the right to bid on groupings of assets that may include specific assets which were the subject of an earlier Sub-Auction.

Pursuant to 18 U.S.C. §§ 156 and 157, bidders and their representatives may not communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction. Each bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any bid for the Auction and (ii) its bid represents a binding, good faith, and bona fide offer to purchase the Assets identified in such bid if selected as the Successful Bidder.

All parties attending the Auction must keep the proceedings and results of the Auction confidential until the Debtors have closed the Auction; provided that, parties may speak with clients or parties necessary to place or increase their bids so long as such individuals are advised of the confidentiality restriction.

The Debtors may, in the exercise of their reasonable business judgment, and upon the joint recommendation of the CROs, identify the highest or otherwise best Qualified Bid for a particular Asset as the successful bid (a "**Successful Bid**" and the bidder submitting such bid, a "**Successful Bidder**").  The Debtors may also identify a Qualified Bidder that submitted the next highest or

otherwise best Qualified Bid as a back-up bid (a "**Back-Up Bid**" and the bidder submitting such bid, a "**Back-Up Bidder**").

If one or more Qualified Bid(s) exist for acquiring a subset of Assets subject to one or more Qualified Bid(s), then the Debtors shall first conduct a Sub-Auction for each of these Assets that has at least one Qualified Bid pursuant to the Auction Rules. The Debtors may, in the exercise of their reasonable business judgment, and upon the joint recommendation of the CROs, identify the highest or otherwise best Qualified Bid as the reserve bid for each Sub-Auction (each, a "**Reserve Sub-Auction Bid**" and the bidder submitting such bid, a "**Reserve Sub-Auction Bidder**"). The Debtors may also identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid in each Sub-Auction as a back-up bid (each, a "**Back-Up Sub-Auction Bid**" and the bidder submitting such bid, a "**Back-Up Sub-Auction Bidder**"). After the designation of any Reserve Sub-Auction Bid, the Debtors shall conduct an Auction for applicable Assets on a consolidated basis pursuant to the Auction Rules. If, upon the completion of such Auction, the Debtors, in the exercise of their reasonable business judgment, determine that pursuing a Transaction pursuant to the Reserve Sub-Auctions Bid(s) will result in higher or otherwise better value of the Assets than pursuing a Transaction pursuant to the highest or otherwise best Bid received in the Auction of Assets on a consolidated basis, then the Debtors may, in the exercise of their reasonable business judgment, and upon the joint recommendation of the CROs, declare the Reserve Sub-Auction Bid(s) as Successful Bid(s) (and the Reserve Sub-Auction Bidder(s) as Successful Bidders) and the Back-Up Sub-Auction Bid(s) as the Back-Up Bid(s) (and the Back-up Sub-Auction Bidder(s) as Back-Up Bidder(s)).

Within one (1) business day after the Auction, each Successful Bidder shall submit to the Debtors and Flagstar fully executed documentation memorializing the terms of the Successful Bid such Successful Bidder submitted.

At any time before the designation of a Successful Bid and Back-Up Bid, if any, the Debtors reserve the right to and may reject such Qualified Bid(s) if such Qualified Bid(s), in the Debtors' reasonable business judgment, is/are: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the applicable Transaction; or (iii) contrary to the best interests of the Debtors and their estates.

## Post-Auction Process

Within one (1) business day after the conclusion of the Auction, or as soon as reasonably practicable thereafter, the Debtors shall file with the Bankruptcy Court a notice of the Successful Bid(s), Successful Bidder(s), Back-Up Bid(s), and Back-Up Bidder(s) with respect to the applicable Assets.

Within seven (7) business days after the Auction, the Debtors shall direct the Escrow Agent to return the deposit of any bidder, together with interest accrued thereon, who is not declared a Successful Bidder or Back-Up Bidder. Within five (5) business days after the Back-Up Bid Expiration Date, the Debtors shall direct the Escrow Agent to return the deposit of each Back-Up Bidder, together with interest accrued thereon (if any). Upon the authorized return of any such deposit, the bid of such Potential Bidder, Qualified Bidder or Back-Up Bidder, as applicable, shall be deemed revoked and no longer enforceable.

Each Successful Bidder's deposit shall be applied against the cash portion of the Purchase Price of such bidder's Successful Bid upon the consummation of a Transaction.

In addition to the foregoing, the deposit of a Qualified Bidder will be forfeited to the Debtors if (i) the Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted herein, during the time the Qualified Bid remains binding and irrevocable or (ii) the Qualified Bidder is selected as a Successful Bidder or Back-Up Bidder and refuses or fails to enter into the required definitive documentation or to consummate a Transaction according to these Bidding Procedures.

### Notices Regarding Assumption and Assignment

The Debtors shall provide all notices regarding the proposed assumption and assignment of contracts and leases in accordance with the Assumption and Assignment Procedures included in the Bidding Procedures Order.

### Sale Objections and Hearing

Objections to a Transaction (each, a "**Sale Objection**"), shall (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (v) be filed with the Court (a) by registered users of the Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (b) by all other parties in interest, on a USB flash drive, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Court and General Order M-399, as applicable; and (vi) be served upon the Objection Notice Parties (as defined below) by **January 11, 2026 at 5:00 p.m.** (the "**Sale Objection Deadline**"); provided that, the Debtors may extend the Sale Objection Deadline as the Debtors deem appropriate in the exercise of their reasonable business judgment and with the reasonable consent of Flagstar. If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at a hearing to be held on or before **January 15, 2026** (the "**Sale Hearing**"). Replies in support of any Transaction(s) shall be filed at **5:00p.m. (prevailing Eastern Time) one day prior to the Sale Hearing**.

The Objection Notice Parties are:

i.  the Debtors, Broadway Realty I Co., LLC, 2 Grand Central Tower, 140 East 45th St., 12th Floor, New York, NY 10017 (Attn: Ephraim Diamond, David Barse, and Adam J. Kaplan);

ii.  counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer; Garrett A. Fail; Matthew P. Goren; and Philip L. DiDonato);

iii.     William K. Harrington, U.S. Department of Justice, Office of the U.S. Trustee, One Bowling Green, Suite 534 (Attn: Rachael Siegel, Esq. and Paul Schwartzberg, Esq.);

iv.     counsel to Flagstar Bank, N.A., Paul Hastings LLP, MetLife Building, 200 Park Avenue, New York, NY 10166 (Attn: Brett Lawrence, Esq., Nicholas Bassett, Esq., Justin Rawlins, Esq., and Harvey A. Strickon, Esq.).

Each Successful Bidder shall appear at the Sale Hearing and be prepared to have a representative(s) testify in support of its Successful Bid and such Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and/or assigned as part of the proposed Transaction.

Any party who fails to file with the Court and serve on the Objection Notice Parties a Sale Objection by the Sale Objection Deadline may be forever barred from asserting, at the Sale Hearing or thereafter, any Sale Objection to the relief requested in the Motion with regard to a Successful Bidder, or to the consummation and performance of a Transaction contemplated by a purchase agreement between the Debtors and each Successful Bidder, including the transfer of assets to such Successful Bidder, free and clear of all liens, claims, encumbrances, and other interests pursuant to section 1141(c) of the Bankruptcy Code.

## Consent to Jurisdiction and Authority as Condition to Bidding

All bidders that participate in the bidding process shall be deemed to have (i) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Transaction; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Transaction; and (iii) consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## Flagstar

Throughout the bidding process, the Debtors and their advisors will regularly and timely consult with Flagstar Bank, N.A., ("**Flagstar**") and its advisors.

Flagstar will be deemed a Qualified Bidder for each of the Assets for which it timely submits a credit bid in accordance with these Bidding Procedures. For any of the Assets for which Flagstar submits a Qualified Bid and that do not receive another Qualified Bid, Flagstar will be deemed the Successful Bidder with respect to such Assets, subject to all other terms and conditions of the Bidding Procedures. In the event that Flagstar is determined to have submitted the highest or best bid with respect to any Asset, (a) such Asset shall be sold "free and clear" of intercompany claims and interests as provided under section 363(f) of the Bankruptcy Code, or (b) in the event Flagstar elects to consummate such Successful Bid pursuant to a chapter 11 plan, the Debtors and Flagstar

18

shall use commercially reasonable efforts to confirm a chapter 11 plan that the Debtors and Flagstar agree shall include a waiver of intercompany liens and claims with respect to the applicable Assets.

Limitation on Shared Information.   Upon Flagstar's submission of a Bid with respect to any Asset(s), the Debtors and Flagstar agree that (a) with respect to such Asset(s), Flagstar's reasonable access to Eastdil will be limited to information that is made available to other Qualified Bidders, (b) Flagstar will cease receiving information regarding individual Bids related to any Assets as to which Flagstar is also a Bidder, and (c) the Debtors' advisors, Weil and FTI Consulting, shall be included on all calls, meetings, and other communications between Flagstar and Eastdil thereafter.

Subject to the terms and provisions of these Bidding Procedures and only with the Debtors' prior written consent, which consent may not be unreasonably withheld, Flagstar and its professionals shall be permitted to communicate with other Potential Bidders and Bidders, and to submit joint Bids.

**<u>Annex 1</u>**

**<u>List of Debtor Properties</u>**

| Debtor Entity | Property Address |
|---|---|
| 25/35 Hillside Associates LLC | 25/35 Hillside Avenue, New York NY |
| 34 Seaman Associates, LLC | 34-44 Seaman Avenue, New York NY |
| 281/295 Wadsworth Associates, LLC | 281/295 Wadsworth Avenue, New York NY |
| 30 Road Realty Co., LLC | 25-10/20 30 Road, Queens NY |
| Forest Parkway Realty Co., LLC | 85-50 Forest Pkwy, Queens NY |
| Park Lane South Realty Co., LLC | 86-20 Park Lane South, Queens NY |
| 34 Avenue Realty Co., LLC | 76-09 34th Avenue, Queens NY |
| 85-05 35 Avenue Realty Co., LLC | 85-05 35th Avenue, Queens NY |
| Broadway Realty I Co., LLC | 4530 Broadway, New York NY |
| Hillside Realty I Co., LLC | 11 Hillside Avenue, New York NY |
| 193 Street Realty Co., LLC | 671-681 West 193rd Street, New York NY |
| 18 Street Realty Co., LLC | 240 East 18th Street, Brooklyn NY |
| 94-06 34th Road Realty Co., LLC | 94-06 34th Road, Queens NY |
| 94-06 34th Avenue Realty Co., LLC | 94-06 34th Avenue, Queens NY |
| 63-94 Austin Realty, LLC | 63-94 Austin Street, Queens NY |
| Kingston Place Realty Co., LLC | 87-50 Kingston Place, Queens NY |
| 2340 Valentine Avenue Realty Co., LLC | 2340 Valentine Avenue, Queens NY |
| West 50th Street Realty Co., LLC | 544 West 50th Street, New York NY |
| West 50th Street Realty Co., LLC | 546 West 50th Street, New York NY |
| West 50th Street Realty Co., LLC | 548 West 50th Street, New York NY |
| 2400 Realty NY LLC | 2400 Nostrand Avenue, Brooklyn NY |
| 147 Realty Co., LLC | 35-19 147th Street, Queens NY |
| 115 East 21 Realty Co., LLC | 115 East 21st Street, Brooklyn NY |
| 509 Realty Co. LLC | 509 West 155th Street, New York NY |
| Treger Management LLC | 815 Gravesend Neck Road, Brooklyn NY |
| 43-60 Baychester, LLC | 4360 Baychester Avenue, Bronx NY |
| Heath Realty LLC | 2800 Heath Avenue, Bronx NY |
| Audobon Realty LLC | 155 Audubon Avenue, New York NY |

| Debtor Entity | Property Address |
|---|---|
| 207 Realty LLC | 639-645 West 207th Street, New York NY |
| 241 Sherman LLC | 241/251 Sherman Avenue, New York NY |
| 402-412 West 148 LLC | 402 West 148th Street, New York NY |
| 402-412 West 148 LLC | 412 West 148th Street, New York NY |
| Fieldstone NY LLC | 244 Fieldstone Terrace, Bronx NY |
| 1171 President LLC | 1171-1179 President Street, Brooklyn NY |
| 1362 Ocean LLC | 1362 Ocean Avenue, Brooklyn NY |
| 1535 Ocean LLC | 1535 Ocean Avenue, Brooklyn NY |
| 1554 Ocean LLC | 1554 Ocean Avenue, Brooklyn NY |
| 176 Clarkson Ave LLC | 176 Clarkson Avenue, Brooklyn NY |
| 222 Lenox Rd LLC | 222 Lenox Road, Brooklyn NY |
| 225 Parkside LLC | 225 Parkside Avenue, Brooklyn NY |
| 28-30 Argyle LLC | 28 Argyle Road, Brooklyn NY |
| 28-30 Argyle LLC | 40 Argyle Road, Brooklyn NY |
| 292 St. Johns LLC | 292 St. Johns Place, Brooklyn NY |
| 307 12 St LLC | 307 12th Street, Brooklyn NY |
| 3301 Farragut LLC | 3301 Farragut Road, Brooklyn NY |
| 426 East 22 St LLC | 426-430 East 22nd Street, Brooklyn NY |
| 457 Schenectady LLC | 457 Schenectady Avenue, Brooklyn NY |
| 481 Eastern LLC | 481 Eastern Parkway, Brooklyn NY |
| 481 Eastern LLC | 489 Eastern Parkway, Brooklyn NY |
| 481 Eastern LLC | 497 Eastern Parkway, Brooklyn NY |
| 529 East 22 LLC | 529 East 22nd Street, Brooklyn NY |
| 607 Rugby LLC | 607 Rugby Road, Brooklyn NY |
| 607 Rugby LLC | 615 Rugby Road, Brooklyn NY |
| 607 Rugby LLC | 619 Rugby Road, Brooklyn NY |
| 607 Rugby LLC | 625 Rugby Road, Brooklyn NY |
| 681 Ocean LLC | 681 Ocean Avenue, Brooklyn NY |

| Debtor Entity | Property Address |
|---|---|
| 85 Clarkson LLC | 85 Clarkson Avenue, Brooklyn NY |
| 916 Carroll St LLC | 916 Carroll Street, Brooklyn NY |
| 932 Carroll LLC | 932 Carroll Street, Brooklyn NY |
| 991 Carroll St LLC | 991-993 Carroll Street, Brooklyn NY |
| 3410 Kingsbridge LLC | 3410 Kingsbridge Avenue, Bronx NY |
| 706 Realty NY LLC | 706 Lefferts Avenue, Brooklyn NY |
| 990 Realty NY LLC | 990 Montgomery Street, Brooklyn NY |
| 1296 Realty LLC | 1296 Pacific Street, Brooklyn NY |
| 915 Realty LLC | 915 Washington Avenue, Brooklyn NY |
| 1038 Realty LLC | 1038 Union Street, Brooklyn NY |
| 1042 Realty LLC | 1042 Union Street, Brooklyn NY |
| 1048 Realty LLC | 1048 Union Street, Brooklyn NY |
| 1060 Realty LLC | 1060 Union Street, Brooklyn NY |
| 1023 Realty LLC | 1023 Carroll Street, Brooklyn NY |
| 1601 Realty LLC | 1601 Bedford Avenue, Brooklyn NY |
| 1597 Realty LLC | 1597 Bedford Avenue, Brooklyn NY |
| 470 Realty NY LLC | 470 Ocean Avenue, Brooklyn NY |
| 2102 Realty LLC | 2102 Beverly Road, Brooklyn NY |
| 405 Realty LLC | 405 East 16th Street, Brooklyn NY |
| 1820 Realty LLC | 1820 Cortelyou Road, Brooklyn NY |
| 330 Realty NY LLC | 330 East 19th Street, Brooklyn NY |
| 1280 Realty NY LLC | 1280 Ocean Avenue, Brooklyn NY |
| 1617 Realty LLC | 1617 President Street, Brooklyn NY |
| 2513 Newkirk LLC | 2513-2523 Newkirk Avenue, Brooklyn NY |
| 17 Realty LLC | 416 East 17th Street, Brooklyn NY |
| 17 Realty LLC | 422 East 17th Street, Brooklyn NY |
| 237 Realty NY LLC | 237 West 18th Street, New York NY |
| 349 Realty NY LLC | 349 East 51st Street, New York NY |

| Debtor Entity | Property Address |
|---|---|
| 233 Realty NY LLC | 233 East 77th Street, New York NY |
| 58 Elizabeth NY LLC | 58-60 Elizabeth Street, New York, NY |
| 58 Elizabeth NY LLC | 146 Hester Street, New York NY |
| 40-15 Hampton LLC | 40-15 Hampton Avenue, Queens NY |
| 536 Realty Co. LLC | 536 Isham Street, New York NY |
| 45-35 Realty LLC | 45-35 44th Street, Queens NY |
| Clinton Property Co., LLC | 314 Clinton Avenue, Brooklyn NY |
| 2 West 120th Realty Co. LLC | 2 West 120th Street, New York NY |
| Manhattan Realty Co. LLC | 85 8th Ave Garage, New York NY |

**<u>Exhibit 2</u>**

**Bidding Procedures Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re                                            :        **Chapter 11**
                                                 :
**BROADWAY REALTY I CO., LLC,** *et al.*,        :        **Case No. 25-11050 (DSJ)**
                                                 :
                   **Debtors.** [1]              :        **(Jointly Administered)**
-----------------------------------------------------------------x

**NOTICE OF BIDDING**
**PROCEDURES, AUCTIONS, AND SALE HEARINGS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On September 19, 2025, Broadway Realty I Co., LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") a motion (ECF No. 550) (the "**Motion**") for the entry of an order (the "**Bidding Procedures Order**")[2] (i) approving the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order as **Exhibit 1**; (ii) authorizing the Debtors to designate stalking horse bidder(s) (any such bidder a "**Stalking Horse Bidder**" and, any such bid, a "**Stalking Horse Bid**") and offer such bidder certain bid protections identified in the Motion (the "**Stalking Horse Bid Protections**"); (iii) setting the deadline for Potential Bidders to submit a proposal to purchase or refinance the Assets (the "**Bid Deadline**"), scheduling an auction (the "**Auction**"), and scheduling a hearing with respect to the approval of the Transaction(s) (the "**Sale Hearing**"); (iv) authorizing and approving the form and manner of the Bidding Procedures Notice; (v) authorizing and approving the Cure Notice to the Contract Counterparties regarding the Debtors' potential assumption and assignment of the Assigned Contracts and of the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "**Cure Costs**"); (vi) authorizing and approving procedures for the assumption and assignment of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "**Assumption and Assignment Procedures**"); and (vii) granting related relief.

On _____, 2025, the Bankruptcy Court entered the Bidding Procedures Order (ECF No. ____).

---

[1]    The last four digits of Broadway Realty I Co., LLC's tax identification number is 5426.  A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/BroadwayRealty.  The Debtors' mailing addresses are located at 2 Grand Central Tower, 140 East 45th St., 12th Floor, New York, NY 10017.

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, the Bidding Procedures, and the Bidding Procedures Order, as applicable.  Any summary of the Motion, the Bidding Procedures, or the Bidding Procedures Order contained herein is qualified in its entirety by the actual terms and conditions thereof.  To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

## Important Dates and Deadlines

- **Non-Binding Indication of Interest Deadline**. Any person or entity interested in participating in the Auction is encouraged to submit a Non-Binding Indication of Interest on or **before November 21, 2025 at 5:00 p.m. (prevailing Eastern Time)** (the "**Non-Binding Indication of Interest Deadline**").

- **Bid Deadline**. Any person or entity that desires to make a bid on all of or any of the Assets shall deliver electronic copies of its bid so as to be received no later than interested in participating in the Auctions must submit a Qualified Bid on or before **December 12, 2025 at 5:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**").

- **Auction**. An Auction has been scheduled for **January 8, 2026 at 10:00 a.m. (prevailing Eastern Time)** (the "**Auction**").

- **Sale Objection Deadline**. Objections to a Transaction, including any objection to the sale of the Assets free and clear of all claims and interests pursuant to section 1141(c) of the Bankruptcy Code must be (i) filed in accordance with the Bidding Procedures, (ii) filed with the Bankruptcy Court, and (iii) served on the Objection Notice Parties by no later than **January 11, 2026 at 5:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**").

- **Sale Hearing**. A hearing to approve the Transaction(s) shall be held at the Bankruptcy Court before the Honorable David S. Jones on **January [●], 2026 at 00:00 a/p.m. (prevailing Eastern Time)** (the "**Sale Hearing**").

## Additional Information

Any party interested in submitting a bid should contact the Debtors' real estate advisor, Eastdil Secured L.L.C. ("**Eastdil**") (Attn: Daniel Parker (dparker@eastdilsecured.com)).

Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Stretto Inc., located at https://cases.stretto.com/broadwayrealty/.

## Tenants at Debtor Properties

**A Transaction for any of the Asset(s) will not impact the existing tenant leases at any of the Debtor properties. During the marketing process, the Debtors' buildings will continue to operate, and tenant services will continue to be provided, uninterrupted and in the ordinary course. In accordance with the Bidding Procedures, any bidder that seeks to purchase or refinance all or a portion of the Assets will be required to do so subject to the existing tenant leases.**

## Reservation of Rights

Except as otherwise set forth herein and in the Bidding Procedures, the Debtors are authorized to, in their reasonable business judgment, upon the joint recommendation of the CROs, and with the reasonable consent of Flagstar, in a manner consistent with their fiduciary duties, to:

modify the Bidding Procedures, including to modify the requirements with regard to any Good Faith Deposit; waive terms and conditions set forth therein with respect to all Potential Bidders; extend the deadlines set forth therein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth therein; and provide reasonable accommodations to any Stalking Horse Bidder with respect to such terms, conditions, and deadlines of the bidding and the Auction process to promote further bids on the Assets, in each case, to the extent not materially inconsistent with the Bidding Procedures and the Bidding Procedures Order. All parties reserve their rights to seek Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE BANKRUPTCY COURT IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER BY THE SALE OBJECTION DEADLINE SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING ANY OBJECTION TO THE MOTION, THE ORDER APPROVING THE TRANSACTION, THE PROPOSED TRANSACTION, OR THE DEBTORS' CONSUMMATION OF A STALKING HORSE AGREEMENT OR ANY OTHER AGREEMENT EXECUTED BY THE DEBTORS AND A SUCCESSFUL BIDDER AT THE AUCTION.**

Dated _____, 2025

                                               _____
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer
Garrett A. Fail
Matthew P. Goren
Philip L. DiDonato

*Attorneys for the Debtors*
*and Debtors in Possession*

3

**<u>Exhibit 3</u>**

**Cure Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                           :        Chapter 11
                                                :
BROADWAY REALTY I CO., LLC, *et al.*,           :        Case No. 25-11050 (DSJ)
                                                :
                         Debtors. [1]           :        (Jointly Administered)
------------------------------------------------------------x

## NOTICE OF CURE COSTS AND POTENTIAL
## ASSUMPTION AND ASSIGNMENT OF EXECUTORY
## <u>CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On September 19, 2025, Broadway Realty I Co., LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**") a motion (ECF No. 550) (the "**Motion**") for the entry of an order (the "**Bidding Procedures Order**")[2] (i) approving the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order as <u>**Exhibit 1**</u>; (ii) authorizing the Debtors to designate stalking horse bidder(s) (any such bidder a "**Stalking Horse Bidder**" and, any such bid, a "**Stalking Horse Bid**") and offer such bidder certain bid protections identified in the Motion (the "**Stalking Horse Bid Protections**"); (iii) setting the deadline for Potential Bidders to submit a proposal to purchase or refinance the Assets (the "**Bid Deadline**"), scheduling an auction (the "**Auction**"), and scheduling a hearing with respect to the approval of the Transaction(s) (the "**Sale Hearing**"); (iv) authorizing and approving the form and manner of the Bidding Procedures Notice; (v) authorizing and approving the Cure Notice to the Contract Counterparties regarding the Debtors' potential assumption and assignment of the Assigned Contracts and of the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "**Cure Costs**"); (vi) authorizing and approving procedures for the assumption and assignment of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "**Assumption and Assignment Procedures**"); and (vii) granting related relief.

---

[1]   The last four digits of Broadway Realty I Co., LLC's tax identification number is 5426.  A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/BroadwayRealty.  The Debtors' mailing addresses are located at 2 Grand Central Tower, 140 East 45th St., 12th Floor, New York, NY 10017.

[2]   Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, the Bidding Procedures, and the Bidding Procedures Order, as applicable.  Any summary of the Motion, the Bidding Procedures, or the Bidding Procedures Order contained herein is qualified in its entirety by the actual terms and conditions thereof.  To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

Each of the Assigned Contracts that may be assumed and assigned in connection with a Transaction with a Successful Bidder and the Debtors' calculation of the Cure Costs with respect thereto are set forth on **Exhibit A** attached hereto.  The Cure Costs are the only amounts proposed to be paid upon the assumption and assignment of the Assigned Contracts.

The inclusion of any contract or lease on **Exhibit A** shall not constitute or be deemed a determination or admission by the Debtors that such contract or other document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Notwithstanding the inclusion of any lease or contract on **Exhibit A**, a Successful Bidder is not bound to accept assignment of any Assigned Contract, except as provided below, and may amend the schedule of Assigned Contracts to remove any contract or lease at any time prior to the consummation of a Transaction.

**A Successful Bidder is bound to accept assignment of all existing tenant leases at the applicable Asset(s).**

**Objections**

### A.  Cure Objections.

Any objection to the proposed assumption, assignment, or potential designation of an Assigned Contract identified on **Exhibit A**, the subject of which objection is the Debtors' proposed Cure Costs must:

(a)    be in writing;

(b)    state the name and address of the objecting party and the amount and nature of the claim or interest of such party;

(c)    state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection;

(d)    conform to the Bankruptcy Rules and the Local Bankruptcy Rules;

(e)    be filed with the Court together with proof of service either (i) electronically or (ii) conventionally, as noted below:

(i)    *Electronic Filing*:  The filer must be an attorney in possession of passwords and logins to both PACER and the Bankruptcy Court's Electronic Case Filing System; electronic filing must be in accordance with General Order M-399 (which can be found at http://nysb.uscourts.gov).

(ii)   *Conventional Filing*:  The filer must send the response or objection by mail, courier, or messenger to the Bankruptcy Court's clerk at the following address: United States Bankruptcy Court, One Bowling Green, New York, NY 10004; the hard copy of the response or

objection should be accompanied by a USB flash drive containing the response or objection in text-searchable portable document format (PDF).

(iii) *All filers:* Those filing electronically as well as those filing conventionally – must provide Chambers with two separate, single-sided hard copies of the response or objection; any proposed order should be accompanied by a USB flash drive containing the response or objection in text searchable portable document format (PDF); and

(f) be served upon the Objection Notice Parties listed below so as to be received no later than **January 11, 2026, at 5:00 p.m. (prevailing Eastern Time)**:

i. the Debtors, Broadway Realty I Co., LLC, 2 Grand Central Tower, 140 East 45th Street, 12th Floor, New York, NY 10017 (Attn: Ephraim Diamond, David Barse, and Adam Kaplan);

ii. counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Esq. Garrett A. Fail, Esq., Matthew P. Goren, Esq., and Philip L. DiDonato, Esq.);

iii. William K. Harrington, U.S. Department of Justice, Office of the U.S. Trustee, One Bowling Green, Suite 534, New York, New York 10004 (Attn.: Rachael Siegel, Esq. and Paul Schwartzberg, Esq.);

iv. counsel to Flagstar Bank, N.A., Paul Hastings, LLP, MetLife Building, 200 Park Avenue, New York, NY (Attn: Harvey A. Strickon, Esq., Brett Lawrence, Esq., Nicholas A. Bassett, Esq., and Justin Rawlins, Esq.).

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY CURE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE AMOUNT TO CURE ANY DEFAULT UNDER THE APPLICABLE ASSIGNED CONTRACT. THE CURE COSTS SET FORTH ON EXHIBIT A HERETO SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE APPLICABLE ASSIGNED CONTRACT UNDER BANKRUPTCY CODE SECTION 365(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE ASSIGNED CONTRACT, OR ANY OTHER DOCUMENT, AND THE APPLICABLE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO SUCH ASSIGNED CONTRACT AGAINST THE DEBTORS, ANY SUCCESSFUL BIDDER, OR THE PROPERTY OF ANY OF THEM.**

### B. Adequate Assurance Objections

Adequate Assurance Objections with respect to the assumption and assignment of any Assigned Contracts identified on **Exhibit A** to a Successful Bidder must be filed in accordance with the preceding paragraph by **January 11, 2026, at 5:00 p.m. (prevailing Eastern Time)**.

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF THE APPLICABLE ASSIGNED CONTRACT. THE SUCCESSFUL BIDDER SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE APPLICABLE ASSIGNED CONTRACT IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 365(F)(2)(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE ASSIGNED CONTRACT OR ANY OTHER DOCUMENT.**

### Sale Hearing

The Debtors will seek to assume and assign the Assigned Contracts at the hearing to approve the Transaction that is scheduled to commence on **January [●], 2026, at 00:00 a/p.m. (prevailing Eastern Time)** before the Honorable David S. Jones, in Room 701 of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), One Bowling Green, New York, New York 10004 (the "**Sale Hearing**"). Objections, if any, that cannot otherwise be resolved by the parties, will be heard at a hearing scheduled prior to any scheduled closing of the Transaction, as determined by the Debtors in accordance with the Bidding Procedures Order.

### Tenants at Debtor Properties

**A Transaction for any of the Asset(s) will not impact the existing tenant leases at any of the Debtor properties. During the marketing process, the Debtors' buildings will continue to operate, and tenant services will continue to be provided, uninterrupted and in the ordinary course. In accordance with the Bidding Procedures, any bidder that seeks to purchase or refinance all or a portion of the Assets will be required to do so subject to the existing tenant leases.**

**<u>Additional Information</u>**

Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by the Debtors' claims and noticing agent, Stretto Inc., located at https://cases.stretto.com/broadwayrealty/.


Dated _____, 2025


                                _____

                                WEIL, GOTSHAL & MANGES LLP
                                767 Fifth Avenue
                                New York, New York 10153
                                Telephone:  (212) 310-8000
                                Facsimile:  (212) 310-8007
                                Gary T. Holtzer
                                Garrett A. Fail
                                Matthew P. Goren
                                Philip L. DiDonato

                                *Attorneys for the Debtors*
                                *and Debtors in Possession*