**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x
                                          :

In re                                     :          **Chapter 11**
                                            :

**BROADWAY REALTY I CO., LLC,** *et al.,*     :         **Case No. 25-11050 (DSJ)**
                                            :

                 Debtors.[1]              :         **(Jointly Administered)**
                                            :

-------------------------------------------------------------- x

### [PROPOSED] DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN

**WEIL, GOTSHAL & MANGES LLP**
Gary T. Holtzer
Garrett A. Fail
Matthew P. Goren
Philip L. DiDonato
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Email: gary.holtzer@weil.com
       garrett.fail@weil.com
       matthew.goren@weil.com
       philip.didonato@weil.com

*Attorneys for the Debtors*
*and Debtors in Possession*

Dated: October 27, 2025
        New York, New York

**THIS IS NOT A SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THE DEBTORS RESERVE THE RIGHT TO AMEND, SUPPLEMENT, OR OTHERWISE MODIFY THIS DISCLOSURE STATEMENT PRIOR AND UP TO THE DISCLOSURE STATEMENT HEARING.**

---

[1]    The last four digits of Broadway Realty I Co., LLC's tax identification number are 5426. A complete list of the Debtors in these Chapter 11 cases is attached hereto as **Exhibit A** and may also be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/broadwayrealty. The Debtors' mailing addresses are located at 2 Grand Central Tower, 140 East 45th St, 12th Floor, New York, New York 10017.

## DISCLAIMER

A SOLICITATION OF VOTES IS BEING CONDUCTED TO OBTAIN SUFFICIENT ACCEPTANCES OF THE JOINT CHAPTER 11 PLAN OF BROADWAY REALTY I CO., LLC AND ITS AFFILIATED DEBTORS (AS MAY BE MODIFIED, SUPPLEMENTED, OR AMENDED FROM TIME TO TIME, AND TOGETHER WITH ALL EXHIBITS AND SCHEDULES THERETO, THE "PLAN").

THE DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE (THE "BANKRUPTCY CODE") AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (THE "BANKRUPTCY RULES") AND NOT NECESSARILY IN ACCORDANCE WITH OTHER NON-BANKRUPTCY LAWS.

HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE AND SHOULD CONSULT WITH THEIR OWN ADVISORS BEFORE VOTING ON THE PLAN.

THE ISSUANCE OF, AND DISTRIBUTIONS UNDER, THE PLAN OF ANY SECURITIES WILL BE EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND ANY OTHER APPLICABLE SECURITIES LAWS PURSUANT TO SECTION 1145 OF THE BANKRUPTCY CODE.  ANY SUCH SECURITIES MAY BE RESOLD WITHOUT REGISTRATION UNDER THE SECURITIES ACT OR OTHER FEDERAL SECURITIES LAWS PURSUANT TO THE EXEMPTION PROVIDED BY SECTION 4(a)(1) OF THE SECURITIES ACT, UNLESS THE HOLDER IS AN "UNDERWRITER" WITH RESPECT TO SUCH SECURITIES, AS THAT TERM IS DEFINED IN SECTION 1145(b)(1) OF THE BANKRUPTCY CODE.  IN ADDITION, SUCH SECTION 1145 EXEMPT SECURITIES GENERALLY MAY BE RESOLD WITHOUT REGISTRATION UNDER STATE SECURITIES LAWS PURSUANT TO VARIOUS EXEMPTIONS PROVIDED BY THE RESPECTIVE LAWS OF THE SEVERAL STATES.  THE AVAILABILITY OF THE EXEMPTION UNDER SECTION 1145 OF THE BANKRUPTCY CODE OR ANY OTHER APPLICABLE SECURITIES LAWS SHALL NOT BE A CONDITION TO THE OCCURRENCE OF THE PLAN'S EFFECTIVE DATE.

ANY SECURITIES TO BE ISSUED PURSUANT TO THE PLAN HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION (THE "SEC") OR BY ANY STATE SECURITIES COMMISSION OR SIMILAR PUBLIC, GOVERNMENTAL, OR REGULATORY AUTHORITY, AND NEITHER THE SEC NOR ANY SUCH AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

READERS ARE CAUTIONED THAT ANY FORWARD-LOOKING STATEMENTS CONTAINED HEREIN ARE BASED ON ASSUMPTIONS THAT ARE BELIEVED TO BE REASONABLE, BUT ARE SUBJECT TO A WIDE RANGE OF RISKS, INCLUDING THOSE IDENTIFIED IN ARTICLE VI OF THIS DISCLOSURE STATEMENT.  IMPORTANT ASSUMPTIONS AND OTHER IMPORTANT FACTORS THAT COULD CAUSE ACTUAL RESULTS TO DIFFER MATERIALLY FROM THOSE EXPECTED ALSO INCLUDE, BUT ARE NOT LIMITED TO, THOSE FACTORS, RISKS, AND UNCERTAINTIES DESCRIBED IN MORE DETAIL UNDER THE HEADING "RISK FACTORS".  THE DEBTORS ARE UNDER NO OBLIGATION TO (AND EXPRESSLY DISCLAIM ANY OBLIGATION TO) UPDATE OR

ALTER ANY FORWARD-LOOKING STATEMENTS WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE, UNLESS INSTRUCTED TO DO SO BY THE BANKRUPTCY COURT (AS DEFINED BELOW).

NO INDEPENDENT AUDITOR, ACCOUNTANT OR FINANCIAL ADVISOR HAS REVIEWED OR APPROVED THE LIQUIDATION ANALYSIS (AS DEFINED BELOW) OR OTHER TERMS OR PROVISIONS HEREIN.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED.  THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARIES IN THIS DISCLOSURE STATEMENT.

THE INFORMATION IN THIS DISCLOSURE STATEMENT IS BEING PROVIDED SOLELY FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN OR IN CONNECTION WITH CONFIRMATION OF THE PLAN.  NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED BY ANY PARTY FOR ANY OTHER PURPOSE.

ALL EXHIBITS TO THE DISCLOSURE STATEMENT ARE INCORPORATED INTO, AND ARE A PART OF, THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

---

**THE DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M., PREVAILING EASTERN TIME, ON JANUARY 7, 2026 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.**

**THE RECORD DATE FOR DETERMINING WHICH HOLDERS OF CLAIMS MAY VOTE ON THE PLAN IS 10:00 A.M., PREVAILING EASTERN TIME, ON DECEMBER 2, 2025 (THE "VOTING RECORD DATE").**

---

**RECOMMENDATION BY THE DEBTORS**

THE DEBTORS BELIEVE THE PLAN PROVIDES THE HIGHEST AND BEST OPPORTUNITY OF RECOVERIES FOR CREDITORS IN THESE CHAPTER 11 CASES AND, THEREFORE, RECOMMEND THAT ALL CREDITORS WHOSE VOTES ARE BEING SOLICITED VOTE TO ACCEPT THE PLAN.

# Table of Contents

Page

I. INTRODUCTION ......................................................................................................... 1

II. OVERVIEW OF COMPANY'S OPERATIONS............................................................ 4
    A.    Debtors' Business ........................................................................................ 4
    B.    Debtors' Organizational Structure ............................................................. 5
    C.    Debtors' Existing Capital Structure ........................................................... 5

III. KEY EVENTS LEADING TO COMMENCEMENT OF CHAPTER 11 CASES ......... 5
    A.    Background ................................................................................................. 5
    B.    Events Leading to Commencement of these Chapter 11 Cases ................... 5

IV. OVERVIEW OF THE CHAPTER 11 CASES ............................................................ 7
    A.    Commencement of Chapter 11 Cases and First-Day Motions.................... 7
    B.    Cash Collateral........................................................................................... 7
    C.    Marketing Process and Bidding Procedures .............................................. 7
    D.    Statements and Schedules........................................................................... 8
    E.    Extension of Various Chapter 11 Deadlines .............................................. 8

V. VOTING PROCEDURES AND REQUIREMENTS..................................................... 9
    A.    Voting Deadline.......................................................................................... 9
    B.    Voting Procedures.................................................................................... 10
    C.    Parties Entitled to Vote ............................................................................ 10

VI. CERTAIN RISK FACTORS TO BE CONSIDERED .............................................. 12
    A.    Certain Bankruptcy Law Considerations ................................................ 13
    B.    Additional Factors................................................................................... 15

VII. CONFIRMATION OF PLAN................................................................................ 16
    A.    Confirmation Hearing.............................................................................. 16
    B.    Objections to Confirmation...................................................................... 16
    C.    Requirements for Confirmation of Plan ................................................... 17

VIII. CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES ............................ 20
    A.    Consequences to the Debtors ................................................................... 22
    B.    Consequences to Holders of Allowed Secured Mortgage Claims ............. 22
    C.    Withholding on Distributions and Information Reporting......................... 24

IX. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF PLAN....................... 24
    A.    Sale Under Section 363 of Bankruptcy Code ........................................... 24

B.    Liquidation Under Chapter 7 or Applicable Non-Bankruptcy Law..................................25

**X. CONCLUSION AND RECOMMENDATION** ..................................................................................**26**

# I.
## INTRODUCTION

Broadway Realty I Co., LLC and its chapter 11 debtor affiliates, as debtors and debtors in possession (the "**Debtors**" and, together with their non-Debtor affiliates, the "**Company**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), submit this disclosure statement (as may be amended, supplemented, or modified from time to time and together with all exhibits and schedules thereto, the "**Disclosure Statement**") pursuant to section 1125 of title 11 of the United States Code (the "**Bankruptcy Code**") in connection with the solicitation of votes with respect to the Debtors' *Joint Chapter 11 Plan*, dated October 27, 2025 (as may be amended, supplemented, or modified from time to time and together with all exhibits and schedules thereto, the "**Plan**").[1]  The Plan is annexed hereto as **Exhibit B** and is incorporated herein by reference.  The Debtors commenced their Chapter 11 Cases  in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on May 21, 2025 (the "**Petition Date**").

The purpose of this Disclosure Statement is to provide information of a kind, and in sufficient detail, to enable creditors of the Debtors that are entitled to vote on the Plan to make an informed decision on whether to vote to accept or reject the Plan.  This Disclosure Statement contains, among other things, (i) summaries of the Plan and the proposed treatment under the Plan of holders of Allowed Claims and Interests, (ii) information with respect to the proposed Transactions (as defined below) for the Debtors' properties and other Assets, (iii) information on the Debtors' background and prepetition capital structure, (iv) summaries of key events in the Chapter 11 Cases, (v) information regarding certain relevant provisions of the Bankruptcy Code and other statutory provisions, (vi) relevant tax information, and (vii) other information that may be relevant to confirmation of the Plan, including potential risk factors.

Following the filing of the Chapter 11 Cases, the Debtors commenced a process to market to sell or refinance (the "**Marketing Process**") all or substantially all of the Debtors' portfolio of residential real estate properties (together, the "**Assets**").  The Marketing Process remains ongoing.  Final binding bids for each of the Debtor Properties and other Assets are currently due December 12, 2025 at 5:00 p.m. (prevailing Eastern Time).  It is anticipated that a transaction for each of the Debtors will take the form of either (a) a refinancing, in whole or in part, of the Mortgage Obligations with respect to one or more Debtor Properties pursuant to a Successful Bid (a "**Refinancing Transaction**"), or (b) a sale of one or more Debtor Properties and any related Assets pursuant to the applicable Asset Purchase Agreement, including without limitation, any sale to the Mortgage Lender following an exercise of its credit bid rights pursuant to section 363(k) of the Bankruptcy Code, and any sale pursuant to section 363 of the Bankruptcy Code implemented pursuant to the Plan (a "**Sale Transaction**" and, together with any Refinancing Transaction, each a "**Transaction**").  The Plan, summarized herein and attached hereto as **Exhibit B**, works to implement each Transaction for the Successful Bid for the Debtors' Assets.

The following table summarizes (i) the treatment of Claims and Interests that are classified under the Plan, (ii) which Classes are impaired by the Plan, and (iii) which Class or Classes is entitled to vote on the Plan.  The table is qualified in its entirety by reference to the full text of the Plan.

---

[1]    Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan.  To the extent any inconsistencies exist between this Disclosure Statement and the Plan, the Plan shall govern.

| | Designation | Treatment | Impaired or Unimpaired | Entitled to Vote | Approx. Percentage Recovery |
|---|---|---|---|---|---|
| 1 | Priority Non-Tax Claims | Except to the extent that a holder of an Allowed Priority Non-Tax Claim against any Debtor agrees to a less favorable treatment of such Claim, in full and final satisfaction of such Allowed Priority Non-Tax Claim, at the option of the applicable Debtor(s) or the Post-Emergence Entities, (i) each such holder shall receive payment in Cash in an amount equal to the amount of such Allowed Claim; or (ii) such holder shall receive such other treatment so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code. | Unimpaired | No (Presumed to accept) | 100% |
| 2 | Other Secured Claims | Except to the extent that a holder of an Allowed Other Secured Claim against any Debtor agrees to a less favorable treatment of such Claim, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the applicable Debtor(s) or Post-Emergence Entities, (i) each such holder shall receive payment in Cash in an amount equal to the amount of such Allowed Claim; (ii) such holder's Allowed Other Secured Claim shall be Reinstated; (iii) such holder shall receive the collateral securing its Allowed Other Secured Claim; or (iv) such holder shall receive such other treatment so as to render such holder's Allowed Other Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code. | Unimpaired | No (Presumed to accept) | 100% |
| 3 | Secured Mortgage Claims | On the Effective Date, the Mortgage Lender shall receive the following treatment, in full and final satisfaction, settlement, release and discharge of the Secured Mortgage Claims against the applicable Debtor:<br><br>(i) In the event of a Refinancing Transaction: Cash in the amount of its Allowed Secured Mortgage Claim, or such other treatment as agreed to by the Mortgage Lender in connection with the applicable Refinancing Transaction; *provided* however, in no event shall the Mortgage Lender receive more than 100% of its Allowed Secured Mortgage Claim.<br><br>(ii) In the event of a Sale Transaction:<br><br>    A. If the Mortgage Lender is the Successful Bidder: (x) the Debtor Property held by each Debtor subject to the Successful Bid(s) and any other transferred Assets identified in the applicable Asset Purchase Agreement, and (y) to the extent not identified in the applicable Successful Bid: (1) any proceeds of any Debtor Causes of Action, and (2) any Mortgage Collateral securing the applicable Secured Mortgage Claim; *provided* however, in no event shall the Mortgage Lender | Impaired | Yes | 0%-100% |

|  | Designation | Treatment | Impaired or Unimpaired | Entitled to Vote | Approx. Percentage Recovery |
|---|---|---|---|---|---|
|  |  | receive more than 100% of its Allowed Secured Mortgage Claim.<br><br>B. If the Mortgage Lender is not the Successful Bidder: (x) the proceeds of the Transaction Consideration provided under the applicable Asset Purchase Agreement for the Successful Bid, and (y) to the extent not identified in the applicable Successful Bid: (1) any proceeds of any Debtor Causes of Action, and (2) any Mortgage Collateral securing the applicable Secured Mortgage Claim; *provided* however, in no event shall the Mortgage Lender receive more than 100% of its Allowed Secured Mortgage Claim. |  |  |  |
| 4 | General Unsecured Claims | Except to the extent that a holder of an Allowed General Unsecured Claim against a Debtor agrees to less favorable treatment with the Debtors or the Post-Emergence Entities, as applicable, in full and final satisfaction, settlement, release, and discharge of an Allowed General Unsecured Claim, each such holder thereof shall receive its *pro rata* share of Available Cash up to the Allowed amount of such General Unsecured Claim. | Impaired | No (Deemed to Reject) | [TBD] |
| 5 | Existing Equity Interests | On the Effective Date, each holder of Existing Equity Interests shall receive the following treatment in full and final satisfaction, settlement, release and discharge of such Existing Equity Interest:<br><br>(i) In the event of a Refinancing Transaction: The Existing Equity Interests of the Debtor(s) party to the Refinancing Transaction(s) shall, subject to the waterfall and priorities set forth in section 1129(b)(2) of the Bankruptcy Code, be Reinstated for the benefit of the holders of such former Existing Equity Interests consistent with their former economic entitlements.<br><br>(ii) in the event of a Sale Transaction: The holders of Existing Equity Interests of the Debtor(s) party to the Sale Transaction(s) shall receive any remaining Available Cash after payment in full of General Unsecured Claims in accordance with Section 4.4 of the Plan, and following the final distribution of all such Available Cash, such Existing Equity Interests shall be cancelled for no further consideration. | Impaired | No (Deemed to Reject) | [TBD] |

In addition to the Classes of Claims and Interests described above, the Plan provides for the payment in full of all Allowed Administrative Expense Claims and Priority Tax Claims. The Plan provides for the appointment of a Plan Administrator to oversee the wind-down and dissolution of the Liquidating Debtors for the completion of each Transaction and to make any remaining distributions in accordance with

Article IV of the Plan.  Any remaining Assets that are not transferred in connection with the proposed Transactions will be assigned to, and vest with, the Plan Administrator.

It is anticipated that a significant number of the Debtors' executory contracts and unexpired leases will be assumed or assumed and assigned in connection with the proposed Transactions.  The Plan provides for the rejection of all executory contracts and unexpired leases that are not specifically assumed or assumed and assigned under the Plan or in connection with the Transaction(s).

**Transactions will not impact the existing tenant leases at any of the Debtors' properties.  Prior to the Effective Date (as defined in the Plan), the Debtors' properties will continue to operate, and tenant services will continue to be provided, uninterrupted and in the ordinary course.  In accordance with the Bidding Procedures (as defined below), any bidder that seeks to purchase or refinance all or a portion of the Assets will be required to do so subject to the existing tenant leases.**

**The complete terms of the Plan are incorporated herein by reference.  Any statement contained in a document incorporated or deemed to be incorporated herein by reference, or contained in this Disclosure Statement, shall be deemed to be modified or superseded for purposes of this Disclosure Statement to the extent that a statement contained herein or in any other subsequently dated or filed document which also is or is deemed to be incorporated by reference herein modifies or supersedes such statement.**

**II.**
**OVERVIEW OF COMPANY'S OPERATIONS**

A.      **Debtors' Business**

1.      **Business Operations**

The eighty-two (82) Debtors collectively own approximately 5,200 residential units, have approximately 130 employees, and entered the Chapter 11 Cases with approximately 155 unique creditors (excluding tenants). The Debtors' residential units are located across four of New York City's boroughs: Manhattan, Brooklyn, the Bronx, and Queens.  Substantially all of the Debtors' tenants are entitled to statutory rent protection.

As of the Petition Date, the Debtors' ninety-three (93) properties (collectively, the "**Debtor Properties**") are encumbered by approximately $564 million of aggregate mortgage debt, all with Flagstar Bank N.A. (the "**Mortgage Lender**" or "**Flagstar**"), as lender.

2.      **Employees**

As of the Petition Date, the Debtors' employees provide certain building-related services, including oversight and maintenance of vacant apartments, superintendent services, lobby guard services, engineering, and related services

B.    **Debtors' Organizational Structure**

The Debtors are New York and Delaware limited liabilities companies.  Each of the Debtors is a member managed limited liability corporation.  All of the Debtors are indirect subsidiaries of Zarasai Group, Ltd. ("**Zarasai**"), a holding company organized under the law of the British Virgin Islands.

C.    **Debtors' Existing Capital Structure**

The following description is for informational purposes only and is qualified in its entirety by reference to the documents setting forth the specific terms of such obligations and their respective related agreements.

The Debtors' sole funded debt obligations consist of approximately $564 million of secured first lien property level mortgage debt held by Flagstar (the "**Mortgage Loans**").  The Mortgage Loans are generally entered into on an individual basis and evidenced by separate mortgage agreements at each Debtor.  The Mortgage Loans are secured by, among other things, the property, fixtures, improvements, rents, leases, and other earnings, royalties, and accounts receivable associated with the applicable properties.

As of the Petition Date, Zarasai has approximately $1.1 billion in outstanding funded debt obligations comprised of (i) two series of bonds issued by Zarasai, and (ii) property level mortgage debt to various lenders, including the approximately $564 million in Mortgage Loans.

### III.
### KEY EVENTS LEADING TO COMMENCEMENT OF CHAPTER 11 CASES

A.    **Background**

Prior to 2024, the Debtors serviced their debt primarily through rental income cash flows.  Rental income was also used to pay employees and to provide essential services to maintain the Debtors' properties, including ordinary course maintenance, utilities, repairs, trash removal, managerial and related services.  While the Debtor Properties primarily service residential tenants, nineteen (19) of the Debtor Properties also include commercial tenants, including retail, grocery, and family office businesses.

B.    **Events Leading to Commencement of these Chapter 11 Cases**

Like many landlords of New York multi-family, primarily rent stabilized properties, the Debtors began to struggle to service their mortgage debt as interest rates rose rapidly and significantly through 2024.  Since 2022, a large portion of the Debtors' mortgage debt's interest rates sky-rocketed from a range of approximately 3.0-4.0% to up to 7.5% and 10.25% in certain circumstances.  The Debtors' current and projected revenues became insufficient to fully service the Mortgage Loans and satisfy expenses necessary to operate and maintain their rental assets.

Further, given the high concentration of rent regulated tenants within its portfolio, the Debtors have been especially impacted by changes to New York state rent laws.  In particular, the June 2019 amendments to the Tenant Protection Act ("**TPA**") placed restrictions on the Debtors' ability to raise rents upon the departure of a tenant from a rent regulated unit or to recover necessary improvements made to regulated units.  Those amendments also limited the ability to convert apartment buildings to condominiums, a mainstay and successful component of the Company's business plan prior to the TPA amendments.  These legislative changes put further strain on the Company's and the Debtors' cash flow and significantly slowed their condominium conversion initiatives.

The Debtors' operational and cashflow problems were further exacerbated by rising inflation, resulting in higher operational expenses and lower-than-anticipated rent collections throughout their portfolio, despite the Debtors' strategic portfolio management and other cost-cutting initiatives.

Leading up to and into January 2025, it became increasingly difficult for the Debtors to continue servicing their mortgage debt from internal sources. On March 14, 2025, the Mortgage Lender delivered a Notice of Default purporting to accelerate all amounts outstanding with respect to the Mortgage Loans held by the Debtors, and shortly thereafter commenced four separate foreclosure proceedings in four separate New York State courts against the related properties.

On March 24, 2025, the Mortgage Lender filed a complaint (the "**Manhattan Complaint**") in the Supreme Court of the State of New York (New York County) commencing a foreclosure action against twenty-one (21) consolidated mortgages secured by Debtor properties in Manhattan. The Manhattan Complaint sought, among other things, foreclosure on the twenty-one properties secured by approximately $150 million of the Mortgage Loans, and appointment of a receiver. On April 1, 2025, in conjunction with filing the Manhattan Complaint, the Mortgage Lender filed a proposed form of order on an *ex parte* basis for the immediate appointment of a receiver with the authority to, among other things, take control of and manage the applicable Manhattan properties.

Upon discovery of the *ex parte* request, the Debtors filed an opposition because they believed the appointment of a receiver would have a material detrimental impact on the operations and value of their businesses and assets. Faced with the imminent risk of receivership over significant assets in their property portfolio, the Debtors were compelled to rapidly divert their efforts to preparing a defensive chapter 11 filing to preserve the value of their enterprise.

During their brief preparation period, the Debtors and their advisors quickly attempted to re-engage with the Mortgage Lender in a cooperative process to explore a potential standstill and restructuring alternatives for the Company without a receivership and without the need for a chapter 11 filing. On April 4, 2025, the Mortgage Lender filed three additional complaints to continue its foreclosure actions in Queens, Brooklyn, and the Bronx, seeking foreclosure with respect to the balance of the properties subject to its mortgages.[2]

On April 29, 2025, the Mortgage Lender's request for a receiver was denied without prejudice in the New York County action. The Company attempted to use the additional time provided by the court's denial of the Mortgage Lender's motion to engage in discussions with the Mortgage Lender regarding potential out-of-court solutions to address the alleged defaults and a go-forward business plan.

Despite these attempts, on May 2, 2025, the Mortgage Lender filed a renewed motion and proposed order seeking appointment of a receiver in the New York County action, again on an *ex parte* basis. On May 13, 2025, the Mortgage Lender filed a substantially identical motion seeking appointment of a receiver in the Bronx County action. Similar motions were filed in the Kings County and Queens County actions in the following days. Finally, on May 16, 2025, an order was entered in the New York County action appointing a receiver with respect to twenty-one (21) of the Debtors' Manhattan properties.

The Debtors were faced with the potential for immediate loss of control of a sizeable portion of their property portfolio based on the May 16, 2025 order entered in the New York County action, which would

---

[2]   The complaints filed in the four Flagstar actions are: (i) *Flagstar Bank, N.A. v. 193 Street Realty Co LLC*, No. 850128/2025 (N.Y. Sup. Ct. N.Y. Cnty. Mar. 24, 2025), ECF No. 3; (ii) *Flagstar Bank N.A. v. 225 Parkside LLC*, No. 509749/2025 (N.Y. Sup. Ct. Kings Cnty. Apr. 4, 2025), ECF No. 3; (iii) *Flagstar Bank, N.A. v. 30 Road Realty Co*, No. 708290/2025 (N.Y. Sup. Ct. Queens Cnty. Apr. 4, 2025), ECF No. 3; and (iv) *Flagstar Bank, N.A. v. 3410 Kingsbridge LLC*, No. 806530/2025E (N.Y. Sup. Ct. Bronx Cnty. Apr. 4, 2025), ECF No. 3.

have caused significant disruption for their tenants and harm to the value of their assets and operations. Unable to reach a satisfactory resolution with The Mortgage Lender on this expedited timeline, the Debtors were forced to commence the Chapter 11 Cases to avoid disruption to tenant services, retain control of their restructuring process, and safeguard their assets for the benefit of all of their creditors and other parties in interest.

**IV.**
**OVERVIEW OF THE CHAPTER 11 CASES**

### A.   Commencement of Chapter 11 Cases and First-Day Motions

On May 21, 2025, the Debtors commenced these Chapter 11 Cases on an emergency basis. To that end, the Debtors requested "first-day" relief from the Bankruptcy Court to (i) jointly administer the Chapter 11 Cases for procedural purposes only, (ii) use of cash collateral on an interim basis, (iii) continue to use the Debtors' cash management system in the ordinary course of business until it can be modified as needed, and (iv) extend the deadline to file schedules of assets and liabilities and statements of financial affairs. Orders with respect to the various "first day" motions were entered by the Bankruptcy Court on or about May 29, 2025 (ECF Nos. 3, 14, 15, and 16).

### B.   Cash Collateral

Following the First Day Hearing, the Debtors engaged with the Mortgage Lender over the use of cash collateral on a final basis for the initial months of the Chapter 11 Cases. After several months of discussions and litigation, and following the issuance by the Bankruptcy Court of a *Bench Decision* on June 29, 2025 (ECF No. 64), the Debtors and the Mortgage Lender ultimately reached an agreement for the consensual use of cash collateral to fund a robust and comprehensive Marketing Process to maximize value for the estates and their creditors.

The terms of the final cash collateral agreement between the Debtors and the Mortgage Lender are set forth in the final cash collateral order dated September 22, 2025 (ECF No. 551) (the "**Final Cash Collateral Order**"), which authorizes the Debtors to use cash collateral through and including February 17, 2026. As a part of that agreement, the Debtors, among other things, engaged Eastdil Secured L.L.C. ("**Eastdil**") as real estate advisor for the Marketing Process, which was approved by order of the Bankruptcy Court dated October 1, 2025 (ECF No. 571). The Final Cash Collateral Order sets out case milestones which include consummating Transactions pursuant to the Plan.

### C.   Marketing Process and Bidding Procedures

In support of the Marketing Process, the Debtors developed bidding and auction procedures for the marketing and sale of their assets in these Chapter 11 Cases in an orderly and value maximizing manner (the "**Bidding Procedures**"). On October 1, 2025, the Bankruptcy Court entered an order (ECF No. 550) (the "**Bidding Procedures Order**"): (i) approving the Bidding Procedures; (ii) authorizing the Debtors to designate stalking horse bidder(s) (any such bidder a "**Stalking Horse Bidder**" and, any such bid, a "**Stalking Horse Bid**") and offer such bidder certain bid protections identified in the Motion (the "**Stalking Horse Bid Protections**"); (iii) setting the deadline (the "**Bid Deadline**") for Potential Bidders (as defined in the Bidding Procedures to submit a proposal to purchase or refinance all or a portion the Assets, scheduling an auction (the "**Auction**"), and scheduling a hearing with respect to the approval of the Transaction(s) (the "**Sale Hearing**"); (iv) authorizing and approving the form and manner of the notice of the Bidding Procedures; (v) authorizing and approving the form of cure notice to contract counterparties regarding the Debtors' potential assumption and assignment of any contracts to be assumed or assumed and assigned as part of the Transaction (the "**Assumed Contracts**") and of the Debtors' calculation of the

7

amount necessary to cure any defaults thereunder (the "**Cure Costs**"); (vi) authorizing and approving procedures for the assumption and assignment of the Assigned Contracts and the determination of Cure Costs with respect thereto; and (vii) granting related relief.

Under the Bidding Procedures, parties may submit bids for refinancing or sale of any and all of the Debtors' Assets in accordance with the terms of the Bidding Procedures. The Bidding Procedures are designed to promote a competitive and expedient bidding process, and are intended to generate the greatest level of interest in the Debtors' assets. The Bidding Procedures are intended to provide the Debtors with flexibility to solicit proposals, negotiate transactions, provide stalking horse protections (if necessary and appropriate), hold an auction (if necessary and appropriate) and consummate a Transactions for the highest and best value, all while protecting the due process rights of all interested parties and ensuring that there is a full and fair opportunity to review and consider proposed transactions.

The Debtors commenced marketing of the Assets on or about September 15, 2025, and the marketing will continue for a period of approximately forty (40) days following the approval of the Bidding Procedures.

The Bankruptcy Court-approved dates related to the Bidding Procedures are set forth below.

| Key Event | Deadline |
|---|---|
| Deadline to Submit Non-Binding Indications of Interest (parties are highly encouraged to do so) | **November 21, 2025 at 5:00 p.m. (prevailing Eastern Time)** |
| Bid Deadline | **December 12, 2025 at 5:00 p.m. (prevailing Eastern Time)** |
| Selection of Stalking Horse Bid(s) / Deadline for Debtors to Notify Bidders of Status as Qualified Bidders | **December 16, 2025 at 5:00 p.m. (prevailing Eastern Time)** |
| Auction(s) (if necessary) | **January 8, 2026 at 10:00 a.m. (prevailing Eastern Time)** |
| Deadline to File Notice of (a) Successful Bid and Back-Up Bid and (b) Identity of Successful Bidder and Back-Up Bidder | **1 business day following conclusion of the applicable Auction(s)** |
| Deadline to File Objections to (a) Transaction, (b) Cure Costs, and (c) Adequate Assurance of Future Performance | **January 11, 2026 at 5:00 p.m. (prevailing Eastern Time)** |
| Sale Hearing(s) or Confirmation Hearing (as applicable) | **On or before January 15, 2026** |
| Closing of Transaction(s) | **On or before February 12, 2026.** |

### D.    Statements and Schedules

The Debtors filed their Statements of Financial Affairs and Schedules of Assets and Liabilities on July 8, 2025.

### E.    Extension of Various Chapter 11 Deadlines

On September 3, 2025, the Bankruptcy Court entered an order extending the deadline by which the Debtors may file notices of removal under Bankruptcy Rule 9027(a) through and including December 17, 2025 (ECF No. 445). On September 29, 2025, the Bankruptcy Court approved the Debtors' motion seeking to

extend their exclusive plan periods, extending the Debtors' exclusive right to file a chapter 11 plan until December 15, 2025, and exclusive period to obtain acceptances thereof to February 17, 2026 (ECF No. 559). Also on September 29, 2025, the Bankruptcy Court entered an order approving the Debtors' motion to extend the time to assume or reject unexpired leases of nonresidential real property to December 17, 2025 (ECF No. 562).

**V.**
**VOTING PROCEDURES AND REQUIREMENTS**

**A.    Voting Deadline**

Before voting to accept or reject the Plan, each Eligible Holder (defined below) as of the Voting Record Date should carefully review the Plan attached hereto as **Exhibit B**. All descriptions of the Plan set forth in this Disclosure Statement are subject to the terms and conditions of the Plan.

Ballots will be provided for holders of Voting Claims as of the Voting Record Date, **10:00 a.m. (prevailing Eastern Time), on December 2, 2025** to vote to accept or reject the Plan (a "**Ballot**").

Each Ballot contains detailed voting instructions and sets forth in detail, among other things, the deadlines, procedures, and instructions for voting to accept or reject the Plan, the Voting Record Date for voting purposes, and the applicable standards for tabulating Ballots.

The Debtor has engaged Stretto, Inc., as their voting agent (the "**Voting Agent**") to assist in the transmission of voting materials and in the tabulation of votes with respect to the Plan.

**THE VOTING DEADLINE IS 5:00 P.M., PREVAILING EASTERN TIME, ON JANUARY 7, 2026, UNLESS EXTENDED BY THE DEBTORS.**

Delivery of a Ballot must conform to the instructions on the Ballot. Mailed Ballots must be returned by the Voting Deadline with an original signed copy to:

By First Class Mail, Overnight Courier, or Hand Delivery:

**If by First Class Mail:**
**Broadway Realty I Co., LLC, *et al*.**
c/o Stretto
410 Exchange, Ste 100
Irvine, CA 92602

**If by, Overnight Courier or Overnight Mail:**
**Broadway Realty I Co., LLC, *et al*.**
c/o Stretto
410 Exchange, Ste 100
Irvine, CA 92602

FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE EXECUTED IN ACCORDANCE WITH THE INSTRUCTIONS INCLUDED IN THE APPLICABLE BALLOT AND MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.

ANY BALLOT THAT IS EXECUTED AND RETURNED BUT WHICH DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN OR INDICATES BOTH AN

ACCEPTANCE AND A REJECTION OF THE PLAN WILL NOT BE COUNTED.  THE DEBTORS, IN THEIR SOLE DISCRETION, MAY REQUEST THAT THE VOTING AGENT ATTEMPT TO CONTACT SUCH VOTERS TO CURE ANY SUCH DEFECTS IN THE BALLOTS.  THE FAILURE TO VOTE DOES NOT CONSTITUTE A VOTE TO ACCEPT OR REJECT THE PLAN.  AN OBJECTION TO THE CONFIRMATION OF THE PLAN, EVEN IF TIMELY SERVED, DOES NOT CONSTITUTE A VOTE TO ACCEPT OR REJECT THE PLAN.

      **B.**     **<u>Voting Procedures</u>**

The Debtors are providing copies of this Disclosure Statement (including all exhibits and appendices) and related materials and a Ballot (collectively, a "**Solicitation Package**") to the record holder of Class 3 Secured Mortgage Claims (the "**Voting Class**").  In order to vote, holders of claims in the Voting Class should provide all of the information requested by the Ballot and, as applicable, should complete and deliver their completed Ballots so that they are actually received by the Voting Agent no later than the Voting Deadline.

      **C.**     **<u>Parties Entitled to Vote</u>**

Under the Bankruptcy Code, only holders of claims or interests in "impaired" classes are entitled to vote on a plan.  Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under a plan unless (i) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder thereof or (ii) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before the default.

If, however, the holder of an impaired claim or interest will not receive or retain any distribution under the plan on account of such claim or interest, the Bankruptcy Code deems such holder to have rejected the plan, and, accordingly, holders of such claims and interests do not actually vote on the plan.  If a claim or interest is not impaired by the plan, the Bankruptcy Code deems the holder of such claim or interest to have accepted the plan and, accordingly, holders of such claims and interests are not entitled to vote on the Plan.

A vote may be disregarded if the Bankruptcy Court determines, pursuant to section 1126(e) of the Bankruptcy Code, that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

The Bankruptcy Code defines "acceptance" of a plan by a class of: (i) claims as acceptance by creditors in that class that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the claims that cast ballots for acceptance or rejection of the plan; and (ii) interests as acceptance by interest holders in that class that hold at least two-thirds (2/3) in dollar amount of the interests that cast ballots for acceptance or rejection of the plan.

Class 3 (Secured Mortgage Claims) is impaired under the Plan and is the only Voting Class.  Claims in all other Classes are either unimpaired and deemed to accept or impaired and deemed to reject the Plan and are not entitled to vote.  For a detailed description of the treatment of Claims and Interests under the Plan, *see* Article I of this Disclosure Statement.

Any Class of Claims against or Interests in a Debtor that, as of the commencement of the Confirmation Hearing, does not have at least one (1) holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan of such Debtor

for purposes of voting to accept or reject such Debtor's Plan, and disregarded for purposes of determining whether such Debtor's Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

With respect to each Debtor, if a Class contained Claims eligible to vote and no holder of Claims eligible to vote in such Class votes to accept or reject this Plan by the Voting Deadline, this Plan shall be presumed accepted by the holders of such Claims in such Class.

The Debtors will request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code over the deemed rejection of the Plan by all Classes deemed to reject. Section 1129(b) of the Bankruptcy Code permits the confirmation of a chapter 11 plan notwithstanding the rejection of such plan by one or more impaired classes of claims or interests. Under section 1129(b), a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each rejecting class. For a more detailed description of the requirements for confirmation of a nonconsensual plan, *see* Article VII of this Disclosure Statement.

### 1.    Miscellaneous

Ballots will not be accepted by telecopy, facsimile, electronic mail or other electronic means of transmission (except via the Voting Agent's E-Ballot platform).

The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant, (ii) any ballot cast by a Person that does not hold a Claim in Class 3, (iii) any unsigned Ballot, (iv) any ballot that does not contain an original signature; and (v) any Ballot transmitted to the Voting Agent by telecopy, facsimile, electronic mail or other means of electronic transmission (other than Ballots entitled to be submitted via the Voting Agent's online balloting portal). An otherwise properly completed, executed, and timely returned Ballot that does not indicate acceptance or rejection of the Plan, or that indicates both acceptance and rejection of the Plan, will not be counted in determining the acceptance or rejection of the Plan.

To properly complete the Ballot, you must follow the procedures described below:

a.    Make sure that the information contained in Item 2 is correct;

b.    If you have a Class 3 Mortgage Lender Claim, cast one vote to accept or reject the Plan by checking the appropriate box in Item 3;

c.    Make sure to read the information regarding the Injunction and Exculpation in Item 4;

d.    If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 5. By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act);

e.    You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan;

f.    If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by the Voting Agent will be counted, unless the holder of the Claim receives Bankruptcy Court approval otherwise;

g.     If you believe that you have received the wrong Ballot, please contact the Voting Agent immediately;

h.     Provide your name, mailing address, and any remaining information requested;

i.      Sign and date your Ballot; and

j.      Return your completed Ballot to the Voting Agent.

No Ballot shall constitute or be deemed a proof of Claim or an assertion of Claim.

### 2.      Agreements Upon Furnishing Ballots

The delivery of an accepting Ballot pursuant to one of the procedures set forth above will constitute the agreement of the creditor with respect to such Ballot to accept: (i) all of the terms of, and conditions to, the solicitation; and (ii) the terms of the Plan including the injunction and exculpations set forth in Sections 10.5 and 10.6 of the Plan. All parties in interest retain their right to object to confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code.

### 3.      Change of Vote

Any party who has previously submitted to the Voting Agent prior to the Voting Deadline a properly completed Ballot may revoke such Ballot and change its vote by submitting to the Voting Agent prior to the Voting Deadline a subsequent, properly completed Ballot voting for acceptance or rejection of the Plan.

### 4.      Waivers of Defects, Irregularities, etc.

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots will be determined by the Voting Agent and/or the Debtors, as applicable, in their sole discretion, which determination will be final and binding. The Debtors reserve the right to reject any and all Ballots submitted by any of their respective creditors not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful. The Debtors further reserve their respective rights to waive any defects or irregularities or conditions of delivery as to any particular Ballot by any of their creditors. The interpretation (including the Ballot and the respective instructions thereto) by the applicable Debtor, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Bankruptcy Court) determines. Neither the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. Unless otherwise directed by the Bankruptcy Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

### VI.
### CERTAIN RISK FACTORS TO BE CONSIDERED

Prior to voting to accept or reject the Plan, holders of Claims in the Voting Class (Class 3) should read and carefully consider the risk factors set forth below, in addition to the other information set forth in this Disclosure Statement including any attachments, exhibits, or documents incorporated by reference.

THIS SECTION PROVIDES INFORMATION REGARDING POTENTIAL RISKS IN CONNECTION
WITH THE PLAN.  THE FACTORS BELOW SHOULD NOT BE REGARDED AS THE ONLY RISKS
ASSOCIATED WITH THE PLAN OR ITS IMPLEMENTATION.

### A. Certain Bankruptcy Law Considerations

#### 1. General

While the Debtors believe that the Chapter 11 Cases will be of short duration and will not be materially
disruptive to the Debtors' business, the Debtors cannot be certain that this will be the case.  Although the
Plan is designed to minimize the length of the Chapter 11 Cases, it is impossible to predict with certainty
the amount of time that the Debtors may spend in bankruptcy or to assure parties in interest that the Plan
will be confirmed.  Even if confirmed on a timely basis, bankruptcy proceedings to confirm the Plan could
have an adverse effect on the Debtors' business.  Among other things, it is possible that bankruptcy
proceedings could adversely affect the Debtors' relationships with its tenants and employees.  In addition,
the bankruptcy proceedings may divert some of the attention of the Debtors' management away from
business operations and the Debtors will incur additional expenses.

#### 2. Risk of Non-Confirmation of Plan

Although the Debtors believe that the Plan will satisfy all requirements necessary for confirmation by the
Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion or
that modifications to the Plan will not be required for confirmation or that such modifications would not
necessitate re-solicitation of votes.  Moreover, the Debtors can make no assurances that it will receive the
requisite acceptances to confirm the Plan, and even if the Voting Class votes in favor of the Plan or the
requirements for "cramdown" are met with respect to any Class that rejected the Plan, the Bankruptcy
Court, which may exercise substantial discretion as a court of equity, may choose not to confirm the Plan.
If the Plan is not confirmed, it is unclear what distributions (if any) holders of Claims or Interests ultimately
would receive with respect to their Claims or Interests in a subsequent plan of reorganization.

#### 3. Risk of Failing to Satisfy Vote Requirement

In the event the Debtors are unable to get sufficient votes from the Voting Class, the Debtors may seek to
accomplish an alternative chapter 11 plan.  There can be no assurance that the terms of any such alternative
chapter 11 plan would be similar or as favorable to holders of Allowed Claims and Equity Interests as those
proposed in the Plan.

#### 4. Risk of Non-Consensual Confirmation

In the event that any impaired class of Claims does not accept or is deemed not to accept the Plan, the
Bankruptcy Court may nevertheless confirm such Plan at the request of the Debtors if at least one impaired
class has accepted the plan (with such acceptance being determined without including the vote of any
"insider" in such class), and as to each impaired class that has not accepted the plan, the Bankruptcy Court
determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the
dissenting impaired classes.  Should any Class vote to reject the Plan, then these requirements must be
satisfied with respect to such rejecting Classes.  The Debtors believe the Plan satisfies these requirements.

#### 5. Risk of Non-Occurrence of Effective Date

There can be no assurance as to the timing of the Effective Date.  If the conditions precedent to the Effective
Date set forth in the Plan have not occurred or have not been waived as set forth in Section 9.3 of the Plan,

then the Confirmation Order may be vacated, in which event no distributions would be made under the Plan, the Debtors and all holders of Claims or Interests would be restored to the status quo as of the day immediately preceding the Confirmation Date, and the Debtors' obligations with respect to Claims and Interests would remain unchanged.

### 6.     Risk Related to Parties in Interest Objecting to Debtors' Classification of Claims and Equity Interests

Bankruptcy Code Section 1122 provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class.  The Debtors believe that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code.  However, there can be no assurance that a party in interest will not object or that the Bankruptcy Court will approve the classifications.

### 7.     Risk Related to Possible Objections to Plan

There is a risk that certain parties could oppose and object to the Plan in the Bankruptcy Court either in its entirety or to specific provisions of the Plan.  While the Debtors believe that the proposed Plan complies with all relevant Bankruptcy Code provisions, there can be no guarantee that a party in interest will not file an objection to the Plan or that the Bankruptcy Court will not sustain such an objection.

Flagstar has consented, in accordance with the Final Cash Collateral Order, to the filing of the Plan with the following agreed caveats: (i) Flagstar has reserved all rights with respect to the Disclosure Statement and Plan; (ii) Flagstar has not taken any position as to the contents of the Disclosure Statement and Plan and any of the provisions therein; (iii) Flagstar reserves its right to vote on the Plan and its consent to the filing of the Plan shall not be considered as a vote in favor of or against the Plan; and (iv) the parties anticipate that the Plan and related materials will be amended to address any concerns Flagstar may have.

### 8.     Conversion to Chapter 7 Case

If no plan of reorganization can be confirmed, or if the Bankruptcy Court otherwise finds that it would be in the best interest of holders of Claims and Interests, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a chapter 7 trustee would be appointed or elected to liquidate the Debtors' assets for distribution in accordance with the priorities established by the Bankruptcy Code.

### 9.     Claims Could be More than Projected

There can be no assurance that the estimated Allowed amount of Claims in certain Classes will not be significantly more than projected, which, in turn, could cause the value of distributions to be reduced substantially.   Inevitably, some assumptions will not materialize, and unanticipated events and circumstances may affect the ultimate results.  Therefore, the actual amount of Allowed Claims may vary from the Debtors' Financial Projections and feasibility analysis, and that variation may be material.

### 10.    Projections and Other Forward-Looking Statements are not Assured, and Actual Results May Vary

Certain of the information contained in this Disclosure Statement is, by nature, forward-looking, and contains (i) estimates and assumptions which might ultimately prove to be incorrect and (ii) projections which may be materially different from actual future experiences.  There are uncertainties associated with

any projections and estimates, and they should not be considered assurances or guarantees of the amount of funds or the amount of Claims in the various Classes that might be allowed.

### B.  Additional Factors

#### 1.  Value of Rent Regulated Real Estate in New York

The value of rent regulated real estate, including the properties owned by the Debtors, is subject to change based on market forces and on factors such as the outcome of the New York City mayoral election and may decrease interest in the Debtors' properties and their value.

#### 2.  Transactions Could Fail to Consummate Before February 17, 2026

The Debtors are authorized to use cash collateral though February 17, 2026.  Should a Transaction fail to be consummated or if the Plan does not become effective prior to that date, the Debtors would need to seek an extension of the Final Cash Collateral Order.  There can be no assurances that the Mortgage Lender would agree to or that the Bankruptcy Court would grant any extension of that outside date.

#### 3.  Debtors Could Withdraw Plan

The Plan may be revoked or withdrawn prior to the Confirmation Date by the Debtors.

#### 4.  Debtors Have no Duty to Update

The statements contained in this Disclosure Statement are made by the Debtors as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date.  The Debtors have no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

#### 5.  No Representations Outside Disclosure Statement are Authorized

No representations concerning or related to the Debtors, the Chapter 11 Cases, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than those contained in, or included with, this Disclosure Statement should not be relied upon in making the decision to accept or reject the Plan.

#### 6.  No Legal or Tax Advice is Provided by Disclosure Statement

The contents of this Disclosure Statement should not be construed as legal, business, or tax advice.  Each Claim or Interest holder should consult their own legal counsel and accountant as to legal, tax, and other matters concerning their Claim or Interest.

This Disclosure Statement is not legal advice to you.  This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

#### 7.  No Admission Made

Nothing contained herein or in the Plan will constitute an admission of, or will be deemed evidence of, the tax or other legal effects of the Plan on the Debtors or on holders of Claims or Interests.

8.      **Certain Tax Consequences**

For a discussion of certain tax considerations to the Debtors and certain holders of Claims in connection with the implementation of the Plan, see Article VIII hereof.

## VII.
## CONFIRMATION OF PLAN

A.      **Confirmation Hearing**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court to hold a confirmation hearing upon appropriate notice to all required parties.  The Debtors will request that the Bankruptcy Court schedule the Confirmation Hearing.  Notice of the Confirmation Hearing will be provided to all known creditors and equity holders or their representatives.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjourned date made at the Confirmation Hearing, at any subsequent adjourned Confirmation Hearing, or pursuant to a notice filed on the docket of the Chapter 11 Cases.

B.      **Objections to Confirmation**

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to the confirmation of a plan.  Any objection to confirmation of the Plan must (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (c) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (d) conform to the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York; (e) be filed with the Bankruptcy Court, with a copy to the chambers of the United States Bankruptcy Judge appointed to the Chapter 11 Cases, together with proof of service thereof; and (f) be served upon the following parties, including such parties as the Bankruptcy Court may order:

(a)      if to the Debtors:

2 Grand Central Tower
140 East 45th St., 12th Floor
New York, New York 100171
Attn:   Ephraim Diamond, David Barse, and Adam J. Kaplan
Email:  ephraim@arbelcapital.com
        dbarse@dmbholdings.com
        adam@pinnacleny.com

– and –

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn:    Gary T. Holtzer, Esq., Garrett A. Fail, Esq.,
Matthew P. Goren, Esq.; and Philip L. DiDonato, Esq.
Telephone:  (212) 310-8000

16

Facsimile:  (212) 310-8007
Email:  gary.holtzer@weil.com
        garrett.fail @weil.com
        matthew.goren@weil.com
        philip.didonato@weil.com

(b)    if to the Mortgage Lender:

Paul Hastings LLP
200 Park Avenue
New York, New York 10166
Attn:   Brett Lawrence, Esq., Nicholas A. Bassett, Esq.,
        Justin Rawlins, Esq., and Harvey A. Strickon, Esq.
Email:  brettlawrence@paulhastings.com
        nicholasbassett@paulhastings.com
        justinrawlins@paulhastings.com
        harveystrickon@paulhastings.com

---

**UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

---

C.    <u>**Requirements for Confirmation of Plan**</u>

1.    **Requirements of Section 1129(a) of Bankruptcy Code**

(a)    <u>General Requirements</u>

At the Confirmation Hearing, the Bankruptcy Court will determine whether the confirmation requirements specified in section 1129(a) of the Bankruptcy Code have been satisfied including, without limitation, whether:

(i)    the Plan complies with the applicable provisions of the Bankruptcy Code;

(ii)   the Debtors have complied with the applicable provisions of the Bankruptcy Code;

(iii)  the Plan has been proposed in good faith and not by any means forbidden by law;

(iv)   any payment made or promised by the Debtors or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to the Bankruptcy Court, and any such payment made before confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

(v)    the Debtors have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director or officer of any Reorganized Debtor, an affiliate of the Debtors participating in a Plan with the Debtors, or a successor

17

to the Debtors under the Plan, and the appointment to, or continuance in, such office of such individual is consistent with the interests of the holders of Claims and Interests and with public policy, and the Debtors have disclosed the identity of any insider who will be employed or retained by any Reorganized Debtor, and the nature of any compensation for such insider;

(vi)    with respect to each Class of Claims or Interests, each holder of an impaired Claim or impaired Interest has either accepted the Plan or will receive or retain under the Plan, on account of such holder's Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount such holder would receive or retain if the Debtors were liquidated on the Effective Date of the Plan under chapter 7 of the Bankruptcy Code;

(vii)    except to the extent the Plan meets the requirements of section 1129(b) of the Bankruptcy Code (as discussed further below), each Class of Claims either accepted the Plan or is not impaired under the Plan;

(viii)    except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that administrative expenses and priority Claims, other than Priority Tax Claims, will be paid in full on the Effective Date, and that Priority Tax Claims will receive either payment in full on the Effective Date or deferred cash payments over a period not exceeding five years after the Petition Date, of a value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claims;

(ix)    at least one Class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such Class;

(x)    confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan; and

(xi)    all fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

(b)    Best Interests Test

As noted above, with respect to each impaired class of claims and equity interests, confirmation of a plan requires that each such holder either (i) accept the plan or (ii) receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the value such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code.  This requirement is referred to as the "best interests test."

This test requires a Bankruptcy Court to determine what the holders of allowed claims and allowed equity interests in each impaired class would receive from a liquidation of the debtor's assets and properties in the context of a liquidation under chapter 7 of the Bankruptcy Code.  To determine if a plan is in the best interests of each impaired class, the value of the distributions from the proceeds of the liquidation of the debtor's assets and properties (after subtracting the amounts attributable to the aforesaid claims) is then compared with the value offered to such classes of claims and equity interests under the plan.

The Debtors believe that under the Plan all holders of impaired Claims and Interests will receive property with a value not less than the value such holder would receive in a liquidation under chapter 7 of the Bankruptcy Code. The Debtors' belief is based primarily on (i) consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to holders of impaired Claims and Interests and (ii) the Debtors' analysis of projected recoveries to holders of Allowed Claims and Interests under a hypothetical chapter 7 liquidation (the "**Liquidation Analysis**"), which will be filed no later than the Plan Supplement is filed and served on holders of Claims in the Voting Class.

The Debtors believe that any liquidation analysis is speculative, as it is necessarily premised on assumptions and estimates which are inherently subject to significant uncertainties and contingencies, many of which would be beyond the control of the Debtors. The Liquidation Analysis will be provided solely for the purpose of disclosing to holders of Claims and Interests the effects of a hypothetical chapter 7 liquidation of the Debtors, subject to the assumptions set forth therein. There can be no assurance as to values that would actually be realized in a chapter 7 liquidation nor can there be any assurance that a bankruptcy court will accept the Debtors' conclusions or concur with such assumptions in making its determinations under section 1129(a)(7) of the Bankruptcy Code.

(c)  Feasibility

Also as noted above, section 1129(a)(11) of the Bankruptcy Code requires that a debtor demonstrate that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization. The Debtors believe they will have sufficient resources to make all payments required pursuant to the Plan and that confirmation of the Plan is not likely to be followed by liquidation or the need for further reorganization

(d)  Equitable Distribution of Voting Power

On or before the Effective Date, pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, the organizational documents for the Debtors will be amended as necessary to satisfy the provisions of the Bankruptcy Code and will include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, (i) a provision prohibiting the issuance of non-voting equity securities and (ii) a provision setting forth an appropriate distribution of voting power among classes of equity securities possessing voting power.

**2.  Additional Requirements for Non-Consensual Confirmation**

In the event that any impaired Class of Claims or Interests does not accept or is deemed to reject the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtors if, as to each impaired Class of Claims or Interests that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such Classes of Claims or Interests, pursuant to section 1129(b) of the Bankruptcy Code. Both of these requirements are in addition to other requirements established by case law interpreting the statutory requirements.

Pursuant to the Plan, holders of Class 4 General Unsecured Claims and Class 5 Existing Equity Interests will not receive a distribution and are thereby deemed to reject the Plan. However, the Debtors submit that they satisfy the "unfair discrimination" and "fair and equitable" tests, as discussed in further detail below.

(a)  Unfair Discrimination Test

The "unfair discrimination" test applies to Classes of Claims or Interests that are of equal priority and are receiving different treatment under the Plan. A chapter 11 plan does not discriminate unfairly, within the

19

meaning of the Bankruptcy Code, if the legal rights of a dissenting Class are treated in a manner consistent with the treatment of other Classes whose legal rights are substantially similar to those of the dissenting Class and if no Class of Claims or Interests receives more than it legally is entitled to receive for its Claims or Interests. This test does not require that the treatment be the same or equivalent, but that such treatment is "fair."

The Debtors believe the Plan satisfies the "unfair discrimination" test. Claims of equal priority are receiving comparable treatment and such treatment is fair under the circumstances.

(b)     Fair and Equitable Test

The "fair and equitable" test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the allowed amount of the claims in such class. As to dissenting classes, the test sets different standards depending on the type of claims in such class. The Debtors believe that the Plan satisfies the "fair and equitable" test as further explained below.

(i)     *Unsecured Creditors*

The Bankruptcy Code provides that either (i) each holder of an impaired unsecured claim receives or retains under the plan of reorganization, property of a value equal to the amount of its allowed claim or (ii) the holders of claims and equity interests that are junior to the claims of the dissenting class will not receive any property under the plan of reorganization. The Plan provides that the holders of General Unsecured Claims in Class 4 will receive the treatment summarized above in Article I of this Disclosure Statement.

(ii)     *Equity Interests*

The Bankruptcy Code requires that either (a) each holder of an equity interest receive or retain under the plan property of a value equal to the greater of (i) the fixed liquidation preference or redemption price, if any, of such stock and (ii) the value of the stock, or (b) the holders of equity interests that are junior to any dissenting class of equity interests not receive any property under the plan. Pursuant to the Plan, in the event of a Refinancing Transaction, the Existing Equity Interests of the Debtor(s) party to the Refinancing Transaction(s) shall, subject to the waterfall and priorities set forth in section 1129(b)(2) of the Bankruptcy Code, be Reinstated for the benefit of the holders of such former Existing Equity Interests consistent with their former economic entitlements. In the event of a Sale Transaction, the holders of Existing Equity Interests of the Debtor(s) party to the Sale Transaction(s) shall receive any remaining Available Cash after payment in full of General Unsecured Claims in accordance with Section 4.4 of the Plan, following final distribution of all such Available Cash, such Existing Equity Interests shall be cancelled for no further consideration.

# VIII.
# CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES

The following discussion summarizes certain U.S. federal income tax consequences of the implementation of the Plan to the Debtors and to holders of Allowed Secured Mortgage Claims. This summary does not address the U.S. federal income tax consequences to holders of Claims who are unimpaired or, in general, to holders of Claims or Existing Equity Interests who are deemed to have rejected the Plan.

This summary is based on the U.S. Internal Revenue Code of 1986, as amended (the "**Tax Code**"), existing and proposed U.S. Treasury regulations thereunder (the "**Treasury Regulations**"), judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service (the "**IRS**") as in effect

on the date hereof, all of which are subject to change, possibly on a retroactive basis. Any such change could significantly affect the U.S. federal income tax consequences described below.

The U.S. federal income tax consequences of the Plan are complex and subject to significant uncertainties. The Debtors have not requested an opinion of counsel or a ruling from the IRS with respect to any of the tax aspects of the contemplated transactions, and the discussion below is not binding upon the IRS or any court. No assurance can be given that the IRS will not assert, or that a court will not sustain, a different position than any position discussed herein.

This summary does not address state, local or foreign income tax consequences of the Plan, nor does it purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtors or to certain holders of Claims in light of their individual circumstances or to a holder that may be subject to special tax rules (including, without limitation, non-U.S. persons, broker-dealers, banks, mutual funds, insurance companies, financial institutions, thrifts, small business investment companies, regulated investment companies, real estate investment trusts, tax-exempt organizations, retirement plans, individual retirement and other tax-deferred accounts, S corporations, partnerships or other pass-through entities for U.S. federal income tax purposes, any other Debtor entity, persons holding securities as part of a hedging, straddle, conversion or constructive sale transaction or other integrated investment, traders in securities that elect to use a mark-to-market method of accounting for their security holding, dealers in securities or foreign currencies, persons whose functional currency is not the U.S. dollar, certain expatriates or former long term residents of the United States, persons who received their Claim as compensation or who acquired their Claim in the secondary market, and persons subject to the alternative minimum tax or the "Medicare" tax on net investment income). In addition, this discussion does not address the Foreign Account Tax Compliance Act or U.S. federal taxes other than income taxes.

This discussion assumes that the Secured Mortgage Claims are held as "capital assets" (generally, property held for investment) within the meaning of section 1221 of the Tax Code and, unless otherwise indicated below, that the various debt and other arrangements to which the Debtors are parties will be respected for U.S. federal income tax purposes in accordance with their form.

The treatment accorded Allowed Claims and Existing Equity Interests pursuant to the Plan is intended in be consistent with the respective rights and entitlements of the holders in respect of their underlying obligations subject to the provisions of the Bankruptcy Code. In the main, it is anticipated that most, if not all, Refinancing Transactions and Sale Transactions will be implemented on or before the Effective Date. However, it is possible that some may not or that some distributions to holders of Claims or Existing Equity Interests (as applicable) may occur after the Effective Date. In such event, although not free from doubt, the Debtors believe – and the following discussion assumes – that such post-Effective Date distributions to holders of Allowed Claims should be treated for U.S. federal income tax purposes as amounts received in respect of the liquidation and satisfaction of such Claims and, accordingly, that the right of a holder to receive such post-Effective Date distribution should not be treated as the receipt of a new obligation against, or an equity interest in, the respective Post-Emergence Entity. There is no assurance, however, that the IRS would not take a contrary position. In such event, if successful, the U.S. federal income tax consequences to the Post-Emergence Entities and to holders of Allowed Claims could be materially different than described below.

**ACCORDINGLY, THE FOLLOWING SUMMARY IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING OR FOR ADVICE BASED UPON THE PARTICULAR CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM. EACH HOLDER OF A CLAIM IS URGED TO CONSULT ITS OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL AND FOREIGN INCOME AND OTHER TAX CONSEQUENCES APPLICABLE TO IT UNDER THE PLAN.**

### A.  Consequences to the Debtors

Each of the Debtors is treated as a disregarded entity for U.S. federal income tax purposes.  As disregarded entities, the Debtors are not subject to U.S. federal income tax.  In addition, it is contemplated that the Plan will be implemented in a manner such that the Debtors should continue to be treated as a disregarded entities throughout the implementation of the Plan, including any Refinancing Transaction and any Sale Transaction and the completion of distributions to holders of Claims and Existing Equity Interests in accordance with the Plan.  *See, e.g.*, Section 5.5 of the Plan and the lead-in tax discussion above.  Accordingly, the Debtors do not expect to incur any U.S. federal income tax liability as a result of any income or gain that may be recognized in connection with the implementation of the Plan.

### B.  Consequences to Holders of Allowed Secured Mortgage Claims

The discussion below applies only to U.S. Holders of Secured Mortgage Claims.  As used herein, the term "**U.S. Holder**" means a beneficial owner of a Secured Mortgage Claim that is for U.S. federal income tax purposes:

- an individual who is a citizen or resident of the United States;

- a corporation, or other entity taxable as a corporation for U.S. federal income tax purposes, created or organized in or under the laws of the United States, any state thereof or the District of Columbia;

- an estate the income of which is subject to U.S. federal income taxation regardless of its source; or

- a trust, if a court within the United States is able to exercise primary jurisdiction over its administration and one or more U.S. persons have authority to control all of its substantial decisions, or if the trust has a valid election in effect under applicable Treasury Regulations to be treated as a U.S. person.

If a partnership or other entity or arrangement taxable as a partnership for U.S. federal income tax purposes holds Secured Mortgage Claims, the U.S. federal income tax treatment of a partner in such partnership generally will depend upon the status of the partner and the activities of the partnership.  If you are a partner in such a partnership holding any of such instruments, you are urged to consult your tax advisor.

Pursuant to the Plan, holders of Allowed Secured Mortgage Claims will receive, in full and final satisfaction, settlement, release and discharge of their Secured Mortgage Claim against the applicable Debtor: (i) in the event of a Refinancing Transaction: Cash in the amount of its Allowed Secured Mortgage Claim, or such other treatment as agreed to by the Mortgage Lender in connection with the applicable Refinancing Transaction; *provided* however, in no event shall the Mortgage Lender receive more than 100% of its Allowed Secured Mortgage Claim; and (ii) in the event of a Sale Transaction as to which the holder is not the Successful Bidder: (x) the proceeds of the Transaction Consideration provided under the applicable Asset Purchase Agreement for the Successful Bid, and (y) to the extent not identified in the applicable Successful Bid: (1) any proceeds of any Debtor Causes of Action, and (2) any Mortgage Collateral securing the applicable Secured Mortgage Claim; *provided* however, in no event shall the Mortgage Lender receive more than 100% of its Allowed Secured Mortgage Claim.  The following discussion assumes that the Transaction Consideration is solely cash.  Holders of Allowed Secured Mortgage Claims should consult their tax advisor as regards the receipt of any non-cash Transaction Consideration and the U.S. federal income tax consequences to them in the event they are the Successful Bidder.

The following discussion does not necessarily apply to holders who have Claims in more than one class relating to the same underlying obligation (such as where the underlying obligation is classified as partially secured and partially unsecured). Such holders should consult their tax advisor regarding the effect of such dual status obligations on the U.S. federal income tax consequences of the Plan to them.

### 1. Gain or Loss

As discussed above, the discussion herein assumes that any post-Effective Date distributions to holders of Allowed Claims will be treated for U.S. federal income tax purposes as amounts received in respect of the liquidation and satisfaction of such Claims and, accordingly, that the right of a holder to receive such post-Effective Date distribution will not be treated as the receipt of a new obligation against, or an equity interest in, the respective Post-Emergence Entity.

So treated, a U.S. Holder of a Secured Mortgage Claim generally will recognize gain or loss in an amount equal to the difference, if any, between (i) the amount of any cash received and the fair market value of any Mortgage Collateral received in satisfaction of its Claim (other than any amounts received in respect of accrued but unpaid interest, if any), and (ii) the U.S. Holder's adjusted tax basis in its Claim (other than any tax basis attributable to accrued but unpaid interest, if any). *See* discussion of "*Distributions in Respect of Accrued Interest*" below. The holder generally would have a fair market value tax basis in the Mortgage Collateral received, with a holding period that begins the day following the holder's receipt.

As indicated, it is possible that distributions to a holders of an Allowed Secured Mortgage Claim may be made subsequent to the Effective Date. In such event, it is possible that any loss and a portion of any gain may not be recognized until the holder has received its final distribution.

Generally, the gain or loss recognized by a U.S. Holder with respect to a Secured Mortgage Claim will be a capital gain or loss unless the Claim was acquired at a market discount, and depending on whether and the extent to which the U.S. Holder previously claimed a bad debt deduction. Any such capital gain or loss generally will be long-term if the U.S. Holder's holding period in the Claim is more than one year. A U.S. Holder that purchased its Claim from a prior holder at a "market discount" (relative to the principal amount of the Claim at the time of acquisition) may be subject to the market discount rules of the Tax Code. In general, a debt instrument is considered to have been acquired with "market discount" if the U.S. Holder's adjusted tax basis in the debt instrument is less than its stated principal amount by at least a *de minimis* amount. Under these rules, any gain recognized in the payment of cash on the Claim (other than any cash received in respect of accrued but unpaid interest) generally will be treated as ordinary income to the extent of the market discount accrued (on a straight line basis or, at the election of the U.S. Holder, on a constant yield basis) during the U.S. Holder's period of ownership, unless the U.S. Holder elected to include the market discount in income as it accrued. If a U.S. Holder did not elect to include market discount in income as it accrued and, thus, under the market discount rules, was required to defer all or a portion of any deductions for interest on debt incurred or maintained to purchase or carry its Claim, such deferred amounts would become deductible at the time of the discharge of the Claim

### 2. Distributions in Respect of Accrued Interest

Pursuant to Section 6.15 of the Plan, distributions with respect to Allowed Claims shall be allocated first to the principal portion of such Allowed Claim (as determined for U.S. federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any, except as otherwise required by law (as reasonably determined by the Debtors or the applicable Post Emergence Entities). However, there is no assurance that such allocation would be respected by the IRS for U.S. federal income tax purposes.

In general, to the extent any amount received by a U.S. Holder of an Allowed Secured Mortgage Claim is received in satisfaction of accrued interest during its holding period, such amount will be taxable to the holder as ordinary interest income (if not previously included in the U.S. Holder's gross income under the U.S. Holder's normal method of accounting). Conversely, a U.S. Holder generally recognizes a deductible loss to the extent any accrued interest was previously included in its gross income and is not paid in full. Each U.S. Holder of a Claim is urged to consult its own tax advisors regarding the allocation of consideration and the taxation or deductibility of unpaid interest for tax purposes.

### C.      Withholding on Distributions and Information Reporting

Payments of interest and any other reportable payments, including amounts received pursuant to the Plan, generally will be subject to information reporting and may be subject to "backup withholding" (currently at a rate of 24%) if a recipient of those payments fails to furnish to the payor certain identifying information and, in some cases, a certification that the recipient is not subject to backup withholding. Backup withholding is not an additional tax. Any amounts deducted and withheld generally should be allowed as a credit against or refund of that recipient's U.S. federal income tax liability, provided that appropriate proof is timely provided under rules established by the IRS. Furthermore, certain penalties may be imposed by the IRS on a recipient of payments who is required to supply information but who does not do so in the proper manner. Backup withholding generally should not apply with respect to payments made to exempt recipients, such as corporations and financial institutions. You are urged to consult your tax advisor regarding your qualification for exemption from backup withholding and information reporting and the procedures for obtaining such an exemption.

> **THE FOREGOING SUMMARY HAS BEEN PROVIDED FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT DISCUSS ALL ASPECTS OF U.S. FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER. ALL HOLDERS OF CLAIMS AND EXISTING EQUITY INTERESTS ARE URGED TO CONSULT THEIR TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

### IX.
### ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF PLAN

The Debtors have evaluated several alternatives to the Plan. After studying these alternatives, the Debtors have concluded that the Plan is the best alternative and will maximize recoveries to parties in interest, assuming confirmation and consummation of the Plan. If the Plan is not confirmed and consummated, the alternatives to the Plan are (i) a sale of some or all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code, or (ii) a liquidation under chapter 7 of the Bankruptcy Code.

### A.      Sale Under Section 363 of Bankruptcy Code

If the Plan is not confirmed, the Debtors could seek from the Bankruptcy Court, after notice and a hearing, authorization to sell their assets through a stand-alone alternative transaction under section 363 of the Bankruptcy Code. Upon analysis and consideration of this alternative, the Debtors do not believe that a stand-alone alternative sale of their assets under section 363 of the Bankruptcy Code (as opposed to the consummation of the Sale Transaction pursuant to the Plan) would yield a higher recovery for holders of Claims and Interests than the Plan. For example, a Sale Transaction consummated pursuant to a Plan may minimize transfer and other relates taxes section 1146(a) of the Bankruptcy Code, which may not be available in connection with stand-alone sales under section 363 of the Bankruptcy Code. In addition, the Debtors are only authorized to use cash collateral through February 17, 2026, and, if the Plan is not

confirmed, there is no guaranty the Debtors will have access to liquidity to finance a sale under section 363 of the Bankruptcy Code if the Plan.

### B.    Liquidation Under Chapter 7 or Applicable Non-Bankruptcy Law

If no plan can be confirmed, the Chapter 11 Cases may be converted to a case under chapter 7 of the Bankruptcy Code in which a chapter 7 trustee would be elected or appointed to liquidate the assets of the Debtors for distribution to the Debtors' creditors in accordance with the priorities established by the Bankruptcy Code.  The effect a chapter 7 liquidation would have on the recovery of holders of Allowed Claims and Interests will be set forth in the Liquidation Analysis that the Debtors will file no later than the date that the Plan Supplement is filed.

As noted in Article VII, section C.1.b of this Disclosure Statement, the Debtors believe that liquidation under chapter 7 would result in smaller distributions to creditors than those provided for in the Plan because of the delay resulting from the conversion of the cases and the additional administrative expenses associated with the appointment of a trustee and the trustee's retention of professionals who would be required to become familiar with the many legal and factual issues in the Chapter 11 Cases.

[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]

**X.**
**CONCLUSION AND RECOMMENDATION**

The Debtors believe the Plan is in the best interests of all stakeholders and urge the holders of Claims in Class 3 to vote in favor thereof.

Dated:  October 27, 2025

**DEBTORS**

By:  /s/
          Name: Ephraim Diamond

          Title:  Chief Restructuring Officer

## Exhibit A

**The Debtor Entities**

| Case No. | Debtor Name |
|---|---|
| 25-11050 | Broadway Realty I Co., LLC |
| 25-11051 | 193 Street Realty Co., LLC |
| 25-11052 | 2 West 120th Realty Co. LLC |
| 25-11053 | 25/35 Hillside Associates LLC |
| 25-11054 | 402-412 West 148 LLC |
| 25-11055 | Hillside Realty I Co., LLC |
| 25-11056 | 1171 President LLC |
| 25-11057 | 509 Realty Co. LLC |
| 25-11058 | 1280 Realty NY LLC |
| 25-11059 | 281/295 Wadsworth Associates, LLC |
| 25-11060 | 241 Sherman LLC |
| 25-11061 | 607 Rugby LLC |
| 25-11062 | West 50th Street Realty Co., LLC |
| 25-11063 | 1296 Realty LLC |
| 25-11064 | 58 Elizabeth NY LLC |
| 25-11065 | 18 Street Realty Co., LLC |
| 25-11066 | 330 Realty NY LLC |
| 25-11067 | 207 Realty LLC |
| 25-11068 | 1362 Ocean LLC |
| 25-11069 | 63-94 Austin Realty, LLC |
| 25-11070 | 991 Carroll St LLC |
| 25-11071 | 3301 Farragut LLC |
| 25-11072 | 1820 Realty LLC |
| 25-11073 | Clinton Property Co., LLC |

| Case No. | Debtor Name |
|----------|-------------|
| 25-11074 | 147 Realty Co., LLC |
| 25-11075 | 34 Seaman Associates, LLC |
| 25-11076 | 2102 Realty LLC |
| 25-11077 | 34 Avenue Realty Co., LLC |
| 25-11078 | Fieldstone NY LLC |
| 25-11079 | 681 Ocean LLC |
| 25-11080 | 1535 Ocean LLC |
| 25-11081 | 222 Lenox Rd LLC |
| 25-11082 | 233 Realty NY LLC |
| 25-11083 | 3410 Kingsbridge LLC |
| 25-11084 | Forest Parkway Realty Co., LLC |
| 25-11085 | 1554 Ocean LLC |
| 25-11086 | 706 Realty NY LLC |
| 25-11087 | 225 Parkside LLC |
| 25-11088 | Heath Realty LLC |
| 25-11089 | 40-15 Hampton LLC |
| 25-11090 | Audobon Realty LLC |
| 25-11091 | 1597 Realty LLC |
| 25-11092 | Kingston Place Realty Co., LLC |
| 25-11093 | 2340 Valentine Avenue Realty Co., LLC |
| 25-11094 | 85 Clarkson LLC |
| 25-11095 | 405 Realty LLC |
| 25-11096 | Park Lane South Realty Co., LLC |
| 25-11097 | 1601 Realty LLC |

| Case No. | Debtor Name |
|----------|-------------|
| 25-11098 | 536 Realty Co. LLC |
| 25-11099 | 426 East 22 St LLC |
| 25-11100 | 2400 Realty NY LLC |
| 25-11101 | Treger Management LLC |
| 25-11102 | 85-05 35 Avenue Realty Co., LLC |
| 25-11103 | 1617 Realty LLC |
| 25-11104 | 43-60 Baychester, LLC |
| 25-11105 | 237 Realty NY LLC |
| 25-11106 | 2513 Newkirk LLC |
| 25-11107 | 17 Realty LLC |
| 25-11108 | 45-35 Realty LLC |
| 25-11109 | 915 Realty LLC |
| 25-11110 | 176 Clarkson Ave LLC |
| 25-11111 | 28-30 Argyle LLC |
| 25-11112 | Manhattan Realty Co. LLC |
| 25-11113 | 457 Schenectady LLC |
| 25-11114 | 916 Carroll St LLC |
| 25-11115 | 349 Realty NY LLC |
| 25-11116 | 470 Realty NY LLC |
| 25-11117 | 292 St. Johns LLC |
| 25-11118 | 30 Road Realty Co., LLC |
| 25-11119 | 932 Carroll LLC |
| 25-11120 | 1023 Realty LLC |
| 25-11121 | 481 Eastern LLC |

| Case No. | Debtor Name |
|----------|-------------|
| 25-11122 | 307 12 St LLC |
| 25-11123 | 1038 Realty LLC |
| 25-11124 | 94-06 34th Avenue Realty Co., LLC |
| 25-11125 | 1042 Realty LLC |
| 25-11126 | 529 East 22 LLC |
| 25-11127 | 94-06 34th Road Realty Co., LLC |
| 25-11128 | 1048 Realty LLC |
| 25-11129 | 990 Realty NY LLC |
| 25-11130 | 1060 Realty LLC |
| 25-11131 | 115 East 21 Realty Co., LLC |

**<u>Exhibit B</u>**

**The Joint Chapter 11 Plan**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

|                          |   |                            |
|--------------------------|---|----------------------------|
|                          | : |                            |
| In re                    | : | **Chapter 11**             |
|                          | : |                            |
| **BROADWAY REALTY I CO., LLC,** *et al.*, | : | **Case No. 25-11050 (DSJ)** |
|                          | : |                            |
| **Debtors.**[1]          | : | **(Jointly Administered)** |
|                          | : |                            |

------------------------------------------------------------x

### JOINT CHAPTER 11 PLAN

**WEIL, GOTSHAL & MANGES LLP**
Gary T. Holtzer
Garrett A. Fail
Matthew P. Goren
Philip L. DiDonato
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Debtors
and Debtors in Possession*

Dated:  October 27, 2025
         New York, New York

---

[1]    The last four digits of Broadway Realty I Co., LLC's tax identification number are 5426.  A complete list of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/broadwayrealty.  The Debtors' mailing address is located at 2 Grand Central Tower, 140 East 45th St, 12th Floor, New York, New York 10017.

## Table of Contents

Page

**ARTICLE I.    DEFINITIONS AND INTERPRETATION.** ........................................................... 1

    A.  **Definitions:** .................................................................................................................... 1

    B.  **Interpretation; Application of Definitions and Rules of Construction** ............................ 8

    C.  **Reference to Monetary Figures.** ...................................................................................... 9

    D.  **Controlling Document.** .................................................................................................... 9

    E.  **Certain Consent Rights.** .................................................................................................. 9

**ARTICLE II.    ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.** ............................. 9

    2.1  *Administrative Expense Claims.* ....................................................................................... 9

    2.2  *Fee Claims.* ..................................................................................................................... 10

    2.3  *Priority Tax Claims.* ....................................................................................................... 10

**ARTICLE III.    CLASSIFICATION OF CLAIMS AND INTERESTS.** ..................................... 11

    3.1  *Classification in General* ................................................................................................ 11

    3.2  *Grouping of Debtors for Convenience Only* ................................................................... 11

    3.3  *Summary of Classification.* ............................................................................................. 11

    3.4  *Special Provision Governing Unimpaired Claims.* .......................................................... 11

    3.5  *Elimination of Vacant Classes.* ....................................................................................... 12

**ARTICLE IV.    TREATMENT OF CLAIMS AND INTERESTS.** ............................................. 12

    4.1  *Priority Non-Tax Claims (Class 1).* ................................................................................ 12

    4.2  *Other Secured Claims (Class 2).* .................................................................................... 12

    4.3  *Secured Mortgage Claims (Class 3).* .............................................................................. 13

    4.4  *General Unsecured Claims (Class 4).* ............................................................................. 13

    4.5  *Existing Equity Interests (Class 5).* ................................................................................ 14

**ARTICLE V.    MEANS FOR IMPLEMENTATION.** .................................................................. 14

    5.1  *Refinancing Transaction* ................................................................................................ 14

    5.2  *Sale Transaction.* ............................................................................................................ 15

    5.3  *No Substantive Consolidation.* ....................................................................................... 18

    5.4  *Compromise and Settlement of Claims, Interests, and Controversies* ............................. 19

    5.5  *Transactions; Effectuating Documents* ........................................................................... 19

    5.6  *Corporate Governance.* .................................................................................................. 20

    5.7  *Section 1145 Exemption* ................................................................................................. 20

    5.8  *Cancellation of Existing Securities and Agreements.* ...................................................... 20

    5.9  *Retention of Causes of Action* ........................................................................................ 21

i

5.10    *Cancellation of Liens.* ..................................................................................... 21

5.11    *Nonconsensual Confirmation.* ........................................................................ 22

5.12    *Closing of Chapter 11 Cases.* ......................................................................... 22

5.13    *Notice of Effective Date.* ................................................................................ 22

5.14    *Separability.* ................................................................................................... 22

**ARTICLE VI.    DISTRIBUTIONS. ............................................................................. 22**

6.1    *Distributions Generally.* .................................................................................. 22

6.2    *Distribution Record Date.* ............................................................................... 23

6.3    *Date of Distributions.* ..................................................................................... 23

6.4    *Disbursing Agent.* ........................................................................................... 23

6.5    *Rights and Powers of Disbursing Agent.* ........................................................ 23

6.6    *No Postpetition Interest on Claims.* ................................................................ 24

6.7    *Delivery of Distributions.* ............................................................................... 24

6.8    *Distributions after Effective Date.* .................................................................. 24

6.9    *Unclaimed Property.* ....................................................................................... 24

6.10    *Time Bar to Cash Payments* .......................................................................... 24

6.11    *Manner of Payment under Plan.* .................................................................... 25

6.12    *Satisfaction of Claims.* .................................................................................. 25

6.13    *Minimum Cash Distributions* ......................................................................... 25

6.14    *Setoffs and Recoupments.* ............................................................................. 25

6.15    *Allocation of Distributions between Principal and Interest* ......................... 25

6.16    *No Distribution in Excess of Amount of Allowed Claim.* .............................. 25

6.17    *Withholding and Reporting Requirements.* .................................................... 25

**ARTICLE VII.    PROCEDURES FOR DISPUTED CLAIMS........................................... 26**

7.1    *Objections to Claims.* ...................................................................................... 26

7.2    *Resolution of Disputed Administrative Expenses and Disputed Claims.* ............... 26

7.3    *Payments and Distributions with Respect to Disputed Claims.* ........................... 27

7.4    *Distributions after Allowance.* ........................................................................ 27

7.5    *Disallowance of Claims.* ................................................................................. 27

7.6    *Estimation of Claims.* ..................................................................................... 27

7.7    *Holdback on Account of Disputed Claims.* ..................................................... 27

7.8    *Claim Resolution Procedures Cumulative* ..................................................... 28

7.9    *Interest.* ........................................................................................................... 28

**ARTICLE VIII.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES. ................ 28**

8.1    *General Treatment.* .......................................................................................... 28

| | | |
|---|---|---|
| 8.2 | *Determination of Cure Disputes and Deemed Consent.* | 29 |
| 8.3 | *Rejection Damages Claims.* | 30 |
| 8.4 | *Insurance Policies.* | 30 |
| 8.5 | *Assignment.* | 30 |
| 8.6 | *Reservation of Rights.* | 30 |
| 8.7 | *Modifications, Amendments, Supplements, Restatements, or Other Agreements.* | 31 |
| **ARTICLE IX.** | **CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND EFFECTIVE DATE.** | **31** |
| 9.1 | *Conditions Precedent to Confirmation of Plan.* | 31 |
| 9.2 | *Conditions Precedent to Effective Date.* | 31 |
| 9.3 | *Waiver of Conditions Precedent.* | 32 |
| 9.4 | *Effect of Non-Occurrence of Conditions to the Effective Date.* | 32 |
| **ARTICLE X.** | **EFFECT OF CONFIRMATION OF PLAN.** | **32** |
| 10.1 | *Vesting of Assets.* | 32 |
| 10.2 | *Binding Effect.* | 33 |
| 10.3 | *Discharge of Claims and Termination of Interests.* | 33 |
| 10.4 | *Term of Injunctions or Stays.* | 33 |
| 10.5 | *Injunction.* | 33 |
| 10.6 | *Exculpation.* | 34 |
| 10.7 | *Subordinated Claims.* | 34 |
| 10.8 | *Retention of Causes of Action/Reservation of Rights.* | 34 |
| 10.9 | *Solicitation of Plan.* | 35 |
| 10.10 | *Corporate and Limited Liability Company Action.* | 35 |
| **ARTICLE XI.** | **RETENTION OF JURISDICTION.** | **35** |
| 11.1 | *Retention of Jurisdiction.* | 35 |
| 11.2 | *Courts of Competent Jurisdiction.* | 37 |
| **ARTICLE XII.** | **MISCELLANEOUS PROVISIONS.** | **37** |
| 12.1 | *Payment of Statutory Fees.* | 37 |
| 12.2 | *Substantial Consummation of the Plan.* | 38 |
| 12.3 | *Plan Supplement.* | 38 |
| 12.4 | *Request for Expedited Determination of Taxes.* | 38 |
| 12.5 | *Exemption from Certain Transfer Taxes.* | 38 |
| 12.6 | *Amendments.* | 39 |
| 12.7 | *Effectuating Documents and Further Transactions.* | 39 |

12.8    ***Revocation or Withdrawal of the Plan***. ...................................................................... 39

12.9    ***Severability of Plan Provisions***. ................................................................................ 40

12.10   ***Governing Law***. ......................................................................................................... 40

12.11   ***Time***. ........................................................................................................................... 40

12.12   ***Dates of Actions to Implement the Plan***. .................................................................. 40

12.13   ***Immediate Binding Effect***. ......................................................................................... 40

12.14   ***Deemed Acts***. .............................................................................................................. 40

12.15   ***Successor and Assigns***................................................................................................. 41

12.16   ***Entire Agreement***. ....................................................................................................... 41

12.17   ***Exhibits to Plan***. ......................................................................................................... 41

12.18   ***Notices***......................................................................................................................... 41

Each of the Debtors proposes this joint chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code.  Capitalized terms used herein shall have the meanings set forth in Article I.A.

## ARTICLE I.          DEFINITIONS AND INTERPRETATION.

A.     **Definitions.**  The following terms shall have the respective meanings specified below:

1.1.     ***Administrative Expense Claim*** means any Claim for costs and expenses of administration during the Chapter 11 Cases pursuant to sections 327, 328, 330, 365, 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including, (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (ii) Fee Claims; (iii) all fees and charges assessed against the Estates pursuant to section 1911 through 1930 of chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930; (iv) any Allowed superpriority administrative expense Claim of the Mortgage Lender provided under section 507(b) of the Bankruptcy Code or the Final Cash Collateral Order; and (v) all Claims held by the Debtors arising from any Intercompany Loans.

1.2.     ***Allowed*** means any Claim against a Debtor, except to the extent paid and satisfied in accordance with the Plan: (a) (i) that is filed, and as to which (A) no objection to the allowance of such Claim has been asserted, or may be asserted, on or before the Claims Objection Deadline; (B) an objection to such Claim is asserted and such Claim is subsequently allowed pursuant to a Final Order; (C) such Claim is settled pursuant to an order of the Bankruptcy Court; or (D) such Claim is allowed pursuant to the Plan or any agreements related hereto and such allowance is approved and authorized by the Bankruptcy Court; or (ii) as to which there exists no requirement for the holder of a Claim to file such Claim under the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order; (b) (i) that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and (ii) for which no contrary Proof of Claim has been timely filed; or (c) allowed under the Plan or by a Final Order.

1.3.     ***Assets*** means all of the right, title, and interest in and to property of whatever type or nature (including real, personal, mixed, intellectual, tangible, and intangible property).

1.4.     ***Asset Purchase Agreement*** means any executed asset purchase agreement between a Debtor(s) and a Successful Bidder(s) memorializing the terms of a Successful Bid, together with all schedules and exhibits attached thereto.

1.5.     ***Assumption Schedule*** means the schedule of executory contracts and unexpired leases to be assumed or assumed and assigned pursuant to the Plan.

1.6.     ***Available Cash*** means, for any individual Debtor, the amount of the Equity Cushion *less* all amounts (a) necessary to pay holders of, Priority Tax Claims, Priority Non-Tax Claims, Other Secured Claims against such Debtor in accordance with the Plan (b) estimated and reserved by such Debtor to (i) adequately fund the reasonable and necessary projected costs to carry out the provisions of the Plan with respect to such Debtor on and after the Effective Date, including to fund the wind-down of the Debtor's estate, (ii) pay all fees payable under section 1930 of chapter 123 of title 28 of the United States Code, and (iii) fund and maintain any post-petition reserve requirements in connection with any agreements or otherwise.

1.7.     ***Bar Date*** means the date(s), if applicable, by which Proofs of Claim (including any Administrative Expense Claims) must be filed with respect to Claims against the Debtors, as ordered by the Bankruptcy Court pursuant to the Confirmation Order or other applicable order of the Bankruptcy Court.

1.8.     ***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. § 101, et seq., as amended from time to time, as applicable to the Chapter 11 Cases.

1.9.     ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases.

1.10.     ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.11.     ***Bidding Procedures*** means the Bidding Procedures attached as **Exhibit 1** to the Bidding Procedures Order (as modified, supplemented or amended from time to time in accordance therewith).

1.12.     ***Bidding Procedures Order*** means the *Order (I) Approving (A) Bidding Procedures and (B) Assumption and Assignment Procedures, (II) Authorizing the Debtors to Offer Stalking Horse Bid Protections, and (III) Granting Related Relief* entered by the Bankruptcy Court on October 1, 2025 [ECF No. 571].

1.13.     ***Business Day*** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.14.     ***Cash*** means legal tender of the United States of America.

1.15.     ***Cause of Action*** means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, loss, debt, damage, judgment, account, defense, remedies, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws).  Causes of Action also includes:  (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.16.     ***Chapter 11 Cases*** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court.

1.17.     ***Claim*** has the meaning set forth in section 101(5) of the Bankruptcy Code, as against any Debtor.

1.18.     ***Claims Objection Deadline*** means the later of (a) one-hundred and eighty (180) days after the Effective Date, and (b) such later date as may be fixed by the Bankruptcy Court (as the same may be extended by the Bankruptcy Court).

1.19.     ***Class*** means any group of Claims or Interests classified as set forth in Article III of the Plan.

1.20.    ***Confirmation Date*** means, for any individual Debtor, the date on which the Clerk of the Bankruptcy Court enters a Confirmation Order for such Debtor with respect to the Plan.

1.21.    ***Confirmation Hearing*** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned, reconvened, or continued from time to time.

1.22.    ***Confirmation Order*** means an order of the Bankruptcy Court confirming the Plan for a Debtor(s) pursuant to section 1129 of the Bankruptcy Code.

1.23.    ***Consummation*** means the occurrence of the Effective Date of the Plan for a Debtor.

1.24.    ***Cure Amount*** means the amount necessary to (a) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease of the Debtors and (b) permit the Debtors to assume or assume and assign such executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

1.25.    ***Debtors*** means Broadway Realty I Co., LLC and its debtor affiliates, as debtors and debtors in possession in the Chapter 11 Cases (and each, a "***Debtor***").

1.26.    ***Debtor Properties*** means the properties listed on <u>Annex 1</u> hereto (and each, a "***Debtor Property***").

1.27.    ***Definitive Documents*** means the documents governing the Transactions, including all agreements, instruments, pleadings, orders, forms, and other documents (including all exhibits, schedules, supplements, appendices, annexes, instructions, and attachments thereto) that are utilized to implement or effectuate, or that otherwise relate to, the Transactions, including but not limited to each of the following: (i) the Disclosure Statement and any Solicitation Materials; (ii) the Disclosure Statement Order and any motion seeking entry by the Bankruptcy Court of the Disclosure Statement Order; (iii) the Plan; (iv) the Plan Supplement; (v) the Confirmation Order; (vi) the Final Cash Collateral Order, (vii) the Bidding Procedures, (viii) the Bidding Procedures Order, and (ix) the Asset Purchase Agreement(s).

1.28.    ***Disallowed*** means a Claim against a Debtor, or any portion thereof, (a) that has been disallowed by a Final Order of the Bankruptcy Court, a settlement, or the Plan; (b) that is listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been filed; or (c) that is not listed in the Debtors' Schedules and as to which a Bar Date has been established but no Proof of Claim has been filed***.***

1.29.    ***Disbursing Agent*** means any Entity (including the Plan Administrator or any applicable Debtor or Reorganized Debtor if it acts in such capacity) in its capacity as a disbursing agent under Article VI of the Plan.

1.30.    ***Disclosure Statement*** means the disclosure statement for the Plan, as approved by the Bankruptcy Court pursuant to the Disclosure Statement Order.

1.31.    ***Disclosure Statement Order*** means the order entered by the Bankruptcy Court finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code and authorizing solicitation of the Plan.

1.32.    ***Disputed*** means with respect to a Claim or Interest, any such Claim or Interest (a) that is neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code; (b) that has not been Allowed or paid and satisfied in accordance

with the Plan and is listed as unliquidated, contingent or disputed in the Schedules; or (c) for which a Proof of Claim for payment has been made and related to which the Debtors or any party in interest has interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order.  If the Debtors or a party in interest dispute only a portion of a Claim, such Claim shall be deemed Allowed in any amount the Debtors or such party in interest do not dispute, and shall be deemed Disputed as to the balance of such Claim.

1.33.    ***Disputed Holdback*** means the Cash held back from Plan distributions on account of Disputed Claims in accordance with Section 7.7 hereof.

1.34.    ***Distribution Record Date*** means, except as otherwise provided in this Plan, the Effective Date.

1.35.    ***Effective Date*** means the date on which all conditions to the effectiveness of the Plan set forth in Article IX hereof have been satisfied or waived in accordance with the terms of the Plan.

1.36.    ***Entity*** has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.37.    ***Equity Cushion*** means, for any individual Debtor, the amount, if any, of any Transaction Consideration received by the applicable Estate(s) from a Successful Bid remaining after payment in full of all applicable Allowed Secured Mortgage Claims and Administrative Expense Claims.

1.38.    ***Escrow Amount*** means the sum of (i) all unpaid fees required to be paid to the Clerk of the Court and to the US Trustee under section 1930(a) of title 28 of the United States Code and (ii) all unpaid fees and expenses incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code at any time.

1.39.    ***Escrow Account*** has the meaning ascribed to such term in the Final Cash Collateral Order.

1.40.    ***Estate or Estates*** means, individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.41.    ***Exculpated Parties*** means, collectively, in each case, solely in their capacities as such: (a) the Debtors and the Estates; (b) the Debtors' directors, officers, and managing members; (c) the Professionals; (d) the Mortgage Lender and its professional advisors (e) with respect to each of the foregoing Entities in clauses (a) through (e), such Entities' successors and assigns.

1.42.    ***Existing Equity Interests*** means, with respect to an applicable Debtor, all Interests in such Debtor.

1.43.    ***Fee Claim*** means a Claim for professional services rendered or out-of-pocket costs incurred on or after the Petition Date through the Effective Date by Professionals.

1.44.    ***Final Cash Collateral Order*** means the *Final Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, and (III) Granting Related Relief*, entered by the Bankruptcy Court on September 22, 2025 [ECF No. 551].

1.45.    ***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial,

reargument, or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided, that, no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

1.46.    ***General Unsecured Claim*** means any unsecured Claim against a Debtor, including any Mortgage Deficiency Claim, that is not (i) an Administrative Expense Claim; (ii) a Priority Tax Claim; (iii) an Other Secured Claim; (iv) a Priority Non-Tax Claim; (v) a Secured Mortgage Claim; or (vii) any Claim arising under 11 U.S.C. § 510(b).

1.47.    ***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.48.    ***Impaired*** means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.49.    ***Intercompany Loan*** has the meaning ascribed to such term in the Final Cash Collateral Order.

1.50.    ***Interests*** means any equity security (as defined in section 101(16) of the Bankruptcy Code), including all common stock, preferred stock, or other instruments evidencing an ownership interest, whether or not transferable, and any option, warrant, right, or any other interest that is exercisable, convertible, or exchangeable into equity, contractual or otherwise, including equity or equity-based incentives, grants, or other instruments issued, granted, or promised to be granted to current or former employees, directors, officers, or contractors, to acquire any such interests that existed immediately before the Petition Date.

1.51.    ***Interim Compensation Order*** means the order of the Bankruptcy Court approving and authorizing procedures for the payment of interim Fee Claims prior to the Effective Date.

1.52.    ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.53.    ***Liquidating Debtor*** means any Debtor to be wound down, liquidated, and dissolved in accordance with the Plan following consummation of an applicable Sale Transaction.

1.54.    ***Mortgage Claim*** means, with respect to each applicable Mortgage Loan (i) the Secured Mortgage Claim and (ii) the Mortgage Deficiency Claim, if any.

1.55.    ***Mortgage Collateral*** has the meaning ascribed to such term in the Final Cash Collateral Order.

1.56.    ***Mortgage Deficiency Claim*** means any Mortgage Claim that is not a Secured Mortgage Claim.

1.57.    ***Mortgage Lender*** means Flagstar Bank, N.A., in its capacity as prepetition lender to each of the Debtors under the Mortgage Loan Documents.

1.58.    **Mortgage Loan Documents** has the meaning ascribed to such term in the Final Cash Collateral Order.

1.59.    **Mortgage Liens** means the liens and security interests securing the Mortgage Loans.

1.60.    **Mortgage Loans** means the first lien, property-level, note and mortgage held by the Mortgage Lender, with the applicable Debtor(s) as borrower thereunder.

1.61.    **Notice of Successful Bidder** means the notice filed with the Bankruptcy Court in accordance with the Bidding Procedures identifying, among other things, the Successful Bid and Back-Up Bid for the applicable Debtor Properties.

1.62.    **OCP Order** means the *Order Authorizing Debtors to Employ Professionals Used in the Ordinary Course of Business* entered by the Bankruptcy Court on August 19, 2025 [ECF No. 432].

1.63.    **Other Secured Claim** means a Secured Claim, other than an Administrative Expense Claim, a Secured Mortgage Claim, or a Priority Tax Claim.

1.64.    **Person** has the meaning set forth in section 101(41) of the Bankruptcy Code.

1.65.    **Petition Date** means May 21, 2025, the date on which the Debtors commenced the Chapter 11 Cases.

1.66.    **Plan** means this joint chapter 11 plan of the Debtors, including all appendices, exhibits, schedules, and supplements hereto (including any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.67.    **Plan Administrator** has the meaning set forth in Section 5.1 of the Plan.

1.68.    **Plan Administrator Agreement** means the agreement providing for the appointment, pursuant to this Plan, of the Plan Administrator to oversee the wind down, liquidation and dissolution of any Liquidating Debtors.

1.69.    **Plan Administrator Reserve** means $[•] reserved by the Debtors solely for the funding of the fees and expenses of the Plan Administrator acting in accordance with the Plan.

1.70.    **Plan Supplement** means a supplemental appendix to the Plan containing, among other things, substantially final forms of documents, schedules, and exhibits to the Plan to be filed with the Bankruptcy Court as soon as practicable prior to the Confirmation Hearing, including the following: (a) each Notice of Successful Bid; (b) the Assumption Schedule; (c) each applicable Asset Purchase Agreement; (d) the Plan Administrator Agreement (if applicable); and (e) to the extent known, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code.  The Plan Supplement shall be filed with the Bankruptcy Court not later than seven (7) calendar days prior to the earlier of the Voting Deadline and the deadline to object to confirmation of the Plan; provided, that, through the Effective Date, the Debtors shall have the right to amend and supplement the Plan Supplement and any schedules, exhibits, or amendments thereto in accordance with the terms of the Plan.

1.71.    **Post-Emergence Entity** means, as of and following the Effective Date, the (a) Reorganized Debtors, or (b) the Liquidating Debtors, as applicable.

1.72.    ***Priority Non-Tax Claim*** means any Claim, other than an Administrative Expense Claim, Other Secured Claim, or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

1.73.    ***Priority Tax Claim*** means any Secured Claim or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.74.    ***Pro Rata*** means, as applicable, (a) the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims and Disputed Claims in such Class; or (b) the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims in a particular Class and other Classes entitled to share in the same recovery as such Class under the Plan.

1.75.    ***Professional*** means professional persons or firms retained by the Debtors by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Cases (including any fees of a professional held back pursuant to the Interim Compensation Order).

1.76.    ***Proof of Claim*** means a proof of Claim filed in the Chapter 11 Cases.

1.77.    ***Refinancing Transaction*** means a refinancing of the Mortgage Claims pursuant to a Successful Bid.

1.78.    ***Reinstate, Reinstated, or Reinstatement*** means rendering a Claim Unimpaired under the Plan pursuant to section 1124(a)(2) of the Bankruptcy Code.

1.79.    ***Rejection Damages Claim*** means any Claim for damages resulting from or based on the Debtors' rejection of an executory contract or unexpired lease.

1.80.    ***Reorganized Debtor*** means any Debtor to be reorganized in accordance with the Plan following consummation of an applicable Refinancing Transaction, including any successor thereto.

1.81.    ***Sale Transaction*** means a sale of one or more Debtor Properties and any related Assets pursuant to a Successful Bid, including without limitation, any sale to the Mortgage Lender as part of a credit bid pursuant to section 363(k) of the Bankruptcy Code, and any sale pursuant to section 363 of the Bankruptcy Code to be implemented pursuant to the Plan.

1.82.    ***Secured Claim*** means a Claim (a) secured by a Lien on collateral to the extent of the value of such collateral as (i) set forth in the Plan; (ii) agreed to by the holder of such Claim and the Debtors; or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

1.83.    ***Secured Mortgage Claim*** means any Allowed Secured Claim held by the Mortgage Lender against the applicable Debtor(s), arising under the applicable Mortgage Loan Documents in an amount equal to the principal amount outstanding as of the Petition Date, plus all applicable prepetition fees, costs, and costs of collection, plus any and all other amounts required to be paid under and in connection with the applicable Mortgage Loan Documents.

1.84.    **Schedules** means, collectively, the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

1.85.    **Security** has the meaning set forth in section 101(49) of the Bankruptcy Code.

1.86.    **Solicitation Materials** means all materials provided in connection with the solicitation of votes on the Plan pursuant to sections 1125 and 1126 of the Bankruptcy Code

1.87.    **Successful Bid** means the Qualified Bid (as defined in the Bidding Procedures) selected by the Debtors in accordance with the Bidding Procedures as the highest or otherwise best Qualified Bid for the applicable Debtor Properties or other Assets.

1.88.    **Successful Bidder** means the bidder submitting the applicable Successful Bid.

1.89.    **Statutory Fees** means all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, including interest, if any, pursuant to section 3717 of title 31 of the United States Code.

1.90.    **Transaction** means either a Refinancing Transaction or a Sale Transaction, as applicable.

1.91.    **Transaction Consideration** means (i) in the event of a Sale Transaction, the purchase price to be paid pursuant to a Successful Bid, and (ii) in the event of a Refinancing Transaction, all new capital provided to the applicable Debtor(s) under the applicable Successful Bid, including all amounts allocated to the payment and/or refinancing of the applicable Mortgage Claims.

1.92.    **Unimpaired** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.93.    **U.S. Trustee** means the Office of the United States Trustee for the District of Delaware.

1.94.    **Voting Deadline** means the date set by the Bankruptcy Court by which all completed ballots must be received, which date may be extended by the Debtors in accordance with the Disclosure Statement Order.

B.    **Interpretation; Application of Definitions and Rules of Construction**.

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender, (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions, (3) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto, (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, and (5) any term used in capitalized form herein that is not otherwise defined

but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

      C.      **Reference to Monetary Figures**.

      All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

      D.      **Controlling Document**.

      In the event of an inconsistency between the terms and provisions in the Plan (without reference to the Plan Supplement) and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan (including any Definitive Document) or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), the Plan (without reference to the Plan Supplement) shall govern and control.  Notwithstanding anything herein to the contrary, in the event of a conflict between the Confirmation Order, on the one hand, and any of the Plan, the Plan Supplement, or the Definitive Documents, on the other hand, the Confirmation Order shall govern and control in all respects.

      E.      **Certain Consent Rights**.

      Notwithstanding anything in the Plan to the contrary, any Definitive Document, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I hereof) and fully enforceable as if stated in full herein.

## ARTICLE II.          ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.

      2.1      *Administrative Expense Claims*.

      (a)      Except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtor or the Plan Administrator agree to less favorable treatment, each holder of an Allowed Administrative Expense Claim (other than a Fee Claim) shall receive, in full and final satisfaction of such Claim, and in each case, subject to the priorities of such Allowed Administrative Expense Claims set forth in the Final Cash Collateral Order, Cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, unless otherwise required by a Final Order; provided that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors shall be paid by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

      (b)      Except as provided for herein or in any order of the Bankruptcy Court, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of Administrative Expense Claims (other than Fee Claims, Claims on account of an Intercompany Loan, and Statutory Fees) must file and serve on the Debtors requests for the payment of such Administrative Expense Claims not already Allowed by a Final Order in accordance with the procedures specified in the Confirmation Order, on or before the applicable Bar Date or be forever barred, estopped, and enjoined from asserting such Claims against the Debtors or their Assets.

2.2     *Fee Claims*.

(a)     All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file with the Bankruptcy Court, on or before the date that is forty-five (45) days after the Effective Date, their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred from the Petition Date through the Effective Date.  Objections to any Fee Claims must be filed and served on counsel to the Debtors, the U.S. Trustee, and the requesting party no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the Debtors and the party requesting compensation of a Fee Claim).

(b)     Allowed Fee Claims shall be paid in full, in Cash from the Escrow Account and in such amounts as are Allowed by the Bankruptcy Court (i) first, upon entry of an order relating to any such Allowed Fee Claim being entered, or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtors.  Notwithstanding the foregoing, any Fee Claims that are authorized to be paid pursuant to any administrative orders entered by the Bankruptcy Court, including the Interim Compensation Order, may be paid at the times and in the amounts authorized pursuant to such orders.

(c)     The Debtors shall continue to fund the Escrow Account on the terms set forth in the Final Cash Collateral Order through the Effective Date.  On or prior to the Effective Date, holders of Fee Claims shall provide a reasonable estimate of any Fee Claims to be incurred in rendering services before the Effective Date to the Debtors and, to the extent such amounts are not already included in the Escrow Amount, the Debtors shall include such estimated amounts in the Escrow Amount for the benefit of the holders of the Fee Claims until the fee applications related thereto are resolved by Final Order or agreement of the parties.  If a holder of a Fee Claim does not provide an estimate of such amounts, the Debtors may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Fee Claim.  When all such Allowed Fee Claims have been paid in full, any remaining amount in the Escrow Account shall promptly be released from the Escrow Account and revert to, and ownership thereof shall vest in, the applicable Post-Emergence Entity, without any further action or order of the Bankruptcy Court.

(d)     The applicable Post-Emergence Entity is authorized and directed to pay compensation for services rendered or reimbursement of expenses incurred by any Professional after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

2.3     *Priority Tax Claims*.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Tax Claim, at the option of the Debtors:  (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (iii) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due, or (b) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

## ARTICLE III.          CLASSIFICATION OF CLAIMS AND INTERESTS.

3.1     *Classification in General*.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; provided, that, a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

3.2     *Grouping of Debtors for Convenience Only*.

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, confirmation of the Plan, and distributions in accordance with the Plan in respect of Claims against and Interests in the Debtors under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal Entity, result in substantive consolidation of any Estates, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any Assets.  Except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal Entities after the Effective Date.

3.3     *Summary of Classification*.

The following table designates the Classes of Claims against and Interests in each of the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (c) presumed to accept or deemed to reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified.  The classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.  All of the potential Classes for the Debtors are set forth herein.  Certain of the Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Section 3.5 of the Plan.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | No (Presumed to Accept) |
| 3 | Secured Mortgage Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | No (Deemed to Reject) |
| 5 | Existing Equity Interests | Impaired | No (Deemed to Reject) |

3.4     *Special Provision Governing Unimpaired Claims*.

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the applicable Post-Emergence Entities in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

3.5  *Elimination of Vacant Classes*.

Any Class of Claims against or Interests in a Debtor that, as of the commencement of the Confirmation Hearing, does not have at least one (1) holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan of such Debtor for purposes of voting to accept or reject such Debtor's Plan, and disregarded for purposes of determining whether such Debtor's Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

3.6  *Voting Classes; Presumed Acceptance by Non-Voting Classes*.

With respect to each Debtor, if a Class contained Claims eligible to vote and no holder of Claims eligible to vote in such Class votes to accept or reject this Plan by the Voting Deadline, this Plan shall be presumed accepted by the holders of such Claims in such Class.

## ARTICLE IV.  TREATMENT OF CLAIMS AND INTERESTS.

4.1  <u>Priority Non-Tax Claims (Class 1)</u>.

a)  **Classification**: Class 1 consists of Priority Non-Tax Claims.

b)  **Treatment**:  Except to the extent that a holder of an Allowed Priority Non-Tax Claim against any Debtor agrees to a less favorable treatment of such Claim, in full and final satisfaction of such Allowed Priority Non-Tax Claim, at the option of the applicable Debtor(s) or the Post-Emergence Entities, (i) each such holder shall receive payment in Cash in an amount equal to the amount of such Allowed Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, in each case, or as soon as reasonably practicable thereafter; or (ii) such holder shall receive such other treatment so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

c)  **Voting**:  Class 1 is Unimpaired, and the holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Priority Non-Tax Claims.

4.2  <u>Other Secured Claims (Class 2)</u>.

a)  **Classification**:  Class 2 consists of Other Secured Claims.  To the extent that the Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 2 for purposes of voting to accept or reject the Plan and receiving distributions under the Plan.

b)  **Treatment**:  Except to the extent that a holder of an Allowed Other Secured Claim against any Debtor agrees to a less favorable treatment of such Claim, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the applicable Debtor(s) or Post-Emergence Entities, (i) each such holder shall receive payment in Cash in an amount equal to the amount of such Allowed Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter; (ii) such holder's Allowed Other Secured Claim shall be Reinstated; (iii) such holder shall receive the collateral securing its Allowed Other Secured Claim; or

(iv) such holder shall receive such other treatment so as to render such holder's Allowed Other Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

       c)    **Voting**: Class 2 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Other Secured Claims.

    4.3    **Secured Mortgage Claims (Class 3).**

       a)    **Classification**: Class 3 consists of Secured Mortgage Claims.

       b)    **Treatment**: On the Effective Date, the Mortgage Lender shall receive the following treatment, in full and final satisfaction, settlement, release and discharge of the Secured Mortgage Claims against the applicable Debtor:

      (i) In the event of a Refinancing Transaction: Cash in the amount of its Allowed Secured Mortgage Claim, or such other treatment as agreed to by the Mortgage Lender in connection with the applicable Refinancing Transaction; *provided* however, in no event shall the Mortgage Lender receive more than 100% of its Allowed Secured Mortgage Claim.

      (ii) In the event of a Sale Transaction:

         A. If the Mortgage Lender is the Successful Bidder: (x) the Debtor Property held by each Debtor subject to the Successful Bid(s) and any other transferred Assets identified in the applicable Asset Purchase Agreement, and (y) to the extent not identified in the applicable Successful Bid: (1) any proceeds of any Debtor Causes of Action, and (2) any Mortgage Collateral securing the applicable Secured Mortgage Claim; *provided* however, in no event shall the Mortgage Lender receive more than 100% of its Allowed Secured Mortgage Claim.

         B. If the Mortgage Lender is not the Successful Bidder: (x) the proceeds of the Transaction Consideration provided under the applicable Asset Purchase Agreement for the Successful Bid, and (y) to the extent not identified in the applicable Successful Bid: (1) any proceeds of any Debtor Causes of Action, and (2) any Mortgage Collateral securing the applicable Secured Mortgage Claim; *provided* however, in no event shall the Mortgage Lender receive more than 100% of its Allowed Secured Mortgage Claim.

       c)    **Voting**: Class 3 may be Impaired, and the holder of the Secured Mortgage Claims in Class 3 may be entitled to vote to accept or reject the Plan.

    4.4    **General Unsecured Claims (Class 4).**

       a)    **Classification**: Class 4 consists of General Unsecured Claims, including any Mortgage Deficiency Claims and Rejection Damages Claims.

13

b)      **Treatment**:  Except to the extent that a holder of an Allowed General Unsecured Claim against a Debtor agrees to less favorable treatment with the Debtors or the Post-Emergence Entities, as applicable, in full and final satisfaction, settlement, release, and discharge of an Allowed General Unsecured Claim, each such holder thereof shall receive its *pro rata* share of Available Cash up to the Allowed amount of such General Unsecured Claim.

c)      **Voting**:  Class 4 is Impaired, and the holders of the General Unsecured Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The holders of General Unsecured Claims are not entitled to vote to accept or reject the Plan.

4.5      **Existing Equity Interests (Class 5)**.

a)      **Classification**:  Class 5 consists of Existing Equity Interests.

b)      **Treatment**:  On the Effective Date, each holder of Existing Equity Interests shall receive the following treatment in full and final satisfaction, settlement, release and discharge of such Existing Equity Interest:

(i)  In the event of a Refinancing Transaction: The Existing Equity Interests of the Debtor(s) party to the Refinancing Transaction(s) shall, subject to the waterfall and priorities set forth in section 1129(b)(2) of the Bankruptcy Code, be Reinstated for the benefit of the holders of such former Existing Equity Interests consistent with their former economic entitlements.

(ii) In the event of a Sale Transaction:  The holders of Existing Equity Interests of the Debtor(s) party to the Sale Transaction(s) shall receive any remaining Available Cash after payment in full of General Unsecured Claims in accordance with Section 4.4 hereof, and, following the final distribution of all such Available Cash, such Existing Equity Interests shall be cancelled for no further consideration.

c)      **Voting**:  Class 5 is Impaired, and the holders of the Existing Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The holders of Existing Equity Interests are not entitled to vote to accept or reject the Plan.

d)      Therefore, holders of Existing Equity Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Existing Equity Interests.

## ARTICLE V.          MEANS FOR IMPLEMENTATION.

5.1      *Refinancing Transaction* .

The following provisions of this Section 5.1 shall apply in the event of a Refinancing Transaction:

(a)      *Closing; Distributions*.

(i)      Each Debtor shall consummate the Refinancing Transaction contemplated by such Successful Bid(s), and upon making the Plan distributions in accordance with Article IV hereof, subject to Section 5.8(b) of the Plan, the existing Mortgage Loan(s)

subject to such Refinancing Transaction shall be deemed fully released, cancelled, discharged and of no force or effect, and the related Mortgage Claims shall be deemed fully satisfied.

(ii)    Any post-Effective Date distributions shall be made by the Reorganized Debtors in an expeditious, timely, and orderly manner pursuant to the Plan and the Confirmation Order.

(b)    ***Granting of Liens.***

(i)    All Liens and security interests granted pursuant to the Refinancing Transaction shall be (a) valid, binding, and enforceable Liens and security interests in the personal and real property described in and subject to such documents, with the priorities established in respect thereof under applicable non-bankruptcy law, and (b) not subject to avoidance, recharacterization or subordination under any applicable law, the Plan, or the Confirmation Order.

(ii)    The applicable Reorganized Debtors and the Persons granted Liens and security interests pursuant to the Refinancing Transaction are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order without the need for any filings or recordings) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

(c)    ***Implementation of the Plan.***

(i)    Each Reorganized Debtor shall be authorized, without further action of the Bankruptcy Court (unless otherwise indicated), to otherwise carry out and implement all provisions of this Plan, including, without limitation to: (a) control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against such Debtor or Reorganized Debtor, as applicable; (b) prosecute all Causes of Action, elect not to purpose any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as determined in such Reorganized Debtors' reasonable business judgment to be in the best interests of such Debtor and its Estate; (c) retain professionals to assist in performing its duties under this Plan; (d) maintain its books, records, and accounts; and (d) complete and file, as necessary, all required federal, state, and local tax returns.

5.2    ***Sale Transaction***.

The following provisions of this Section 5.2 shall apply in the event of a Sale Transaction:

(a)    ***Closing; Distributions.***

(i)    In accordance with the applicable Asset Purchase Agreement, the Bidding Procedures, and this Plan, each Debtor shall consummate the applicable Sale Transaction

15

contemplated by the Successful Bid(s), and, among other things, the applicable Debtor Properties and any other of the Assets (including executory contracts and unexpired leases assumed and assigned to the Successful Bidders pursuant to Article VIII hereof), as applicable, shall be transferred to and vest in the applicable Successful Bidder free and clear of all Liens, Claims, charges, or other encumbrances pursuant to the applicable Asset Purchase Agreement (or such other applicable order of the Bankruptcy Court).

(ii)     Each Debtor shall consummate the Sale Transaction contemplated by such Successful Bid(s), and upon making the Plan distributions in accordance with Article IV hereof, subject to Section 5.8(b) of the Plan, the existing Mortgage Loan(s) subject to such Sale Transaction shall be deemed fully released, cancelled, discharged and of no force or effect, and the related Mortgage Claims shall be deemed fully satisfied.

(iii)    Any post-Effective Date distributions shall be made by the Plan Administrator, on behalf of the Liquidating Debtors, in an expeditious, timely, and orderly manner pursuant to the Plan and the Confirmation Order.

(b)     ***Plan Administrator.***

(i)     *Appointment*.  The Plan Administrator shall be mutually acceptable to the Debtors and the Mortgage Lender.  Upon the occurrence of the Effective Date, [●] shall serve as the initial Plan Administrator for each of the Liquidating Debtors following consummation of the applicable Sale Transaction implemented pursuant to the Plan.

(ii)    *Authority*.  Subject to Section 5.6 of the Plan, upon the Effective Date, the Plan Administrator shall have the authority and right on behalf of each Liquidating Debtor, without the need for Bankruptcy Court approval (unless otherwise indicated) or any action of the Liquidating Debtors or their officers, directors, or managers, to carry out and implement all provisions of the Plan, including, without limitation, to:

A.   except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Liquidating Debtors;

B.   make Distributions to holders of Allowed Claims in accordance with the Plan;

C.   exercise its reasonable business judgment to direct and control the wind down, liquidation, sale and/or abandoning of the remaining assets of the Debtors under the Plan and in accordance with applicable law as necessary to maximize Plan distributions to holders of Allowed Claims against the Liquidating Debtors;

D.   prosecute all Causes of Action not transferred pursuant to a Successful Bid, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the Liquidating Debtors;

  E. make payments to existing professionals who will continue to perform in their current capacities;

  F. retain professionals to assist in performing its duties under the Plan;

  G. maintain the books and records and accounts of the Liquidating Debtors;

  H. invest Cash of the Debtors, including any Cash proceeds realized from the liquidation of any assets of the Liquidating Debtors, including any Causes of Action, and any income earned thereon;

  I. incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

  J. administer each Liquidating Debtor's tax obligations, including (i) filing tax returns or other tax forms, making tax elections, and paying tax obligations, (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Commencement Date through the liquidation of such Liquidating Debtor as determined under applicable tax laws and (iii) representing the interest and account of each Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

  K. prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Liquidating Debtors that are required hereunder, by any Governmental Unit or applicable law;

  L. pay statutory fees in accordance with the Plan; and

  M. perform other duties and functions that are consistent with the implementation of the Plan.

  (iii) *Fees and Expenses*. From and after the Effective Date, the Plan Administrator, shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable expenses (including professional fees) incurred by the Plan Administrator and any professionals retained by the Plan Administrator from the Plan Administrator Reserve. The Plan Administrator Reserve shall only be used to pay the reasonable expenses (including professional fees) incurred by the Plan Administrator and any professionals retained by the Plan Administrator.

  (iv) *Privilege and Work Product*. All of the privileges and work product of the Debtors, including but not limited to any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral), related to the Causes of Action, shall be vested in and maintained by the Plan Administrator. Subject to the Plan Administration Agreement, the Plan Administrator, in its sole discretion, will have exclusive authority to waive or not waive such privileges of the Debtors.

(c)      ***Officers and Directors***.

(i)      As of the Effective Date, the existing board of directors or managers, as applicable, of the Liquidating Debtors shall be dissolved without any further action required on the part of the Debtors or the Liquidating Debtors' or any of their respective officers, directors, managers, shareholders, or members, and any remaining officers, managers, or managing members of any Liquidating Debtor shall be dismissed without any further action required on the part of any such Debtor, or the members of any Debtor.

(d)      ***Wind Down and Dissolution of Liquidating Debtors***.

(i)      Upon the Effective Date: (i) the authority, power and incumbency of the persons then acting as directors and officers of the Liquidating Debtors shall be terminated and such directors and officers shall be deemed to have resigned, (ii) the Plan Administrator shall have the powers of an officer of such Liquidating Debtors, (iii) the Plan Administrator shall be deemed to hold 100% of the Equity Interests in the Liquidating Debtors until the dissolution of such Liquidating Debtors pursuant this Section 5.6 of the Plan, (iv) the Liquidating Debtors shall assign and transfer absolutely and unconditionally to the Plan Administrator all of their remaining Assets after accounting for all distributions made in accordance with Article IV hereof.

(ii)      Subject in all respects to the terms of the Plan, as soon as practicable after the Effective Date, the Liquidating Debtors or the Plan Administrator shall, without having to obtain stockholder, board, director, manager, member or equivalent approval, file for the Liquidating Debtors a certificate of dissolution, certificate of cancellation, or such similar document for each Liquidating Debtor, together with all other necessary corporate and company documents, to effect the dissolution or termination of the existence of the Liquidating Debtors under the applicable laws of their state of incorporation or formation (as applicable), and take any such other actions as the Liquidating Debtors or the Plan Administrator may determine to be necessary or desirable to implement the wind down of the Liquidating Debtors.

(e)      ***Implementation of the Plan***.

(i)      The Liquidating Debtors and the Plan Administrator shall be authorized, without further action of the Bankruptcy Court (unless otherwise indicated), to otherwise carry out and implement all provisions of this Plan, including, without limitation to: (A) control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against such Liquidating Debtor; (B) prosecute all Causes of Action, elect not to purpose any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as determined in such Liquidating Debtors' reasonable business judgment to be in the best interests of such Liquidating Debtor and its Estate; (C) retain professionals to assist in performing its duties under this Plan; (D) maintain its books, records, and accounts; and (E) complete and file, as necessary, all required federal, state, and local tax returns or forms.

5.3      ***No Substantive Consolidation***.

The Plan is being proposed as a joint chapter 11 plan for each of the Debtors for administrative purposes only and constitutes a separate, independent chapter 11 plan for each Debtor.  The

Plan is not premised on, and does not provide for, the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan, or otherwise.

5.4     ***Compromise and Settlement of Claims, Interests, and Controversies***.

The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Debtors may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

5.5     ***Transactions; Effectuating Documents***.

(a)     Upon the Effective Date, each Post-Emergence Entity (including, if applicable, the Plan Administrator) may take all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and the Transactions, including (i) the execution and delivery of appropriate agreements, including the Asset Purchase Agreements, or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, cancellation, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, cancellation, or dissolution pursuant to applicable state or federal law; (iv) the execution and delivery of the Definitive Documents; (v) such other transactions that are necessary or appropriate to implement the Plan in the most tax efficient manner; and (vi) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law or the Mortgage Loan Documents, as applicable.

(b)     Subject to the consultation rights in the Final Cash Collateral Order, the Transactions will be structured and implemented in a tax-efficient and cost-efficient manner as determined by the Debtors in their sole and absolute discretion.  The Plan Administrator or any Successful Bidder shall work with the Debtors' management and outside advisors to seek to (i) minimize any current cash taxes payable by the Debtors resulting from the Transactions; (ii) maximize the Debtors' favorable tax attributes after consummation of the Transactions; and (iii) optimize the tax structure for the Debtors and its prospective operations and conduct of its businesses.  The Transactions remain subject to tax diligence, and shall be structured in a manner that minimizes any changes in tax attributes or tax profile of the Debtors that would reasonably be expected to impair the Debtors' ability to perform and/or meet applicable targets and forecasts.  In addition, unless otherwise determined by the Debtors in their sole and absolute discretion, the Plan shall be implemented in a manner such that all the Debtors shall continue to be treated as disregarded entities for U.S. federal (and applicable state and local) income tax purposes and no party shall take any action that would cause a Debtor to be treated as a partnership or an association taxable as a corporation for U.S. federal (and applicable state and local) income tax purposes at any time.

(c)     Each officer, member of the board of directors, or manager of the Debtors or the Post-Emergence Entities (including, if applicable, the Plan Administrator), as applicable, is authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, all of which shall be authorized and

approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including any action by the stockholders or directors or managers of the Debtors or the Post-Emergence Entities) except for those expressly required pursuant to the Plan.

5.6     *Corporate Governance*.

Upon the Effective Date, by virtue of entry of the Confirmation Order, all actions contemplated by the Plan, including any action to be undertaken by Post-Emergence Entities (including, if applicable, the Plan Administrator), shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, the Post-Emergence Entities, the Plan Administrator, or any other Entity or Person.  All matters provided for in the Plan involving the corporate structure of the Debtors or the Post-Emergence Entities, and any corporate action required by the Debtors, the Post-Emergence Entities, or the Plan Administrator in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors, the Post-Emergence Entities, or the Plan Administrator.

5.7     *Section 1145 Exemption*.

(a)     Under section 1145 of the Bankruptcy Code, any securities issued under the Plan that are exempt from such registration pursuant to section 1145(a) of the Bankruptcy Code will be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act of 1933, as amended; (ii) compliance with any rules and regulations of the U.S. Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (iii) the restrictions, if any, on the transferability of such securities and instruments, including any restrictions on the transferability under the terms of the organizational documents of the Debtors or the Post-Emergence Entities, and (iv) applicable regulatory approval.  Persons who receive any securities under this Plan pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder will hold "restricted securities" and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act.  Resales of such restricted securities would not be exempted by section 1145 of the Bankruptcy Code from registration under the Securities Act or other applicable law.  Holders of such restricted securities would, however, under certain conditions, be permitted to resell such securities without registration if they are able to comply with the applicable provisions of Rule 144 or Rule 144A or any other registration exemption under the Securities Act, or if such sales of restricted securities are registered under the Securities Act.

(b)     All Persons and Entities shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether the any security issued under the Plan is exempt from registration.

(c)     Notwithstanding anything to the contrary in the Plan or otherwise, no Person or Entity may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the any securities are exempt from registration or validly issued, fully paid, and non-assessable.

5.8     *Cancellation of Existing Securities and Agreements*.

(a)     Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, including with respect to executory contracts or unexpired leases

that shall be assumed by the Debtors, on the Effective Date, all agreements, instruments, and other documents evidencing any Mortgage Claims or any Interest (other than Existing Equity Interests that are Reinstated) and any rights or Liens of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtors and the Post-Emergence Entities thereunder shall be deemed fully satisfied, released, and discharged.

(b)     Notwithstanding such cancellation and discharge and the releases contained in the Plan, the Mortgage Loan Documents shall continue in effect solely to the extent necessary to (i) allow the Mortgage Lender to receive distributions under the Plan; (ii) allow the Disbursing Agent to make post Effective Date distributions or take such other action pursuant to the Plan on account of the Allowed Claims held by the Mortgage Lender, as applicable, and to otherwise exercise their rights and discharge their obligations relating to the interests of the holders of such Claims in accordance with the Plan; (iii) allow holders of Claims to retain their respective rights and obligations vis-à-vis other holders of Claims pursuant to any applicable loan documents, including the Mortgage Loan Documents; (iv) allow Mortgage Lender to enforce any obligations owed to them under the Plan; (v)  permit the Mortgage Lender to perform any function necessary to effectuate the foregoing; and (vii) permit the Mortgage Lender to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court relating to the Mortgage Loan Documents; provided, that, nothing in this Section 5.8 shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any liability or expense to the Debtors, any Post-Emergence Entity, or the Plan Administrator.

(c)     Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors of their interests, as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in this Section 5.8 shall be deemed null and void and shall be of no force and effect.

5.9     *Retention of Causes of Action*.

In accordance with section 1123(b) of the Bankruptcy Code, and subject to the terms of any applicable Successful Bid, (a) following the Effective Date, the Post-Emergence Entities shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Debtor Causes of Action, whether arising before or after the Petition Date, and the Post-Emergence Entities' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, and the Post-Emergence Entities and the Plan Administrator, as applicable, may pursue such Causes of Action, as appropriate, in accordance with the best interests of the applicable Post-Emergence Entities.  No Person may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors, the Post-Emergence Entities, or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action against such Person. Except with respect to Causes of Action against any Person which Person was released by the Debtors or the Post-Emergence Entities on or before the Effective Date (including pursuant to this Plan), the Post-Emergence Entities and the Plan Administrator, as applicable, expressly reserve all rights to prosecute any and all Debtor Causes of Action against any Person, except as otherwise expressly provided in this Plan. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, transferred, or settled in this Plan or a Final Order of the Bankruptcy Court, the Post-Emergence Entities expressly reserve all Debtor Causes of Action for later adjudication.

5.10     *Cancellation of Liens*.

(a)     Except as otherwise specifically provided herein, including pursuant to Section  5.8 of the Plan, upon the payment in full in Cash of an Other Secured Claim, any Lien securing an

Other Secured Claim that is paid in full, in Cash, shall be deemed released, and the holder of such Other Secured Claim shall be authorized and directed to release any collateral or other property of the applicable Debtor or Post-Emergence Entity (including any Cash collateral) held by such holder and to take such actions as may be requested by the applicable Post-Emergence Entity, to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the applicable Post-Emergence Entity.

(b)     Upon the receipt of the Plan distributions contemplated under Article IV on account of any Allowed Secured Mortgage Lender Claims held by the Mortgage Lender, the Mortgage Liens shall be deemed released with respect to such Secured Mortgage Lender Claims, and the Mortgage Lender shall be authorized and directed to release all remaining Mortgage Collateral of the applicable Debtor or Post-Emergence Entity (including any Cash collateral) and to take such actions as may be requested by a Post-Emergence Entity or the Plan Administrator, as applicable, to evidence the release of such Mortgage Lien(s), including the execution, delivery and filing or recording of such releases as may be requested by a Post-Emergence Entity or the Plan Administrator, as applicable.

5.11    *Nonconsensual Confirmation*.

The Debtors intend to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code as to any Classes that reject or are deemed to reject the Plan.

5.12    *Closing of Chapter 11 Cases*.

The Post-Emergence Entities shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Case(s) of any Debtor in accordance with the Bankruptcy Code and Bankruptcy Rules.

5.13    *Notice of Effective Date*.

As soon as practicable following the Effective Date, the Post-Emergence Entities shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

5.14    *Separability*.

Notwithstanding the combination of the separate plans for the Debtors set forth in the Plan for purposes of economy and efficiency, the Plan constitutes a separate chapter 11 plan for each Debtor. Accordingly, if the Bankruptcy Court does not confirm the Plan with respect to one or more Debtors, it may still, subject to the consent of the applicable Debtor(s), confirm the Plan with respect to any other Debtor that satisfies the confirmation requirements of section 1129 of the Bankruptcy Code.

## ARTICLE VI.        DISTRIBUTIONS.

6.1     *Distributions Generally*.

Except as otherwise provided in the Plan, the Disbursing Agent shall make all distributions under the Plan to the appropriate holders of Allowed Claims against the Debtors or the Post-Emergence Entities in accordance with the terms of the Plan.

6.2     *Distribution Record Date*.

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Interests.  The Debtors, the Post-Emergence Entities, and the Plan Administrator shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.  In addition, with respect to payment of any Cure Amounts or disputes over any Cure Amounts, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease as of the close of business on the Distribution Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.  For the avoidance of doubt, the Distribution Record Date shall not apply to the Mortgage Lender, which shall receive a distribution in accordance with Article IV of the Plan on or as soon as practicable after the Effective Date.

6.3     *Date of Distributions*.

Except as otherwise provided in the Plan, any distributions and deliveries to be made under the Plan shall be made on the Effective Date or as otherwise determined in accordance with the Plan, including the treatment provisions of Article IV of the Plan, or as soon as practicable thereafter; provided, that, the Post-Emergence Entities and Plan Administrator, as applicable, may implement periodic distribution dates to the extent they reasonably determine them to be appropriate.

6.4     *Disbursing Agent*.

A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  Post-Emergence Entities or their applicable agents shall use commercially reasonable efforts to provide the Disbursing Agent with the amounts of Claims and the identities and addresses of holders of Claims and Interests as of the Distribution Record Date, in each case, as set forth on the claims register.  The Post-Emergence Entities and Plan Administrator shall cooperate in good faith with the applicable Disbursing Agent to comply with the reporting and withholding requirements outlined in Section 6.18 of the Plan.

6.5     *Rights and Powers of Disbursing Agent*.

(a)     From and after the Effective Date, the Disbursing Agent, solely in its capacity as Disbursing Agent, shall be exculpated by all Entities, including holders of Claims against and Interests in the Debtors and other parties in interest, from any and all claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent.  No holder of a Claim or Interest or other party in interest shall have or pursue any Claim or Cause of Action against the Disbursing Agent, solely in its capacity as Disbursing Agent, for making payments in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent.

(b)     The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder; (ii) make all distributions contemplated hereby; (iii) employ professionals to represent it with respect to its

23

responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

6.6     ***No Postpetition Interest on Claims***.

Except as otherwise provided in this Section 6.6 of the Plan, interest shall not accrue or be paid on any Claims on or after the Petition Date. To the extent applicable, any Secured Mortgage Claim entitled to post-petition interest pursuant to 506(b) of the Bankruptcy Code shall be paid interest at the applicable federal judgement rate in effect as of the Effective Date.

6.7     ***Delivery of Distributions***.

In the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent shall review its books and records to determine if it possesses additional or different mailing addresses for such holder.  If, after such review, the Disbursing Agent is unable to locate a different or additional address for such holder, no further distributions shall be made to such holder unless and until such Disbursing Agent is notified in writing of such holder's then-current address, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest.  Except as set forth in this Section 6.8(a), nothing herein shall require the Disbursing Agent to attempt to locate holders of undeliverable distributions and, if located, assist such holders in complying with Section 6.10 of the Plan.

6.8     ***Distributions after Effective Date***.

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

6.9     ***Unclaimed Property***.

Undeliverable distributions or unclaimed distributions shall remain in the possession of the Debtors or the Post-Emergence Entities until such time as a distribution becomes deliverable or holder accepts distribution, or such distribution reverts back to the Debtors or the Post-Emergence Entities, as applicable, and shall not be supplemented with any interest, dividends, or other accruals of any kind. Such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one hundred and eighty (180) days from the date of distribution.  After such date, and notwithstanding Section 5.11 or any other provision of the Plan, all unclaimed property or interest in property shall revert to the Debtor(s) or the Post-Emergence Entities, as applicable, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

6.10    ***Time Bar to Cash Payments***.

Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within one hundred eighty (180) days after the date of issuance thereof.  Thereafter, the amount represented by such voided check shall irrevocably revert to the applicable Debtors or Post-Emergence Entities, as applicable, and any Claim in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  Requests for re-issuance of any check within one hundred eighty (180) days after issuance shall be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued.

6.11    *Manner of Payment under Plan*.

Except as otherwise specifically provided in the Plan, at the option of the Debtors or the applicable Post-Emergence Entity, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreement(s) or customary practices of the Debtors.

6.12    *Satisfaction of Claims*.

Except as otherwise specifically provided in the Plan, and in accordance with sections 5.3 and 10.3 of the Plan, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

6.13    *Minimum Cash Distributions*.

The Disbursing Agent shall not be required to make any distribution of Cash less than One Hundred Dollars ($100) to any holder of an Allowed Claim; provided, that, if any distribution is not made pursuant to this Section 6.14, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim.

6.14    *Setoffs and Recoupments*.

The Debtors and the Post-Emergence Entities may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable nonbankruptcy law; provided, that, neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or its successor or assign (including the Post-Emergence Entities) of any claims, rights, or Causes of Action that a Debtor or its successor or assign (including the Post-Emergence Entities) may possess against the holder of such Claim.

6.15    *Allocation of Distributions between Principal and Interest*.

Except as otherwise required by law (as reasonably determined by the Debtors or the applicable Post-Emergence Entities), distributions with respect to Allowed Claims shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

6.16    *No Distribution in Excess of Amount of Allowed Claim*.

Notwithstanding anything in the Plan to the contrary, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, distributions under the Plan in excess of the Allowed amount of such Claim.

6.17    *Withholding and Reporting Requirements*.

(a)    *Withholding Rights*.  In connection with the Plan, any party issuing any instrument or making any distribution contemplated by the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.

25

In the case of a non-Cash distribution that is subject to withholding, the issuing and distributing party or any other withholding agent  may, in its sole discretion, withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (ii) pay the withholding tax using its own funds and retain such withheld property.  Any amounts withheld pursuant to the preceding sentence, and paid over to the applicable Governmental Unit, shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Notwithstanding the foregoing, each holder of an Allowed Claim or any other Entity that receives a distribution pursuant to the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed by any Governmental Unit, including income, withholding, and other taxes, on account of such distribution.  In the event any party issues any instrument or makes any non-Cash distribution pursuant to the Plan that is subject to withholding tax and such withholding agent or issuing or distributing party has not sold such withheld property to generate Cash to pay the withholding tax or paid the withholding tax using its own funds and retains such withheld property as described above, such withholding agent or issuing or distributing party has the right, but not the obligation, to not make a distribution until such holder has made arrangements reasonably satisfactory to such withholding agent or issuing or disbursing party for payment of any such tax obligations.  Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  The withholding agent or issuing or distributing party may, pursuant to Section 6.19(b), require a holder of an Allowed Claim or any other Entity that receives a distribution pursuant to the Plan to complete and return a Form W-8 or W-9, as applicable to each such holder, and any other applicable forms.

(b)     *Forms*.  Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Disbursing Agent or such other Entity designated by the Debtors, the Post-Emergence Entities, withholding agent, or any such other issuing or distributing party (which Entity shall subsequently deliver to the Disbursing Agent any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Entity) Form W-8, and any other forms or documents reasonably requested by any Debtor or the Post-Emergence Entities to reduce or eliminate any withholding required by any federal, state, or local taxing authority.  If such request is made and such party fails to comply before the earlier of (i) the date that is ninety (90) days after the request is made, and (ii) the date that is ninety (90) days after the date of distribution, the amount of any such distribution shall irrevocably revert to the Debtors or the Debtor's Estates, and any Claim on account of such distribution shall be discharged and forever barred from assertion against the Debtors, their Estates or their respective properties.

## ARTICLE VII.     PROCEDURES FOR DISPUTED CLAIMS.

7.1     *Objections to Claims*.

The Debtors, the Post-Emergence Entities and the Plan Administrator, as applicable, shall be entitled to object to Claims.  After the Effective Date, the Post-Emergence Entities shall have and retain any and all rights and defenses that the Debtors had with regard to any Claim to which they may object, except with respect to any Claim that is Allowed.  Any objections to Claims shall be served and filed on or before the Claims Objection Deadline.

7.2     *Resolution of Disputed Administrative Expenses and Disputed Claims*.

On and after the Effective Date, the Post-Emergence Entities and the Plan Administrator, as applicable, shall have the authority to compromise, settle, withdraw, or otherwise resolve any objections to Claims without approval of the Bankruptcy Court, other than with respect to Fee Claims.

7.3     *Payments and Distributions with Respect to Disputed Claims*.

Notwithstanding anything herein to the contrary, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

7.4     *Distributions after Allowance*.

After such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder thereof shall be entitled to distributions, if any, to which such holder is then entitled as provided in the Plan, without interest, as provided in Section 7.9 of the Plan.  Such distributions shall be made within forty-five (45) days after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim (or portion thereof) becomes a Final Order.

7.5     *Disallowance of Claims*.

Except to the extent otherwise agreed to by the Debtors, the Post-Emergence Entities, or the Plan Administrator, as applicable, any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, as determined by a Final Order, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Debtors or the Post-Emergence Entities by that Entity have been turned over or paid to the Debtors or the Post-Emergence Entities.  All Proofs of Claim filed on account of an indemnification obligation to a current or former director, manager, officer, or employee shall be deemed satisfied and expunged from the claims register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

7.6     *Estimation of Claims*.

The Debtors, the Post-Emergence Entities, and the Plan Administrator, as applicable, may determine, resolve and otherwise adjudicate all contingent Claims, unliquidated Claims and Disputed Claims in the Bankruptcy Court. The Debtors, the Post-Emergence Entities and the Plan Administrator, as applicable,  may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason or purpose.  The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent Claim, unliquidated Claim or Disputed Claim, that estimated amount shall constitute the maximum limitation on such Claim, and the Debtors, the Post-Emergence Entities, and the Plan Administrator, as applicable, may pursue supplementary proceedings to object to the ultimate allowance of such Claim; provided, that, such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes only.

7.7     *Holdback on Account of Disputed Claims*.

From and after the Effective Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Bankruptcy Court in an amount constituting the Allowed amount, or Allowed or Disallowed by Final Order, the Post-Emergence Entities or Plan Administrator, as applicable, shall holdback, for the benefit of each holder of a Disputed Claim, a Disputed Claims Holdback

consisting of Cash in an amount equal to the Pro Rata share of Plan distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed Proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claim has been estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code as constituting and representing the maximum amount in which such Claim may ultimately become an Allowed Claim or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Debtor, Post-Emergence Entity, or Plan Administrator, as applicable. Such Cash shall be retained on hand and may be held in a general account.

7.8     *Claim Resolution Procedures Cumulative*.

All of the objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

7.9     *Interest*.

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest that accrued thereon from and after the Effective Date.

## ARTICLE VIII.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

8.1     *General Treatment*.

(a)     As of and subject to the occurrence of the Effective Date:

(i)     For any Debtor consummating a Refinancing Transaction, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such contract or lease (A) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (B) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (C) is the subject of a motion to reject filed by the Debtors on or before the Effective Date; or (D) is specifically designated as a contract or lease to be rejected by the Debtors.

(ii)     for any Debtor consummating a Sale Transaction, all executory contracts and unexpired leases to which any of the Debtors are parties, shall be deemed rejected, unless such contract or lease (A) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (B) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (C) is the subject of a motion to assume filed by the Debtors on or before the Effective Date; or (D) is specifically designated as a contract or lease to be assumed or assumed and assigned on the Assumption Schedule.

(b)     Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, including assignments to another Debtor, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease assumed pursuant to the Plan shall vest in and be fully enforceable by the applicable Post-Emergence Entity in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and

providing for its assumption or assumption and assignment, or applicable law, and the Post-Emergence Entities may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

8.2    ***Determination of Cure Disputes and Deemed Consent***.

(a)    Any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, by (i) in the event of assumption and assignment of the applicable executory contract or unexpired lease in connection with a Sale Transaction, by the Successful Bidder, or otherwise (ii) the applicable Debtor(s), as reflected in the applicable cure notice, in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such executory contracts or unexpired leases and the Debtors may otherwise agree.

(b)    The Debtors shall file, as part of the Plan Supplement, the Assumption Schedule. At least fourteen (14) days before the commencement of the Confirmation Hearing, the Debtors shall serve a notice on parties to executory contracts or unexpired leases to be assumed or assumed and assigned reflecting the Debtors' intention to assume the contract or lease in connection with the Plan and, where applicable, setting forth the proposed Cure Amount (if any).  **Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within ten (10) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court**.  Any counterparty to an executory contract or unexpired lease that fails to object timely to the proposed assumption, assumption and assignment, or Cure Amount (i) shall be deemed to have assented to such assumption, assumption and assignment, or Cure Amount, notwithstanding any provision thereof that purports to (1) prohibit, restrict, or condition the transfer or assignment of such contract or lease or (2) terminate or permit the termination of a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtors under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan, and shall forever be barred and enjoined from asserting such objection against the Debtors or terminating or modifying such contract or lease on account of transactions contemplated by the Plan and (ii) shall be forever barred, estopped, and enjoined from challenging the validity of such assumption or assumption and assignment, as applicable, thereafter.

(c)    If there is a dispute pertaining to the assumption or assumption and assignment of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to the assumption or assumption and assignment being effective; provided, that, the Debtors may settle any such dispute without any further notice to, or action by, any party or order of the Bankruptcy Court.

(d)    To the extent a dispute relates to Cure Amounts, the Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of such cure dispute; provided, that, the Plan Administrator reserves Cash in an amount sufficient to pay the full amount reasonably asserted as the Cure Amount by the counterparty to such executory contract or unexpired lease.

(e)    Assumption or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease.  Any Proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed disallowed and

expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such executory contract or unexpired lease.

### 8.3    *Rejection Damages Claims*.

In the event that the rejection of an executory contract or unexpired lease hereunder results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be classified as a General Unsecured Claim.  Any counterparty to a contract or lease that is rejected by the Debtors must file and serve a proof of claim on the applicable Debtor or Post-Emergence Entity that is party to the contract or lease to be rejected no later than thirty (30) days after the later of (a) the Confirmation Date or (b) the effective date of rejection of such executory contract or unexpired lease.

### 8.4    *Insurance Policies*.

(a)    Notwithstanding any other provision in the Plan, all insurance policies to which any Debtor is a party as of the Effective Date (including any "tail policy") shall be deemed to be and treated as executory contracts and shall be assumed by the applicable Debtors and shall continue as obligations of the Debtors and Post-Emergence Entities in accordance with their respective terms.  Nothing in the Plan shall alter, modify, amend, affect, impair, or prejudice the legal, equitable, or contractual rights, obligations, and defenses of the Debtors, the Post-Emergence Entities, any insurance provider, or any other individual or entity, as applicable, under (or affect the coverage under) the Debtors' insurance policies.

### 8.5    *Assignment*.

To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned hereunder shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment.  To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

### 8.6    *Reservation of Rights*.

(a)    The Debtors may amend the Assumption Schedule until the Effective Date in order to add, delete, or reclassify any executory contract or unexpired lease.  The Debtors shall provide notice of such amendment to any affected counterparty as soon as reasonably practicable.

(b)    Neither the exclusion nor the inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors have any liability thereunder.

(c)    Except as explicitly provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors under any executory or non-executory contract or unexpired or expired lease.

(d)    Nothing in the Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors under any executory or non-executory contract or unexpired or expired lease.

8.7    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*.

Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and executory contracts and unexpired leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

## ARTICLE IX.    CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND EFFECTIVE DATE.

9.1    *Conditions Precedent to Confirmation of Plan*.

The following are conditions precedent to confirmation of the Plan:

(a)    the Disclosure Statement Order shall have been entered; and

(b)    the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed.

9.2    *Conditions Precedent to Effective Date*.

The following are conditions precedent to the Effective Date of the Plan with respect to each Debtor:

(a)    there shall not have been instituted or threatened or be pending any action, proceeding, application, claim, counterclaim, or investigation (whether formal or informal) (or there shall not have been any material adverse development to any action, application, claim, counterclaim, or proceeding currently instituted, threatened or pending) before or by any court, governmental, regulatory, or administrative agency or instrumentality, domestic or foreign, or by any other Person, domestic or foreign, in connection with the Transaction that, as determined by the Debtors in their sole and absolute discretion, would prohibit, prevent, or restrict consummation of the Transaction;

(b)    each document or agreement constituting necessary for consummation of the applicable Transaction, including, in the case of a Sale Transaction, the Asset Purchase Agreement, shall have been duly executed, delivered, acknowledged, filed, and/or effectuated, as applicable;

(c)    the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and the applicable Transaction, and all applicable regulatory or government-imposed waiting periods shall have expired or been terminated;

(d)    all professional fees and expenses of retained professionals required to be approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses in full after the Effective Date shall have been placed in the professional fee escrow account;

(e)    the Confirmation Order shall constitute a Final Order; and

(f)    to the extent not otherwise addressed herein, all actions, documents, and agreements necessary to implement and consummate the Transaction shall have been effected and executed.

9.3    *Waiver of Conditions Precedent*.

(a)    Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action. Each of the conditions precedent in Section 9.1 and Section 9.2 may be waived with respect to any Debtor with the express prior written consent (which may be via email of counsel) of the Debtors and the Mortgage Lender, which waiver shall be effective without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan. If the Plan is confirmed for fewer than all of the Debtors as provided for in Section 5.21 of the Plan, only the conditions applicable to the Debtor or Debtors for which the Plan is confirmed must be satisfied or waived for the Effective Date to occur as to such Debtors.

(b)    The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

9.4    *Effect of Non-Occurrence of Conditions to the Effective Date.*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (ii) prejudice in any manner the rights of the Debtor, any holders of a Claim or Interest or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders, or any other Entity in any respect.

# ARTICLE X. EFFECT OF CONFIRMATION OF PLAN.

10.1    *Vesting of Assets*.

In the event of a Refinancing Transaction, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the applicable Debtors' Estates shall vest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided pursuant to the Plan or the Confirmation Order. On and after the Effective Date, the Reorganized Debtors may take any action, including the operation of their businesses, the use, acquisition, sale, lease, and disposition of property, and the entry into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as expressly provided herein. Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

In the event of a Sale Transaction, on the Effective Date, all property of the Estates not transferred pursuant to the applicable Sale Transaction or distributed to the holder of Allowed Secured Mortgage Claims pursuant to Article IV of the Plan, shall vest in or be transferred to the applicable Liquidating Debtor and administered pursuant to Section 5.2 of the Plan.

10.2   *Binding Effect*.

As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtors and their respective successors and assigns, notwithstanding whether any such holders (a) were Impaired or Unimpaired under the Plan; (b) were deemed to accept or reject the Plan; (c) failed to vote to accept or reject the Plan; (d) voted to reject the Plan; or (e) received any distribution under the Plan.

10.3   *Discharge of Claims and Termination of Interests*.

Upon the Effective Date, and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, any and all Claims, Interests, rights, and liabilities against the each of the Debtors pursuant to the Plan that arose prior to the Effective Date shall be discharged to the fullest extent permitted by section 1141 of the Bankruptcy Code. Upon the Effective Date, the holders of any such Claims, Interests, rights, and liabilities against such Debtors shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim, Interest, right, or liability against the Debtors or any of their Assets or property, including, for the avoidance of doubt, any applicable Debtor Property, whether or not such holder has filed a Proof of Claim and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

10.4   *Term of Injunctions or Stays*.

Unless otherwise provided herein, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

10.5   *Injunction*.

(a)   Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim or Interest extinguished, discharged (solely in the event of a Refinancing Transaction), released or treated pursuant to the Plan.

(b)   Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors or the Post-Emergence Entities and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in any or all of the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, released, or treated pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors or their successors or assigns (including the Post-Emergence Entities) or the property of any of the foregoing Entities; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors or their successors or assigns (including the Post-Emergence Entities) or the

property of any of the foregoing Entities; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or their successors or assigns (including the Post-Emergence Entities) or the property of any of the foregoing Entities; (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Debtors or their successors or assigns (including the Post-Emergence Entities) or the property of any of the foregoing Entities, except as contemplated or allowed by the Plan, or to the extent asserted with respect to a timely Proof of Claim or an objection to the confirmation of the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

10.6   *Exculpation*.

To the maximum extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim, arising prior to the Effective Date, in connection with or arising out of the commencement, filing or administration of the Chapter 11 Cases; the operation and marketing of the Debtors' Properties and other Assets during the Chapter 11 Cases; the negotiation, formulation, filing, prosecution and pursuit of any Transaction; the negotiation, formulation, filing, prosecution, pursuit, and approval of the Disclosure Statement, the Bidding Procedures Order, the Final Cash Collateral Order, and this Plan, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of any Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is judicially determined in a Final Order to constitute intentional fraud, gross negligence, or willful misconduct, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  To the extent permitted by section 1125(e) of the Bankruptcy Code, the Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of Securities pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

10.7   *Subordinated Claims*.

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

10.8   *Retention of Causes of Action/Reservation of Rights*.

Except as otherwise provided in Sections 5.12(b), 10.5, 10.6, and 10.7 of the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of the Estates or of themselves in

accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including any affirmative Causes of Action against parties with a relationship with the Debtors. Subject to the terms of the applicable Successful Bid, the Debtors and the Post-Emergence Entities shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses notwithstanding the occurrence of the Effective Date, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

10.9    *Solicitation of Plan*.

As of and subject to the occurrence of the Confirmation Date: (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the Debtors and each of their respective directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation shall not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

10.10    *Corporate and Limited Liability Company Action*.

Upon the Effective Date, all actions of the Debtors contemplated by the Plan shall be deemed authorized and approved in all respects (whether to occur before, on, or after the Effective Date), in each case, in accordance with and subject to the terms hereof. All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtors and any corporate or limited liability company action required by the Debtors in connection with the Plan shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors. On or (as applicable) before the Effective Date, the appropriate officers of the Debtors shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments, certificates of merger, certificates of conversion, certificates of incorporation, or comparable documents, or franchise tax reports contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtors. The authorizations and approvals contemplated by this Section 10.11 shall be effective notwithstanding any requirements under non-bankruptcy law.

**ARTICLE XI.          RETENTION OF JURISDICTION.**

11.1    *Retention of Jurisdiction*.

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)     to hear and determine motions and/or applications for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases, including disputes over Cure Amounts, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)     to hear and determine disputes in connection with the rights of any Debtors arising out of, or resulting from, these Chapter 11 Cases, including with respect to any impact of these Chapter 11 Cases on the property or contract rights of the Debtors;

(c)     to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(d)     to ensure that distributions to holders of Allowed Claims are accomplished as provided for in the Plan and Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan, including, cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely paid;

(e)     to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(f)     to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)     to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)     to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     to hear and determine all Fee Claims;

(j)     to adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(k)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing; provided, that, any dispute arising under or in connection with the First Lien Exit Facility shall be dealt with in accordance with the provisions of the applicable document;

(l)     to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

(m)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(o)    to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including the releases, discharge, exculpations, and injunctions issued thereunder;

(p)    to resolve disputes concerning Disputed Claims or the administration thereof;

(q)    to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(r)    to enter one or more final decrees closing the Chapter 11 Cases;

(s)    to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(t)    to resolve disputes as to the ownership of any Claim or Interest;

(u)    to recover all Assets of the Debtors and property of the Debtors' Estates, wherever located;

(v)    to resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

(w)    to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory; and

(x)    to hear and resolve any dispute over the application to any Claim of any limit on the allowance of such Claim set forth in sections 502 or 503 of the Bankruptcy Code.

11.2    ***Courts of Competent Jurisdiction***.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII.    MISCELLANEOUS PROVISIONS.

12.1    ***Payment of Statutory Fees***.

On the Effective Date and thereafter as may be required, the Debtors shall pay all Statutory Fees that are due and payable.  After the Effective Date, the Plan Administrator shall pay any and all Statutory Fees when due and payable.  The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Plan Administrator  shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Notwithstanding anything in the Plan to the contrary, the Debtors shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee and file such reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  The obligations under this Section 12.1 shall remain for each Debtor until such time as a final decree is entered closing the Chapter 11 Case for such Debtor, a Final Order converting such Debtor's Chapter 11 Case to a

case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing such Debtor's Chapter 11 Case is entered.

### 12.2   *Substantial Consummation of the Plan*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 12.3   *Plan Supplement*.

The Plan Supplement shall be filed with the Bankruptcy Court not later than seven (7) calendar days prior to the earlier of the Voting Deadline and the deadline to object to confirmation of the Plan.  Upon its filing with the Bankruptcy Court, the documents included in the Plan Supplement shall be posted at the website of the Debtors' notice, claims, and solicitation agent.

### 12.4   *Request for Expedited Determination of Taxes*.

The Debtors and Plan Administrator shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns of the Debtors filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date, and in the case of a Liquidating Debtor, through the complete wind down of such Liquidating Debtor.

### 12.5   *Exemption from Certain Transfer Taxes*.

Pursuant to and to the fullest extent permitted by section 1146 of the Bankruptcy Code, (a) the transfer of the Debtor Properties or Assets to any Successful Bidder, or its designee, and the making or delivery of any instrument of transfer in connection or furtherance of the Plan, and any financing by any Successful Bidder, (b) the issuance, transfer or exchange of any securities, instruments or documents pursuant to, in implementation of or as contemplated in the Plan or any Asset Purchase Agreement, (c) the creation of any Lien, mortgage, deed of trust, or other security interest, (d) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with any Transaction, and (e) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or stamp tax or similar tax to the fullest extent provided by law, including, but not limited to: (i) mortgage recording taxes imposed under Article 11 of the tax law of the State of New York, (ii) the New York Real Estate transfer tax imposed under Article 31 of the Tax Law of the State of New York, (iii) the New York City Real Property transfer tax imposed by title 11, chapter 21 of the New York City Administrative Code and, (iv) any similar tax on the recording of deeds, transfers or property or ownership interests in property, recording of mortgages or other security instruments imposed by the State of New York, or any political subdivision thereof.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded (including without limitation, the Register of the City of New York) shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, transfer tax, intangible tax, or stamp tax or similar tax, as well as cancel and discharge of record all liens, judgments, encumbrances, claims, and other adverse interests in or against the Debtor Properties. All governmental authorities and any other taxing authorities shall be permanently enjoined from the commencement or continuation of any

action to collect from the Debtor Properties, any taxes from which the transactions effectuated pursuant to the Plan and Confirmation Order are exempt, pursuant to and in furtherance of section 1146(a) of the Bankruptcy Code and to the greatest extent provided by law, including but not limited to, New York State Real Estate Transfer Taxes, and any mortgage recording tax, and any penalties, interest, or additions to any tax related thereto. Any applicable County Register's Office is hereby authorized and directed to record any deed, mortgage of the Property and any modification, restatement, amendment or assignment of any mortgages and any other similar conveyance, indenture or other documents contemplated under the Plan without the payment of any of the aforementioned exempt taxes or any other transfer tax, stamp tax or similar tax, and without the presentation of affidavits, instruments or returns otherwise required for recording or filing pursuant to the provisions of section 1146(a) of the Bankruptcy Code.

12.6   *Amendments*.

(a)     The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan, prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code.  After entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend, modify, or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.

(b)     Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement to cure any non-substantive ambiguity, defect (including any technical defect), or inconsistency without further order or approval of the Bankruptcy Court.

12.7   *Effectuating Documents and Further Transactions*.

Each of the officers of the Debtors is authorized, in accordance with his or her authority under the resolutions of the applicable board of directors or managers (on terms materially consistent with the Plan), to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, which shall be in form and substance reasonably satisfactory to the Debtors.

12.8   *Revocation or Withdrawal of the Plan*.

The Debtors may revoke or withdraw the Plan prior to the Effective Date as to any or all of the Debtors.  If, with respect to a Debtor, the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date as to such Debtor does not occur on the Effective Date, then, with respect to such Debtor:  (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing of or limiting to an amount of any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, such Debtor or any other Entity; (ii) prejudice in any manner the rights of such Debtor or any other Entity; or (iii) constitute an admission of any sort by any Debtor, any Prepetition First Lien Lenders, or any other Entity.

12.9    *Severability of Plan Provisions*.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (c) nonseverable and mutually dependent.

12.10    *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement or a Definitive Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

12.11    *Time*.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.12    *Dates of Actions to Implement the Plan*.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

12.13    *Immediate Binding Effect*.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Post-Emergence Entities, the holders of Claims and Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), the Exculpated Parties and each of their respective successors and assigns.

12.14    *Deemed Acts*.

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

12.15   *Successor and Assigns*.

      The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each Entity.

12.16   *Entire Agreement*.

      On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

12.17   *Exhibits to Plan*.

      All exhibits, schedules, supplements, and appendices to the Plan (including the Plan Supplement) are incorporated into and are a part of the Plan as if set forth in full herein.

12.18   *Notices*.

      All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by electronic or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

      (a)      if to the Debtors or Reorganized Debtors:

        2 Grand Central Tower
        140 East 45th St., 12th Floor
        New York, New York 100171
        Attn:   Ephraim Diamond and Adam J. Kaplan
        Email:  ephraim@arbelcapital.com
               adam@pinnacleny.com

        – and –

        Weil, Gotshal & Manges LLP
        767 Fifth Avenue
        New York, New York 10153
        Attn:   Gary T. Holtzer, Esq., Garrett A. Fail, Esq.,
        Matthew P. Goren, Esq.; and Philip L. DiDonato, Esq.
        Telephone:  (212) 310-8000
        Facsimile:  (212) 310-8007
        Email:  gary.holtzer@weil.com
              garrett.fail @weil.com
              matthew.goren@weil.com
              philip.didonato@weil.com

(b)    if to the Plan Administrator:

[●]

(c)    if to the Mortgage Lender:

Paul Hastings LLP
200 Park Avenue
New York, New York 10166
Attn:   Brett Lawrence, Esq., Nicholas A. Bassett, Esq.,
        Justin Rawlins, Esq., and Harvey A. Strickon, Esq.
Email:  brettlawrence@paulhastings.com
        nicholasbassett@paulhastings.com
        justinrawlins@paulhastings.com
        harveystrickon@paulhastings.com

After the Effective Date, the Debtors have authority to send a notice to Entities providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

Dated:  October 27, 2025

                              Respectfully submitted,

                              Broadway Realty I Co., LLC and each of the other
                              Debtors

                              By: _____
                                  Name:  Ephraim Diamond
                                  Title:   Chief Restructuring Officer

**Annex 1**

**Debtor Properties**

| Debtor Entity | Address |
|---|---|
| 25/35 Hillside Associates LLC | 25/35 Hillside Avenue, New York NY |
| 34 Seaman Associates, LLC | 34-44 Seaman Avenue, New York NY |
| 281/295 Wadsworth Associates, LLC | 281/295 Wadsworth Avenue, New York NY |
| 30 Road Realty Co., LLC | 25-10/20 30 Road, Queens NY |
| Forest Parkway Realty Co., LLC | 85-50 Forest Pkwy, Queens NY |
| Park Lane South Realty Co., LLC | 86-20 Park Lane South, Queens NY |
| 34 Avenue Realty Co., LLC | 76-09 34th Avenue, Queens NY |
| 85-05 35 Avenue Realty Co., LLC | 85-05 35th Avenue, Queens NY |
| Broadway Realty I Co., LLC | 4530 Broadway, New York NY |
| Hillside Realty I Co., LLC | 11 Hillside Avenue, New York NY |
| 193 Street Realty Co., LLC | 671-681 West 193th Street, New York NY |
| 18 Street Realty Co., LLC | 240 East 18th Street, Brooklyn NY |
| 94-06 34th Road Realty Co., LLC | 94-06 34th Road, Queens NY |
| 94-06 34th Avenue Realty Co., LLC | 94-06 34th Avenue, Queens NY |
| 63-94 Austin Realty, LLC | 63-94 Austin Street, Queens NY |
| Kingston Place Realty Co., LLC | 87-50 Kingston Place, Queens NY |
| 2340 Valentine Avenue Realty Co., LLC | 2340 Valentine Avenue, Bronx, NY |
| West 50th Street Realty Co., LLC | 544 West 50th Street, New York NY |
| West 50th Street Realty Co., LLC | 546 West 50th Street, New York NY |
| West 50th Street Realty Co., LLC | 548 West 50th Street, New York NY |
| 2400 Realty NY LLC | 2400 Nostrand Avenue, Brooklyn NY |
| 147 Realty Co., LLC | 35-19 147th Street, Queens NY |
| 115 East 21 Realty Co., LLC | 115 East 21st Street, Brooklyn NY |
| 509 Realty Co. LLC | 509 West 155th Street, New York NY |
| Treger Management LLC | 815 Gravesend Neck Road, Brooklyn NY |
| 43-60 Baychester, LLC | 4360 Baychester Avenue, Bronx NY |

| Debtor Entity | Address |
|---|---|
| Heath Realty LLC | 2800 Heath Avenue, Bronx NY |
| Audobon Realty LLC | 155 Audubon Avenue, New York NY |
| 207 Realty LLC | 639-645 West 207th Street, New York NY |
| 241 Sherman LLC | 241/251 Sherman Avenue, New York NY |
| 402-412 West 148 LLC | 402 West 148th Street, New York NY |
| 402-412 West 148 LLC | 412 West 148th Street, New York NY |
| Fieldstone NY LLC | 244 Fieldstone Terrace, Bronx NY |
| 1171 President LLC | 1171-1179 President Street, Brooklyn NY |
| 1362 Ocean LLC | 1362 Ocean Avenue, Brooklyn NY |
| 1535 Ocean LLC | 1535 Ocean Avenue, Brooklyn NY |
| 1554 Ocean LLC | 1554 Ocean Avenue, Brooklyn NY |
| 176 Clarkson Ave LLC | 176 Clarkson Avenue, Brooklyn NY |
| 222 Lenox Rd LLC | 222 Lenox Road, Brooklyn NY |
| 225 Parkside LLC | 225 Parkside Avenue, Brooklyn NY |
| 28-30 Argyle LLC | 28 Argyle Road, Brooklyn NY |
| 28-30 Argyle LLC | 40 Argyle Road, Brooklyn NY |
| 292 St. Johns LLC | 292 St. Johns Place, Brooklyn NY |
| 307 12 St LLC | 307 12th Street, Brooklyn NY |
| 3301 Farragut LLC | 3301 Farragut Road, Brooklyn NY |
| 426 East 22 St LLC | 426-430 East 22nd Street, Brooklyn NY |
| 457 Schenectady LLC | 457 Schenectady Avenue, Brooklyn NY |
| 481 Eastern LLC | 481 Eastern Parkway, Brooklyn NY |
| 481 Eastern LLC | 489 Eastern Parkway, Brooklyn NY |
| 481 Eastern LLC | 497 Eastern Parkway, Brooklyn NY |
| 529 East 22 LLC | 529 East 22nd Street, Brooklyn NY |
| 607 Rugby LLC | 607 Rugby Road, Brooklyn NY |
| 607 Rugby LLC | 615 Rugby Road, Brooklyn NY |
| 607 Rugby LLC | 619 Rugby Road, Brooklyn NY |

| Debtor Entity | Address |
|---|---|
| 607 Rugby LLC | 625 Rugby Road, Brooklyn NY |
| 681 Ocean LLC | 681 Ocean Avenue, Brooklyn NY |
| 85 Clarkson LLC | 85 Clarkson Avenue, Brooklyn NY |
| 916 Carroll St LLC | 916 Carroll Street, Brooklyn NY |
| 932 Carroll LLC | 932 Carroll Street, Brooklyn NY |
| 991 Carroll St LLC | 991-993 Carroll Street, Brooklyn NY |
| 3410 Kingsbridge LLC | 3410 Kingsbridge Avenue, Bronx NY |
| 706 Realty NY LLC | 706 Lefferts Avenue, Brooklyn NY |
| 990 Realty NY LLC | 990 Montgomery Street, Brooklyn NY |
| 1296 Realty LLC | 1296 Pacific Street, Brooklyn NY |
| 915 Realty LLC | 915 Washington Avenue, Brooklyn NY |
| 1038 Realty LLC | 1038 Union Street, Brooklyn NY |
| 1042 Realty LLC | 1042 Union Street, Brooklyn NY |
| 1048 Realty LLC | 1048 Union Street, Brooklyn NY |
| 1060 Realty LLC | 1060 Union Street, Brooklyn NY |
| 1023 Realty LLC | 1023 Carroll Street, Brooklyn NY |
| 1601 Realty LLC | 1601 Bedford Avenue, Brooklyn NY |
| 1597 Realty LLC | 1597 Bedford Avenue, Brooklyn NY |
| 470 Realty NY LLC | 470 Ocean Avenue, Brooklyn NY |
| 2102 Realty LLC | 2102 Beverly Road, Brooklyn NY |
| 405 Realty LLC | 405 East 16th Street, Brooklyn NY |
| 1820 Realty LLC | 1820 Cortelyou Road, Brooklyn NY |
| 330 Realty NY LLC | 330 East 19th Street, Brooklyn NY |
| 1280 Realty NY LLC | 1280 Ocean Avenue, Brooklyn NY |
| 1617 Realty LLC | 1617 President Street, Brooklyn NY |
| 2513 Newkirk LLC | 2513-2523 Newkirk Avenue, Brooklyn NY |
| 17 Realty LLC | 416 East 17th Street, Brooklyn NY |
| 17 Realty LLC | 422 East 17th Street, Brooklyn NY |

| Debtor Entity | Address |
|---|---|
| 237 Realty NY LLC | 237 West 18th Street, New York NY |
| 349 Realty NY LLC | 349 East 51st Street, New York NY |
| 233 Realty NY LLC | 233 East 77th Street, New York NY |
| 58 Elizabeth NY LLC | 58-60 Elizabeth Street, New York, NY |
| 58 Elizabeth NY LLC | 146 Hester Street, New York NY |
| 40-15 Hampton LLC | 40-15 Hampton Avenue, Queens NY |
| 536 Realty Co. LLC | 536 Isham Street, New York NY |
| 45-35 Realty LLC | 45-35 44th Street, Queens NY |
| Clinton Property Co., LLC | 314 Clinton Avenue, Brooklyn NY |
| 2 West 120th Realty Co. LLC | 2 West 120th Street, New York NY |
| Manhattan Realty Co. LLC | 85 8th Ave Garage, New York NY |