**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                :

In re                            :        **Chapter 11**

                                  :

**BROADWAY REALTY I CO., LLC**, *et al.*,   :        **Case No. 25-11050 (DSJ)**

                                  :

           Debtors.[1]          :        **(Jointly Administered)**

                                  :

---------------------------------------------------------------x

## FIRST AMENDED JOINT CHAPTER 11 PLAN

 

**WEIL, GOTSHAL & MANGES LLP**
Gary T. Holtzer
Garrett A. Fail
Matthew P. Goren
Philip L. DiDonato
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Debtors and Debtors in Possession*

Dated:  December 1, 2025
       New York, New York

---

[1]   The last four digits of Broadway Realty I Co., LLC's tax identification number are 5426.  A complete list of the Debtors in these Chapter 11 Cases is set forth on **Annex 1** hereto and may also be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/broadwayrealty.  The Debtors' mailing address is located at 2 Grand Central Tower, 140 East 45th St, 12th Floor, New York, New York 10017.

## Table of Contents

Page

**ARTICLE I.    DEFINITIONS AND INTERPRETATION.** ........................................................ 1

   A.  **Definitions.** ........................................................................................................... 1

   B.  **Interpretation; Application of Definitions and Rules of Construction** ............................. 8

   C.  **Reference to Monetary Figures.** ........................................................................... 9

   D.  **Controlling Document.** ......................................................................................... 9

   E.  **Certain Consent Rights.** ....................................................................................... 9

**ARTICLE II.    ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.** ............................. 9

   2.1  *Administrative Expense Claims.* ............................................................................. 9

   2.2  *Fee Claims.* ....................................................................................................... 10

   2.3  *Priority Tax Claims.* ........................................................................................... 10

**ARTICLE III.    CLASSIFICATION OF CLAIMS AND INTERESTS.** ..................................... 11

   3.1  *Classification in General* ..................................................................................... 11

   3.2  *Grouping of Debtors for Convenience Only* ........................................................... 11

   3.3  *Summary of Classification.* .................................................................................. 11

   3.4  *Elimination of Vacant Classes.* ............................................................................ 12

**ARTICLE IV.    TREATMENT OF CLAIMS AND INTERESTS.** ............................................ 12

   4.1  **Priority Non-Tax Claims (Class 1).** ..................................................................... 12

   4.2  **Other Secured Claims (Class 2).** .......................................................................... 12

   4.3  **Secured Mortgage Claims (Class 3).** .................................................................... 13

   4.4  **General Unsecured Claims (Class 4).** .................................................................... 13

   4.5  **Subordinated Claims (Class 5).** ........................................................................... 14

   4.6  **Existing Equity Interests (Class 6).** ..................................................................... 14

**ARTICLE V.    MEANS FOR IMPLEMENTATION.** .............................................................. 15

   5.1  *Refinancing Transaction* ..................................................................................... 15

   5.2  *Sale Transaction.* ............................................................................................... 16

   5.3  *No Substantive Consolidation.* ............................................................................. 19

   5.4  *Compromise and Settlement of Claims, Interests, and Controversies* ......................... 19

   5.5  *Transactions; Effectuating Documents* ................................................................. 19

   5.6  *Corporate Governance.* ....................................................................................... 20

   5.7  *Section 1145 Exemption* ...................................................................................... 20

   5.8  *Cancellation of Existing Securities and Agreements.* ............................................... 21

   5.9  *Retention of Causes of Action* .............................................................................. 21

5.10    *Cancellation of Liens.* ................................................................................ 22

5.11    *Closing of Chapter 11 Cases.* ................................................................... 22

5.12    *Notice of Effective Date.* ........................................................................... 22

5.13    *Separability.* ............................................................................................... 22

**ARTICLE VI.    DISTRIBUTIONS.** ........................................................................ **22**

6.1    *Distributions Generally.* ............................................................................. 22

6.2    *Distribution Record Date.* .......................................................................... 22

6.3    *Date of Distributions.* ................................................................................. 23

6.4    *Disbursing Agent.* ....................................................................................... 23

6.5    *Rights and Powers of Disbursing Agent.* .................................................. 23

6.6    *No Postpetition Interest on Claims.* ........................................................... 24

6.7    *Delivery of Distributions.* .......................................................................... 24

6.8    *Distributions after Effective Date.* ............................................................ 24

6.9    *Unclaimed Property.* ................................................................................... 24

6.10    *Time Bar to Cash Payments.* ..................................................................... 24

6.11    *Manner of Payment under Plan.* ................................................................ 25

6.12    *Satisfaction of Claims.* ............................................................................... 25

6.13    *Minimum Cash Distributions.* .................................................................... 25

6.14    *Setoffs and Recoupments.* .......................................................................... 25

6.15    *Allocation of Distributions between Principal and Interest* ..................... 25

6.16    *No Distribution in Excess of Amount of Allowed Claim.* .......................... 25

6.17    *Withholding and Reporting Requirements.* ............................................... 25

**ARTICLE VII.    PROCEDURES FOR DISPUTED CLAIMS** ............................... **26**

7.1    *Objections to Claims.* ................................................................................. 26

7.2    *Resolution of Disputed Administrative Expenses and Disputed Claims.* ..... 26

7.3    *Payments and Distributions with Respect to Disputed Claims.* ................ 27

7.4    *Distributions after Allowance.* ................................................................... 27

7.5    *Disallowance of Claims.* ............................................................................. 27

7.6    *Estimation of Claims.* ................................................................................. 27

7.7    *Holdback on Account of Disputed Claims.* ............................................... 27

7.8    *Claim Resolution Procedures Cumulative* ................................................ 28

7.9    *Interest.* ....................................................................................................... 28

**ARTICLE VIII.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES.** ............ **28**

8.1    *General Treatment.* ..................................................................................... 28

8.2    *Determination of Cure Disputes and Deemed Consent.* ........................... 29

| | | | |
|---|---|---|---|
| 8.3 | *Rejection Damages Claims* | | 30 |
| 8.4 | *Insurance Policies.* | | 30 |
| 8.5 | *Assignment* | | 30 |
| 8.6 | *Reservation of Rights.* | | 30 |
| 8.7 | *Modifications, Amendments, Supplements, Restatements, or Other Agreements.* | | 31 |
| **ARTICLE IX.** | **CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND EFFECTIVE DATE.** | | **31** |
| 9.1 | *Conditions Precedent to Confirmation of Plan.* | | 31 |
| 9.2 | *Conditions Precedent to Effective Date.* | | 31 |
| 9.3 | *Waiver of Conditions Precedent.* | | 32 |
| 9.4 | *Effect of Non-Occurrence of Conditions to the Effective Date.* | | 32 |
| **ARTICLE X.** | **EFFECT OF CONFIRMATION OF PLAN.** | | **32** |
| 10.1 | *Vesting of Assets.* | | 32 |
| 10.2 | *Binding Effect.* | | 33 |
| 10.3 | *Discharge of Claims and Termination of Interests.* | | 33 |
| 10.4 | *Term of Injunctions or Stays.* | | 33 |
| 10.5 | *Injunction.* | | 33 |
| 10.6 | *Exculpation.* | | 34 |
| 10.7 | *Subordinated Claims.* | | 34 |
| 10.8 | *Retention of Causes of Action/Reservation of Rights.* | | 34 |
| 10.9 | *Solicitation of Plan.* | | 35 |
| 10.10 | *Corporate and Limited Liability Company Action.* | | 35 |
| 10.11 | *Special Provision Governing Unimpaired Claims.* | | 35 |
| **ARTICLE XI.** | **RETENTION OF JURISDICTION.** | | **35** |
| 11.1 | *Retention of Jurisdiction.* | | 35 |
| 11.2 | *Courts of Competent Jurisdiction.* | | 37 |
| **ARTICLE XII.** | **MISCELLANEOUS PROVISIONS.** | | **37** |
| 12.1 | *Payment of Statutory Fees.* | | 37 |
| 12.2 | *Substantial Consummation of the Plan.* | | 38 |
| 12.3 | *Plan Supplement.* | | 38 |
| 12.4 | *Request for Expedited Determination of Taxes.* | | 38 |
| 12.5 | *Exemption from Certain Transfer Taxes.* | | 38 |
| 12.6 | *Amendments.* | | 39 |
| 12.7 | *Effectuating Documents and Further Transactions.* | | 39 |

12.8    *Revocation or Withdrawal of the Plan*. ....................................................................... 39

12.9    *Severability of Plan Provisions*. ................................................................................. 40

12.10   *Governing Law*. ......................................................................................................... 40

12.11   *Time*. .......................................................................................................................... 40

12.12   *Dates of Actions to Implement the Plan*. .................................................................. 40

12.13   *Immediate Binding Effect*. ......................................................................................... 40

12.14   *Deemed Acts*. ............................................................................................................. 40

12.15   *Successor and Assigns*. ............................................................................................. 41

12.16   *Entire Agreement*. ..................................................................................................... 41

12.17   *Exhibits to Plan*. ........................................................................................................ 41

12.18   *Notices*. ...................................................................................................................... 41

Each of the Debtors proposes this joint chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein have the meanings set forth in Article I.A.

## ARTICLE I.    DEFINITIONS AND INTERPRETATION.

A.    **Definitions.** The following terms have the respective meanings specified below:

1.1.    ***Administrative Expense Claim*** means any Claim for costs and expenses of administration during the Chapter 11 Cases pursuant to sections 327, 328, 330, 365, 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including, (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (ii) Fee Claims; (iii) all fees and charges assessed against the Estates pursuant to section 1911 through 1930 of chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930; (iv) any Allowed superpriority administrative expense Claim of the Mortgage Lender provided under section 507(b) of the Bankruptcy Code or the Final Cash Collateral Order (including the PES Administrative Expense Claim); and (v) all Claims held by the Debtors arising from any Intercompany Loans.

1.2.    ***Allowed*** means any Claim against a Debtor, except to the extent paid and satisfied in accordance with the Plan: (a) (i) that is filed, and as to which (A) no objection to the allowance of such Claim has been asserted, or may be asserted, on or before the Claims Objection Deadline; (B) an objection to such Claim is asserted and such Claim is subsequently allowed pursuant to a Final Order; (C) such Claim is settled pursuant to an order of the Bankruptcy Court; or (D) such Claim is allowed pursuant to the Plan or any agreements related hereto and such allowance is approved and authorized by the Bankruptcy Court; or (ii) as to which there exists no requirement for the holder of a Claim to file such Claim under the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order; (b) (i) that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and (ii) for which no contrary Proof of Claim has been timely filed; or (c) allowed under the Plan or by a Final Order.

1.3.    ***Assets*** means all of the right, title, and interest in and to property of whatever type or nature (including real, personal, mixed, intellectual, tangible, and intangible property).

1.4.    ***Asset Purchase Agreement*** means any executed asset purchase agreement between a Debtor(s) and a Successful Bidder(s) memorializing the terms of a Successful Bid, together with all schedules and exhibits attached thereto.

1.5.    ***Assumption Schedule*** means the schedule of executory contracts and unexpired leases to be assumed or assumed and assigned pursuant to the Plan.

1.6.    ***Available Cash*** means, for any individual Debtor, the amount of the Equity Cushion *less* all amounts (a) necessary to pay holders of Priority Tax Claims, Priority Non-Tax Claims, and Other Secured Claims against such Debtor in accordance with the Plan; and (b) estimated and reserved by such Debtor to (i) adequately fund the reasonable and necessary projected costs to carry out the provisions of the Plan with respect to such Debtor on and after the Effective Date, including to fund the wind-down of the Debtor's estate, (ii) pay all fees payable under section 1930 of chapter 123 of title 28 of the United States Code, and (iii) fund and maintain any post-petition reserve requirements in connection with any agreements or otherwise.

1.7.    ***Bar Date*** means the date(s), if applicable, by which Proofs of Claim (including any Administrative Expense Claims) must be filed with respect to Claims against the Debtors, as ordered by the Bankruptcy Court pursuant to the Confirmation Order or other applicable order of the Bankruptcy Court.

1.8.     ***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. § 101, et seq., as amended from time to time, as applicable to the Chapter 11 Cases.

1.9.     ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases.

1.10.     ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.11.     ***Bidding Procedures*** means the Bidding Procedures attached as **Exhibit 1** to the Bidding Procedures Order (as modified, supplemented or amended from time to time in accordance therewith).

1.12.     ***Bidding Procedures Order*** means the *Order (I) Approving (A) Bidding Procedures and (B) Assumption and Assignment Procedures, (II) Authorizing the Debtors to Offer Stalking Horse Bid Protections, and (III) Granting Related Relief* entered by the Bankruptcy Court on October 1, 2025 [ECF No. 571].

1.13.     ***Business Day*** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.14.     ***Cash*** means legal tender of the United States of America.

1.15.     ***Cause of Action*** means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, loss, debt, damage, judgment, account, defense, remedies, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws).  Causes of Action also includes:  (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.16.     ***Chapter 11 Cases*** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court.

1.17.     ***Claim*** has the meaning set forth in section 101(5) of the Bankruptcy Code, as against any Debtor.

1.18.     ***Claims Objection Deadline*** means the later of (a) one-hundred and eighty (180) days after the Effective Date, and (b) such later date as may be fixed by the Bankruptcy Court (as the same may be extended by the Bankruptcy Court).

1.19.     ***Class*** means any group of Claims or Interests classified as set forth in Article III of the Plan.

1.20.    ***Confirmation Date*** means, for any individual Debtor, the date on which the Clerk of the Bankruptcy Court enters a Confirmation Order for such Debtor with respect to the Plan.

1.21.    ***Confirmation Hearing*** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned, reconvened, or continued from time to time.

1.22.    ***Confirmation Order*** means an order of the Bankruptcy Court confirming the Plan for a Debtor(s) pursuant to section 1129 of the Bankruptcy Code.

1.23.    ***Consummation*** means the occurrence of the Effective Date of the Plan for a Debtor.

1.24.    ***Cure Amount*** means the amount necessary to (a) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease of the Debtors and (b) permit the Debtors to assume or assume and assign such executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

1.25.    ***Debtors*** means the entities listed on <u>Annex 1</u> hereto, as debtors and debtors in possession in the Chapter 11 Cases (and each, a "***Debtor***").

1.26.    ***Debtor Properties*** means the properties listed on <u>Annex 1</u> hereto (and each, a "***Debtor Property***").

1.27.    ***Definitive Documents*** means the documents governing the Transactions, including all agreements, instruments, pleadings, orders, forms, and other documents (including all exhibits, schedules, supplements, appendices, annexes, instructions, and attachments thereto) that are utilized to implement or effectuate, or that otherwise relate to, the Transactions, including but not limited to each of the following: (i) the Plan; (ii) the Plan Supplement; (iii) the Confirmation Order; (iv) the Final Cash Collateral Order, (v) the Bidding Procedures, (vi) the Bidding Procedures Order, and (vii) the Asset Purchase Agreement(s).

1.28.    ***Disallowed*** means a Claim against a Debtor, or any portion thereof, (a) that has been disallowed by a Final Order of the Bankruptcy Court, a settlement, or the Plan; (b) that is listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been filed; or (c) that is not listed in the Debtors' Schedules and as to which a Bar Date has been established but no Proof of Claim has been filed**.**

1.29.    ***Disbursing Agent*** means any Entity (including the Plan Administrator or any applicable Debtor or Reorganized Debtor if it acts in such capacity) in its capacity as a disbursing agent under Article VI of the Plan.

1.30.    ***Disclosure Statement*** means the disclosure statement for the Plan, as approved by the Bankruptcy Court pursuant to the Disclosure Statement Order.

1.31.    ***Disclosure Statement Order*** means the order entered by the Bankruptcy Court finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code and authorizing solicitation of the Plan.

1.32.    ***Disputed*** means with respect to a Claim or Interest, any such Claim or Interest (a) that is neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code; (b) that has not been Allowed or paid and satisfied in accordance with the Plan and is listed as unliquidated, contingent or disputed in the Schedules; or (c) for which a Proof of Claim for payment has been made and related to which the Debtors or any party in interest has interposed

a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order. If the Debtors or a party in interest dispute only a portion of a Claim, such Claim shall be deemed Allowed in any amount the Debtors or such party in interest do not dispute, and shall be deemed Disputed as to the balance of such Claim.

1.33.    **_Disputed Holdback_** means the Cash held back from Plan distributions on account of Disputed Claims in accordance with Section 7.7 hereof.

1.34.    **_Distribution Record Date_** means, except as otherwise provided in this Plan, the Effective Date.

1.35.    **_Effective Date_** means the date on which all conditions to the effectiveness of the Plan set forth in Article IX hereof have been satisfied or waived in accordance with the terms of the Plan.

1.36.    **_Entity_** has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.37.    **_Equity Cushion_** means, for any individual Debtor, the amount, if any, of any Transaction Consideration received by the applicable Estate(s) from a Successful Bid remaining after payment in full of all applicable Allowed Secured Mortgage Claims and Administrative Expense Claims.

1.38.    **_Escrow Amount_** means the sum of (i) all unpaid fees required to be paid to the Clerk of the Court and to the US Trustee under section 1930(a) of title 28 of the United States Code and (ii) all unpaid fees and expenses incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code at any time.

1.39.    **_Escrow Account_** has the meaning ascribed to such term in the Final Cash Collateral Order.

1.40.    **_Estate or Estates_** means, individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.41.    **_Exculpated Parties_** means, collectively, in each case, solely in their capacities as such: (a) the Debtors and the Estates; (b) the Debtors' directors, officers, and managing members; (c) the Professionals; (d) the Mortgage Lender and its professional advisors; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), such Entities' successors and assigns.

1.42.    **_Existing Equity Interests_** means, with respect to an applicable Debtor, all Interests in such Debtor.

1.43.    **_Fee Claim_** means a Claim for professional services rendered or expenses incurred on or after the Petition Date through the Effective Date by a Professional.

1.44.    **_Final Cash Collateral Order_** means the _Final Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, and (III) Granting Related Relief_ entered by the Bankruptcy Court on September 22, 2025 [ECF No. 551].

1.45.    **_Final Order_** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court

to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

1.46.    ***General Unsecured Claim*** means any unsecured Claim against a Debtor, including any Mortgage Deficiency Claim, that is not (i) an Administrative Expense Claim; (ii) a Priority Tax Claim; (iii) an Other Secured Claim; (iv) a Priority Non-Tax Claim; (v) a Secured Mortgage Claim; or (vi) any Claim arising under section 510(b) of the Bankruptcy Code.

1.47.    ***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.48.    ***Impaired*** means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.49.    ***Intercompany Loan*** has the meaning ascribed to such term in the Final Cash Collateral Order.

1.50.    ***Interests*** means any equity security (as defined in section 101(16) of the Bankruptcy Code), including all common stock, preferred stock, membership interest, or other instruments evidencing an ownership interest, whether or not transferable, and any option, warrant, right, or any other interest that is exercisable, convertible, or exchangeable into equity, contractual or otherwise, including equity or equity-based incentives, grants, or other instruments issued, granted, or promised to be granted to current or former employees, directors, officers, or contractors, to acquire any such interests that existed immediately before the Petition Date.

1.51.    ***Interim Compensation Order*** means the order of the Bankruptcy Court approving and authorizing procedures for the payment of interim Fee Claims prior to the Effective Date [ECF No. 577].

1.52.    ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.53.    ***Liquidating Debtor*** means any Debtor to be wound down, liquidated, and dissolved in accordance with the Plan following consummation of an applicable Sale Transaction.

1.54.    ***Mortgage Claim*** means, with respect to each applicable Mortgage Loan, (i) the Secured Mortgage Claim and (ii) the Mortgage Deficiency Claim, if any.

1.55.    ***Mortgage Collateral*** has the meaning ascribed to such term in the Final Cash Collateral Order.

1.56.    ***Mortgage Deficiency Claim*** means any Mortgage Claim that is not a Secured Mortgage Claim.

1.57.    ***Mortgage Lender*** means Flagstar Bank, N.A., in its capacity as prepetition lender to each of the Debtors under the Mortgage Loan Documents.

1.58.    ***Mortgage Loan Documents*** has the meaning ascribed to such term in the Final Cash Collateral Order.

1.59.    ***Mortgage Liens*** means the liens and security interests securing the Mortgage Loans.

1.60.    ***Mortgage Loans*** means the first lien, property-level, note and mortgage held by the Mortgage Lender, with the applicable Debtor(s) as borrower thereunder.

1.61.    ***Notice of Successful Bidder*** means the notice filed with the Bankruptcy Court in accordance with the Bidding Procedures identifying, among other things, the Successful Bid and Back-Up Bid for the applicable Debtor Properties.

1.62.    ***OCP Order*** means the *Order Authorizing Debtors to Employ Professionals Used in the Ordinary Course of Business* entered by the Bankruptcy Court on August 19, 2025 [ECF No. 432].

1.63.    ***Other Secured Claim*** means a Secured Claim, other than an Administrative Expense Claim, a Secured Mortgage Claim, or a Priority Tax Claim.

1.64.    ***Person*** has the meaning set forth in section 101(41) of the Bankruptcy Code.

1.65.    ***PES Administrative Expense Claim*** means the Administrative Expense Claim of the Mortgage Lender in the amount of $536,800.00.

1.66.    ***Petition Date*** means May 21, 2025, the date on which the Debtors commenced the Chapter 11 Cases.

1.67.    ***Plan*** means this joint chapter 11 plan of the Debtors, including all appendices, exhibits, schedules, and supplements hereto (including any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.68.    ***Plan Administrator*** has the meaning set forth in Section 5.2(b) of the Plan.

1.69.    ***Plan Administrator Agreement*** means the agreement providing for the appointment, pursuant to this Plan, of the Plan Administrator to oversee the wind down, liquidation and dissolution of any Liquidating Debtors.

1.70.    ***Plan Administrator Reserve*** means the amount reserved by the Debtors solely for the funding of the fees and expenses of the Plan Administrator acting in accordance with the Plan, to be agreed upon by the Debtors and the Mortgage Lender prior to the Effective Date.

1.71.    ***Plan Supplement*** means a supplemental appendix to the Plan containing, among other things, substantially final forms of documents, schedules, and exhibits to the Plan to be filed with the Bankruptcy Court in accordance with Section 12.3 of the Plan, including the following: (a) each Notice of Successful Bid; (b) the Assumption Schedule; (c) each applicable Asset Purchase Agreement; (d) the Plan Administrator Agreement (if applicable); and (e) to the extent known, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code.

1.72.    ***Post-Emergence Entity*** means, as of and following the Effective Date, the (a) Reorganized Debtors, or (b) the Liquidating Debtors, as applicable.

1.73.    ***Priority Non-Tax Claim*** means any Claim, other than an Administrative Expense Claim, Other Secured Claim, or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

1.74.    ***Priority Tax Claim*** means any Secured Claim or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.75.    ***Pro Rata*** means, as applicable, (a) the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims and Disputed Claims in such Class; or (b) the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims in a particular Class and other Classes entitled to share in the same recovery as such Class under the Plan.

1.76.    ***Professional*** means professional persons or firms retained by the Debtors by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

1.77.    ***Proof of Claim*** means a proof of Claim filed in the Chapter 11 Cases.

1.78.    ***Refinancing Transaction*** means a refinancing of the Mortgage Claims pursuant to a Successful Bid.

1.79.    ***Reinstate, Reinstated, or Reinstatement*** means rendering a Claim Unimpaired under the Plan pursuant to section 1124(a)(2) of the Bankruptcy Code.

1.80.    ***Rejection Damages Claim*** means any Claim for damages resulting from or based on the Debtors' rejection of an executory contract or unexpired lease.

1.81.    ***Reorganized Debtor*** means any Debtor to be reorganized in accordance with the Plan following consummation of an applicable Refinancing Transaction, including any successor thereto.

1.82.    ***Sale Transaction*** means a sale of one or more Debtor Properties and any related Assets pursuant to a Successful Bid, including without limitation, any sale to the Mortgage Lender as part of a credit bid pursuant to section 363(k) of the Bankruptcy Code, and any sale pursuant to section 363 of the Bankruptcy Code to be implemented pursuant to the Plan.

1.83.    ***Secured Claim*** means a Claim (a) secured by a Lien on collateral to the extent of the value of such collateral as (i) set forth in the Plan; (ii) agreed to by the holder of such Claim and the Debtors; or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

1.84.    ***Secured Mortgage Claim*** means any Allowed Secured Claim held by the Mortgage Lender against the applicable Debtor(s), arising under the applicable Mortgage Loan Documents in an amount equal to the principal amount outstanding as of the Petition Date, plus all applicable prepetition fees, costs, and costs of collection, plus any and all other amounts required to be paid under and in connection with the applicable Mortgage Loan Documents.

1.85.    ***Schedules*** means, collectively, the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

1.86.    ***Security*** has the meaning set forth in section 101(49) of the Bankruptcy Code.

1.87.    ***Solicitation Materials*** means all materials provided in connection with the solicitation of votes on the Plan pursuant to sections 1125 and 1126 of the Bankruptcy Code and the Disclosure Statement Order.

1.88.    ***Subordinated Claims*** means any prepetition Claim against the Debtors that is subject to subordination pursuant to sections 509(c) or 510 of the Bankruptcy Code or otherwise or any Claim for reimbursement, indemnification, or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim.

1.89.    ***Successful Bid*** means the Qualified Bid (as defined in the Bidding Procedures) selected by the Debtors in accordance with the Bidding Procedures as the highest or otherwise best Qualified Bid for the applicable Debtor Properties or other Assets.

1.90.    ***Successful Bidder*** means the bidder submitting the applicable Successful Bid.

1.91.    ***Statutory Fees*** means all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, including interest, if any, pursuant to section 3717 of title 31 of the United States Code.

1.92.    ***Transaction*** means either a Refinancing Transaction or a Sale Transaction, as applicable.

1.93.    ***Transaction Consideration*** means (i) in the event of a Sale Transaction, the purchase price to be paid pursuant to a Successful Bid, and (ii) in the event of a Refinancing Transaction, all new capital provided to the applicable Debtor(s) under the applicable Successful Bid, including all amounts allocated to the payment and/or refinancing of the applicable Mortgage Claims.

1.94.    ***Unimpaired*** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.95.    ***U.S. Trustee*** means the Office of the United States Trustee for Region 2.

1.96.    ***Voting Deadline*** means the date set by the Bankruptcy Court by which all completed ballots must be received, which date may be extended by the Debtors in accordance with the Disclosure Statement Order.

B.    **Interpretation; Application of Definitions and Rules of Construction**.

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender, (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions, (3) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto, (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, and (5) any term used in capitalized form herein that is not otherwise defined

but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.     **Reference to Monetary Figures**.

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

D.     **Controlling Document**.

In the event of an inconsistency between the terms and provisions in the Plan (without reference to the Plan Supplement) and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan (including any Definitive Document) or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), the Plan (without reference to the Plan Supplement) shall govern and control.  Notwithstanding anything herein to the contrary, in the event of a conflict between the Confirmation Order, on the one hand, and any of the Plan, the Plan Supplement, or the Definitive Documents, on the other hand, the Confirmation Order shall govern and control in all respects.

E.     **Certain Consent Rights**.

Notwithstanding anything in the Plan to the contrary, any Definitive Document, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I hereof) and fully enforceable as if stated in full herein.

# ARTICLE II.     ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.

2.1     *Administrative Expense Claims*.

(a)     Except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtor or the Plan Administrator agree to less favorable treatment, each holder of an Allowed Administrative Expense Claim (other than a Fee Claim) shall receive, in full and final satisfaction of such Claim, and in each case, subject to the priorities of such Allowed Administrative Expense Claims set forth in the Final Cash Collateral Order, Cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, unless otherwise required by a Final Order; provided that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors shall be paid by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

(b)     Except as provided for herein or in any order of the Bankruptcy Court, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of Administrative Expense Claims (other than Fee Claims, Claims on account of an Intercompany Loan, the PES Administrative Expense Claim, and Statutory Fees) must file and serve on the Debtors requests for the payment of such Administrative Expense Claims not already Allowed by a Final Order in accordance with the procedures specified in the Confirmation

Order, on or before the applicable Bar Date or be forever barred, estopped, and enjoined from asserting such Claims against the Debtors or their Assets.

(c)    The PES Administrative Claim shall be Allowed against the Debtors on a joint and several basis which shall be satisfied and repaid out of the first proceeds of any Transaction(s) in accordance with the Bidding Procedures Order; provided that the PES Administrative Expense Claim will be satisfied (or forgiven in a credit bid scenario) out of an allocation of the proceeds of any Transaction(s), including in a credit bid scenario.

2.2    *Fee Claims*.

(a)    All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file with the Bankruptcy Court, on or before the date that is forty-five (45) days after the Effective Date, their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred from the Petition Date through the Effective Date.  Objections to any Fee Claims must be filed and served on counsel to the Debtors, the U.S. Trustee, and the requesting party no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the Debtors and the party requesting compensation of a Fee Claim).

(b)    Allowed Fee Claims shall be paid in full, in Cash from the Escrow Account and in such amounts as are Allowed by the Bankruptcy Court (i) first, upon entry of an order relating to any such Allowed Fee Claim being entered, or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtors.  Notwithstanding the foregoing, any Fee Claims that are authorized to be paid pursuant to any administrative orders entered by the Bankruptcy Court, including the Interim Compensation Order, may be paid at the times and in the amounts authorized pursuant to such orders.

(c)    The Debtors shall continue to fund the Escrow Account on the terms set forth in the Final Cash Collateral Order through the Effective Date.  On or prior to the Effective Date, holders of Fee Claims shall provide a reasonable estimate of any Fee Claims to be incurred in rendering services before the Effective Date to the Debtors and, to the extent such amounts are not already included in the Escrow Amount, the Debtors shall include such estimated amounts in the Escrow Amount for the benefit of the holders of the Fee Claims until the fee applications related thereto are resolved by Final Order or agreement of the parties.  If a holder of a Fee Claim does not provide an estimate of such amounts, the Debtors may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Fee Claim.  When all such Allowed Fee Claims have been paid in full, any remaining amount in the Escrow Account shall promptly be released from the Escrow Account and revert to, and ownership thereof shall vest in, the applicable Post-Emergence Entity, without any further action or order of the Bankruptcy Court.

(d)    The Plan Administrator and the applicable Post-Emergence Entity are authorized and directed to pay compensation for services rendered or reimbursement of expenses incurred by any Professional after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

2.3    *Priority Tax Claims*.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Tax Claim, at the option of the Debtors:  (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date,

to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (iii) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due, or (b) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

## ARTICLE III.    CLASSIFICATION OF CLAIMS AND INTERESTS.

### 3.1    *Classification in General*.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; provided that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

### 3.2    *Grouping of Debtors for Convenience Only*.

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, confirmation of the Plan, and distributions in accordance with the Plan in respect of Claims against, and Interests in, the Debtors under the Plan. Such groupings shall not affect any Debtor's status as a separate legal Entity, result in substantive consolidation of any Estates, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any Assets. Except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal Entities after the Effective Date.

### 3.3    *Summary of Classification*.

The following table designates the Classes of Claims against, and Interests in, each of the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (c) presumed to accept or deemed to reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified. The classification of Claims and Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Article IV of the Plan.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | No (Presumed to Accept) |
| 3 | Secured Mortgage Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | No (Deemed to Reject) |
| 5 | Subordinated Claims | Impaired | No (Deemed to Reject) |
| 6 | Existing Equity Interests | Impaired | No (Deemed to Reject) |

3.4     *Elimination of Vacant Classes*.

Any Class of Claims against or Interests in a Debtor that, as of the commencement of the Confirmation Hearing, does not have at least one (1) holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan of such Debtor for purposes of voting to accept or reject such Debtor's Plan, and disregarded for purposes of determining whether such Debtor's Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

### 3.5 *Voting Classes; Presumed Acceptance by Non-Voting Classes*.

With respect to each Debtor, if a Class contained Claims eligible to vote and no holder of Claims eligible to vote in such Class votes to accept or reject this Plan by the Voting Deadline, this Plan shall be presumed accepted by the holders of such Claims in such Class.

## ARTICLE IV.        TREATMENT OF CLAIMS AND INTERESTS.

4.1     *Priority Non-Tax Claims (Class 1)*.

a)      **Classification**: Class 1 consists of Priority Non-Tax Claims.

b)      **Treatment**:  Except to the extent that a holder of an Allowed Priority Non-Tax Claim against any Debtor agrees to a less favorable treatment of such Claim, in full and final satisfaction of such Allowed Priority Non-Tax Claim, at the option of the applicable Debtor(s) or the Post-Emergence Entities, (i) each such holder shall receive payment in Cash in an amount equal to the amount of such Allowed Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, in each case, or as soon as reasonably practicable thereafter; or (ii) such holder shall receive such other treatment so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

c)      **Voting**:  Class 1 is Unimpaired, and the holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Priority Non-Tax Claims.

4.2     *Other Secured Claims (Class 2)*.

a)      **Classification**:  Class 2 consists of Other Secured Claims.  To the extent that the Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 2 for purposes of voting to accept or reject the Plan and receiving distributions under the Plan.

b)      **Treatment**:  Except to the extent that a holder of an Allowed Other Secured Claim against any Debtor agrees to a less favorable treatment of such Claim, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the applicable Debtor(s) or Post-Emergence Entities, (i) each such holder shall receive payment in Cash in an amount equal to the amount of such Allowed Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter; (ii) such holder's Allowed Other Secured Claim shall be Reinstated; (iii) such holder shall receive the collateral securing its Allowed Other Secured Claim; or

(iv) such holder shall receive such other treatment so as to render such holder's Allowed Other Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

c)     **Voting**:  Class 2 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Other Secured Claims.

4.3     *Secured Mortgage Claims (Class 3)*.

a)     **Classification**:  Class 3 consists of Secured Mortgage Claims.

b)     **Treatment**:  On the Effective Date, the Mortgage Lender shall receive the following treatment, in full and final satisfaction, settlement, release and discharge of the Secured Mortgage Claims against the applicable Debtor:

(i)  In the event of a Refinancing Transaction: Cash in the amount of its Allowed Secured Mortgage Claim, or such other treatment as agreed to by the Mortgage Lender in connection with the applicable Refinancing Transaction; provided that in no event shall the Mortgage Lender receive more than 100% of its Allowed Secured Mortgage Claim.

(ii) In the event of a Sale Transaction:

A. If the Mortgage Lender is the Successful Bidder: (x) the Debtor Property held by each Debtor subject to the Successful Bid(s) and any other transferred Assets identified in the applicable Asset Purchase Agreement, and (y) to the extent not identified in the applicable Successful Bid: (1) any proceeds of any Debtor Causes of Action, and (2) any Mortgage Collateral securing the applicable Secured Mortgage Claim; provided that in no event shall the Mortgage Lender receive more than 100% of its Allowed Secured Mortgage Claim.

B. If the Mortgage Lender is not the Successful Bidder: (x) the proceeds of the Transaction Consideration provided under the applicable Asset Purchase Agreement for the Successful Bid, and (y) to the extent not identified in the applicable Successful Bid: (1) any proceeds of any Debtor Causes of Action, and (2) any Mortgage Collateral securing the applicable Secured Mortgage Claim; provided that in no event shall the Mortgage Lender receive more than 100% of its Allowed Secured Mortgage Claim.

c)     **Voting**:  Class 3 may be Impaired, and the holder of the Secured Mortgage Claims in Class 3 is entitled to vote to accept or reject the Plan.

4.4     *General Unsecured Claims (Class 4)*.

a)     **Classification**:  Class 4 consists of General Unsecured Claims, including any Mortgage Deficiency Claims and Rejection Damages Claims.

b)      **Treatment**:  Except to the extent that a holder of an Allowed General Unsecured Claim against a Debtor agrees to less favorable treatment with the Debtors or the Post-Emergence Entities, as applicable, in full and final satisfaction, settlement, release, and discharge of an Allowed General Unsecured Claim, each such holder thereof shall receive its *pro rata* share of any Available Cash up to the Allowed amount of such General Unsecured Claim.

c)      **Voting**:  Class 4 is Impaired, and the holders of General Unsecured Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The holders of General Unsecured Claims are not entitled to vote to accept or reject the Plan.

### 4.5    *Subordinated Claims (Class 5).*

a)      **Classification**:  Class 5 consists of Subordinated Claims.  Subordinated Claims are subordinated pursuant to this Plan and section 510 of the Bankruptcy Code.

b)      **Treatment**:  Except to the extent that a holder of an Allowed Subordinated Claim against a Debtor agrees to less favorable treatment with the Debtors or the Post-Emergence Entities, as applicable, in full and final satisfaction, settlement, release, and discharge of an Allowed Subordinated Claim, each such holder thereof shall receive its *pro rata* share of any remaining Available Cash after payment in full of all Allowed General Unsecured Claims up to the Allowed amount of such Subordinated Claim.

c)      **Voting**:  Class 5 is Impaired, and the holders of Subordinated Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The holders of Subordinated Claims are not entitled to vote to accept or reject the Plan.

### 4.6    *Existing Equity Interests (Class 6).*

a)      **Classification**:  Class 6 consists of Existing Equity Interests.

b)      **Treatment**:  On the Effective Date, each holder of Existing Equity Interests shall receive the following treatment in full and final satisfaction, settlement, release and discharge of such Existing Equity Interest:

(i)   In the event of a Refinancing Transaction: The Existing Equity Interests of the Debtor(s) party to the Refinancing Transaction(s) shall, subject to the waterfall and priorities set forth in section 1129(b)(2) of the Bankruptcy Code, be Reinstated for the benefit of the holders of such former Existing Equity Interests consistent with their former economic entitlements.

(ii)  In the event of a Sale Transaction:  The holders of Existing Equity Interests of the Debtor(s) party to the Sale Transaction(s) shall receive any remaining Available Cash after payment in full of all Allowed General Unsecured Claims and all Allowed Subordinated Claims, in accordance with Sections 4.4 and 4.5 hereof, and, following the final distribution of all such Available Cash, such Existing Equity Interests shall be cancelled for no further consideration.

c)      **Voting**:  Class 6 is Impaired, and the holders of Existing Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The holders of Existing Equity Interests are not entitled to vote to accept or reject the Plan.

**ARTICLE V.**          **MEANS FOR IMPLEMENTATION.**

5.1    *Refinancing Transaction*.

The following provisions of this Section 5.1 shall apply in the event of a Refinancing Transaction:

(a)    *Closing; Distributions*.

(i)    Each Debtor shall consummate the Refinancing Transaction contemplated by such Successful Bid(s), and upon making the Plan distributions in accordance with Article IV hereof, subject to Section 5.8(b) of the Plan, the existing Mortgage Loan(s) subject to such Refinancing Transaction shall be deemed fully released, cancelled, discharged and of no force or effect, and the related Mortgage Claims shall be deemed fully satisfied.

(ii)    Any post-Effective Date distributions shall be made by the Reorganized Debtors in an expeditious, timely, and orderly manner pursuant to the Plan and the Confirmation Order.

(b)    *Granting of Liens.*

(i)    All Liens and security interests granted pursuant to the Refinancing Transaction shall be (a) valid, binding, and enforceable Liens and security interests in the personal and real property described in and subject to such documents, with the priorities established in respect thereof under applicable non-bankruptcy law, and (b) not subject to avoidance, recharacterization or subordination under any applicable law, the Plan, or the Confirmation Order.

(ii)    The applicable Reorganized Debtors and the Persons granted Liens and security interests pursuant to the Refinancing Transaction are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order without the need for any filings or recordings) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

(c)    *Implementation of the Plan.*

(i)    Each Reorganized Debtor is authorized, without further action of the Bankruptcy Court (unless otherwise indicated), to otherwise carry out and implement all provisions of this Plan, including, without limitation to: (a) control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against such Debtor or Reorganized Debtor, as applicable; (b) prosecute all Causes of Action, elect not to purpose any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as determined in such Reorganized Debtors' reasonable business judgment to be in the best interests of such Debtor and its Estate; (c) retain

15

professionals to assist in performing its duties under this Plan; (d) maintain its books, records, and accounts; and (d) complete and file, as necessary, all required federal, state, and local tax returns.

5.2 **Sale Transaction**.

The following provisions of this Section 5.2 shall apply in the event of a Sale Transaction:

(a) **Closing; Distributions.**

(i) In accordance with the applicable Asset Purchase Agreement, the Bidding Procedures, and this Plan, each Debtor shall consummate the applicable Sale Transaction contemplated by the Successful Bid(s), and, among other things, the applicable Debtor Properties and any other of the Assets (including executory contracts and unexpired leases assumed and assigned to the Successful Bidders pursuant to Article VIII hereof), as applicable, shall be transferred to and vest in the applicable Successful Bidder free and clear of all Liens, Claims, charges, or other encumbrances pursuant to the applicable Asset Purchase Agreement (or such other applicable order of the Bankruptcy Court).

(ii) Each Debtor shall consummate the Sale Transaction contemplated by such Successful Bid(s), and upon making the Plan distributions in accordance with Article IV hereof, subject to Section 5.8(b) of the Plan, the existing Mortgage Loan(s) subject to such Sale Transaction shall be deemed fully released, cancelled, discharged and of no force or effect, and the related Mortgage Claims shall be deemed fully satisfied.

(iii) Any post-Effective Date distributions shall be made by the Plan Administrator, on behalf of the Liquidating Debtors, in an expeditious, timely, and orderly manner pursuant to the Plan and the Confirmation Order.

(b) **Plan Administrator.**

(i) *Appointment*. The Plan Administrator shall be mutually acceptable to the Debtors and the Mortgage Lender. The identity of the initial Plan Administrator will be disclosed prior to the Effective Date.

(ii) *Authority*. Subject to Section 5.6 of the Plan, upon the Effective Date, the Plan Administrator shall have the authority and right on behalf of each Liquidating Debtor, without the need for Bankruptcy Court approval (unless otherwise indicated) or any action of the Liquidating Debtors or their officers, directors, or managers, to carry out and implement all provisions of the Plan, including, without limitation, to:

A. except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Liquidating Debtors;

B. make Distributions to holders of Allowed Claims in accordance with the Plan;

C. exercise its reasonable business judgment to direct and control the wind down, liquidation, sale and/or abandoning of the remaining assets of the

16

Debtors under the Plan and in accordance with applicable law as necessary to maximize Plan distributions to holders of Allowed Claims against the Liquidating Debtors;

D.  prosecute all Causes of Action not transferred pursuant to a Successful Bid, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the Liquidating Debtors;

E.  make payments to existing professionals who will continue to perform in their current capacities;

F.  retain professionals to assist in performing its duties under the Plan;

G.  maintain the books and records and accounts of the Liquidating Debtors;

H.  invest Cash of the Debtors, including any Cash proceeds realized from the liquidation of any assets of the Liquidating Debtors, including any Causes of Action, and any income earned thereon;

I.  incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

J.  administer each Liquidating Debtor's tax obligations, including (i) filing tax returns or other tax forms, making tax elections, and paying tax obligations, (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Commencement Date through the liquidation of such Liquidating Debtor as determined under applicable tax laws and (iii) representing the interest and account of each Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

K.  prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Liquidating Debtors that are required hereunder, by any Governmental Unit or applicable law;

L.  pay statutory fees in accordance with the Plan; and

M.  perform other duties and functions that are consistent with the implementation of the Plan.

(iii)    *Fees and Expenses*.    From and after the Effective Date, the Plan Administrator, shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable expenses (including professional fees) incurred by the Plan Administrator and any professionals retained by the Plan Administrator from the Plan Administrator Reserve.  The Plan Administrator Reserve shall only be used to pay the reasonable expenses (including professional fees) incurred by the Plan Administrator and any professionals retained by the Plan Administrator.

(iv)     *Privilege and Work Product.*  All of the privileges and work product of the Debtors, including but not limited to any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral), related to the Causes of Action, shall be vested in and maintained by the Plan Administrator. Subject to the Plan Administration Agreement, the Plan Administrator, in its sole discretion, will have exclusive authority to waive or not waive such privileges of the Debtors.

(c)     **Officers and Directors**.

(i)     As of the Effective Date, the existing board of directors or managers, as applicable, of the Liquidating Debtors shall be dissolved without any further action required on the part of the Debtors or the Liquidating Debtors' or any of their respective officers, directors, managers, shareholders, or members, and any remaining officers, managers, or managing members of any Liquidating Debtor shall be dismissed without any further action required on the part of any such Debtor, or the members of any Debtor.

(d)     **Wind Down and Dissolution of Liquidating Debtors**.

(i)     Upon the Effective Date: (i) the authority, power and incumbency of the persons then acting as directors and officers of the Liquidating Debtors shall be terminated and such directors and officers shall be deemed to have resigned, (ii) the Plan Administrator shall have the powers of an officer of such Liquidating Debtors, (iii) the Plan Administrator shall be deemed to hold 100% of the Equity Interests in the Liquidating Debtors until the dissolution of such Liquidating Debtors pursuant this Section 5.2(d) of the Plan, (iv) the Liquidating Debtors shall assign and transfer absolutely and unconditionally to the Plan Administrator all of their remaining Assets after accounting for all distributions made in accordance with Article IV hereof.

(ii)     Subject in all respects to the terms of the Plan, as soon as practicable after the Effective Date, the Liquidating Debtors or the Plan Administrator shall, without having to obtain stockholder, board, director, manager, member or equivalent approval, file for the Liquidating Debtors a certificate of dissolution, certificate of cancellation, or such similar document for each Liquidating Debtor, together with all other necessary corporate and company documents, to effect the dissolution or termination of the existence of the Liquidating Debtors under the applicable laws of their state of incorporation or formation (as applicable), and take any such other actions as the Liquidating Debtors or the Plan Administrator may determine to be necessary or desirable to implement the wind down of the Liquidating Debtors.

(e)     **Implementation of the Plan**.

(i)     The Liquidating Debtors and the Plan Administrator shall be authorized, without further action of the Bankruptcy Court (unless otherwise indicated), to otherwise carry out and implement all provisions of this Plan, including, without limitation to: (A) control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against such Liquidating Debtor; (B) prosecute all Causes of Action, elect not to purpose any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as determined in such Liquidating Debtors' reasonable business judgment to be in the best interests of such Liquidating Debtor and its Estate; (C) retain

18

professionals to assist in performing its duties under this Plan; (D) maintain its books, records, and accounts; and (E) complete and file, as necessary, all required federal, state, and local tax returns or forms.

5.3     *No Substantive Consolidation*.

The Plan is being proposed as a joint chapter 11 plan for each of the Debtors for administrative purposes only and constitutes a separate, independent chapter 11 plan for each Debtor.  The Plan is not premised on, and does not provide for, the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan, or otherwise.

5.4     *Compromise and Settlement of Claims, Interests, and Controversies*.

The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Debtors may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

5.5     *Transactions; Effectuating Documents*.

(a)     Upon the Effective Date, each Post-Emergence Entity (including, if applicable, the Plan Administrator) may take all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and the Transactions, including (i) the execution and delivery of appropriate agreements, including the Asset Purchase Agreements, or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, cancellation, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, cancellation, or dissolution pursuant to applicable state or federal law; (iv) the execution and delivery of the Definitive Documents; (v) such other transactions that are necessary or appropriate to implement the Plan in the most tax efficient manner; and (vi) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law or the Mortgage Loan Documents, as applicable.

(b)     Subject to the consultation rights in the Final Cash Collateral Order, the Transactions will be structured and implemented in a tax-efficient and cost-efficient manner as determined by the Debtors in their sole and absolute discretion.  The Plan Administrator or any Successful Bidder shall work with the Debtors' management and outside advisors to seek to (i) minimize any current cash taxes payable by the Debtors resulting from the Transactions; (ii) maximize the Debtors' favorable tax attributes after consummation of the Transactions; and (iii) optimize the tax structure for the Debtors and its prospective operations and conduct of its businesses.  The Transactions remain subject to tax diligence, and shall be structured in a manner that minimizes any changes in tax attributes or tax profile of the Debtors that would reasonably be expected to impair the Debtors' ability to perform and/or meet applicable targets and forecasts.  In addition, unless otherwise determined by the Debtors in their sole and absolute discretion, the Plan shall be implemented in a manner such that all the Debtors shall continue to be treated as disregarded entities for U.S. federal (and applicable state and local) income tax purposes and no party shall take any action that would cause a Debtor to be treated as a partnership or an association taxable as a corporation for U.S. federal (and applicable state and local) income tax purposes at any time.

(c)      Each officer, member of the board of directors, or manager of the Debtors or the Post-Emergence Entities (including, if applicable, the Plan Administrator), as applicable, is authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including any action by the stockholders or directors or managers of the Debtors or the Post-Emergence Entities) except for those expressly required pursuant to the Plan.

5.6      *Corporate Governance*.

Upon the Effective Date, by virtue of entry of the Confirmation Order, all actions contemplated by the Plan, including any action to be undertaken by Post-Emergence Entities (including, if applicable, the Plan Administrator), shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, the Post-Emergence Entities, the Plan Administrator, or any other Entity or Person.  All matters provided for in the Plan involving the corporate structure of the Debtors or the Post-Emergence Entities, and any corporate action required by the Debtors, the Post-Emergence Entities, or the Plan Administrator in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors, the Post-Emergence Entities, or the Plan Administrator.

5.7      *Section 1145 Exemption*.

(a)      Under section 1145 of the Bankruptcy Code, any securities issued under the Plan that are exempt from such registration pursuant to section 1145(a) of the Bankruptcy Code will be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act of 1933, as amended; (ii) compliance with any rules and regulations of the U.S. Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (iii) the restrictions, if any, on the transferability of such securities and instruments, including any restrictions on the transferability under the terms of the organizational documents of the Debtors or the Post-Emergence Entities, and (iv) applicable regulatory approval.  Persons who receive any securities under this Plan pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder will hold "restricted securities" and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act.  Resales of such restricted securities would not be exempted by section 1145 of the Bankruptcy Code from registration under the Securities Act or other applicable law.  Holders of such restricted securities would, however, under certain conditions, be permitted to resell such securities without registration if they are able to comply with the applicable provisions of Rule 144 or Rule 144A or any other registration exemption under the Securities Act, or if such sales of restricted securities are registered under the Securities Act.

(b)      All Persons and Entities shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether the any security issued under the Plan is exempt from registration.

(c)      Notwithstanding anything to the contrary in the Plan or otherwise, no Person or Entity may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the any securities are exempt from registration or validly issued, fully paid, and non-assessable.

5.8    *Cancellation of Existing Securities and Agreements*.

(a)    Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, including with respect to executory contracts or unexpired leases that shall be assumed by the Debtors, on the Effective Date, all agreements, instruments, and other documents evidencing any Mortgage Claims or any Interest (other than Existing Equity Interests that are Reinstated) and any rights or Liens of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtors and the Post-Emergence Entities thereunder shall be deemed fully satisfied, released, and discharged.

(b)    Notwithstanding such cancellation and discharge and the releases contained in the Plan, the Mortgage Loan Documents shall continue in effect solely to the extent necessary to (i) allow the Mortgage Lender to receive distributions under the Plan; (ii) allow the Disbursing Agent to make post-Effective Date distributions or take such other action pursuant to the Plan on account of the Allowed Claims held by the Mortgage Lender, as applicable, and to otherwise exercise their rights and discharge their obligations relating to the interests of the holders of such Claims in accordance with the Plan; (iii) allow holders of Claims to retain their respective rights and obligations vis-à-vis other holders of Claims pursuant to any applicable loan documents, including the Mortgage Loan Documents; (iv) allow the Mortgage Lender to enforce any obligations owed to them under the Plan; (v)  permit the Mortgage Lender to perform any function necessary to effectuate the foregoing; and (vi) permit the Mortgage Lender to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court relating to the Mortgage Loan Documents; provided that nothing in this Section 5.8 shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any liability or expense to the Debtors, any Post-Emergence Entity, or the Plan Administrator.

(c)    Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors of their interests, as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in this Section 5.8 shall be deemed null and void and shall be of no force and effect.

5.9    *Retention of Causes of Action*.

In accordance with section 1123(b) of the Bankruptcy Code, and subject to the terms of any applicable Successful Bid, (a) following the Effective Date, the Post-Emergence Entities shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Debtor Causes of Action, whether arising before or after the Petition Date, and the Post-Emergence Entities' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, and the Post-Emergence Entities and the Plan Administrator, as applicable, may pursue such Causes of Action, as appropriate, in accordance with the best interests of the applicable Post-Emergence Entities.  No Person may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors, the Post-Emergence Entities, or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action against such Person. Except with respect to Causes of Action against any Person which Person was released by the Debtors or the Post-Emergence Entities on or before the Effective Date (including pursuant to this Plan), the Post-Emergence Entities and the Plan Administrator, as applicable, expressly reserve all rights to prosecute any and all Debtor Causes of Action against any Person, except as otherwise expressly provided in this Plan. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, transferred, or settled in this Plan or a Final Order of the Bankruptcy Court, the Post-Emergence Entities expressly reserve all Debtor Causes of Action for later adjudication.

5.10    *Cancellation of Liens*.

(a)    Except as otherwise specifically provided herein, including pursuant to Section 5.8 of the Plan, upon the payment in full in Cash of an Other Secured Claim, any Lien securing an Other Secured Claim that is paid in full, in Cash, shall be deemed released, and the holder of such Other Secured Claim shall be authorized and directed to release any collateral or other property of the applicable Debtor or Post-Emergence Entity (including any Cash collateral) held by such holder and to take such actions as may be requested by the applicable Post-Emergence Entity, to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the applicable Post-Emergence Entity.

(b)    Upon the receipt of the Plan distributions contemplated under Article IV hereof on account of any Allowed Secured Mortgage Lender Claims held by the Mortgage Lender, the Mortgage Liens shall be deemed released with respect to such Secured Mortgage Lender Claims, and the Mortgage Lender shall be authorized and directed to release all remaining Mortgage Collateral of the applicable Debtor or Post-Emergence Entity (including any Cash collateral) and to take such actions as may be requested by a Post-Emergence Entity or the Plan Administrator, as applicable, to evidence the release of such Mortgage Lien(s), including the execution, delivery and filing or recording of such releases as may be requested by a Post-Emergence Entity or the Plan Administrator, as applicable.

5.11    *Closing of Chapter 11 Cases*.

The Post-Emergence Entities shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Case(s) of any Debtor in accordance with the Bankruptcy Code and Bankruptcy Rules.

5.12    *Notice of Effective Date*.

As soon as practicable following the Effective Date, the Post-Emergence Entities shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

5.13    *Separability*.

Notwithstanding the combination of the separate plans for the Debtors set forth in the Plan for purposes of economy and efficiency, the Plan constitutes a separate chapter 11 plan for each Debtor. Accordingly, if the Bankruptcy Court does not confirm the Plan with respect to one or more Debtors, it may still, subject to the consent of the applicable Debtor(s), confirm the Plan with respect to any other Debtor that satisfies the confirmation requirements of section 1129 of the Bankruptcy Code.

## ARTICLE VI.    DISTRIBUTIONS.

6.1    *Distributions Generally*.

Except as otherwise provided in the Plan, the Disbursing Agent shall make all distributions under the Plan to the appropriate holders of Allowed Claims against the Debtors or the Post-Emergence Entities in accordance with the terms of the Plan.

6.2    *Distribution Record Date*.

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents, shall

be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Interests. The Debtors, the Post-Emergence Entities, and the Plan Administrator shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date. In addition, with respect to payment of any Cure Amounts or disputes over any Cure Amounts, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease as of the close of business on the Distribution Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount. For the avoidance of doubt, the Distribution Record Date shall not apply to the Mortgage Lender, which shall receive distributions in accordance with Article IV of the Plan on or as soon as practicable after the Effective Date.

### 6.3 *Date of Distributions*.

Except as otherwise provided in the Plan, any distributions and deliveries to be made under the Plan shall be made on the Effective Date or as otherwise determined in accordance with the Plan, including the treatment provisions of Article IV of the Plan, or as soon as practicable thereafter; provided that the Post-Emergence Entities and Plan Administrator, as applicable, may implement periodic distribution dates to the extent they reasonably determine them to be appropriate.

### 6.4 *Disbursing Agent*.

A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties. Post-Emergence Entities or their applicable agents shall use commercially reasonable efforts to provide the Disbursing Agent with the amounts of Claims and the identities and addresses of holders of Claims and Interests as of the Distribution Record Date, in each case, as set forth on the claims register. The Post-Emergence Entities and Plan Administrator shall cooperate in good faith with the applicable Disbursing Agent to comply with the reporting and withholding requirements outlined in Section 6.17 of the Plan.

### 6.5 *Rights and Powers of Disbursing Agent*.

(a)     From and after the Effective Date, the Disbursing Agent, solely in its capacity as Disbursing Agent, shall be exculpated by all Entities, including holders of Claims against and Interests in the Debtors and other parties in interest, from any and all claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent. No holder of a Claim or Interest or other party in interest shall have or pursue any Claim or Cause of Action against the Disbursing Agent, solely in its capacity as Disbursing Agent, for making payments in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent.

(b)     The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder; (ii) make all distributions contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

6.6    *No Postpetition Interest on Claims*.

Except as otherwise provided in this Section 6.6 of the Plan, interest shall not accrue or be paid on any Claims on or after the Petition Date. To the extent applicable, any Secured Mortgage Claim entitled to post-petition interest pursuant to 506(b) of the Bankruptcy Code shall be paid interest at the applicable federal judgement rate in effect as of the Effective Date.

6.7    *Delivery of Distributions*.

In the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent shall review its books and records to determine if it possesses additional or different mailing addresses for such holder.  If, after such review, the Disbursing Agent is unable to locate a different or additional address for such holder, no further distributions shall be made to such holder unless and until such Disbursing Agent is notified in writing of such holder's then-current address, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest.  Except as set forth in this Section 6.8, nothing herein shall require the Disbursing Agent to attempt to locate holders of undeliverable distributions and, if located, assist such holders in complying with Section 6.10 of the Plan.

6.8    *Distributions after Effective Date*.

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

6.9    *Unclaimed Property*.

Undeliverable distributions or unclaimed distributions shall remain in the possession of the Debtors or the Post-Emergence Entities until such time as a distribution becomes deliverable or holder accepts distribution, or such distribution reverts back to the Debtors or the Post-Emergence Entities, as applicable, and shall not be supplemented with any interest, dividends, or other accruals of any kind.  Such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one hundred and eighty (180) days from the date of distribution.  After such date, and notwithstanding any other provision of the Plan, all unclaimed property or interest in property shall revert to the Debtor(s) or the Post-Emergence Entities, as applicable, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

6.10    *Time Bar to Cash Payments*.

Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within one hundred eighty (180) days after the date of issuance thereof.  Thereafter, the amount represented by such voided check shall irrevocably revert to the applicable Debtors or Post-Emergence Entities, as applicable, and any Claim in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  Requests for re-issuance of any check within one hundred eighty (180) days after issuance shall be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued.

6.11    *Manner of Payment under Plan*.

Except as otherwise specifically provided in the Plan, at the option of the Debtors or the applicable Post-Emergence Entity, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreement(s) or customary practices of the Debtors.

6.12    *Satisfaction of Claims*.

Except as otherwise specifically provided in the Plan, and in accordance with Sections 5.4 and 10.3 of the Plan, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

6.13    *Minimum Cash Distributions*.

The Disbursing Agent shall not be required to make any distribution of Cash less than One Hundred Dollars ($100) to any holder of an Allowed Claim; provided that if any distribution is not made pursuant to this Section 6.13, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim.

6.14    *Setoffs and Recoupments*.

The Debtors and the Post-Emergence Entities may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable nonbankruptcy law; provided that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or its successor or assign (including the Post-Emergence Entities) of any claims, rights, or Causes of Action that a Debtor or its successor or assign (including the Post-Emergence Entities) may possess against the holder of such Claim.

6.15    *Allocation of Distributions between Principal and Interest*.

Except as otherwise required by law (as reasonably determined by the Debtors or the applicable Post-Emergence Entities), distributions with respect to Allowed Claims shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

6.16    *No Distribution in Excess of Amount of Allowed Claim*.

Notwithstanding anything in the Plan to the contrary, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, distributions under the Plan in excess of the Allowed amount of such Claim.

6.17    *Withholding and Reporting Requirements*.

(a)    *Withholding Rights*.  In connection with the Plan, any party issuing any instrument or making any distribution contemplated by the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.

In the case of a non-Cash distribution that is subject to withholding, the issuing and distributing party or any other withholding agent may, in its sole discretion, withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (ii) pay the withholding tax using its own funds and retain such withheld property. Any amounts withheld pursuant to the preceding sentence, and paid over to the applicable Governmental Unit, shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Entity that receives a distribution pursuant to the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed by any Governmental Unit, including income, withholding, and other taxes, on account of such distribution. In the event any party issues any instrument or makes any non-Cash distribution pursuant to the Plan that is subject to withholding tax and such withholding agent or issuing or distributing party has not sold such withheld property to generate Cash to pay the withholding tax or paid the withholding tax using its own funds and retains such withheld property as described above, such withholding agent or issuing or distributing party has the right, but not the obligation, to not make a distribution until such holder has made arrangements reasonably satisfactory to such withholding agent or issuing or disbursing party for payment of any such tax obligations. Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. The withholding agent or issuing or distributing party may, pursuant to Section 6.17(b), require a holder of an Allowed Claim or any other Entity that receives a distribution pursuant to the Plan to complete and return a Form W-8 or W-9, as applicable to each such holder, and any other applicable forms.

(b)    *Forms*. Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Disbursing Agent or such other Entity designated by the Debtors, the Post-Emergence Entities, withholding agent, or any such other issuing or distributing party (which Entity shall subsequently deliver to the Disbursing Agent any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Entity) Form W-8, and any other forms or documents reasonably requested by any Debtor or the Post-Emergence Entities to reduce or eliminate any withholding required by any federal, state, or local taxing authority. If such request is made and such party fails to comply before the earlier of (i) the date that is ninety (90) days after the request is made, and (ii) the date that is ninety (90) days after the date of distribution, the amount of any such distribution shall irrevocably revert to the Debtors or the Debtor's Estates, and any Claim on account of such distribution shall be discharged and forever barred from assertion against the Debtors, their Estates or their respective properties.

## ARTICLE VII.    PROCEDURES FOR DISPUTED CLAIMS.

7.1    *Objections to Claims*.

The Debtors, the Post-Emergence Entities and the Plan Administrator, as applicable, shall be entitled to object to Claims. After the Effective Date, the Post-Emergence Entities shall have and retain any and all rights and defenses that the Debtors had with regard to any Claim to which they may object, except with respect to any Claim that is Allowed. Any objections to Claims shall be served and filed on or before the Claims Objection Deadline.

7.2    *Resolution of Disputed Administrative Expenses and Disputed Claims*.

On and after the Effective Date, the Post-Emergence Entities and the Plan Administrator, as applicable, shall have the authority to compromise, settle, withdraw, or otherwise resolve any Claims without approval of the Bankruptcy Court, other than with respect to Fee Claims.

7.3     ***Payments and Distributions with Respect to Disputed Claims***.

Notwithstanding anything herein to the contrary, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

7.4     ***Distributions after Allowance***.

After such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder thereof shall be entitled to distributions, if any, to which such holder is then entitled as provided in the Plan, without interest, as provided in Section 7.9 of the Plan. Such distributions shall be made within forty-five (45) days after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim (or portion thereof) becomes a Final Order.

7.5     ***Disallowance of Claims***.

Except to the extent otherwise agreed to by the Debtors, the Post-Emergence Entities, or the Plan Administrator, as applicable, any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, as determined by a Final Order, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Debtors or the Post-Emergence Entities by that Entity have been turned over or paid to the Debtors or the Post-Emergence Entities. All Proofs of Claim filed on account of an indemnification obligation to a current or former director, manager, officer, or employee shall be deemed satisfied and expunged from the claims register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

7.6     ***Estimation of Claims***.

The Debtors, the Post-Emergence Entities and the Plan Administrator, as applicable, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason or purpose. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent Claim, unliquidated Claim or Disputed Claim, that estimated amount shall constitute the maximum limitation on such Claim, and the Debtors, the Post-Emergence Entities, and the Plan Administrator, as applicable, may pursue supplementary proceedings to object to the ultimate allowance of such Claim; <u>provided</u> <u>that</u> such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes only.

7.7     ***Holdback on Account of Disputed Claims***.

From and after the Effective Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Bankruptcy Court in an amount constituting the Allowed amount, or Allowed or Disallowed by Final Order, the Post-Emergence Entities or Plan Administrator, as applicable, shall holdback, for the benefit of each holder of a Disputed Claim, a Disputed Claims Holdback consisting of Cash in an amount equal to the Pro Rata share of Plan distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of

27

(i) the liquidated amount set forth in the filed Proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claim has been estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code as constituting and representing the maximum amount in which such Claim may ultimately become an Allowed Claim, or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Debtor, Post-Emergence Entity, or Plan Administrator, as applicable. Such Cash shall be retained on hand and may be held in a general account.

7.8    ***Claim Resolution Procedures Cumulative***.

All of the objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

7.9    ***Interest***.

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest that accrued thereon from and after the Effective Date.

# ARTICLE VIII.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

8.1    ***General Treatment***.

(a)    As of and subject to the occurrence of the Effective Date:

(i)    For any Debtor consummating a Refinancing Transaction, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed assumed, unless such contract or lease (A) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (B) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (C) is the subject of a motion to reject filed by the Debtors on or before the Effective Date; or (D) is specifically designated as a contract or lease to be rejected by the Debtors.

(ii)    for any Debtor consummating a Sale Transaction, all executory contracts and unexpired leases to which any of the Debtors are parties, shall be deemed rejected, unless such contract or lease (A) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (B) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (C) is the subject of a motion to assume filed by the Debtors on or before the Effective Date; or (D) is specifically designated as a contract or lease to be assumed or assumed and assigned on the Assumption Schedule.

(b)    Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, including assignments to another Debtor or Successful Bidder, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the applicable Post-Emergence Entity or Successful Bidder in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption

or assumption and assignment, or applicable law, and the Post-Emergence Entities or Successful Bidder may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

8.2 ***Determination of Cure Disputes and Deemed Consent***.

(a)   Any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, by the Debtor or the Successful Bidder, as applicable, in accordance with the applicable Asset Purchase Agreement and as reflected in the applicable cure notice, in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such executory contracts or unexpired leases and the Debtors may otherwise agree.

(b)   The Debtors shall file, as part of the Plan Supplement, the Assumption Schedule. On or before December 22, 2025 (or such other date as may be set in accordance with the Disclosure Statement Order and the Bidding Procedures Order), the Debtors shall serve a notice on parties to executory contracts or unexpired leases to be assumed or assumed and assigned reflecting the Debtors' intention to assume the contract or lease in connection with the Plan and, where applicable, setting forth the proposed Cure Amount (if any). **Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors no later than January 11, 2026 at 5:00p.m.** (or such other date as may be set in accordance with the Disclosure Statement Order and the Bidding Procedures Order). Any counterparty to an executory contract or unexpired lease that fails to object timely to the proposed assumption, assumption and assignment, or Cure Amount (i) shall be deemed to have assented to such assumption, assumption and assignment, or Cure Amount, notwithstanding any provision thereof that purports to (1) prohibit, restrict, or condition the transfer or assignment of such contract or lease or (2) terminate or permit the termination of a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtors under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan, and shall forever be barred and enjoined from asserting such objection against the Debtors or Successful Bidder or terminating or modifying such contract or lease on account of transactions contemplated by the Plan and (ii) shall be forever barred, estopped, and enjoined from challenging the validity of such assumption or assumption and assignment, as applicable, thereafter.

(c)   If there is a dispute pertaining to the assumption or assumption and assignment of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to the assumption or assumption and assignment being effective; provided that the Debtors or Post-Emergence Entities may settle any such dispute without any further notice to, or action by, any party or order of the Bankruptcy Court.

(d)   To the extent a dispute relates to Cure Amounts, the Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of such cure dispute; provided that the Plan Administrator or Successful Bidder, as applicable, reserves Cash in an amount sufficient to pay the full amount reasonably asserted as the Cure Amount by the counterparty to such executory contract or unexpired lease.

(e)   Assumption or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease. Any Proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed disallowed and

expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such executory contract or unexpired lease.

### 8.3 *Rejection Damages Claims*.

In the event that the rejection of an executory contract or unexpired lease hereunder results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be classified as a General Unsecured Claim.  Any counterparty to a contract or lease that is rejected by the Debtors must file and serve a proof of claim on the applicable Debtor or Post-Emergence Entity that is party to the contract or lease to be rejected no later than thirty (30) days after the later of (a) the Confirmation Date or (b) the effective date of rejection of such executory contract or unexpired lease.

### 8.4 *Insurance Policies*.

(a)     Notwithstanding any other provision in the Plan, all insurance policies to which any Debtor is a party as of the Effective Date (including any "tail policy") shall be deemed to be and treated as executory contracts and shall be assumed by the applicable Debtors and shall continue as obligations of the Debtors and Post-Emergence Entities in accordance with their respective terms.  Nothing in the Plan shall alter, modify, amend, affect, impair, or prejudice the legal, equitable, or contractual rights, obligations, and defenses of the Debtors, the Post-Emergence Entities, any insurance provider, or any other individual or entity, as applicable, under (or affect the coverage under) the Debtors' insurance policies.

### 8.5 *Assignment*.

To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned hereunder shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment.  To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

### 8.6 *Reservation of Rights*.

(a)     The Debtors may amend the Assumption Schedule until the Effective Date in order to add, delete, or reclassify any executory contract or unexpired lease.  The Debtors shall provide notice of such amendment to any affected counterparty as soon as reasonably practicable.

(b)     Neither the exclusion nor the inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors have any liability thereunder.

(c)     Except as explicitly provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors under any executory or non-executory contract or unexpired or expired lease.

(d)      Nothing in the Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors under any executory or non-executory contract or unexpired or expired lease.

8.7    ***Modifications, Amendments, Supplements, Restatements, or Other Agreements***.

Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and executory contracts and unexpired leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

# ARTICLE IX.      CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND EFFECTIVE DATE.

9.1    ***Conditions Precedent to Confirmation of Plan***.

The following are conditions precedent to confirmation of the Plan:

(a)      the Disclosure Statement Order shall have been entered; and

(b)      the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed.

9.2    ***Conditions Precedent to Effective Date***.

The following are conditions precedent to the Effective Date of the Plan with respect to each Debtor:

(a)      there shall not have been instituted or threatened or be pending any action, proceeding, application, claim, counterclaim, or investigation (whether formal or informal) (or there shall not have been any material adverse development to any action, application, claim, counterclaim, or proceeding currently instituted, threatened or pending) before or by any court, governmental, regulatory, or administrative agency or instrumentality, domestic or foreign, or by any other Person, domestic or foreign, in connection with the Transaction that, as determined by the Debtors in their sole and absolute discretion, would prohibit, prevent, or restrict consummation of the Transaction;

(b)      each document or agreement constituting necessary for consummation of the applicable Transaction, including, in the case of a Sale Transaction, the Asset Purchase Agreement, shall have been duly executed, delivered, acknowledged, filed, and/or effectuated, as applicable;

(c)      the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and the applicable Transaction, and all applicable regulatory or government-imposed waiting periods shall have expired or been terminated;

(d)      all professional fees and expenses of retained professionals required to be approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses in full after the Effective Date shall have been placed in the professional fee escrow account;

(e)    the Confirmation Order shall constitute a Final Order; and

(f)    to the extent not otherwise addressed herein, all actions, documents, and agreements necessary to implement and consummate the Transaction shall have been effected and executed.

9.3    ***Waiver of Conditions Precedent***.

(a)    Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action.  Each of the conditions precedent in Section 9.1 and Section 9.2 may be waived with respect to any Debtor with the express prior written consent (which may be via email of counsel) of the Debtors and the Mortgage Lender, which waiver shall be effective without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.  If the Plan is confirmed for fewer than all of the Debtors as provided for in Section 5.13 of the Plan, only the conditions applicable to the Debtor or Debtors for which the Plan is confirmed must be satisfied or waived for the Effective Date to occur as to such Debtors.

(b)    The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

9.4    ***Effect of Non-Occurrence of Conditions to the Effective Date.***

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (ii) prejudice in any manner the rights of the Debtor, any holders of a Claim or Interest or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders, or any other Entity in any respect.

## ARTICLE X. EFFECT OF CONFIRMATION OF PLAN.

10.1    ***Vesting of Assets***.

In the event of a Refinancing Transaction, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the applicable Debtors' Estates shall vest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided pursuant to the Plan or the Confirmation Order. On and after the Effective Date, the Reorganized Debtors may take any action, including the operation of their businesses, the use, acquisition, sale, lease, and disposition of property, and the entry into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as expressly provided herein. Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

In the event of a Sale Transaction, on the Effective Date, all property of the Estates not transferred pursuant to the applicable Sale Transaction or distributed to the holder of Allowed Secured Mortgage Claims pursuant to Article IV of the Plan, shall vest in or be transferred to the applicable Liquidating Debtor and administered pursuant to Section 5.2 of the Plan.

10.2    *Binding Effect*.

As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtors and their respective successors and assigns, notwithstanding whether any such holders (a) were Impaired or Unimpaired under the Plan; (b) were deemed to accept or reject the Plan; (c) failed to vote to accept or reject the Plan; (d) voted to reject the Plan; or (e) received any distribution under the Plan.

10.3    *Discharge of Claims and Termination of Interests*.

Upon the Effective Date, and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, any and all Claims, Interests, rights, and liabilities against the each of the Debtors pursuant to the Plan that arose prior to the Effective Date shall be discharged to the fullest extent permitted by section 1141 of the Bankruptcy Code. Upon the Effective Date, the holders of any such Claims, Interests, rights, and liabilities against such Debtors shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim, Interest, right, or liability against the Debtors or any of their Assets or property, including, for the avoidance of doubt, any applicable Debtor Property, whether or not such holder has filed a Proof of Claim and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

10.4    *Term of Injunctions or Stays*.

Unless otherwise provided herein, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

10.5    *Injunction*.

(a)    Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim or Interest extinguished, discharged (solely in the event of a Refinancing Transaction), released or treated pursuant to the Plan.

(b)    Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors or the Post-Emergence Entities and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in any or all of the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, released, or treated pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors or their successors or assigns (including the Post-Emergence Entities) or the property of any of the foregoing Entities; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors or their successors or assigns (including the Post-Emergence Entities) or the

33

property of any of the foregoing Entities; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or their successors or assigns (including the Post-Emergence Entities) or the property of any of the foregoing Entities; (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Debtors or their successors or assigns (including the Post-Emergence Entities) or the property of any of the foregoing Entities, except as contemplated or allowed by the Plan, or to the extent asserted with respect to a timely Proof of Claim or an objection to the confirmation of the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

10.6    *Exculpation*.

To the maximum extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim, arising prior to the Effective Date, in connection with or arising out of the commencement, filing or administration of the Chapter 11 Cases; the operation and marketing of the Debtors' Properties and other Assets during the Chapter 11 Cases; the negotiation, formulation, filing, prosecution and pursuit of any Transaction; the negotiation, formulation, filing, prosecution, pursuit, and approval of the Disclosure Statement, the Bidding Procedures Order, the Final Cash Collateral Order, and this Plan, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of any Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is judicially determined in a Final Order to constitute intentional fraud, gross negligence, or willful misconduct, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  To the extent permitted by section 1125(e) of the Bankruptcy Code, the Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of Securities pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

10.7    *Subordinated Claims*.

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

10.8    *Retention of Causes of Action/Reservation of Rights*.

Except as otherwise provided in Sections 5.9, 10.5, and 10.6 of the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of the Estates or of themselves in accordance

with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including any affirmative Causes of Action against parties with a relationship with the Debtors.  Subject to the terms of the applicable Successful Bid, the Debtors and the Post-Emergence Entities shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses notwithstanding the occurrence of the Effective Date, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

10.9    *Solicitation of Plan*.

As of and subject to the occurrence of the Confirmation Date:  (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the Debtors and each of their respective directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation shall not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

10.10    *Corporate and Limited Liability Company Action*.

Upon the Effective Date, all actions of the Debtors contemplated by the Plan shall be deemed authorized and approved in all respects (whether to occur before, on, or after the Effective Date), in each case, in accordance with and subject to the terms hereof.  All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtors and any corporate or limited liability company action required by the Debtors in connection with the Plan shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors.  On or (as applicable) before the Effective Date, the appropriate officers of the Debtors shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments, certificates of merger, certificates of conversion, certificates of incorporation, or comparable documents, or franchise tax reports contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtors.  The authorizations and approvals contemplated by this Section 10.10 shall be effective notwithstanding any requirements under non-bankruptcy law.

10.11    *Special Provision Governing Unimpaired Claims*.

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the applicable Post-Emergence Entities in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

## ARTICLE XI.        RETENTION OF JURISDICTION.

11.1    *Retention of Jurisdiction*.

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)    to hear and determine motions and/or applications for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases, including disputes over Cure Amounts, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)    to hear and determine disputes in connection with the rights of any Debtors arising out of, or resulting from, these Chapter 11 Cases, including with respect to any impact of these Chapter 11 Cases on the property or contract rights of the Debtors;

(c)    to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(d)    to ensure that distributions to holders of Allowed Claims are accomplished as provided for in the Plan and Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan, including, cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely paid;

(e)    to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(f)    to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)    to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)    to hear and determine all Fee Claims;

(j)    to adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(k)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing; provided that any dispute arising under or in connection with the First Lien Exit Facility shall be dealt with in accordance with the provisions of the applicable document;

(l)    to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

(m)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(o)     to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including the releases, discharge, exculpations, and injunctions issued thereunder;

(p)     to resolve disputes concerning Disputed Claims or the administration thereof;

(q)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(r)     to enter one or more final decrees closing the Chapter 11 Cases;

(s)     to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(t)     to resolve disputes as to the ownership of any Claim or Interest;

(u)     to recover all Assets of the Debtors and property of the Debtors' Estates, wherever located;

(v)     to resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

(w)     to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory; and

(x)     to hear and resolve any dispute over the application to any Claim of any limit on the allowance of such Claim set forth in sections 502 or 503 of the Bankruptcy Code.

11.2    *Courts of Competent Jurisdiction*.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII.     MISCELLANEOUS PROVISIONS.

12.1    *Payment of Statutory Fees*.

On the Effective Date and thereafter as may be required, the Debtors shall pay all Statutory Fees that are due and payable. After the Effective Date, the Plan Administrator shall pay any and all Statutory Fees when due and payable. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Plan Administrator shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Notwithstanding anything in the Plan to the contrary, the Debtors shall remain obligated to pay

Statutory Fees to the Office of the U.S. Trustee and file such reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The obligations under this Section 12.1 shall remain for each Debtor until such time as a final decree is entered closing the Chapter 11 Case for such Debtor, a Final Order converting such Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing such Debtor's Chapter 11 Case is entered.

### 12.2  *Substantial Consummation of the Plan*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 12.3  *Plan Supplement*.

The Debtors shall have the right to amend and supplement the Plan Supplement and any schedules, exhibits, or amendments thereto in accordance with the terms of the Plan. Upon its filing with the Bankruptcy Court, the documents included in the Plan Supplement shall be posted at the website of the Debtors' notice, claims, and solicitation agent.

### 12.4  *Request for Expedited Determination of Taxes*.

The Debtors and Plan Administrator shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns of the Debtors filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date, and in the case of a Liquidating Debtor, through the complete wind down of such Liquidating Debtor.

### 12.5  *Exemption from Certain Transfer Taxes*.

Pursuant to and to the fullest extent permitted by section 1146 of the Bankruptcy Code, (a) the transfer of the Debtor Properties or Assets to any Successful Bidder, or its designee, and the making or delivery of any instrument of transfer in connection or furtherance of the Plan, and any financing by any Successful Bidder, (b) the issuance, transfer or exchange of any securities, instruments or documents pursuant to, in implementation of or as contemplated in the Plan or any Asset Purchase Agreement, (c) the creation of any Lien, mortgage, deed of trust, or other security interest, (d) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with any Transaction, and (e) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or stamp tax or similar tax to the fullest extent provided by law, including, but not limited to: (i) mortgage recording taxes imposed under Article 11 of the tax law of the State of New York, (ii) the New York Real Estate transfer tax imposed under Article 31 of the Tax Law of the State of New York, (iii) the New York City Real Property transfer tax imposed by title 11, chapter 21 of the New York City Administrative Code and, (iv) any similar tax on the recording of deeds, transfers or property or ownership interests in property, recording of mortgages or other security instruments imposed by the State of New York, or any political subdivision thereof. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded (including without limitation, the Register of the City of New York) shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without

requiring the payment of any filing fees, documentary stamp tax, deed stamps, transfer tax, intangible tax, or stamp tax or similar tax, as well as cancel and discharge of record all liens, judgments, encumbrances, claims, and other adverse interests in or against the Debtor Properties. All governmental authorities and any other taxing authorities shall be permanently enjoined from the commencement or continuation of any action to collect from the Debtor Properties, any taxes from which the transactions effectuated pursuant to the Plan and Confirmation Order are exempt, pursuant to and in furtherance of section 1146(a) of the Bankruptcy Code and to the greatest extent provided by law, including but not limited to, New York State Real Estate Transfer Taxes, and any mortgage recording tax, and any penalties, interest, or additions to any tax related thereto. Any applicable County Register's Office is hereby authorized and directed to record any deed, mortgage of the Property and any modification, restatement, amendment or assignment of any mortgages and any other similar conveyance, indenture or other documents contemplated under the Plan without the payment of any of the aforementioned exempt taxes or any other transfer tax, stamp tax or similar tax, and without the presentation of affidavits, instruments or returns otherwise required for recording or filing pursuant to the provisions of section 1146(a) of the Bankruptcy Code.

12.6   *Amendments*.

(a)   The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan, prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code. After entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend, modify, or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.

(b)   Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement to cure any non-substantive ambiguity, defect (including any technical defect), or inconsistency without further order or approval of the Bankruptcy Court.

12.7   *Effectuating Documents and Further Transactions*.

Each of the officers of the Debtors is authorized, in accordance with his or her authority under the resolutions of the applicable board of directors or managers (on terms materially consistent with the Plan), to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, which shall be in form and substance reasonably satisfactory to the Debtors.

12.8   *Revocation or Withdrawal of the Plan*.

The Debtors may revoke or withdraw the Plan prior to the Effective Date as to any or all of the Debtors. If, with respect to a Debtor, the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date as to such Debtor does not occur on the Effective Date, then, with respect to such Debtor: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing of or limiting to an amount of any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, such Debtor or any other Entity; (ii) prejudice in any manner the rights of such Debtor or any other Entity; or (iii) constitute an admission of any sort by any Debtor, the Mortgage Lender, or any other Entity.

12.9   *Severability of Plan Provisions*.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (c) nonseverable and mutually dependent.

12.10   *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement or a Definitive Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

12.11   *Time*.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.12   *Dates of Actions to Implement the Plan*.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

12.13   *Immediate Binding Effect*.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Post-Emergence Entities, the holders of Claims and Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), the Exculpated Parties and each of their respective successors and assigns.

12.14   *Deemed Acts*.

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

12.15    *Successor and Assigns*.

       The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each Entity.

12.16    *Entire Agreement*.

       On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

12.17    *Exhibits to Plan*.

       All exhibits, schedules, supplements, and appendices to the Plan (including the Plan Supplement) are incorporated into and are a part of the Plan as if set forth in full herein.

12.18    *Notices*.

       All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by electronic or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

       (a)    if to the Debtors or Reorganized Debtors:

              2 Grand Central Tower
              140 East 45th St., 12th Floor
              New York, NY 100171
              Attn:    Ephraim Diamond, David Barse, and Adam J. Kaplan
              Email:   ephraim@arbelcapital.com
                       dbarse@dmbholdings.com
                       adam@pinnacleny.com

              – and –

              Weil, Gotshal & Manges LLP
              767 Fifth Avenue
              New York, NY 10153
              Attn:    Gary T. Holtzer, Esq., Garrett A. Fail, Esq.,
              Matthew P. Goren, Esq., and Philip L. DiDonato, Esq.
              Telephone:  (212) 310-8000
              Facsimile:  (212) 310-8007
              Email:   gary.holtzer@weil.com
                       garrett.fail @weil.com
                       matthew.goren@weil.com
                       philip.didonato@weil.com

(b)      if to the Mortgage Lender:

Paul Hastings LLP
200 Park Avenue
New York, New York 10166
Attn:    Brett Lawrence, Esq., Nicholas A. Bassett, Esq.,
          Justin Rawlins, Esq., and Harvey A. Strickon, Esq.
Email:  brettlawrence@paulhastings.com
           nicholasbassett@paulhastings.com
           justinrawlins@paulhastings.com
           harveystrickon@paulhastings.com

After the Effective Date, the Debtors have authority to send a notice to Entities providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

Dated: December 1, 2025

Respectfully submitted,

Broadway Realty I Co., LLC and each of the other Debtors

By: _/s/ Ephraim Diamond_____
      Name:  Ephraim Diamond
      Title:   Chief Restructuring Officer

**Annex 1**

**Debtors and Debtor Properties**

| Debtor Entity | Case No. | Address |
|---|---|---|
| 25/35 Hillside Associates LLC | 25-11053 | 25/35 Hillside Avenue, New York NY |
| 34 Seaman Associates, LLC | 25-11075 | 34-44 Seaman Avenue, New York NY |
| 281/295 Wadsworth Associates, LLC | 25-11059 | 281/295 Wadsworth Avenue, New York NY |
| 30 Road Realty Co., LLC | 25-11118 | 25-10/20 30 Road, Queens NY |
| Forest Parkway Realty Co., LLC | 25-11084 | 85-50 Forest Pkwy, Queens NY |
| Park Lane South Realty Co., LLC | 25-11096 | 86-20 Park Lane South, Queens NY |
| 34 Avenue Realty Co., LLC | 25-11077 | 76-09 34th Avenue, Queens NY |
| 85-05 35 Avenue Realty Co., LLC | 25-11102 | 85-05 35th Avenue, Queens NY |
| Broadway Realty I Co., LLC | 25-11050 | 4530 Broadway, New York NY |
| Hillside Realty I Co., LLC | 25-11055 | 11 Hillside Avenue, New York NY |
| 193 Street Realty Co., LLC | 25-11051 | 671-681 West 193th Street, New York NY |
| 18 Street Realty Co., LLC | 25-11065 | 240 East 18th Street, Brooklyn NY |
| 94-06 34th Road Realty Co., LLC | 25-11127 | 94-06 34th Road, Queens NY |
| 94-06 34th Avenue Realty Co., LLC | 25-11124 | 94-06 34th Avenue, Queens NY |
| 63-94 Austin Realty, LLC | 25-11069 | 63-94 Austin Street, Queens NY |
| Kingston Place Realty Co., LLC | 25-11092 | 87-50 Kingston Place, Queens NY |
| 2340 Valentine Avenue Realty Co., LLC | 25-11093 | 2340 Valentine Avenue, Bronx, NY |
| West 50th Street Realty Co., LLC | 25-11062 | 544 West 50th Street, New York NY |
| West 50th Street Realty Co., LLC | 25-11062 | 546 West 50th Street, New York NY |
| West 50th Street Realty Co., LLC | 25-11062 | 548 West 50th Street, New York NY |
| 2400 Realty NY LLC | 25-11100 | 2400 Nostrand Avenue, Brooklyn NY |
| 147 Realty Co., LLC | 25-11074 | 35-19 147th Street, Queens NY |
| 115 East 21 Realty Co., LLC | 25-11131 | 115 East 21st Street, Brooklyn NY |
| 509 Realty Co. LLC | 25-11057 | 509 West 155th Street, New York NY |
| Treger Management LLC | 25-11101 | 815 Gravesend Neck Road, Brooklyn NY |
| 43-60 Baychester, LLC | 25-11104 | 4360 Baychester Avenue, Bronx NY |

| Debtor Entity | Case No. | Address |
|---|---|---|
| Heath Realty LLC | 25-11088 | 2800 Heath Avenue, Bronx NY |
| Audobon Realty LLC | 25-11090 | 155 Audubon Avenue, New York NY |
| 207 Realty LLC | 25-11067 | 639-645 West 207th Street, New York NY |
| 241 Sherman LLC | 25-11060 | 241/251 Sherman Avenue, New York NY |
| 402-412 West 148 LLC | 25-11054 | 402 West 148th Street, New York NY |
| 402-412 West 148 LLC | 25-11054 | 412 West 148th Street, New York NY |
| Fieldstone NY LLC | 25-11078 | 244 Fieldstone Terrace, Bronx NY |
| 1171 President LLC | 25-11056 | 1171-1179 President Street, Brooklyn NY |
| 1362 Ocean LLC | 25-11068 | 1362 Ocean Avenue, Brooklyn NY |
| 1535 Ocean LLC | 25-11080 | 1535 Ocean Avenue, Brooklyn NY |
| 1554 Ocean LLC | 25-11085 | 1554 Ocean Avenue, Brooklyn NY |
| 176 Clarkson Ave LLC | 25-11110 | 176 Clarkson Avenue, Brooklyn NY |
| 222 Lenox Rd LLC | 25-11081 | 222 Lenox Road, Brooklyn NY |
| 225 Parkside LLC | 25-11087 | 225 Parkside Avenue, Brooklyn NY |
| 28-30 Argyle LLC | 25-11111 | 28 Argyle Road, Brooklyn NY |
| 28-30 Argyle LLC | 25-11111 | 40 Argyle Road, Brooklyn NY |
| 292 St. Johns LLC | 25-11117 | 292 St. Johns Place, Brooklyn NY |
| 307 12 St LLC | 25-11122 | 307 12th Street, Brooklyn NY |
| 3301 Farragut LLC | 25-11071 | 3301 Farragut Road, Brooklyn NY |
| 426 East 22 St LLC | 25-11099 | 426-430 East 22nd Street, Brooklyn NY |
| 457 Schenectady LLC | 25-11113 | 457 Schenectady Avenue, Brooklyn NY |
| 481 Eastern LLC | 25-11121 | 481 Eastern Parkway, Brooklyn NY |
| 481 Eastern LLC | 25-11121 | 489 Eastern Parkway, Brooklyn NY |
| 481 Eastern LLC | 25-11121 | 497 Eastern Parkway, Brooklyn NY |
| 529 East 22 LLC | 25-11126 | 529 East 22nd Street, Brooklyn NY |
| 607 Rugby LLC | 25-11061 | 607 Rugby Road, Brooklyn NY |
| 607 Rugby LLC | 25-11061 | 615 Rugby Road, Brooklyn NY |
| 607 Rugby LLC | 25-11061 | 619 Rugby Road, Brooklyn NY |

| Debtor Entity | Case No. | Address |
|---|---|---|
| 607 Rugby LLC | 25-11061 | 625 Rugby Road, Brooklyn NY |
| 681 Ocean LLC | 25-11079 | 681 Ocean Avenue, Brooklyn NY |
| 85 Clarkson LLC | 25-11094 | 85 Clarkson Avenue, Brooklyn NY |
| 916 Carroll St LLC | 25-11114 | 916 Carroll Street, Brooklyn NY |
| 932 Carroll LLC | 25-11119 | 932 Carroll Street, Brooklyn NY |
| 991 Carroll St LLC | 25-11070 | 991-993 Carroll Street, Brooklyn NY |
| 3410 Kingsbridge LLC | 25-11083 | 3410 Kingsbridge Avenue, Bronx NY |
| 706 Realty NY LLC | 25-11086 | 706 Lefferts Avenue, Brooklyn NY |
| 990 Realty NY LLC | 25-11129 | 990 Montgomery Street, Brooklyn NY |
| 1296 Realty LLC | 25-11063 | 1296 Pacific Street, Brooklyn NY |
| 915 Realty LLC | 25-11109 | 915 Washington Avenue, Brooklyn NY |
| 1038 Realty LLC | 25-11123 | 1038 Union Street, Brooklyn NY |
| 1042 Realty LLC | 25-11125 | 1042 Union Street, Brooklyn NY |
| 1048 Realty LLC | 25-11128 | 1048 Union Street, Brooklyn NY |
| 1060 Realty LLC | 25-11130 | 1060 Union Street, Brooklyn NY |
| 1023 Realty LLC | 25-11120 | 1023 Carroll Street, Brooklyn NY |
| 1601 Realty LLC | 25-11097 | 1601 Bedford Avenue, Brooklyn NY |
| 1597 Realty LLC | 25-11091 | 1597 Bedford Avenue, Brooklyn NY |
| 470 Realty NY LLC | 25-11116 | 470 Ocean Avenue, Brooklyn NY |
| 2102 Realty LLC | 25-11076 | 2102 Beverly Road, Brooklyn NY |
| 405 Realty LLC | 25-11095 | 405 East 16th Street, Brooklyn NY |
| 1820 Realty LLC | 25-11072 | 1820 Cortelyou Road, Brooklyn NY |
| 330 Realty NY LLC | 25-11066 | 330 East 19th Street, Brooklyn NY |
| 1280 Realty NY LLC | 25-11058 | 1280 Ocean Avenue, Brooklyn NY |
| 1617 Realty LLC | 25-11103 | 1617 President Street, Brooklyn NY |
| 2513 Newkirk LLC | 25-11106 | 2513-2523 Newkirk Avenue, Brooklyn NY |
| 17 Realty LLC | 25-11107 | 416 East 17th Street, Brooklyn NY |
| 17 Realty LLC | 25-11107 | 422 East 17th Street, Brooklyn NY |

| Debtor Entity | Case No. | Address |
|---|---|---|
| 237 Realty NY LLC | 25-11105 | 237 West 18th Street, New York NY |
| 349 Realty NY LLC | 25-11115 | 349 East 51st Street, New York NY |
| 233 Realty NY LLC | 25-11082 | 233 East 77th Street, New York NY |
| 58 Elizabeth NY LLC | 25-11064 | 58-60 Elizabeth Street, New York, NY |
| 58 Elizabeth NY LLC | 25-11064 | 146 Hester Street, New York NY |
| 40-15 Hampton LLC | 25-11089 | 40-15 Hampton Avenue, Queens NY |
| 536 Realty Co. LLC | 25-11098 | 536 Isham Street, New York NY |
| 45-35 Realty LLC | 25-11108 | 45-35 44th Street, Queens NY |
| Clinton Property Co., LLC | 25-11073 | 314 Clinton Avenue, Brooklyn NY |
| 2 West 120th Realty Co. LLC | 25-11052 | 2 West 120th Street, New York NY |
| Manhattan Realty Co. LLC | 25-11112 | 85 8th Ave Garage, New York NY |