MURIEL GOODE-TRUFANT
Corporation Counsel, City of New York
Attorney for City of New York
By: Zachary B. Kass
    Hugh H. Shull III
100 Church Street
New York, New York 10007
Cell: (646)581-0160
zkass@law.nyc.gov
hughs@law.nyc.gov

Hearing Date and Time:
January 15, 2026 @ 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

In re:

BROADWAY REALTY I CO., LLC., *et al.,*

                Debtors.

------------------------------------------------------X

Chapter 11
Case No. 25-11050 (DSJ)
(Jointly Administered)

## AMENDED: (I) REQUEST OF CITY OF NEW YORK FOR THIRTY DAY ADJOURNMENT OF AUCTION AND HEARING ON APPROVAL OF SALE OF PROPERTIES AND CONFIRMATION OF PLAN; AND (II) SUPPLEMENTAL OBJECTION TO CONFIRMATION OF PLAN AND TO SALE OF PROPERTIES

The City of New York (the "City"), by its attorney MURIEL GOODE-TRUFANT, Corporation Counsel of the City of New York, hereby makes its amended: (i) request for a thirty day adjournment of the dates set forth in the Bid Procedures Order (as defined below), including the auction of the Debtors' real properties (the "Properties"), currently scheduled for January 8, 2026, and the hearing on approval of confirmation of the Debtors' First Amended Joint Plan (the "Plan"), and approval of the sale of the Debtors' Properties, currently scheduled for January 15, 2026; and (ii) supplemental objection to confirmation and to the sale of the Properties. In support of its request for such relief, the City respectfully states:

**Preliminary Statement**

1. On December 23, 2025, the Debtors filed a Notice of Designation of Stalking Horse Bidder (the "Stalking Horse Notice") (Docket No. 916), which designated Summit Gold Inc. ("Summit") as the stalking horse bidder for the purchase of all of the Debtors' Properties.

2. On December 30, 2025, the City filed its initial Limited Objections to the confirmation of the Plan and approval of the proposed sale of the Debtors' Properties (the "Initial Objection") (Docket No. 919).

**Request For Thirty Day Adjournment**

3. In a previously filed statement, the City noted that the order approving the bid procedures (the "Bid Procedures Order") provided the Debtors and interested parties with flexibility in the conduct and scheduling of the sale process. The proposed sale includes approximately 5,500 units in which thousands of tenants and their children are living. At that time, the City stated that because of concerns expressed by tenants, tenant organizations, public officials and other parties, it would support the extension of deadlines and other scheduling milestones, if that would result in more favorable outcomes.

4. Similarly, at this time, the City respectfully requests that the Court adjourn for a period of thirty days the milestone dates set forth in the Bid Procedures Order, including the auction of the Properties currently scheduled for January 8, 2026, and the hearing on approval of confirmation of the Plan and the approval of the sale currently scheduled for January 15, 2026.

5. The City submits that the adjournment is warranted to permit the City to evaluate sufficiently the proposed sale to Summit, to explore any potential alternatives, and to discuss with the interested parties a path forward that will benefit all constituencies. Furthermore,

the City submits that granting such an adjournment will promote the confidence of the public in the fairness and justice of these bankruptcy proceedings.

### Factual Background

6. On January 1, 2026, Zohran Mamdani was inaugurated as the Mayor of the City of New York (the "Mayor"). In his inauguration address, the Mayor reiterated his commitment to protecting the interests of all New Yorkers, including those of limited means and particularly those of renters across the City. That very afternoon, in furtherance of that commitment, the Mayor and several members of his administration visited the premises at 85 Clarkson Avenue, in Brooklyn, which is owned by one of the Debtors in these jointly administered cases. The Mayor met with tenants to discuss their concerns and he viewed at first hand the many problems in the building. At a press conference at the premises, the Mayor expressed his concern about the poor conditions in the building and his sympathy for the hardships suffered by the tenants. He promised that he and his administration would take whatever steps they could to protect the tenants' rights and the City's interests in these pending bankruptcy cases.

### Additional Grounds For Objection to Confirmation

7, Under Section 1129 of the Bankruptcy Code, the Debtors must show that the Plan is feasible and that confirmation is not likely to be followed by liquidation or financial reorganization of the Debtors or any successor to the Debtors. 11 U.S.C. § 1129. As noted above, the Stalking Horse Notice was filed on December 23, 2025. Since then, the Debtors have provided no information regarding Summit, its principals, its history as a landlord of other properties in the City, or its financial resources or capability.

8. Accordingly, the City has substantial concern that even if Summit is able to consummate the proposed sale, it may not have sufficient resources or willingness to rehabilitate

the Properties, or be able to maintain a profitable business based on the income stream from the rent stabilized or rent controlled apartments in the Properties. In that case, the buildings might fall into even greater disrepair and the burden for addressing emergency repairs might fall upon the City and/or on the tenants themselves. In addition, this might result in pressure on current tenants to move out, so that they could be replaced by new tenants paying higher rents who may not know that they could be protected by rent stabilization or rent control; and it is predictable that such displaced tenants may need to seek shelter at great human cost and at the City's expense. Continuing losses and mounting expenses might lead to the need for additional bankruptcies or reorganizations, a state of financial and social chaos potentially worse than the current situation of the Debtors themselves.

9.      The mission of the New York City Department of Housing Preservation and Development ("HPD") is to promote quality and affordability in the City's housing and diversity and strength in the City's neighborhoods, by, among other things, maintaining building and resident safety and health. Because of this, HPD has been monitoring the progress of these jointly administered cases. According to HPD's preliminary calculations, the Debtors owe collectively approximately $12,700,000.00 in arrears and violations. Thus, as a substantial creditor, there can be no question that the City has standing to object to the sale and to the confirmation of the Plan. Moreover, as noted in the City's Initial Objection, there is no clear indication in the Plan or the proposed confirmation order that these amounts will be paid at the closing of the proposed sale, or will be otherwise dealt with under the Plan. If Summit cannot – or does not – remediate the violations the costs of doing so might well fall upon the City, which might have no means to recover such costs. The Debtors have provided no information to show that Summit will have the resources to pay these amounts, especially if, as argued in the City's Initial Objection, Summit is

not entitled to an exemption from the payment of mortgage recording fees under Bankruptcy Code Section 1146. See In re Amsterdam Ave. Dev. Associates, 103 B.R. 454 (Bankr. S.D.N.Y. 1989).

10.   Further, the City submits that the Debtors and Summit have failed to demonstrate that the Properties can support the proposed sale price and maintenance needs and costs given the regulated rents. HPD's preliminary internal analysis, based on information and belief, is that the proposed sale would not lead to a supportable business as long as the Properties continued to have exclusively rent stabilized or rent controlled units because the current rents are very low-averaging.

11.   As noted above, HPD administrative records indicate that there many distressed conditions at the Properties. In addition, there are dozens of letters from tenants of the Properties filed on the docket of the Court attesting to existing health and safety problems at the Properties.

12.   Neither the Debtors nor Summit has provided a comprehensive condition report for the Properties. Absent such a comprehensive physical needs assessment, it is difficult to project the exact repair costs for the Properties. Moreover, the Debtors have provided no information about whether Summit has the resources to address these needs, or whether it has established a reserve for this purpose.

13.   Under the Bid Procedures Order, the Debtors gave the following notice to all potential bidders: "In accordance with these Bidding Procedures, any Potential Bidder that seeks to purchase all or a portion of the Assets will be required to do so subject to the existing tenant leases and applicable Regulatory Restrictions." The Plan apparently does not include the tenant leases in its provisions relating to executory contracts and unexpired leases. However, ordinarily, a debtor must assume an unexpired lease pursuant to Bankruptcy Code Section 365

before it can assign it to a potential purchaser. Under Section 365(b)(1), if there has been a default, the debtor must cure such default; compensate the non-debtor party for any actual pecuniary loss resulting from such default; and provide adequate assurance of future performance under the lease. To the extent that any tenant or tenant organization alleges that there has been a default under the tenants' leases, including, for example, a breach of the warranty of habitability under New York law, the Debtors and Summit have not provided any information as to Summit's ability meet these requirements.

WHEREFORE, the City respectfully requests: (i) that the Court adjourn for a period of thirty days the milestone dates set forth in the Bid Procedures Order, including the auction of the Properties currently scheduled for January 8, 2026, and the hearing on approval of confirmation of the Plan and the approval of the sale currently scheduled for January 15, 2026; (ii) that the proposed Plan not be confirmed and the proposed sale of the Properties not be approved; and (iii) that the Court grant to the City such other and further relief as it determine to be just and warranted.

Of Counsel:   Hugh H. Shull III
              Zachary B. Kass

Dated:        New York, New York
              January 6, 2026

                                              MURIEL GOODE-TRUFANT
                                              CORPORATION COUNSEL OF THE
                                              CITY OF NEW YORK

                                        By:   /s/ Zachary B. Kass
                                              Zachary B. Kass
                                              Senior Counsel