**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | |
|---|---|
| In re | : Chapter 11 |
| : | |
| **BROADWAY REALTY I CO., LLC**, *et al.*, | : Case No. 25-11050 (DSJ) |
| : | |
| Debtors.[1] | : (Jointly Administered) |
| : | |

-------------------------------------------------------------x

## <u>NOTICE OF FILING OF PLAN SUPPLEMENT</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On May 21, 2025, Broadway Realty I Co., LLC and its debtor affiliates, as debtors and debtors in possession (the "**Debtors**"), each commenced cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

On December 3, 2025, the Bankruptcy Court entered an order [ECF No. 789] (the "**Disclosure Statement Order**"), among other things: (i) approving the disclosure statement [ECF No. 782] (together with all exhibits and schedules thereto and as may be amended, modified, or supplemented, the "**Disclosure Statement**") for the Debtors' *First Amended Joint Chapter 11 Plan* [ECF No. 780] (together with all exhibits and schedules thereto and as may be further amended, modified, or supplemented, the "**Plan**") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; and (ii) approving procedures for soliciting, submitting, tabulating votes on, and filing objections to, the Plan.[2]

---

[1]    The last four digits of Broadway Realty I Co., LLC's tax identification number is 5426.  A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/BroadwayRealty.  The Debtors' mailing address is located at 2 Grand Central Tower, 140 East 45th St., 12th Floor, New York, New York 10017.

[2]    Capitalized terms used but not herein defined have the meanings ascribed to them in the Plan.

In accordance with the Plan and Disclosure Statement Order, the Debtors hereby file this Plan Supplement[3] consisting of the following documents:

| **Exhibit A** | [Draft] Plan Administrator Agreement[4] |
|---|---|

The documents contained in the Plan Supplement are integral to, and are considered part of, the Plan.  If the Plan is approved, the documents contained in this Plan Supplement will be approved by the Bankruptcy Court pursuant to the Confirmation Order.

A hearing to consider confirmation of the Plan is currently scheduled to begin on Thursday, January 15, 2026 at 10:00 a.m. (prevailing Eastern Time) before the Bankruptcy Court (the "**Confirmation Hearing**"). The Confirmation Hearing may be adjourned from time to time, without further notice other than by filing a notice on the Bankruptcy Court's docket indicating such adjournment and/or announcement of the adjourned date(s) at the Confirmation Hearing.  The Debtors will file the remaining components of the Plan Supplement, as applicable, prior to the Confirmation Hearing.

## **Additional Information**

Copies of the Disclosure Statement, the Disclosure Statement Order, the Plan, the Plan Supplement and all documents filed in these chapter 11 cases may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by the Debtors' claims and noticing agent, Stretto Inc., located at https://cases.stretto.com/BroadwayRealty.

Dated: January 5, 2026
New York, New York

 /s/  *Gary T. Holtzer*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Gary T. Holtzer
Garrett A. Fail
Matthew P. Goren
Philip L. DiDonato

*Attorneys for the Debtors
and Debtors in Possession*

---

[3]    The Assumption Schedule, any Notice of Successful Bid, and any applicable Asset Purchase Agreement, and in addition, any disclosures in accordance with section 1129(a)(5) of the Bankruptcy Code, will be filed in accordance with the Bidding Procedures Order.

[4]    The Plan Administrator Agreement remains subject to further revision and ongoing negotiation with Flagstar Bank, N.A.

## Exhibit A

**[Draft] Plan Administrator Agreement**

## **PLAN ADMINISTRATOR AGREEMENT**

This Plan Administrator Agreement (the "**Agreement**") is made as of [●], by and between each of the entities listed on Annex 1 hereto, as debtors and debtors in possession (each a "**Liquidating Debtor**" and collectively, the "**Liquidating Debtors**") and [●] (the "**Plan Administrator**," and together with the Liquidating Debtors, the "**Parties**"). This Agreement sets forth, among other things, the scope of the services to be provided by the Plan Administrator in connection with the dissolution and wind-down of the Liquidating Debtors (the "**Services**"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the *First Amended Joint Chapter 11 Plan*, dated December 1, 2025 [ECF No. 780] (as may be further amended, supplemented or modified from time to time and together with all schedules and exhibits thereto, the "**Plan**").

## **RECITALS**:

A.      WHEREAS, on May 21, 2025 (the "**Petition Date**"), the Liquidating Debtors commenced with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") voluntary cases (the "**Chapter 11 Cases**") pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**");

B.      WHEREAS, pursuant to the Plan, following the Effective Date (as defined in the Plan), the Plan Administrator will oversee the wind down, liquidation, and dissolution of the Liquidating Debtors.

C.      WHEREAS, on January [●], 2026, the Bankruptcy Court entered an order confirming the Plan [ECF No. [●]] (the "**Confirmation Order**")]. The Plan and Confirmation Order, among other things, approved the terms of this Agreement and authorized the Liquidating Debtors to enter into any agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan.

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, the sufficiency of which is hereby acknowledged by the Parties, the Parties hereto agree as follows:

1.      *Acceptance; Effectiveness*. The Liquidating Debtors hereby appoint [●] as the administrator of the Plan and the Plan Administrator hereby agrees to accept its appointment as the administrator of the Plan and to provide the Services pursuant to the Plan and the Confirmation Order, and as set forth herein. The Plan Administrator agrees to serve in such capacity until a successor is duly elected and qualified or until the Plan Administrator's earlier death, resignation or removal in accordance with the terms of the Plan. Notwithstanding the date of execution, this Agreement shall only become effective on the Effective Date.

2.      *Authority*. Subject to Section [5.6] of the Plan, upon and after the Effective Date, the Plan Administrator shall have the authority and right on behalf of each Liquidating Debtor, without the need for Bankruptcy Court approval (unless otherwise indicated) or any

action of the Liquidating Debtors or their officers, directors, members, or managers, to carry out and implement all provisions of the Plan, including, without limitation, to:

(a) except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Liquidating Debtors;

(b) make distributions to holders of Allowed Claims in accordance with the Plan;

(c) exercise its reasonable business judgment to direct and control the wind down, liquidation, sale and/or abandoning of the remaining assets of the Liquidating Debtors under the Plan and in accordance with applicable law as necessary to maximize Plan distributions to holders of Allowed Claims against the Liquidating Debtors;

(d) prosecute all Causes of Action of the Liquidating Debtors not transferred pursuant to a Successful Bid, elect not to pursue any such Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the Liquidating Debtors;

(e) make payments to existing professionals who will continue to perform in their current capacities;

(f) retain professionals to assist in performing its duties under the Plan;

(g) maintain the books and records and accounts of the Liquidating Debtors;

(h) invest Cash of the Liquidating Debtors, including any Cash proceeds realized from the liquidation of any assets of the Liquidating Debtors, including any Causes of Action, and any income earned thereon;

(i) incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

(j) administer each Liquidating Debtor's tax obligations, including (i) filing tax returns or other tax forms, making tax elections, and paying tax obligations, (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of each Liquidating Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of such Liquidating Debtor ending after the Commencement Date through the liquidation of such Liquidating Debtor as determined under applicable tax laws and (iii) representing the interest and account of each Liquidating Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(k) prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Liquidating Debtors that are required hereunder, by any Governmental Unit or pursuant to applicable law;

(l) pay statutory fees in accordance with the Plan;

(m) close the Chapter 11 cases; and

(n) perform other duties and functions that are consistent with the implementation of the Plan.

3.  *No Other Duties*. Other than the duties and obligations of the Plan Administrator specifically set forth in this Agreement, the Plan, or the Confirmation Order, the Plan Administrator shall have no duties or obligations of any kind or nature with respect to its position.

4.  *Retention of Counsel and Agents*. Subject to the terms of the Plan and this Agreement, the Plan Administrator may hire (or continue to engage previously hired) attorneys, accountants, consultants, independent contractors, and other professionals (collectively, the "**Professionals**") as may be required or appropriate in connection with its duties hereunder. Any Professionals retained by the Plan Administrator shall be entitled to reasonable compensation for services rendered and reimbursement of reasonable and documented fees, costs, and expenses incurred. The payment of the fees, costs, and expenses of the Plan Administrator and the Professionals incurred from and after the Effective Date shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court; *provided*, however, that any disputes related to such fees, costs, and expenses shall be resolved by the Bankruptcy Court.

5.  *Plan Administrator Reserve*. As of the date hereof, the Debtors have established a reserve of $[●] (the "**Plan Administrator Reserve**") solely for the funding of the fees and expenses of the Plan Administrator acting in accordance with the Plan and this Agreement.

6.  *Fees and Expenses*. From and after the Effective Date, the Plan Administrator, shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable expenses (including professional fees) incurred by the Plan Administrator and any Professionals retained by the Plan Administrator from the Plan Administrator Reserve, up to the amount of the Plan Administrator Reserve. The Plan Administrator Reserve shall only be used to pay the reasonable fees and expenses (including professional fees) incurred by the Plan Administrator and any professionals retained by the Plan Administrator. The compensation of the Plan Administrator shall not exceed the Plan Administrator Reserve unless otherwise modified with the prior written consent, not to be unreasonably withheld, conditioned, or delayed, of the Mortgage Lender (as defined in the Plan) (e-mail shall suffice), or upon the provision of reasonable prior notice through the filing of a notice of such proposed modifications with the Bankruptcy Court.

7.  *Service of Plan Administrator*.  The Plan Administrator shall serve until the earlier of (i) the Bankruptcy Court's entry of an order closing the Chapter 11 Cases; or (ii) the Plan Administrator's voluntarily resignation, upon notice filed with the Bankruptcy Court, and a successor plan administrator is appointed in accordance with the terms of this Agreement.  The resignation or removal of the Plan Administrator, or any successor plan administrator, shall not operate to terminate this Agreement, revoke any existing agency created pursuant to this Agreement, nor invalidate any action theretofore taken by the Plan Administrator or any successor plan administrator.

8.  *Termination of Agreement*.  This Agreement shall terminate when the Bankruptcy Court enters a final decree contemplated by section 350 of the Bankruptcy Code and Bankruptcy Rule 3022 closing the Chapter 11 Cases of each of the Liquidating Debtors, unless otherwise set forth in such final decree.

9.  *Resignation*.  The Plan Administrator may resign by filing on the docket of the Chapter 11 Cases a written notice at least sixty (60) days prior to the expected date of resignation. Such resignation shall become effective on the later to occur of (a) the date specified in such written notice and (b) the effective date of the appointment of a successor Plan Administrator in accordance with section 10 hereof.

10. *Appointment of Successor Plan Administrator.*  Upon the resignation of the Plan Administrator, the Plan Administrator shall recommend for appointment by the Bankruptcy Court a successor plan administrator which is acceptable to the Mortgage Lender, to be appointed by the Bankruptcy Court.  In the event of the death, resignation, removal, bankruptcy or insolvency of the Plan Administrator, the Bankruptcy Court upon request or on its motion shall appoint a successor plan administrator on an interim or permanent basis.  Any successor plan administrator shall be subject to the terms of this Agreement

11. *Indemnification.*

(a)     Except as otherwise set forth in the Plan or Confirmation Order, the Plan Administrator and all Professionals (each an "**Indemnified Party**") shall be indemnified and held harmless to the fullest extent permitted by law.  Such indemnification shall survive the termination of this Agreement.

(b)     Satisfaction of any obligation of the Liquidating Debtors arising pursuant to the terms of this Section 11 shall be payable only from the assets of the Liquidating Debtors and may be advanced to the applicable Indemnified Party prior to the conclusion of the matter from which such obligation arises, and such right to payment shall be prior and superior to the rights of any other party to receive a distribution of the assets of the Liquidating Debtors.

(c)     The Plan Administrator shall be permitted to pay from the assets of the Liquidating Debtors expenses reasonably incurred and documented by any Indemnified Party in defending, participating in, or settling any action,

4

proceeding, or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in connection with the duties, acts, or omissions of the Plan Administrator, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise.

(d)     Each Indemnified Party shall, and by its acceptance of the indemnification rights hereunder hereby undertakes to, repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor under this Agreement.

(e)     The provisions of this Section 11 shall survive the termination of this Agreement.

(f)     The Professionals are third-party beneficiaries of this Agreement and are entitled to enforce the terms hereof against the applicable persons and/or entities

12. *Ratification of Prior Acts*.   In order to effectuate an orderly and efficient transition of the administration of the assets of the Liquidating Debtors to the Plan Administrator, the Plan Administrator may perform certain services in connection with its duties and obligations under this Agreement prior to the Effective Date, and the authorization for such performance and ratification of acts taken by the Plan Administrator prior to the Effective Date is evidenced by the execution hereof to the extent not already authorized by the Plan or Confirmation Order.

13. *Standard of Care; Exculpation*.   Neither the Plan Administrator nor any director, officer, member, affiliate, employee, employer, Professional, agent, or representative of the Plan Administrator shall be liable for losses, claims, damages, liabilities, or expenses in connection with the affairs or property of the Liquidating Debtors to any holder of an Allowed Claim, or any other Person, for the acts or omissions of the Plan Administrator under this Agreement or the Plan; *provided*, however, that the foregoing limitation shall not apply as to any losses, claims, damages, liabilities, or expenses suffered or incurred by any holder of an Allowed Claim that are found by a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the actual fraud, gross negligence, or willful misconduct of such Person or Entity.   Every act done, power exercised, or obligation assumed by any director, officer, member, affiliate, employee, employer, Professional, agent, or representative of the Plan Administrator pursuant to the provisions of this Agreement shall be held to be done, exercised, or assumed, as the case may be, by such director, officer, member, affiliate, employee, employer, Professional, agent, or representative of the Plan Administrator for and on behalf of the Plan Administrator and not otherwise; *provided*, however, that none of the foregoing Entities or Persons shall be deemed to be responsible for any other such Entities' or Persons' actions or inactions outside of the scope of the authority provided by the Plan Administrator.   Except as provided in the proviso of the first sentence of this Section 14, every holder of an Allowed Claim, Person, or Entity contracting or otherwise dealing with or having any relationship with the Plan Administrator, and any director, officer, member, affiliate, employee, employer, Professional, agent, or representative of the Plan

Administrator, shall have recourse only to the assets of the Liquidating Debtors for payment of any liabilities arising in connection with such contracts, dealings, or relationships, and the Plan Administrator, any director, officer, member, affiliate, employee, employer, Professional, agent, or representative of the Plan Administrator shall not be individually liable therefor.  For the avoidance of doubt, except as provided in the proviso of the first sentence of this Section 14, the Plan Administrator, in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Liquidating Debtors.

14. *Limitation of Liability*.  In connection with all actions taken in its capacity as Plan Administrator, the Plan Administrator shall be entitled to rely upon the applicable exculpation, release, indemnification, and limitation of liability provisions set forth in any corporate organizational document, this Agreement, the Plan, and the Confirmation Order; *provided*, that, the Plan Administrator shall not be entitled to any release, exculpation, or indemnification if the Plan Administrator is determined to have engaged in actual fraud, gross negligence, or willful misconduct as determined by a Final Order of the Bankruptcy Court.

15. *Reliance by Plan Administrator*.  To the fullest extent permitted by applicable law, the Plan Administrator may rely, and shall be fully protected in acting or refraining from acting if he relies, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Plan Administrator reasonably believes to be genuine and to have been signed or presented by the proper arty or parties or, in the case of e-mails or facsimiles, to have been sent or the Plan Administrator reasonably believes to have been sent by the proper party or parties, and the Plan Administrator may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein. To the fullest extent permitted by applicable law, the Plan Administrator may consult with counsel, accountants, financial advisors, and other Professionals with respect to matters in their area of expertise, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Plan Administrator (other than for acts or omissions constituting willful misconduct, bad faith, gross negligence, or actual fraud of the Plan Administrator as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction). To the fullest extent permitted by applicable law, the Plan Administrator shall be entitled to rely upon the advice of Professionals in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon (other than for acts or omissions constituting willful misconduct, bad faith, gross negligence, or actual fraud of the Plan Administrator as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction).  To the fullest extent permitted by applicable law, the Plan Administrator shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Agreement, the Plan, or any other document executed in connection herewith or therewith, and the Plan Administrator shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

16. *Preservation of Privilege*.  In connection with any rights, claims, and causes of action that constitute assets of the Liquidating Debtors, any attorney-client privilege, work

product privilege, or other privilege or immunity attaching to any documents or communications (whether oral or written) in respect of those assets (collectively, the "**Privileges**") shall vest in the Plan Administrator on the Effective Date, and thereafter, such Privileges shall belong to the Plan Administrator and shall be waivable by the Plan Administrator.  The Plan Administrator shall seek to preserve and protect all applicable Privileges and any causes of action of the Debtors.  The Plan Administrator's receipt of any information subject to the Privileges shall not waive any such Privileges, and all such Privileges are expressly preserved.

17. *Survival*.  Upon termination of this Agreement, the Plan Administrator shall have no further duties or obligations hereunder or as Plan Administrator, except as specifically provided herein. For the avoidance of doubt, any other provision in the Agreement that, by its terms, specifically survives termination of the Agreement, including Section 9, shall survive termination of this Agreement.

18. *Headings.*   The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement or of any term or provision hereof.

19. *Amendment; Waiver*.   The Plan Administrator, with the approval of the Bankruptcy Court, may, from time to time modify, supplement, or amend this Agreement in any way that is not inconsistent with the Plan or the Confirmation Order.  No failure by any party hereto to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

20. *Governing Law*.   This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction.

21. *Retention of Jurisdiction*.   The Bankruptcy Court shall retain exclusive jurisdiction over the Debtors and the assets of the Liquidating Debtors to the fullest extent permitted by law, including, but not limited to, for the purposes of interpreting and enforcing the provisions of this Agreement.

22. *Dispute Resolution*.  Without permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced against the Plan Administrator in its official capacity as such with respect to its status, duties, powers, acts, or omissions in any forum other than the Bankruptcy Court.

23. *Conflict with Plan*.  The principal purpose of this Agreement is to aid in the implementation of the Plan and Confirmation Order and, therefore, this Agreement incorporates and is subject to the provisions of the Plan.  To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan and Confirmation Order.   In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order, as applicable, shall control.

Notwithstanding anything to the contrary in this Agreement, the Plan Administrator will distribute all property of the Liquidating Debtors and/or the proceeds thereof to holders of Allowed Claims as of the Distribution Record Date in accordance with the Plan and Confirmation Order.

24. *Severability*.  If any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable, this Agreement shall be deemed to be amended to the extent necessary to make such provision enforceable, or, if necessary, this Agreement shall be deemed to be amended to delete the unenforceable provision or portion thereof.  In the event any provision is deleted or amended, the remaining provisions shall remain in full force and effect.  Notwithstanding the foregoing, the Parties recognize and agree that this Agreement is to be interpreted and applied in such manner as to, as nearly as possible, give effect to the Parties' intent as to all provisions hereof, including, without limitation, such provisions as may be declared to be unenforceable.

25. *Integration*.  This Agreement (together with the Plan and the Confirmation Order) sets forth the whole agreement between the Parties with respect to the transactions contemplated herein, superseding all other discussions, promises, representations, warranties, agreements, and understandings, whether written or oral, between the Parties with respect thereto.

26. *Successors and Assigns*.  Except as provided herein, no party hereto shall have the right to assign its rights hereunder.

27. *Notice*.  Notices or other documents required to be delivered to the Plan Administrator under this Agreement shall be delivered to:


[●]
[●]
[●]
[●]


with copies to:


Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn:  Gary T. Holtzer, Esq., Garrett A. Fail, Esq.,
       Matthew P. Goren, Esq.; and Philip L. DiDonato, Esq.
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:     gary.holtzer@weil.com
           garrett.fail @weil.com
           matthew.goren@weil.com
           philip.didonato@weil.com

28. *Counterparts; Effectiveness*.    This Agreement may be executed in one or more counterparts, each of which shall be an original, but all such counterparts shall together constitute one and the same agreement.    Provided that the Effective Date has occurred, this Agreement shall become effective when each party hereto shall have received a counterpart thereof signed by the other party hereto.    The Parties agree that this Agreement will be considered signed when the signature of a party is delivered by facsimile or e-mail transmission.    Such facsimile or e-mail signature shall be treated in all respects as having the same effect as an original signature.

[*Signature page follows.*]

IN WITNESS WHEREOF, the Parties hereto have either executed and acknowledged this Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers.

**PLAN ADMINISTRATOR**

By:

_____

      Name:        [●],
                  through [●]

**EACH OF THE LIQUIDATING DEBTORS**
**LISTED ON ANNEX 1**

_____

      Name:        [●]
      Title:         [●]

*[Signature Page to Plan Administrator Agreement]*

**<u>Annex A</u>**

Liquidating Debtors