WILLIAM K. HARRINGTON                     **Hearing Date: January 15, 2026**
United States Trustee, Region 2           **Hearing Time: 10:00 a.m.**
U.S. Department of Justice
Office of the United States Trustee
One Bowling Green, Room 534
New York, New York 10004
Telephone: (212) 510-0500
By: Paul K. Schwartzberg, Trial Attorney
Daniel Rudewicz, Trial Attorney

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| BROADWAY REALTY I CO., LLC, *et al.,* | Case No. 25-11050 (DSJ) |
| Debtors.[1] | (Jointly Administered) |

## OBJECTION OF THE UNITED STATES TRUSTEE TO
## CONFIRMATION OF THE FIRST AMENDED JOINT CHAPTER 11 PLAN

---

[1] The last four digits of Broadway Realty I Co., LLC's tax identification number are 5426.   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/BroadwayRealty/. The Debtors' mailing addresses are located at 2 Grand Central Tower, 140 East 45th St., 12th Floor, New York, New York 10017.

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee") files this objection (the "Objection") to the confirmation of the *First Amended Joint Chapter 11 Plan* [ECF No. 780] (as amended or modified from time to time, the "Plan").[2] In support thereof, the United States Trustee respectfully states:

## PRELIMINARY STATEMENT

The United States Trustee objects to confirmation for two reasons. First, the Exculpation Provision, taken together with the related definition of Exculpated Parties, is impermissibly overbroad.   It protects parties that are not estate fiduciaries as well as parties that have not yet come into existence.   It shields parties from liability for actions they have taken or will take in the future that have not been and may never be taken under the watchful eyes of this Court. And it permits parties to avoid liability merely by alleging to have relied on the advice of counsel. While this may be an appropriate affirmative defense, it should not be used as a shield for inappropriate conduct.

Second, the Plan's provisions regarding the Debtors' ability to amend or modify plan provisions after the Effective Date of the Plan do not fully comport with Section 1127 of the Bankruptcy Code. Specifically, while the Plan outlines the procedures under which the Debtors would utilize in order to make "technical" or other modifications to the Plan, the Plan fails to acknowledge that should such modifications be material in nature, simple notice to creditors would be insufficient, even with Court approval.

Othe parties have filed objections to the Plan, including the City of New York, which requests "a thirty day adjournment of the dates set forth in the Bid Procedures Order." *See* ECF

---

2  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

2

No. 924. Because there do not appear to be any exigencies in this Plan that mandate an accelerated timeline, there does not seem to be any reason why this request should not be granted.

For these reasons, as detailed more fully below, the United States Trustee respectfully requests that the Court deny confirmation of the Plan.

## BACKGROUND

1.     On May 21, 2025 (the "Petition Date"), the Debtors each filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").   ECF No. 1.

2.     The Debtors' cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).   ECF No. 3.

3.     The Debtors are operating their business and managing their affairs pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.     No trustee, examiner, or statutory committee of creditors has been appointed in these cases.

5.     On October 27, 2025, the Debtors filed the Joint Chapter 11 Plan [ECF No. 670] (as amended on December 1, 2025 [ECF No. 780], the "Plan") together with a disclosure statement in support thereof [ECF No. 671] (as amended on December 1, 2025 [ECF No. 782], the "Disclosure Statement").

6.     The Court approved the Disclosure Statement by order dated December 3, 2025 [ECF No. 789] (the "Disclosure Statement Order"). The hearing to consider confirmation of the Plan is currently scheduled for January 15, 2026, at 10:00 a.m. (prevailing Eastern Time).

7.     The Plan defines "***Exculpated Parties***" as "(a) the Debtors and the Estates; (b) the

3

Debtors' directors, officers, and managing members; (c) the Professionals; (d) the Mortgage Lender and its professional advisors; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), such Entities' successors and assigns." Plan at section 1.41.

8.      The Plan defines "***Mortgage Lender***" as "Flagstar Bank, N.A., in its capacity as prepetition lender to each of the Debtors under the Mortgage Loan Documents." Plan at section 1.57.

9.      Section 10.6 of the Plan contains an exculpation provision that provides as follows:

To the maximum extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim, arising prior to the Effective Date, in connection with or arising out of the commencement, filing or administration of the Chapter 11 Cases; the operation and marketing of the Debtors' Properties and other Assets during the Chapter 11 Cases; the negotiation, formulation, filing, prosecution and pursuit of any Transaction; the negotiation, formulation, filing, prosecution, pursuit, and approval of the Disclosure Statement, the Bidding Procedures Order, the Final Cash Collateral Order, and this Plan, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of any Securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is judicially determined in a Final Order to constitute intentional fraud, gross negligence, or willful misconduct, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. To the extent permitted by section 1125(e) of the Bankruptcy Code, the Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of Securities pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

4

Plan at section 10.6 (the "Exculpation Provision").

10.    Section 12.3 of the Plan provides:

The Debtors shall have the right to amend and supplement the Plan Supplement and any schedules, exhibits, or amendments thereto in accordance with the terms of the Plan. Upon its filing with the Bankruptcy Court, the documents included in the Plan Supplement shall be posted at the website of the Debtors' notice, claims, and solicitation agent.

Plan at section 12.3.

11.    Section 12.6 of the Plan provides:

*Amendments.*
(a) The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan, prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code. After entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend, modify, or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.
(b) Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement to cure any non-substantive ambiguity, defect (including any technical defect), or inconsistency without further order or approval of the Bankruptcy Court

Plan at section 12.6.

12.    On January 5, 2026, the Debtors filed the *Notice of Filing of Plan Supplement,*

which included a draft Plan Administrator Agreement. ECF No. 925.

13.    Section 14 of the Plan Administrator Agreement provides:

Limitation of Liability. In connection with all actions taken in its capacity as Plan Administrator, the Plan Administrator shall be entitled to rely upon the applicable exculpation, release, indemnification, and limitation of liability provisions set forth in any corporate organizational document, this Agreement, the Plan, and the Confirmation Order; provided, that, the Plan Administrator shall not be entitled to any release, exculpation, or indemnification if the Plan Administrator is determined

to have engaged in actual fraud, gross negligence, or willful misconduct as determined by a Final Order of the Bankruptcy Court.

Plan Administrator Agreement at 14 (the "Limitation of Liability Provision").

14.    On January 5, 2026, the City of New York filed the *Amended Supplemental Objection to Confirmation of Plan and Sale of Properties and Request for Adjournment.* ECF No. 924.

## ARGUMENT

## I.    THE EXCULPATION PROVISION AND LIMITATION OF LIABILITY PROVISION HAVE NUMEROUS FLAWS.

The Exculpation Provision and Limitation of Liability Provision have numerous flaws, including: (a) the parties receiving the exculpation are non-estate fiduciaries and the provisions provide a shield for conduct by parties not yet in existence; (b) the provisions shield future, which is outside of the Court's supervision and purview; (c) the provisions exculpate and release parties for any conduct taken upon the advice of counsel elevating an affirmative defense to a complete limitation on liability.

### A.  Only Estate Fiduciaries Are Entitled to Exculpation.

The only Bankruptcy Code provision that expressly authorizes exculpation is section 1125(e). The statutory language of section 1125 is narrow and exculpates "a person" from liability stemming from such person's participation in the solicitation of a plan or issuance of securities in connection with the plan. Nevertheless, as further discussed below, some courts of appeals have concluded that exculpation may also be ordered as to court-supervised estate fiduciaries who performed services during a chapter 11 case prior to plan confirmation. *See, e.g., In re Highland Capital Mgmt., L.P.*, 48 F.4th 419, 437 (5th Cir. 2022). But even assuming that

6

exculpation can ever properly be imposed beyond the narrow circumstances contemplated by

11 U.S.C. § 1125, the scope of this Plan's Exculpation Provision is plainly unjustified.

Here, the Plan's Exculpation covers a broad group of actors that extends beyond the

Debtors and estate fiduciaries, specifically, the Mortgage Lender and its professional advisors.

Plan at section 1.41.   Moreover, while not even included in the definition of an Exculpated

Party, the Limitation of Liability Provision contained in the Plan Administrator Agreement

provides that "the Plan Administrator shall be entitled to rely upon the applicable exculpation,

release, indemnification, and limitation of liability provisions set forth in any corporate

organizational document, this Agreement, the Plan." Plan Administrator Agreement at section

14. Hence, although it would appear at first read that the Plan Administrator was not an

Exculpated Party and therefore, not protected by the broad exculpation provision in the Plan, a

closer read of a separate document filed less than two days before the deadline for filing

objections to the Plan, makes it apparent that the Plan Administrator receives all of the

protections of the Exculpation Provision.

Even within those courts that permit exculpation beyond the limits of section 1125,

exculpation should not shield anyone who is not a court-supervised fiduciary from  liability. *See,
e.g.*, *In re Highland Capital Mgmt., L.P.*, 48 F.4th 419, 437 (5th Cir. 2022) ("[A]ny exculpation

in a Chapter 11 reorganization plan [must] be limited to the debtor, the creditors' committee and

its members for conduct within the scope of their duties, 11 U.S.C. § 1103(c), and the trustees

within the scope of their duties[.]"); *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000)

(court considered whether an official committee of unsecured creditors could be exculpated and

held that 11 U.S.C. § 1103(c) implies both a fiduciary duty and a limited grant of immunity to

members of the unsecured creditors' committee); *Patterson v. Mahwah Bergen Retail Grp., Inc.*,
636 B.R. 641, 700-01 (E.D. Va. 2022)("Exculpation is appropriate when it is solely limited to
fiduciaries who have served a debtor through a chapter 11 proceeding." (citing *In re Health
Diagnostic Lab. Inc*., 551 B.R. 218, 232 (Bankr. E.D. Va. 2016))); *In re Wash. Mut., Inc.*, 442
B.R. 314, 350-51 (Bankr. D. Del. 2011)("[An] exculpation clause must be limited to the
fiduciaries who have served during the chapter 11 proceeding: estate professionals, the
Committees and their members, and the Debtors' directors and officers."); *In re PTL Holdings
LLC*, 2011 WL 5509031, at *12 (Bankr. D. Del. Nov. 10, 2011) (stating that "the exculpation
clause here must be reeled in to include only those parties who have acted as estate fiduciaries
and their professionals"); *see also Blixseth v. Credit Suisse,* 961 F.3d 1074, 1082 (9th Cir. 2020)
(exculpation limited to essential participants in the plan process); *Bank of New York Trust
Company, NA v. Official Unsecured Creditors' Committee (In re Pacific Lumber Co.)* 584 F.3d
229 (5th Cir. 2009).

Exculpating the Mortgage Lender and the Plan Administrator may result in unintended
and unjust protection for non-fiduciaries' actions outside of the bankruptcy process. *See, e.g.*, *In
re Murray Energy Holdings Co.*, No. 24-2028, 2024 WL 4664543, *6-8 (Bankr. S.D. Ohio Oct.
31, 2024) (dismissing malpractice claims against attorneys as being exculpated under confirmed
plan).   And certainly an experienced Mortgage Lender, such as here, must be well aware of the
risks it undertakes in lending to its commercial clients, but it undoubtedly has taken great care to
ensure that the mortgage loan documents provide it with sufficient protections. Including the
Mortgage Lender as an Exculpated Party is simply not necessary.   Similarly, the Plan
Administrator to be named will be aware of the risks faced in taking such an assignment and will

have weighed those risks against the compensation to be paid.

In sum, the United States Trustee respectfully requests that the Court curtail the list of parties receiving the benefit of the Exculpation Provision.

### B. The Exculpation Provision Should Not Shield Exculpated Parties Who Rely Upon the Advice of Counsel.

The United States Trustee also objects to the Exculpation Provision to the extent it grants automatic protection to Exculpated Parties based on a purported reliance on legal advice. Reliance on counsel's advice is a good faith defense, to be raised by a defendant to any claims or legal actions. However, it is not an absolute bar against any kind of liability. A court may find, for example, that reliance upon counsel was unreasonable in the circumstances. *See, e.g.*, *IOS Cap., Inc. v. Phoenix Printing, Inc.*, 348 Ill. App. 3d 366, 375, 808 N.E.2d 606, 614 (2004) ("The reasonableness of acting on advice of legal counsel applies in the corporate context as in other areas of the law. While an officer or director may not blindly accept counsel's advice to avoid liability, he may rely on such advice when he does not have knowledge of his actions causing such reliance to be unwarranted.").

Here, the Exculpation Provision provides that "in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan."   Plan at section 10.6.   Such language completely usurps a court's authority and obligation to determine whether an Exculpated Party was entitled to or should have reasonably relied upon the advice of counsel. As stated above, while reliance may be raised as an affirmative defense, it should not be an absolute bar against liability. There is no justification for such blanket protection, and it should be removed from the Exculpation

Provision.[3]

### C.  The Exculpation Provision Should be Limited to Acts or Omissions Occurring from the Petition Date to the Effective Date.

Exculpation provisions should be limited to acts or omissions during the case.   An exculpation provision should not extend to prepetition activity that cannot be exculpated. *See Wash. Mut.*, 442 B.R. at 350 (exculpations cover "actions in the bankruptcy case") (citing *PWS Holding.,* 228 F.3d at 246).   Exculpation clauses should not extend past the effective date of a plan in order to avoid exculpating actions that have not yet occurred and are yet unknown. *See In re Mallinckrodt PLC*, 639 B.R. 837, 883 (Bank. D. Del. 2022) (exculpation "only extends to conduct that occurs between the Petition Date and the effective date"). In addition, post-effective date entities cannot receive prospective immunity by exculpation, just as they cannot receive prospective immunity through a release. *See Wash. Mut*., 442 B.R. at 348 ("The Liquidating Trust and its Trustee have not done anything yet for which they need a release. They will not even come into existence until the Plan is confirmed.").

Here, the temporal scope of the Exculpation Provision has no start date. For example, the Exculpation Provision covers prepetition actions: "each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim, arising prior to the Effective Date, or liability for any claim, arising prior to the Effective Date." Plan at section 10.6.   Likewise, because of the Limitation of Liability Provision in the Plan Administrator Agreement, the

---

3 Recently, in *In re Azul S.A.*, the court observed that the plan language had been modified such that exculpated parties "may only reasonably rely on the advice of counsel 'to the extent permitted by and under applicable law.'" *In re Azul S.A.*, 25-11176 (SHL), 2026 Bankr. LEXIS 23, at *25 (Bankr. S.D.N.Y. Jan. 6, 2026).

temporal scope of the Exculpation Provision could be interpreted to provide prospective exculpation that extends past the Effective Date, especially as it covers the Plan Administrator. The Plan should not grant prospective releases to entities that do not yet exist on account of future conduct and claims that have yet to arise.

## II.    THE PLAN MODIFICATION PROVISIONS ARE TOO BROAD.

The Bankruptcy Code is clear on plan modification. 11 U.S.C. § 1127.   Yet, sections 12.3 and 12.6 of the Plan arguably provide the Debtors with broader discretion in modifying the Plan and the Plan Supplement than is provided in the Bankruptcy Code. Any supplements after confirmation should not be able to materially modify the Plan.   *See, e.g., Johns-Manville I*, 920 F.2d 121, 128 (2d Cir. 1990) (finding that because the proposed modification was sought pre-consummation and the class members' substantive rights would not be altered, it was permissible); *Findly v. Blinken (In re Johns-Manville Corp.) ("Johns-Manville II"),* 982 F.2d 721 (2d Cir. 1992) (holding, in part, that plan modification violated section 1127(b) would modify the rights of health claimants under the confirmed plan by changing the rights as to amounts recoverable and as to timing and rate of payments); *In re Ionosphere Clubs, Inc.,* 208 B.R. at 816 (reversing court's approval of settlement that would modify plan to give debtor additional time to assume or reject lease because permitting parties "to modify a provision that explicitly was incorporated into a reorganization plan ... would permit circumvention of the bankruptcy process").   Accordingly, the Plan should be amended to make clear that any supplemental provisions post-confirmation cannot be permitted to allow material modifications to the Plan, and that material modifications will require solicitation and approval by creditors

11

## <u>RESERVATION OF RIGHTS</u>

The United States Trustee further reserves his right to object to confirmation of the Plan or any amendments or supplements thereto, including but not limited to, expressing a view as to the request of a significant party, the City of New York, for these proceedings to be adjourned for thirty days in order to permit interested creditors to review the financial ramifications of the Plan and proposed Stalking Horse Bidder upon the Debtors' tenants and the City of New York.

*[Remainder of page intentionally left blank.]*

## <u>CONCLUSION</u>

WHEREFORE, the United States Trustee respectfully requests that the Court sustain the

objection herein and grant such other relief as the Court deems appropriate and just.

Dated: January 7, 2026
      New York, New York

           WILLIAM K. HARRINGTON
           UNITED STATES TRUSTEE

By:    */s/ Paul K. Schwartzberg*
       Paul K. Schwartzberg, Esq
       Daniel Rudewicz, Esq.
       Trial Attorneys
       Office of the United States Trustee - NY
       Alexander Hamilton Custom House
       One Bowling Green, Room 534
       New York, NY 10004-1408
       Tel. No. (212) 510-0500