

**NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2021111701597001003E2783

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 24 |
|---|---|

| Document ID: **2021111701597001** | Document Date: 10-28-2021 | Preparation Date: 12-31-2021 |
|---|---|---|

Document Type: MORTGAGE
Document Page Count: 23

**PRESENTER:**

FIRST AMERICAN TITLE INS - LW
666 THIRD AVENUE
3020-1086972
NEW YORK, NY 10017
515-832-3206
LWING@FIRSTAM.COM

**RETURN TO:**

JPMORGAN CHASE BANK NA
P.O. BOX 9011
COPPELL, TX 75019

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 3292 | 1 | Entire Lot | 2961 MARION AVENUE |

Property Type: APARTMENT BUILDING

## CROSS REFERENCE DATA

CRFN_____  *or*  DocumentID_____  *or*  _____ Year____ Reel____ Page_____  *or*  File Number_____

## PARTIES

**MORTGAGOR/BORROWER:**

2961-65 M LLC
20 S. BROADWAY, SUITE 300
YONKERS, NY 10701

**MORTGAGEE/LENDER:**

JPMORGAN CHASE BANK, NA
14800 FRYE ROAD
FORT WORTH, TX 76155

## FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 1,740,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 1,740,000.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 8,700.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 19,575.00 | | $ | 0.00 |
| Spec (Additional): | $ | 4,350.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 5,220.00 | | | |
| NYCTA: | $ | 10,875.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 48,720.00 | | | |
| Recording Fee: | $ | 152.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          01-10-2022 09:58
City Register File No.(CRFN):

**2022000012464**

*Annette M Hill*

*City Register Official Signature*

*3020-1086972*

**First American Title
Insurance Company**
666 Third Avenue   5th fl
New York, N.Y  10017
Phone: (212) 922-9700
Fax: (212) 922-0881

# MORTGAGE,
## SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS,
## AND FIXTURE FILING

Dated:  October 28, 2021

in the amount of

**$1,740,000.00**

(the "Mortgage Amount")

From

**2961-65 M LLC**

as mortgagor ("Borrower")
having an address at:

20 S Broadway, Ste 300
Yonkers, NY  10701

To

## JPMORGAN CHASE BANK, N.A.

14800 Frye Road, 2nd Floor
Mail Code TX1-0007
Fort Worth, Texas  76155-2732
Attention:  Portfolio Administration

as mortgagee ("Lender")

**LOCATION OF PREMISES:**

| | |
|---|---|
| Street Address: | **2961-2965 Marion Ave** |
| County of: | **Bronx** |
| State of: | **New York** |
| Borough: | **Bronx** |
| Section: | **12** |
| Block: | **3292** |
| Lot: | **1** |

---

**After recording, please return to:**

JPMORGAN CHASE BANK, N.A.
Attention: CTL Closing
P.O. Box 9011
Coppell, TX 75019-9011

RECORDING REQUESTED BY AND WHEN
RECORDED MAIL TO:

JPMORGAN CHASE BANK, N.A.
Attention: CTL Closing
P.O. Box 9011
Coppell, TX 75019-9011

**BE ADVISED THAT THE PROMISSORY NOTE SECURED BY THIS SECURITY INSTRUMENT MAY PROVIDE FOR ONE OR MORE OF THE FOLLOWING: (1) A VARIABLE RATE OF INTEREST; (2) A BALLOON PAYMENT AT MATURITY, (3) DEFERRAL OF A PORTION OF ACCRUED INTEREST UNDER CERTAIN CIRCUMSTANCES WITH INTEREST SO DEFERRED ADDED TO THE UNPAID PRINCIPAL BALANCE OF THE NOTE AND SECURED HEREBY.**

## MORTGAGE, SECURITY AGREEMENT,
## ASSIGNMENT OF LEASES AND RENTS
## AND FIXTURE FILING

**Notwithstanding anything to the contrary set forth in this Security Instrument, the maximum amount of principal indebtedness secured by this Security Instrument or which under any contingency may become secured hereby at any time hereafter is $1,740,000.00 together with interest thereon, and all amounts expended by Lender to maintain the lien of this Security Instrument or protect any of the Property, including without limitation, all amounts in respect of insurance premiums and real estate taxes, charges and assessments, litigation expenses to prosecute or defend the rights, remedies and lien of this Security Instrument or title to the Property, and any costs, charges or amounts to which Lender becomes subrogated upon payment, whether under recognized principles of law or equity or under express statutory authority.**

Loan No. 200490242

THIS MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND FIXTURE FILING (this "Security Instrument"), is made this **28th day of October, 2021** between **2961-65 M LLC, a Delaware limited liability company,** the address of which is **20 S Broadway, Ste 300, Yonkers, NY 10701**, as mortgagor ("Borrower"); and **JPMORGAN CHASE BANK, N.A.** at its offices at **P.O. Box 9178, Coppell, Texas 75019-9178** (together with its successors and assigns, "Lender").

## RECITALS

1.   **Granting Clause.**  Borrower irrevocably mortgages, warrants, grants, conveys and assigns to Lender and its successors and assigns, forever, all of Borrower's estate, right, title and interest in and to the property in the county of **Bronx**, state of New York, with a street address of **2961-2965 Marion Ave, Bronx, New York 10458** (which address is provided for reference only and shall in no way limit the description of the real and personal property otherwise described in this Section 1), described as follows, whether now existing or hereafter acquired (all of the property described in all parts of this Section 1 and all additional property, if any, described in Section 2 shall be referred to as the "Property"):

   1.1     **Land and Appurtenances.**  The land described on Exhibit A hereto, and all rights-of-way, easements, air rights, water rights and appurtenances thereto (collectively, the "Land"); and

4825-5536-1928V.2 -

1.2    **Improvements and Fixtures**. All buildings, structures and other improvements now or hereafter erected on the Land (collectively, the "Improvements"), and all facilities, fixtures, machinery, apparatus, installations, goods, equipment, furniture, building materials and supplies and other properties of whatsoever nature, now or hereafter located in or used or procured for use in connection with the operation of the Land and the Improvements; and

1.3    **Enforcement and Collection**. Any and all rights of Borrower to collect and receive all rents, income, revenues, issues, earnest money, deposits, tax, utility and insurance refunds, mineral, oil and gas rights and profits, and other moneys, payable or receivable from or on account of any of the Property, including interest thereon, or to enforce all other provisions of any other agreement affecting or relating to any of the Property, to bring any suit in equity, action at law or other proceeding for their collection or for the specific or other enforcement of any such agreement, award or judgment, in the name of Borrower; and

1.4    **Accounts, Income and Rights**. Any and all rights of Borrower in any and all accounts, rights to payment, contract rights, chattel paper, documents, instruments, licenses, contracts, agreements, Impounds (as defined below) and general intangibles relating to any of the Property; and

1.5    **Leases and Rents**. All of Borrower's rights in and to all Leases and Rents (as such terms are defined in Section 2.2.1 below) (in accepting this Security Instrument, Lender does not assume any liability for the performance of any such Lease); and

1.6    **Insurance Policies; Condemnation Awards**. All rights in and to all pertinent present and future fire, hazard, earthquake or other insurance policies covering any of the Property (whether or not Lender requires such insurance and whether or not Lender is named as an additional insured or loss payee of such insurance); and all Awards (defined below); and all proceeds or sums payable in lieu of or as compensation for the loss of or damage to any of the Property; and

1.7    **Other Property**. All books and records of Borrower relating to the Property in any form, all contracts, agreements, permits, plans, specifications, drawings, surveys, engineering reports and other work products relating to the Property or to the construction of the existing or any future Improvements, all rights of Borrower in, to or under any architect's contracts or construction contracts relating to the construction of the existing or any future Improvements, and any performance and/or payment bonds issued in connection therewith, and all trademarks, trade names, computer software and other intellectual property used by Borrower in connection with the Property.

2.    **Security Agreement and Assignment of Leases and Rents**.

2.1    **Security Agreement**. To the extent any of the property described in Section 1 is personal property, Borrower grants to Lender, a security interest therein and in all products and proceeds of any thereof, pursuant to the Uniform Commercial Code of the state of New York (the "UCC"). Borrower hereby irrevocably authorizes Lender to file any financing statement, fixture filing or similar filing to perfect the security interests granted in this Security Instrument without Borrower's signature. This Security Instrument constitutes a financing statement, filed as a fixture filing in the real estate records of the county of the state in which the real property described in Exhibit A is located, with respect to any and all fixtures included within the list of Improvements and fixtures described in Section 1.2 of this Security Instrument and to any other personal property that is now or hereafter becomes a part of the Property as fixtures.

2.2    **Assignment of Leases and Rents**.

2.2.1    **Absolute Assignment**. Borrower hereby absolutely and unconditionally grants, transfers, conveys, sells, sets over and assigns to Lender all of Borrower's right, title and interest now existing and hereafter arising in and to the leases, subleases, concessions, licenses, franchises, occupancy agreements, tenancies, subtenancies and other agreements, either oral or written, now existing and hereafter arising which affect the Property, Borrower's interest therein or any Improvements, any and all security deposits, guaranties and other security related thereto, and all supporting obligations, letters of credit (whether tangible

4825-5536-1928V.2 -

or electronic) and letter of credit rights guaranteeing or supporting any of the foregoing (all of the foregoing, and any and all extensions, modifications and renewals thereof, shall be referred to, collectively, as the "Leases"), and hereby gives to and confers upon Lender the right to collect any and all income, rents, issues, profits, payments, damages, refunds, royalties and proceeds made pursuant to or in connection with the Leases and any and all prepaid rent and security deposits thereunder (collectively, the "Rents"). This Security Instrument creates and shall be construed to create an absolute assignment to Lender of the Leases and the Rents and shall not be deemed to create a security interest therein for the payment of any indebtedness or the performance of any obligations under the Loan Documents (as defined below). Borrower irrevocably appoints Lender its true and lawful attorney at the option of Lender at any time an Event of Default (as defined below) exists and is continuing, to demand, receive and enforce payment, to give receipts, releases and satisfactions and to sue, either in the name of Borrower or in the name of Lender, for all such Rents and apply the same to the obligations secured by this Security Instrument.

2.2.2    **Revocable License to Collect**.  So long as no Event of Default exists and is continuing, Borrower shall have a revocable license, to collect all Rents, and to retain, use or distribute the same.  Upon the occurrence and during the continuation of any Event of Default, the foregoing license shall terminate automatically and without notice.

2.2.3    **Collection and Application of Rents by Lender**.  While any Event of Default exists and is continuing: (i) Lender may at any time, without notice, in person, by agent or by court-appointed receiver, and without regard to the adequacy of any security for the obligations secured by this Security Instrument, enter upon any portion of the Property and/or, with or without taking possession thereof, in its own name sue for or otherwise collect Rents (including past due amounts); and (ii) upon written demand by Lender therefor, Borrower shall promptly deliver to Lender all prepaid rents, deposits relating to Leases or Rents, and all other Rents then held by or thereafter collected by Borrower, whether prior to or during the continuance of any Event of Default. Any Rents collected by or delivered to Lender may be applied by Lender against the obligations secured by this Security Instrument, less all expenses, including attorneys' fees and disbursements, in such order as Lender shall determine in its sole and absolute discretion.  No application of Rents against any obligation secured by this Security Instrument or other action taken by Lender under this Section 2.2 shall be deemed or construed to cure or waive any Event of Default, or to invalidate any other action taken in response to such Event of Default, or to make Lender a mortgagee-in-possession of the Property.

2.2.4    **Direction to Tenants**.  Borrower hereby irrevocably authorizes and directs the tenants under all Leases to pay all amounts owing to Borrower thereunder to Lender following receipt of any written notice from Lender that states that an Event of Default exists and is continuing and that all such amounts are to be paid to Lender.  Borrower further authorizes and directs all such tenants to pay all such amounts to Lender without any right or obligation to inquire as to the validity of Lender's notice and regardless of the fact that Borrower has notified any such tenants that Lender's notice is invalid or has directed any such tenants not to pay such amounts to Lender.

2.2.5    **No Liability**.  Lender shall not have any obligation to exercise any right given to it under this Security Instrument and shall not be deemed to have assumed any obligation of Borrower with respect to any agreement, lease or other property in which a lien or security interest is granted under this Security Instrument.

3.    **Obligations Secured**.  This Security Instrument is given for the purpose of securing:

3.1    **Performance and Payment**.  The performance of the obligations contained herein and the payment of **$1,740,000.00** with interest thereon and all other amounts payable according to the terms of the Loan (as defined below) made to Borrower evidenced by a promissory note of even date herewith executed by Borrower, payable to the order of Lender, and any and all extensions, renewals, modifications or replacements thereof (the "Note").  As used herein, the "Loan" shall mean the loan evidenced by the Note and secured by this Security Instrument.

3.2    **Future Advances**.  The repayment of any and all sums advanced or expenditures made by Lender subsequent to the execution of this Security Instrument for the maintenance or preservation of the Property or advanced or expended by Lender pursuant to any provision of this Security Instrument subsequent to its execution.

4825-5536-1928V.2 -

3.3    **Interest**. All of the obligations secured by this Security Instrument shall bear interest at the rate of interest applicable to the Note (including interest at the Default Rate, as defined in the Note, as applicable), which interest shall also be secured by this Security Instrument.

3.4    **Other Amounts**. All other obligations and amounts now or hereafter owing by Borrower to Lender under this Security Instrument, the Note or any other document, instrument or agreement evidencing, securing or otherwise relating to the Loan and any and all extensions, renewals, modifications or replacements of any thereof (collectively, the "Loan Documents"); provided, however, that this Security Instrument does not and shall not in any event be deemed to, secure the obligations owing to Lender under the following Loan Documents: (a) any certificate and indemnity agreement regarding hazardous substances (the "Indemnity Agreement") executed in connection with the Loan (or any obligations that are the substantial equivalent thereof); or (b) any guaranty of the Loan (collectively, the "Guaranty").

4.    **Warranties and Covenants of Borrower**. Borrower represents and warrants to, and covenants and agrees with, Lender as provided herein. All representations and warranties contained in this Security Instrument are true and correct in all material respects as of the date of this Security Instrument and shall remain true and correct in all material respects as of each date thereafter until the obligations secured hereby are paid in full.

4.1    **Warranties**.

4.1.1    Borrower has full power and authority to grant the Property to Lender and warrants the Property to be free and clear of all liens, charges, and other monetary encumbrances except those encumbrances appearing in the title insurance policy accepted by Lender insuring the lien of this Security Instrument ("Permitted Encumbrances").

4.1.2    To Borrower's knowledge and except as otherwise disclosed to Lender in writing prior to the date of this Security Instrument or disclosed to Lender in writing promptly after Borrower first obtains knowledge thereof, the Property is free from damage (including, but not limited to, any construction defects or nonconforming work) that would materially impair the value or use of the Property.

4.1.3    The Loan is solely for business or commercial purposes, and is not for personal, family, household or agricultural purposes.

4.1.4    To Borrower's knowledge and except as otherwise disclosed to Lender in writing prior to the date of this Security Instrument or disclosed to Lender in writing promptly after Borrower obtains knowledge thereof, Borrower, the Property and the present and contemplated use and occupancy of the Property are in compliance with all Applicable Laws in all material respects; and any such matters disclosed to Lender that are related to or affecting insurance coverage shall be disclosed in writing to Borrower's insurer.

4.1.5    Any and all rent rolls, property operating statements and other financial reports ("Financial Reports") furnished to Lender in connection with the Loan are true and correct in all material respects as of their dates, and no material adverse change has occurred in the matters reported in those Financial Reports since the dates of the last submission of those Financial Reports that has not been disclosed to Lender in writing.

4.1.6    Borrower has determined in good faith that: (a) the Loan, including any Guaranty, is an arm's-length transaction on market rate terms; and (b) neither Lender nor any of its affiliates exercised any discretionary authority or control over, or rendered any investment advice in connection with, Borrower's decision to enter into the Loan.

4.2    **Preservation of Lien**. Borrower will preserve and protect the priority of this Security Instrument as a lien on the Property subject only to the Permitted Encumbrances. If Borrower fails to do so, Lender may take any and all actions necessary or appropriate to do so and all sums expended by Lender in so doing, including without limitation, advances for taxes, assessments,

4825-5536-1928V.2 -

impositions or liens against the Property, shall be treated as part of the obligations secured by this Security Instrument, shall be paid by Borrower upon demand by Lender and shall bear interest at the highest rate borne by any of the obligations secured by this Security Instrument.

    4.3    **Repair and Maintenance of Property**. Borrower will keep the Property in good condition and repair, including without limitation underpinning and supporting the Property and any Improvements. Borrower will not remove or demolish, alter, or make additions or construct any new structure on the Property, without the express written consent of Lender, which consent shall not be unreasonably withheld, conditioned or delayed. Notwithstanding anything in this Security Instrument to the contrary, (a) Borrower may make commercially reasonable nonstructural alterations, improvements and replacements to the Property in a manner customary for similar properties; and (b) with respect to commercial leases only, Borrower or its tenants may construct tenant improvements made pursuant to Leases of commercial space in the Property that have been entered into in good faith and in compliance with the requirements of this Security Instrument.

    4.4    **Insurance**.

        4.4.1    **Insurance Coverage**. At all times during the term of the Loan, Borrower shall comply, and shall cause any other owners of the Property to comply, with the minimum insurance requirements set forth in Schedule "1" attached hereto. Borrower will maintain such insurance as further security for the faithful performance of the obligations secured by this Security Instrument.

        4.4.2    **Damage and Destruction**.

            (a)    **Borrower's Obligations**. In the event of any damage to or loss or destruction of the Property (a "Casualty"), Borrower shall (i) give prompt written notice of the Casualty to Lender and to Borrower's insurer, and shall make a claim under each insurance policy providing coverage therefor and shall promptly furnish Lender with a copy of such claim, proof of loss and such other documentation as Lender may reasonably require; (ii) cause the aggregate proceeds of any and all insurance policies insuring the Property, whether or not required by this Security Instrument, that are payable as a result of the Casualty (collectively, the "Insurance Proceeds") to be paid to Lender to be disbursed or applied in accordance with this Section 4.4.2; and (iii) promptly commence and diligently pursue to completion in a good, workmanlike and lien-free manner the restoration, replacement and rebuilding of the Property as nearly as possible to its value and condition immediately prior to the Casualty (collectively, the "Restoration") and otherwise in accordance with this Section 4.4.2. Borrower shall be responsible for all uninsured losses and deductibles. As used in this Security Instrument, the term "Casualty Threshold Amount" means the lesser of $250,000 or five percent of the original face principal amount of the Note. The provisions of subsection 4 of Section 254 of the Real Property Law of New York covering the insurance of buildings against loss by fire shall not apply to this Mortgage.

            (b)    **Control and Disbursement of Proceeds.** If the Casualty is expected to be greater than the Casualty Threshold Amount, or if a Default exists, Lender shall control, administer and disburse all Insurance Proceeds subject to Borrower's satisfaction of the terms and conditions of Lender's form of disbursement agreement, or such other documentation required by Lender, relating to the disbursement of Insurance Proceeds and the Restoration of the Property. If the Casualty is expected to be equal to or less than the Casualty Threshold Amount, and for so long as no Default exists, Lender shall disburse the Insurance Proceeds to Borrower to complete the Restoration in accordance with this Security Instrument.

            (c)    **Lender's Rights**. Borrower hereby authorizes Lender, in its own name or as attorney-in-fact for Borrower (which power is coupled with an interest and is irrevocable so long as this Security Instrument remains of record) at any time an Event of Default exists and is continuing, to make proof of loss, to settle, adjust and compromise any claim under insurance policies on the Property, to appear in and prosecute any action arising from such insurance policies, to collect and receive Insurance Proceeds, and to deduct therefrom Lender's expenses incurred in the adjustment, collection and disbursement of such Insurance Proceeds or otherwise in connection with the Casualty or the Restoration. Each insurance company is hereby irrevocably authorized and directed to make payment of all Insurance Proceeds directly to Lender. Notwithstanding anything to the contrary, Lender shall not be responsible for or incur any liability for any such insurance, or for the form or legal sufficiency of

4825-5536-1928V.2 -

insurance contracts, solvency of insurers, or payment of losses, and Borrower hereby expressly assumes full responsibility therefor and all liability, if any, thereunder.

(d)    **Application of Proceeds**.  Lender shall have the option to apply the Insurance Proceeds to the obligations secured by this Security Instrument, whether or not then due, in such order as Lender may reasonably determine (or to hold such proceeds for future application to those obligations) if: (i) an Event of Default exists and is continuing; (ii) Borrower fails to satisfy any condition precedent to disbursement of Insurance Proceeds as required by Lender; or (iii) Lender reasonably determines that (A) the rental income will be insufficient to timely pay all debt service and other property operating expenses, or will be insufficient to provide a debt service coverage ratio at least equal to that existing immediately prior to the Casualty; (B) the Restoration cannot be completed by the earlier of (1) twelve months prior to the maturity date of the Note, or (2) within twelve months after the date of the Casualty; provided, however, nothing herein shall extend the maturity date of the Note; or (C) the loan-to-value ratio of the Property following the Restoration, as calculated by Lender in its reasonable discretion, will be greater than the loan-to-value ratio required by Lender's then-current underwriting requirements for similar loans secured by property similar to the Property.

(e)    **Effect on the Indebtedness**.  Any reduction in the obligations secured hereby resulting from the application of Insurance Proceeds or other funds pursuant to this subsection 4.4.2 shall be deemed to take effect only on the date of such application.  No application of Insurance Proceeds or other funds to the obligations secured hereby shall result in any adjustment in the amount or due dates of installments due under the Note.

(f)    **Costs and Expenses**.  Borrower shall pay, within 30 days after demand by Lender, all costs and expenses (including attorneys' fees) reasonably incurred by Lender in connection with the adjustment, collection and disbursement of Insurance Proceeds pursuant to this Security Instrument or otherwise in connection with the Casualty or the Restoration.

4.5    **Right of Inspection**.  Subject to the rights of tenants, Borrower shall permit Lender or its agents or independent contractors, at all reasonable times and upon reasonable advance notice (except in the event of an emergency, in which case no advance notice is required), to enter upon and inspect the Property without materially and adversely interfering with the use and enjoyment of the Property by Borrower or any tenants of Borrower.

4.6    **Compliance with Laws, Etc.; Preservation of Licenses**.  Notwithstanding any disclosure made by Borrower pursuant to Section 4.1.4 above, Borrower shall comply in all material respects with (a) all Federal, State and local laws, statutes, ordinances, rules, regulations, licenses, permits, approvals, orders, judgments and other requirements of governmental authorities (collectively, "Applicable Law") applicable to Borrower, the Property or the use, repair and maintenance thereof by Borrower or any third party, (b) all easements, licenses and agreements relating to the Property or the use thereof by Borrower or any third party, and (c) all requirements necessary to the continued existence and validity of all rights, licenses, permits, privileges, franchises and concessions relating to any existing or presently contemplated use of the Property, including but not limited to any zoning variances, special exceptions and nonconforming use permits.  Borrower shall indemnify, defend and hold harmless Lender for any and all damages, claims, liabilities, reasonable costs and expenses (including attorneys' fees) arising from Borrower's failure to comply with this Section 4.6.

4.7    **Further Assurances**.  Borrower will, at its expense, from time to time execute and deliver any and all such instruments of further assurance and other instruments and do any and all such acts, or cause the same to be done, as Lender deems reasonably necessary to grant the Property to Lender, or to carry out the purposes of this Security Instrument.

4.8    **Legal Actions**.  Borrower will appear in and defend any action or proceeding before any court or administrative body purporting to affect the security hereof or the rights or powers of Lender; and will pay all reasonable costs and expenses, including cost of evidence of title, title insurance premiums and any fees of attorneys, appraisers, environmental inspectors and others, incurred by Lender, in a reasonable sum, in any such action or proceeding in which Lender may appear, in any suit or other proceeding to foreclose this Security Instrument, and in any foreclosure sale under this Security Instrument.

4.9    **Taxes, Assessments and Other Liens**. Except as provided in this Security Instrument, Borrower will pay prior to delinquency all taxes, assessments, encumbrances, charges, and liens with interest, on the Property or any part thereof.

4.10    **Expenses**. Except as prohibited under Applicable Law, Borrower will pay all reasonable costs, fees and expenses (including attorneys' fees) reasonably incurred by Lender in connection with this Security Instrument on the due date thereof (or if no other due date is specified, within 30 days after receipt of Lender's written notice therefor).

4.11    **Repayment**. Borrower will pay all principal and interest and any prepayment premiums on the Loan as provided in the Note. Borrower will pay all other amounts owed under the Loan Documents on the due date thereof (or if no other due date is specified, within 30 days after written demand by Lender). All such amounts shall bear interest at the interest rate applicable to the Note from the date advanced or expended by Lender (or, if not consisting of an advance or expenditure by Lender, from the due date) until paid. If Lender so elects in its sole discretion, such amounts shall be (i) added to the principal balance of the Loan and due and payable in full on the maturity date of the Note, or (ii) added to the principal balance of the Loan and amortized over the remainder of the amortization period used to calculate the monthly payments required under the Note, which may result in an increase to the amount of the monthly payment due under the Note.

4.12    **Financial and Operating Information.** Within 90 days after the end of each fiscal year of Borrower, Borrower shall furnish to Lender the rent rolls, property operating statements and other financial reports for the Property for such fiscal year, in a form acceptable to Lender in its reasonable discretion. In addition, within 20 days after written request by Lender, Borrower shall furnish to Lender such financial statements and information about (i) the Property, (ii) Borrower and Guarantor, or any general partners, managing members or managers of Borrower or Guarantor, or any other controlling parties of Borrower, and (iii) commercial tenants or occupants of any portion of the Property that are affiliates of Borrower or Guarantor of the Loan, as Lender may reasonably require.

If Borrower fails to comply with this Section 4.12, and such failure continues for a period of 30 days after written notice of such failure by Lender to Borrower, Borrower shall pay to Lender, as liquidated damages for the extra expense in servicing the Loan, $500 on the first day of the month following the expiration of such 30-day period and $100 on the first day of each month thereafter until such failure is cured. All such amounts shall be secured by this Security Instrument. Payment of such amounts shall not cure any Default or Event of Default resulting from such failure.

4.13    **Sale, Transfer, or Encumbrance of Property**.

4.13.1    **Encumbrances; Entity Changes**. Except as otherwise provided below and subject to Borrower's rights to enter into Leases, Borrower shall not, without the prior written consent of Lender, further encumber the Property or any interest therein, or cause or permit any change in the entity, ownership, or control of Borrower without first repaying in full the Note and all other sums secured hereby.

4.13.2    **Sales, Transfers, Conveyances**. Except as otherwise provided below, Borrower shall not, without the prior written consent of Lender (which consent shall be subject to the conditions set forth below), sell, transfer, or otherwise convey the Property or any interest therein, voluntarily or involuntarily, without first repaying in full the Note and all other sums secured hereby. Consent to any one transfer and assumption shall not be deemed a waiver of the right to require consent to any future transfers and assumptions.

4.13.3    **Conditions to Lender's Consent to Transfer and Assumption**. Lender will not unreasonably withhold its consent to a sale or transfer of the Property and related assumption of the Loan by the proposed transferee, provided however, that:

(a)    Borrower shall provide to Lender a loan application on such form as Lender may require executed by the proposed transferee and accompanied by such other documents as Lender may require in connection therewith;

4825-5536-1928V.2 -

(b)    Lender may consider the factors normally used by Lender as of the time of the proposed assumption in the process of determining whether or not to lend funds, and may require that the Property and the proposed transferee meet Lender's then-current underwriting, legal, regulatory and related requirements as of that time;

(c)    Lender may specifically evaluate the financial responsibility, structure and real estate operations experience of any potential transferee;

(d)    Lender may require that it be provided at Borrower's expense, with an appraisal of the Property, an on-site inspection of the Property, and such other documents and items, from appraisers, inspectors and other parties satisfactory to Lender, and may require that Borrower or the transferee of the Property correct any items of deferred maintenance that may be identified by Lender;

(e)    Lender may, as a condition to granting its consent to a sale, transfer, or other conveyance of the Property, require in its sole discretion Borrower's payment to Lender of (i) a fee (the "Consented Transfer Fee") of one percent of the unpaid principal balance of the Note; (ii) review fees in accordance with Lender's fee schedule in effect at the time of the request ("Lender's Fee Schedule"), which shall be paid by Borrower to Lender upon Borrower's request for Lender's consent, and shall be non-refundable but applicable to the Consented Transfer Fee, to the extent applicable, (iii) Lender's reasonable attorneys' fees and other reasonable out-of-pocket expenses; and (iv) document preparation fees and other fees in accordance with Lender's Fee Schedule;

(f)    No Default or Event of Default (each as defined below) has occurred and is continuing; and

(g)    The transferee, a replacement guarantor acceptable to Lender, and any other parties shall execute such documentation in the form required by Lender in its sole and absolute discretion evidencing such transfer and related assumption, including without limitation, an assumption agreement, guaranties and environmental indemnity agreements; and upon the consummation of such transaction the Borrower and the existing guarantor shall be released from all future liability under the Loan Documents (except for the Indemnity Agreement) as provided in the assumption agreement.

4.13.4    **Unconsented Transfers**.  Any failure to comply with Section 4.13.1 or 4.13.2 above shall constitute an "Unconsented Transfer" for purposes of this Security Instrument.  In the event of an Unconsented Transfer, Borrower and its successors shall be jointly and severally liable to Lender for the payment of a fee (the "Unconsented Transfer Fee") of one percent of the unpaid principal balance of the Note as of the date of such Unconsented Transfer.  The Unconsented Transfer Fee shall be due and payable upon written demand therefor by Lender, and shall be secured by this Security Instrument; provided, however, that payment of the Unconsented Transfer Fee shall not cure any Event of Default resulting from the Unconsented Transfer.

4.13.5    **No Waiver**.  Lender's waiver of any of the Consented Transfer Fee, the Unconsented Transfer Fee or any other amount payable hereunder, in whole or in part for any one sale, transfer, encumbrance or other conveyance shall not preclude the imposition thereof in connection with any other sale, transfer, encumbrance or other conveyance.

4.13.6    **Permitted Transfers**.  Notwithstanding the foregoing and notwithstanding Section 4.14, Lender's consent will not be required, and neither the Consented Transfer Fee nor the Unconsented Transfer Fee will be imposed, for any Permitted Transfer (as defined below), so long as all Transfer Requirements (as defined below) applicable to such Permitted Transfer are timely satisfied.  As used herein, the following terms have the meanings set forth below:

"Permitted Transfer" means:

(a)    The transfer of less than 25% in the aggregate during the term of the Note of the direct or indirect Equity Interests (as defined below) in Borrower, in addition to any transfers permitted under subparagraphs (b) or (c) of this definition (a "Minority Interest Transfer");

(b)        A transfer that occurs by devise, descent or operation of law upon the death of a natural person (a "Decedent Transfer");

(c)        A transfer made in good faith for estate planning purposes (i) to one or more non-minor Immediate Family Members of the transferor (or in the case of a transferor that is a trust or trustee, to one or more non-minor Immediate Family Members of a settlor of the applicable trust) or (ii) to one or more trusts or legal entities established for the benefit of, and solely owned by, the transferor and/or one or more Immediate Family Members of the transferor (or in the case of a transferor that is a trust or trustee, to one or more trusts or legal entities established for the benefit of, and solely owned by, one or more Immediate Family Members of a settlor of the applicable transferor trust) (an "Estate Planning Transfer");

(d)        A transfer between existing owners of direct or indirect Equity Interests in the Borrower so long as there is no change in the individuals exercising day-to-day powers of decision-making, management and control of the Borrower, and no release of any guarantors; or

(e)        A transfer of furniture, fixtures or equipment if they are reasonably deemed to be surplus to the normal operation and use of the Property or if they are promptly replaced by similar items of at least equivalent value and utility.

"Transfer Requirements" means, with respect to any Permitted Transfer, all of the following that apply to that transfer:

(a)        In the case of any Permitted Transfer:

(i)        none of the persons or entities liable for the repayment of the Loan shall be released from such liability;

(ii)        such transfer must not violate Applicable Law, and the transferee must not be a "specially designated national" or a person that is subject or a target of any economic or financial sanctions or trade embargoes imposed, administered or enforced from time to time by the U.S. government, including those administered by the Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury or the U.S. Department of State ("Sanctions") and such transfer must not otherwise result in a violation of Sanctions, the USA PATRIOT Act of 2001, any "know your customer" rules applicable to Lender or any other Applicable Law; and

(iii)        Borrower must provide Lender with not less than 30 days' prior written notice of the proposed transfer (or to the extent that such transfer is a Decedent Transfer then, as soon as reasonably practicable following Borrower becoming aware that the transfer has occurred), which notice shall include a summary of the proposed changes in the organization, ownership and management of the Property or the applicable entity and such further information as Lender may require to make the determinations contemplated by this subsection (a); provided, however, that no prior notice shall be required for an Estate Planning Transfer or any transfer that results in the transferee owning less than 10% in the aggregate of the direct or indirect Equity Interests in Borrower.

(b)        In the case of any Minority Interest Transfer or Estate Planning Transfer, there shall be no change in the individuals exercising day-to-day powers of decision-making, management and control over either Borrower or the Property unless Lender has given its prior written consent to such change in its sole discretion.  In the case of a Decedent Transfer, any new individual exercising such powers must be satisfactory to Lender in its reasonable discretion.

(c)        In the case of a Decedent Transfer, if the decedent was a Borrower or guarantor of the Loan, within 30 days after written request by Lender, one or more other persons or entities having credit standing and financial resources reasonably acceptable to Lender, shall assume or guarantee the Loan by executing and delivering to Lender a guaranty or assumption agreement and a certificate and indemnity agreement regarding hazardous substances, each satisfactory to Lender,

4825-5536-1928V.2 -

providing Lender with recourse substantially identical to that which Lender had against the decedent and granting Lender liens on any and all interests of the transferee in the Property.

(d)       In the case of any Estate Planning Transfer (other than a transfer by an individual of an interest in the Property into a revocable trust created for their benefit or the benefit of an Immediate Family Member and which such individual is the trustee) that results in a transfer of an interest in the Property, the transferee shall, prior to the transfer, execute and deliver to Lender an assumption agreement satisfactory to Lender, providing Lender with recourse substantially identical to that which Lender had against the transferor and granting Lender liens on any and all interests of the transferee in the Property.

(e)       In the case of any Permitted Transfer that results in a transfer of an interest in the Property, Lender shall be provided, at no cost to Lender, with an endorsement to its title insurance policy insuring the lien of this Security Instrument, which endorsement shall insure that there has been no impairment of that lien or of its priority.

(f)       In the case of any Permitted Transfer, Borrower or the transferee shall pay all costs and expenses (including attorneys' fees) reasonably incurred by Lender in connection with that Permitted Transfer, any applicable fees in accordance with Lender's fee schedule in effect at the time of the Permitted Transfer, and shall provide Lender with such information and documents as Lender reasonably requests in order to make the determinations called for by this Security Instrument and to comply with Applicable Law.

(g)       No Default shall exist.

"Equity Interest" means partnership interests in Borrower, if Borrower is a partnership, member interests in Borrower, if Borrower is a limited liability company, or shares of stock of Borrower, if Borrower is a corporation.

"Immediate Family Members" means, with respect to any person, that person's parents, spouse, registered domestic partner (under an applicable state or District of Columbia law providing for registration of domestic partnerships with a governmental agency), siblings, children and other lineal descendants, and the spouses and registered domestic partners of such person's parents, siblings, children and other lineal descendants.

4.14       **Borrower Existence**.

4.14.1       **Legal Entities**.  Except as otherwise permitted by this Security Instrument, if Borrower is a corporation, partnership, limited liability company, or other legal entity, Lender is making the Loan in reliance on Borrower's continued existence, ownership and control in its present form.  Borrower will not alter its name, jurisdiction of organization, structure, ownership or control without the prior written consent of Lender and will do all things necessary to preserve and maintain said existence and to ensure its continuous right to carry on its business.  If Borrower is a partnership, Borrower will not permit the addition, removal or withdrawal of any general partner without the prior written consent of Lender.  The withdrawal or expulsion of any general partner from the Borrower partnership shall not in any way affect the liability of the withdrawing or expelled general partner hereunder or on the Note.

4.14.2       **Trusts**.  Except as otherwise permitted by this Security Instrument, if Borrower is a trust, there shall be no change in the trustee or other individuals exercising day-to-day powers of decision-making, management and control over either Borrower or the Property unless Lender has given its prior written consent to such change in its reasonable discretion.

4.15       **Information**.  Lender is authorized to disclose to potential participants, assignees, regulators, Federal Home Loan Banks and Federal Reserve Banks, information in Lender's possession with respect to Borrower, guarantors of the Loan, the Property and the Loan.

4825-5536-1928V.2 -

4.16    **Tax and Insurance Impounds**.

        4.16.1    **Impounds**. In addition to the payments required by the Note, Borrower shall pay Lender, at Lender's request, such sums as Lender may from time to time estimate will be required (a) to pay, at least one month before delinquency, the next-due taxes, assessments, insurance premiums and similar charges affecting the Property (collectively, the "Impositions"), divided by the number of months to elapse before one month prior to the date when the applicable Impositions will become delinquent; and (b) at the option of Lender and to the extent permitted under Applicable Law, to maintain a reserve equal to one-sixth of the total annual amount of the Impositions. Lender shall hold such amounts without interest or other income to Borrower (unless required under Applicable Law) to pay the Impositions. The total of all payments to Lender under subsection 4.16.1 shall be referred to herein collectively, as the "Impounds". If this estimate of the Impounds proves insufficient, Borrower, upon demand by Lender, shall pay Lender such additional sums as may be required to pay the Impositions at least one month before delinquency. Borrower hereby acknowledges and agrees that if Lender does not require Borrower to make Impound payments for all or any portion of the Impositions at the origination of the Loan, at any time following the occurrence of an Event of Default (regardless of whether it is later cured), Borrower shall be required to make such Impounds within 30 days after receipt of written notice from Lender.

        4.16.2    **Application**. If the Impounds in any one year exceed the amounts actually paid by Lender for Impositions, all or any portion of such excess may be paid to Borrower or credited by Lender on subsequent payments under this section. At any time after the occurrence and during the continuance of an Event of Default, Lender may apply any balance of Impounds it holds to any of the obligations secured hereby in such order as Lender may elect.

        4.16.3    **Tax Reporting Service**. Lender may, in its sole and absolute discretion, contract with a tax reporting service covering the Property. Borrower agrees that Lender may rely on the information furnished by such tax service and agrees to pay the reasonable cost of that service within 30 days after receipt of a billing for it.

        4.17    **Leasing Matters**. Borrower shall not receive or collect any Rents in advance in excess of one month's Rent from any tenant or collect a security deposit in excess of two months' Rent from any tenant. The Lender shall have all of the rights against tenants of the Property as set forth in Section 291-f of the Real Property Law of New York. To the extent Applicable Law requires any security deposits or other amounts received from tenants of the Property to be held in a segregated account, Borrower shall promptly deposit and maintain all applicable deposits and other amounts in a segregated trust account in a federally insured institution. Borrower shall perform Borrower's obligations under the Leases in all material respects. Borrower hereby consents to Lender obtaining copies of rent rolls and other information relating to the Leases from any governmental agency with which Borrower is obligated to file such information or that otherwise collects or receives such information.

        4.18    **Condominium and Cooperative Provisions**. If the Property is not subject to a recorded condominium plan or map, a cooperative regime, or other common interest development regime, on the date of this Security Instrument, Borrower will not subject the Property or any portion thereof to such a plan, map, or regime without the written consent of Lender, which consent may be granted or denied in Lender's sole discretion and, if granted, may be subject to such requirements as Lender may impose including but not limited to Borrower providing Lender with such title insurance endorsements and other documents as Lender may require. If the Property is subject to a recorded condominium plan or map, or other common interest development regime, on the date of this Security Instrument: (a) Borrower represents and warrants that none of the condominium units and no portion of the common elements in the Property have been sold, conveyed or encumbered or are subject to any agreement to convey or encumber and that Borrower owns the entire fee simple interest in the Property; (b) Borrower shall not in any way sell, convey or encumber or enter into a contract or agreement to sell, convey or encumber any condominium unit or any of the common elements of the Property unless expressly agreed to in writing by Lender; (c) Borrower shall operate the Property solely as a rental property; and (d) the Property granted, conveyed and assigned to Lender hereunder includes all rights, easements, rights of way, reservations and powers of Borrower, as owner, declarant or otherwise, under any applicable condominium act or statute and under any and all condominium declarations, survey maps and plans, association articles and bylaws and documents similar to any of the foregoing. If the Property is subject to a cooperative regime on the date of this Security Instrument: (i) Borrower

4825-5536-1928V.2 -

represents and warrants that none of the corporate shares in the cooperative regime have been sold, conveyed or encumbered or are subject to any agreement to convey or encumber and that Borrower owns the entire fee simple interest in the Property; (ii) Borrower shall not in any way sell, convey or encumber or enter into a contract or agreement to sell, convey or encumber any of the corporate shares of the cooperative regime; and (iii) Borrower shall operate the Property solely as a rental property.

4.19    **Use of Property; Zoning Changes**. Unless required by Applicable Law, Borrower shall not:  (a) except for any change in use approved by Lender in writing, allow changes in the use for which all or any part of the Property is being used at the time this Security Instrument is executed; (b) convert any individual dwelling unit or common area in the Property to primarily commercial use; or (c) initiate or acquiesce in a change in the zoning classification of the Property.

4.20    **Lien Law**. Borrower will, in compliance with Section 13 of the New York Lien Law, receive the advances secured hereby and will hold the right to receive such advances in a trust fund to be applied first for the purpose of paying the cost of any improvement and will apply the same first to the payment of the cost of any such improvement before using any part of the total of the advance for any other purpose.

5.    **Default**.

5.1    **Definition**. Any of the following shall constitute an "Event of Default" as that term is used in this Security Instrument (and the term "Default" shall mean any of the following, whether or not any requirement for notice or lapse of time has been satisfied):

5.1.1    Any regular monthly payment under the Note is not paid so that it is received by Lender within fifteen (15) days after the date when due, or any other amount secured by this Security Instrument (including but not limited to any payment of principal or interest due on the Maturity Date, as defined in the Note) is not paid so that it is received by Lender when due;

5.1.2    Any representation or warranty made by Borrower to or for the benefit of Lender herein or elsewhere in connection with the Loan, including but not limited to any representation in connection with the security therefor, shall have been incorrect or misleading in any material respect;

5.1.3    Borrower or any other party thereto (other than Lender) shall fail to perform its obligations under any other covenant or agreement contained in this Security Instrument, the Note, any other Loan Document, which failure continues for a period of 30 days after written notice of such failure by Lender to Borrower (or for a period of 60 days after such notice if such failure cannot reasonably be cured within such 30-day period, but can be cured within such 60-day period and Borrower is proceeding diligently to cure it), but no such notice or cure period shall apply in the case of:  (i) any such failure that could, in Lender's judgment, absent immediate exercise by Lender of a right or remedy under this Security Instrument or the other Loan Documents, result in harm to Lender or impairment of the Note, this Security Instrument, or any other security given under any other Loan Document; (ii) any such failure that is not reasonably susceptible of being cured during such cure period; (iii) breach of any provision that contains an express cure period; or (iv) any breach of Section 4.13 or Section 4.14 of this Security Instrument;

5.1.4    Borrower or any other person or entity liable for the repayment of the indebtedness secured hereby shall become unable or admit in writing its inability to pay its debts as they become due, or file, or have filed against it, a voluntary or involuntary petition in bankruptcy, or make a general assignment for the benefit of creditors, or become the subject of any other receivership or insolvency proceeding, provided that if such petition or proceeding is not filed or acquiesced in by Borrower or the subject thereof, it shall constitute an Event of Default only if it is not dismissed within 60 days after it is filed or if prior to that time the court enters an order substantially granting the relief sought therein; or

5.1.5    Borrower or any other signatory thereto shall default in the performance of any covenant or agreement contained in any mortgage, deed of trust or similar security instrument encumbering the Property, or the note or any other agreement evidencing or securing the indebtedness secured thereby, which default continues beyond any applicable cure period.

4825-5536-1928V.2 -

5.2    **Lender's Right to Perform**. After the occurrence and during the continuance of any Event of Default, Lender, but without the obligation so to do and, to the extent permitted by Applicable Law, without notice to or demand upon Borrower and without releasing Borrower from any obligations hereunder, may:  make any payments or do any acts required of Borrower hereunder in such manner and to such extent as either may deem necessary to protect the security hereof, Lender and its agents being authorized to enter upon the Property for such purposes; commence, appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Lender; pay, purchase, contest or compromise any encumbrance, charge or lien; and in exercising any such powers, pay necessary expenses and engage counsel.  All sums so expended (including attorneys' fees) shall be secured hereby and bear interest at the Default Rate of interest specified in the Note from the date advanced or expended until repaid and shall be payable by Borrower to Lender on demand.

5.3    **Remedies on Default**. Upon the occurrence of any Event of Default all sums secured hereby shall become immediately due and payable, without notice or demand, at the option of Lender and Lender may:

5.3.1    To the extent permitted by Applicable Law, have a receiver appointed as a matter of right without notice to Borrower and without regard to the sufficiency of the Property or any other security for the indebtedness secured hereby and, without the necessity of posting any bond or other security.  Such receiver shall take possession and control of the Property and shall collect and receive the Rents.  If Lender elects to seek the appointment of a receiver for the Property, Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver.  The receiver shall be entitled to receive a reasonable fee for managing the Property, which fee may be deducted from the Rents or may be paid by Lender and added to the indebtedness secured by this Security Instrument.  Immediately upon appointment of a receiver, Borrower shall surrender possession of the Property to the receiver and shall deliver to the receiver all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Property and all security deposits.  If the Rents are not sufficient to pay the costs of taking control of and managing the Property and collecting the Rents, any funds expended by Lender, or advanced by Lender to the receiver, for such purposes shall become an additional part of the indebtedness secured by this Security Instrument.  The receiver may exclude Borrower and its representatives from the Property.  Borrower acknowledges and agrees that the exercise by Lender of any of the rights conferred under this Section 5.3 shall not be construed to make Lender a mortgagee-in-possession of the Property so long as Lender has not itself entered into actual possession of the Property.

5.3.2    Foreclose this Security Instrument as provided in Section 7 or otherwise realize upon the Property as permitted under Applicable Law.

5.3.3    Sue on the Note as permitted under Applicable Law.

5.3.4    Avail itself of any other right or remedy available to it under the terms of this Security Instrument, the other Loan Documents or Applicable Law.

5.4    **No Waiver**. By accepting payment of any sum secured hereby after its due date, Lender does not waive its right either to require prompt payment when due of that or any other portion of the obligations secured by this Security Instrument. Lender may from time to time accept and apply any one or more payments of less than the full amount then due and payable on such obligations without waiving any Default, Event of Default, acceleration or other right or remedy of any nature whatsoever.  In addition, the failure on the part of Lender to promptly enforce any right hereunder shall not operate as a waiver of such right. Furthermore, the waiver of any Default or Event of Default shall not constitute a waiver of any subsequent or other Default or Event of Default.

5.5    **Waiver of Marshaling, Etc**. In connection with any foreclosure sale under this Security Instrument, Borrower hereby waives, for itself and all others claiming by, through or under Borrower, any right Borrower or such others would otherwise have to require marshaling or to require that the Property be sold in parcels or in any particular order.

4825-5536-1928V.2 -

5.6    **Remedies Cumulative; Subrogation**. The rights and remedies accorded by this Security Instrument shall be in addition to, and not in substitution of, any rights or remedies available under now existing or hereafter arising Applicable Law. All rights and remedies provided for in this Security Instrument or afforded by law or equity are distinct and cumulative and may be exercised concurrently, independently or successively. Lender shall be subrogated to the claims and liens of those whose claims or liens are discharged or paid with the Loan proceeds.

6.    **Condemnation**. Any and all awards of damages, whether paid as a result of judgment or prior settlement, in connection with any condemnation or other taking of any portion of the Property for public or private use, or for injury to any portion of the Property ("Awards"), are hereby assigned and shall be paid to Lender which may apply or disburse such Awards in the same manner, on the same terms, subject to the same conditions, to the same extent, and with the same effect as provided in Section 4.4.2 above for disposition of Insurance Proceeds. Without limiting the generality of the foregoing, if the taking results in a loss of the Property to an extent that, in the reasonable opinion of Lender, renders or is likely to render the Property not economically viable or if, in Lender's reasonable judgment, Lender's security is otherwise impaired, Lender may apply the Awards to reduce the unpaid obligations secured hereby in such order as Lender may determine, and without any adjustment in the amount or due dates of installments due under the Note. If so applied, any Awards in excess of the unpaid balance of the Note and other sums due to Lender shall be paid to Borrower or Borrower's assignee. Such application or release shall not cure or waive any Default or notice of default hereunder or invalidate any act done pursuant to such notice. Should the Property or any part or appurtenance thereof or right or interest therein be taken or threatened to be taken by reason of any public or private improvement, condemnation proceeding (including change of grade), or in any other manner, Lender may, at its option, commence, appear in and prosecute, in its own name, any action or proceeding, or make any reasonable compromise or settlement in connection with such taking or damage, and obtain all Awards or other relief therefor, and Borrower agrees to pay Lender's costs and reasonable attorneys' fees incurred in connection therewith. Lender shall have no obligation to take any action in connection with any actual or threatened condemnation or other proceeding.

7.    **Foreclosure**. Upon the occurrence of any Event of Default, Lender shall have the option, without notice or demand, to declare all sums secured hereby immediately due and payable and to proceed to foreclose on this Security Instrument as now or then provided by law (in which event Lender shall be entitled to the appointment of a receiver) pursuant to a judicial proceeding in accordance with Article 13 of the New York Real Property Actions and Proceedings Law ("RPAPL") or by advertisement in accordance with Article 14 of RPAPL. Any foreclosure shall forever bar Borrower and all persons claiming under Borrower from all right and interest in the Property. In any such proceeding Lender shall be entitled to recover all costs and expenses (regardless of the particular nature thereof and whether incurred prior to or during such proceeding) incident to the realization of its rights hereunder, including court costs and reasonable attorneys' fees. Lender shall be entitled to possession of the Property during any period of redemption. Borrower hereby waives any right it or its successors in interest may have in the event of acceleration or foreclosure to obtain a partial release of the Property from the lien of this Security Instrument by paying less than the entire amount then secured hereby, or to partially redeem the Property by paying less than the amount necessary to effect full redemption. If a deficiency remains after proper application of the proceeds of sale of the Property, Borrower shall pay the same immediately after determination of the amount thereof.

8.    **Notices**. Any notice to or demand on Borrower in connection with this Security Instrument or the obligations secured hereby shall be deemed to have been sufficiently made when deposited in the United States mails (with first-class or registered or certified postage prepaid), addressed to Borrower at Borrower's address set forth above. Any notice to or demand on Lender in connection with this Security Instrument or such obligations shall be deemed to have been sufficiently made when deposited in the United States mails with registered or certified postage prepaid, return receipt requested, and addressed to Lender at the address set forth above. Any party may change the address for notices to that party by giving written notice of the address change in accordance with this section.

9.    **Modifications, Etc**. Each person or entity now or hereafter owning any interest in the Property agrees, by executing this Security Instrument or taking the Property subject to it, that Lender may in its sole discretion and without notice to or consent of any such person or entity: (i) extend the time for payment of the obligations secured hereby; (ii) discharge or release any one or more parties from their liability for such obligations in whole or in part; (iii) delay any action to collect on such obligations or to

4825-5536-1928V.2 -

realize on any collateral therefor; (iv) release or fail to perfect any security for such obligations; (v) consent to one or more transfers of the Property, in whole or in part, on any terms; (vi) waive or release any of holder's rights under any of the Loan Documents; (vii) increase the amount of such obligations as permitted by the Loan Documents; or (viii) proceed against such person or entity before, at the same time as, or after it proceeds against any other person or entity liable for such obligations.

10. **Successors and Assigns**. All provisions herein contained shall be binding upon and inure to the benefit of the respective successors and assigns of the parties.

11. **Governing Law; Severability**. This Security Instrument shall be governed by the laws of the state where the Property is located, except to the extent preempted by federal laws applicable to national banks. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, the conflict shall not affect other provisions of this Security Instrument or the Note that can be given effect without the conflicting provision, and to this end the provisions of this Security Instrument and the Note are declared to be severable.

12. **Maximum Interest**. No provision of this Security Instrument or of the Note shall require the payment or permit the collection of interest in excess of the maximum permitted by Applicable Law. If any excess of interest in such respect is herein or in the Note provided for, neither Borrower nor its successors or assigns shall be obligated to pay that portion of such interest that is in excess of the maximum permitted by law, and the right to demand the payment of any such excess shall be and is hereby waived and this Section shall control any provision of this Security Instrument or the Note that is inconsistent herewith.

13. **Attorneys' Fees and Legal Expenses**. In the event of any Default under any Loan Document, or in the event that any dispute arises relating to the interpretation, enforcement or performance of any Loan Documents, Lender shall be entitled to collect from any Obligor (as defined in the Note), on demand all reasonable fees and expenses incurred in connection therewith, including but not limited to reasonable fees of attorneys, accountants, appraisers, environmental inspectors, consultants, expert witnesses, arbitrators, mediators and court reporters. Without limiting the generality of the foregoing, such Obligor shall pay all such costs and expenses incurred in connection with: (a) arbitration or other alternative dispute resolution proceedings, trial court actions and appeals; (b) bankruptcy or other insolvency proceedings of any Obligor, or any party having any interest in any security for any obligations secured hereby; (c) judicial or nonjudicial foreclosure on, or appointment of a receiver for, any of the Property; (d) post-judgment collection proceedings; (e) all claims, counterclaims, cross-claims and defenses asserted in any of the foregoing whether or not they arise out of or are related to the Loan Documents; (f) all preparation for any of the foregoing; and (g) all settlement negotiations with respect to any of the foregoing. Notwithstanding anything to the contrary set forth in this Security Instrument or the other Loan Documents, in the event of any litigation between Lender and any Obligor outside the context of a bankruptcy proceeding involving such Obligor as debtor, which litigation arises out of or is related to the Loan or to the Property, if that Obligor is the ultimate prevailing party therein and Lender is not the ultimate prevailing party, such Obligor shall be entitled to recover from Lender the Obligor's reasonable attorneys' fees and court costs incurred therein.

14. **Time Is of the Essence**. Time is of the essence under this Security Instrument and in the performance of every term, covenant and obligation contained herein.

15. **Miscellaneous**.

15.1    Whenever the context so requires the singular number includes the plural herein, and the impersonal includes the personal.

15.2    The headings to the various sections have been inserted for convenient reference only and shall not modify, define, limit or expand the express provisions of this Security Instrument.

15.3    This Security Instrument, the Note and the other Loan Documents constitute the final expression of the entire agreement of the parties with respect to the transactions set forth therein. No party is relying upon any oral agreement or other

4825-5536-1928V.2 -

understanding not expressly set forth in the Loan Documents. The Loan Documents may not be amended or modified except by means of a written document executed by the party sought to be charged with such amendment or modification.

15.4    No creditor of any party to this Security Instrument and no other person or entity shall be a third party beneficiary of this Security Instrument or any other Loan Document. Without limiting the generality of the preceding sentence, (a) any arrangement (a "Servicing Arrangement") between Lender and any servicer of the Loan for loss sharing or interim advancement of funds shall constitute a contractual obligation of such servicer that is independent of the obligation of Borrower for the payment of the indebtedness secured hereby, (b) Borrower shall not be a third party beneficiary of any Servicing Arrangement, and (c) no payment by a servicer under any Servicing Arrangement will reduce the amount of the indebtedness secured hereby.

15.5    The existence of any violation of any provision of this Security Instrument or the other Loan Documents (including but not limited to building or health code violations) as of the date of this Security Instrument, whether or not known to Lender, shall not be deemed to be a waiver of any of Lender's rights under any of the Loan Documents including, but not limited to, Lender's right to enforce Borrower's obligations to repair and maintain the Property.

15.6    Upon written request of Borrower in connection with a refinancing of the loan secured hereby or a sale of the Property, Lender shall assign this Security Instrument, without recourse, warranty or representation whatsoever to the refinancing lender upon (a) payment of a sum equal to all monies or indebtedness outstanding under the Note, this Security Instrument and all other Loan Documents, including but not limited to, the outstanding principal amount of the loan secured hereby, all interest accrued thereon and any Prepayment Premium (as defined in the Note), Lender's standard assignment fee as in effect at the time of such assignment and payment of all costs and expenses (including, without limitation, reasonable in-house and outside attorneys' fees) incurred in connection with the assignment of this Security Instrument, and (b) Borrower's delivery to Lender of an affidavit pursuant to Section 275 of the New York Real Property Law and such other documents and instruments as Lender may reasonably request.

16.    **USA PATRIOT Act Notification and Covenant**.

16.1    Lender hereby notifies Borrower that, pursuant to the requirements of Section 326 of the USA PATRIOT Act of 2001, 31 U.S.C. Section 5318 (the "Act"), Lender is required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow Lender to identify Borrower in accordance with the Act.

16.2    Neither Borrower nor any other party liable for the obligations secured hereby as a guarantor or general partner nor any other person or entity participating in any capacity in the Loan will, directly or indirectly, use the proceeds of the Note, or lend, contribute or otherwise make available such proceeds to any subsidiary, affiliate, joint venture partner or other person or entity, to (a) further an offer, payment, promise to pay, or authorize the payment or giving of money, or anything else of value, to any person (including, but not limited to, any governmental or other entity) in violation of Applicable Law of any jurisdiction applicable to Borrower or any other party liable for the obligations secured hereby as a guarantor or general partner from time to time relating to bribery or corruption; or (b) fund, finance or facilitate any activities or business or transaction of or with any person or entity, or in any country or territory, that, at the time of such funding, is the subject of any Sanctions, or in any other manner that would result in a violation of Sanctions by any person or entity, including any person or entity participating in any capacity in the Loan.

17.    **WAIVER OF SPECIAL DAMAGES**. TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER SHALL NOT ASSERT, AND HEREBY WAIVES, ANY CLAIM AGAINST LENDER, ON ANY THEORY OF LIABILITY, FOR SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES (AS OPPOSED TO DIRECT OR ACTUAL DAMAGES) ARISING OUT OF, IN CONNECTION WITH, OR AS A RESULT OF, THIS SECURITY INSTRUMENT OR ANY AGREEMENT OR INSTRUMENT CONTEMPLATED HEREBY, THE TRANSACTIONS CONTEMPLATED HEREBY, THE LOAN OR THE USE OF THE PROCEEDS THEREOF.

4825-5536-1928V.2 -

18.  <u>WAIVER OF JURY TRIAL</u>.  TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY TO THE LOAN DOCUMENTS (FOR ITSELF AND ITS SUCCESSORS, ASSIGNS AND PARTICIPANTS) WAIVES ITS RIGHT TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON, ARISING OUT OF OR RELATED TO THIS SECURITY INSTRUMENT, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS PROVIDED FOR HEREIN OR THEREIN, IN ANY LEGAL ACTION OR PROCEEDING OF ANY TYPE BROUGHT BY ANY PARTY TO ANY OF THE FOREGOING AGAINST ANY OTHER SUCH PARTY, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.  ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT SITTING WITHOUT A JURY.

19.  <u>Type of Property</u>.  Borrower represents and warrants to Lender that this Security Instrument does not cover real property principally improved or to be improved by one or more structures containing in the aggregate not more than six residential dwelling units, each having its own separate cooking facilities.

DATED as of the day and year first above written.

BORROWER:

**2961-65 M LLC,**
**a Delaware limited liability company**

By:  **2961-65 M HOLDING LLC,**
       **a Delaware limited liability company,**
       **Sole Member**

    By:  **2961-65 M S34 LLC,**
         **a New York limited liability company,**
         **Managing Member**

       By:  _____
            JONATHAN WIENER,
            Managing Member

4825-5536-1928V.2 -

State of New York    ) ss.
County of _____Bronx_____ )

On the 25th day of October _____ in the year **2021**, before me, the undersigned, a Notary Public in and for said state, personally appeared **JONATHAN WIENER**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature of Notary Public

*Cynthia L. Perfetti*
Notary Public, State of New York
Reg. No. 01PE6402108
Qualified in Bronx County
Commission Expires: 12/23/2023

## EXHIBIT A
### DESCRIPTION OF THE LAND

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH AND COUNTY OF THE BRONX, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT THE CORNER FORMED BY THE INTERSECTION OF THE NORTHEASTERLY SIDE OF BEDFORD PARK BOULEVARD WITH THE NORTHWESTERLY SIDE OF MARION AVENUE;

RUNNING THENCE NORTHERLY ALONG THE NORTHEASTERLY SIDE OF BEDFORD PARK BOULEVARD, 123.28 FEET;

THENCE NORTHEASTERLY PARALLEL WITH MARION AVENUE, 166.06 FEET;

THENCE SOUTHEASTERLY AT RIGHT ANGLES WITH MARION AVENUE, 110 FEET TO THE NORTHWESTERLY SIDE OF MARION AVENUE;

THENCE SOUTHWESTERLY ALONG THE NORTHWESTERLY SIDE OF MARION AVENUE, 221.73 FEET TO THE POINT OR PLACE OF BEGINNING.

PROPERTY ADDRESS:  2961-2965 MARION AVE, BRONX, NEW YORK 10458

Loan No. 200490242

## Schedule 1 to Security Instrument
### Insurance Requirements

1. **Evidence of Coverage.** Prior to the scheduled Loan funding, Lender must receive and approve written evidence of all required insurance on an ACORD form 28 for property insurance and ACORD form 25 for liability insurance (or similar forms acceptable to Lender in its sole discretion) together with satisfactory proof of payment of premiums. The evidence of coverage must show an inception date prior to or corresponding with the date of the Loan funding. Within 30 days after Loan funding, Borrower must provide Lender with a copy of all insurance policies (including flood and windstorm policies, if applicable) and all required endorsements. Policies must show an inception date prior to or corresponding with the date of the Loan funding. All documents must reflect the Lender-assigned loan number for the Loan as shown above. If flood insurance is required, special requirements apply, as described in paragraph 2.5 of this Schedule 1. ACORD or other certificates are not acceptable evidence of flood insurance.

2. **Required Coverages and Policy Amounts.** Borrower must maintain, or cause to be maintained, the following insurance coverages at all times while any portion of the Loan remains outstanding:

2.1    **Property Insurance.** The property insurance policy must insure against loss or damage to the improvements on the Property by fire and other perils substantially equivalent to those insured under the Causes of Loss – Special Form published by ISO, and against such other perils, including windstorm, as may be specified by Lender. Terrorism and/or earthquake/earth movement insurance coverage and a building ordinance extension endorsement or law and ordinance coverage may be required on a case-by-case basis. Notwithstanding anything to the contrary, Lender shall not require earthquake or terrorism insurance during the term of the Loan unless: (a) required under Applicable Law; (b) required by Lender for similar loans secured by property similar to the Property; (c) required by Lender as a result of a material change in circumstances that expose the Property to a greater risk of peril; or (d) required in connection with the origination of the Loan. The property insurance policy must be in an amount not less than 100% of the replacement cost of the improvements on the Property (without deduction for depreciation) as determined by Lender for purposes of protection of Lender's interests (the "Minimum Property Coverage Amount") and must identify Borrower and the Property address as they appear in the loan documents governing the Loan (the "Loan Documents"). The replacement cost coverage may be provided either in the terms of the policy or by endorsement. If Lender, in its sole discretion, permits coverage of less than the Minimum Property Coverage Amount, then such policy must contain an agreed amount endorsement. If the policy is a blanket policy covering the Property and one or more other properties, the policy must specify the dollar amount of the total blanket limit of the policy that is allocated to the Property, and the amount so allocated to the Property must not be less than the Minimum Property Coverage Amount.

2.2    **Loss of Rents/Business Income Interruption.** Borrower must maintain loss of rents or business income interruption insurance against loss of income (including but not limited to rent, cost reimbursements and all other amounts payable by tenants under leases or otherwise derived by Borrower from the operation of the Property) arising out of damage to or destruction of the improvements on the Property by fire and each other peril insured against under each insurance policy insuring against any type of casualty to the Property or any part thereof that is required pursuant to this Security Instrument. Such insurance must cover the actual loss sustained for at least 12 months with a minimum coverage amount of at least 12 months' potential gross income generated by the Property from all sources, as determined by Lender and without deduction for actual or projected vacancy.

2.3    **Boiler and Machinery.** If a steam boiler is located at the Property, Borrower must carry boiler and machinery coverage in at least the Minimum Property Coverage Amount. If a separate boiler and machinery policy is issued, that policy must include loss of rents or business interruption coverage as described in paragraph 2.2 of this Schedule 1.

2.4    **Liability.** Borrower must maintain commercial general liability insurance (including coverage for elevators and escalators, if any, on the Property) on an occurrence form substantially equivalent to ISO form CG 0001 with coverage of not less than $1,000,000.00 per occurrence and $2,000,000.00 in the aggregate. All policies must be primary and noncontributory with any other insurance Borrower may carry.

4832-6962-2916v.1 -

2.5    **Flood.** If any building or mobile home on the Property which secures the Loan is at any time located in a federally-designated special flood hazard area in which flood insurance has been made available pursuant to the Flood Disaster Protection Act of 1973 (the "Flood Act") or other applicable or successor legislation or other area identified by Lender as having a high or moderate risk of flooding (a "Special Flood Hazard Area"), then Borrower must provide Lender with a separate flood insurance policy for each such building or mobile home located in a Special Flood Hazard Area and any contents thereof that also secure the Loan (each a "Building"). **Lender does not accept ACORD or other certificates as acceptable proof of flood insurance.** The amount of flood insurance coverage for each Building must be in an amount at least equal to the Minimum Flood Coverage Amount for the Building. As used in this Security Instrument, "Minimum Flood Coverage Amount" means the lesser of the following for each Building (not including land), as determined by Lender: (i) the insurable value of the Building ("Insurable Value"); or (ii) the outstanding principal balance of the Loan allocated to the Building. For each flood insurance policy, the deductible may not exceed $10,000.00 for a multifamily Building or $50,000.00 for a commercial Building; provided, however, for private insurance policies described below, the deductible may not exceed the greater of (A) $10,000.00 for a multifamily Building and $50,000.00 for a commercial Building, or (B) 10% of the amount of flood insurance coverage under the private insurance policy. If the amount of coverage under the flood insurance policy for any Building is less than the Insurable Value, Lender may require a Difference in Conditions policy satisfactory to Lender to cover a loss that would not be covered under such flood insurance policy. If flood insurance is required, please see Lender's Flood Insurance Requirements letter, the Notice of Special Flood Hazards and Availability of Federal Disaster Relief Assistance, and the Flood Insurance Coverage Detail for further detail about Lender's flood insurance requirements. Subject to the requirements related to private insurance policies explained below, Lender will accept as evidence of the required flood insurance any of the following: (1) a copy of the insurance policy; (2) a declarations page from the insurance policy; or (3) an application plus proof that the premium has been paid in full. For Lender to accept the evidence described in item (3), Borrower must provide Lender with a copy of the insurance policy or the declarations page within 30 days of closing. If Borrower provides flood insurance by a private insurance policy (i.e., a policy that is not a standard policy issued on behalf of the National Flood Insurance Program ("NFIP")) for coverage amounts of $500,000.00 or less for commercial or multifamily properties, in order to make the required comparison to the NFIP standard policy, Lender will require a copy of the private insurance policy prior to closing. If the private insurance policy fails to meet the criteria set forth in Lender's Flood Insurance Requirements letter or cannot be obtained in time to be reviewed prior to closing of the Loan, Borrower will be required to purchase an NFIP policy in the amount required by the Flood Act as a condition to closing of the Loan.

2.6    **Workers Compensation Insurance.** If Borrower has employees working at the Property, Borrower must carry workers compensation insurance in compliance with the laws of the state in which the Property is located.

2.7    **Changes in Insurance Requirements.** Lender may reasonably change its insurance requirements from time to time throughout the term of the obligations secured by this Security Instrument by giving written notice of such changes to Borrower. Without limiting the generality of the foregoing, Borrower shall from time to time obtain such additional coverages or make such increases in the amounts of existing coverage as may reasonably be required by written notice from Lender. Lender reserves the right, in its reasonable discretion, to increase the amount of the required coverages, require insurance against additional risks, or withdraw approval of any insurance company at any time.

3.    **Policy and Premium Term.** If a new policy is being issued, the minimum policy term must be one year from Loan funding, with evidence that the premium has been paid in full for the term of the policy. If a new policy is not being issued due to there being an existing policy in force, the remaining term of the existing policy must be at least two months from Loan funding, with evidence that the premium has been paid for the remaining term of the policy.

4.    **Maximum Deductibles.** The maximum deductible on the property insurance policy must not exceed the greater of $25,000.00 or one percent of the applicable amount of coverage. Borrower may carry a lesser deductible if Borrower so chooses. Notwithstanding the foregoing, if the windstorm peril is excluded from the property insurance policy because the Property is located in a high-risk wind area, and windstorm coverage is provided through a separate policy, windstorm coverage only may have a deductible of up to five percent of the loss (and, if applicable, subject to a policy provision that the maximum deductible for windstorm coverage, regardless of the amount of the loss, will be a specified amount not to exceed $250,000.00). Acceptable deductibles for flood policies are described in paragraph 2.5 of this Schedule 1.

5.    **Acceptable Insurance Companies.** The insurer (the "Insurer") providing the insurance required in this Security Instrument and the other Loan Documents must be authorized to do business in the state where the Property is located. Lender shall have the right to approve or, for reasonable cause, disapprove the proposed Insurer selected by Borrower. The Insurer must

4832-6962-2916v.1 -

have a current Best's rating of "A-" and a financial size category of "VII" or better from A.M. Best Company. A California FAIR (Fair Access to Insurance Requirements) Plan Association policy, or equivalent policy issued by a similar state-run insurer in another state, is acceptable only when minimum form coverage cannot be obtained from an insurance company with such rating.

6. **Mortgage and Loss Payee Endorsement.** Each property policy must name "JPMorgan Chase Bank, National Association and its successors and assigns" as the only mortgagee and loss payee pursuant to a mortgage clause or endorsement (the mortgage clause included in Insurance Service Office ("ISO") Property Form No. CP 00 10 or its equivalent, which must be satisfactory to Lender and must provide that Lender will not have its interest voided by the act or omission of Borrower and that Lender may file a claim directly with the Insurer), which clause or endorsement must be contained in or attached to the policy and must show the following address for Lender: JPMorgan Chase Bank, N.A. and its successors and assigns, P.O. Box 9110, Coppell, Texas 75019-9110.

7. **Renewal Policies.** Borrower must renew or replace all required insurance policies so as to maintain continuous coverage in compliance with the Loan Documents. Borrower must provide Lender with a complete copy of each renewal or replacement policy (including endorsements) within 30 days after its effective date. Lender may order insurance meeting its requirements (at Borrower's expense) if any such policy is not received by such date.

8. **Notice of Cancellation.** All policies must guarantee that Lender will receive 30 days' advance notice prior to cancellation and ten days' notice for nonpayment of premiums. If a notice of cancellation is received on an existing policy and not reinstated or replaced with an acceptable policy before the effective date of the cancellation, Lender may order replacement coverage at Borrower's expense.

9. **Failure of Borrower to Maintain Insurance.**

9.1 **Lender Placed Insurance.** If Borrower fails to maintain insurance in accordance with this Security Instrument and the other Loan Documents, Lender may, in its sole discretion, obtain insurance to protect Lender's interests. This insurance is called "lender placed insurance."

9.2 **Limited Coverage.** Lender placed insurance may cover only the improvements and will be only in the amount required by Lender. In addition to other differences, the amount of coverage on the lender placed insurance may be less than Borrower's policy and may not cover Borrower's equity in the Property, the deductibles may be higher and there may not be personal property/contents, personal liability, medical or special risks coverage. In the case of flood insurance, the amount of coverage may be more than that required by Applicable Law.

9.3 **Cost.** Lender placed insurance is typically more expensive than insurance Borrower may obtain through Borrower's own agent. Borrower may also be assessed a nonrefundable policy issuance fee by Lender as well as any costs incurred by Lender relating to the failure to maintain insurance in accordance with Lender's requirements.

9.4 **Cancellation.** If Lender obtains lender placed insurance, this insurance may be canceled when Borrower provides Lender with satisfactory evidence of insurance coverage that is acceptable to Lender. While the lender placed insurance policy may be canceled and Borrower may be entitled to a refund of a portion of the premiums paid, Borrower may be charged for any time period for which the lender placed insurance was in effect, any cancellation fee assessed by the lender placed insurer, and any costs Lender incurs as a result of the failure to maintain adequate insurance.

10. **Additional Insurance Obtained by Borrower.** If Borrower obtains insurance coverage not required under this Security Instrument or the other Loan Documents that insures any interest in the Property or other collateral securing the Loan, Borrower shall ensure that Lender is named as mortgagee and loss payee on such policies by a mortgage endorsement as described above and Lender shall have the right to direct the application of the proceeds of such insurance as provided in the Loan Documents.

11. **No Permanent Waiver of Requirements.** Borrower understands and agrees that Lender may agree to close the Loan without requiring Borrower to comply strictly with all the requirements set out in this Schedule 1. Borrower acknowledges and agrees that, if Lender so closes the Loan, this is not a permanent waiver of any of the requirements that Lender did not require to be satisfied as of the closing date (the "Specified Requirements"). Lender may at any time in its sole discretion terminate its waiver of the Specified Requirements upon not less than 30 days' written notice to Borrower.

4832-6962-2916v.1 -