Edward Josephson
Director, Civil Law Reform Unit
The Legal Aid Society
49 Thomas Street, 5th floor
New York, NY 10013
(212) 298-5221
*Attorneys for the Joining Tenant Union*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
In re:

Broadway Realty I Co., LLC,

Debtors.
------------------------------------------------------------X

Chapter 11

Case No. 25-11050 (DSJ)

Jointly Administered

## OBJECTION TO Proposed Sale Order and Confirmation of Stalking Horse Agreement

The individuals listed on Exhibit A (representatives of the "Joining Tenant Union"), by and through their undersigned counsel, hereby file this joinder to the *Supplemental Objection to Confirmation of Plan and Sale of Properties*, ECF No. 924 and the *Restated Supplemental Objection to Confirmation of Plan and Sale of Properties,* ECF No. 950 (the "City's Objections"), filed by the City of New York (the "City"), as well as the Attorney General's Declaration *In Support of the City of New York's Objection to the sale of the Estate's Properties to Summit Gold Inc.,* Docket No. 951, and hereby asserts as follows:

## PROCEDURAL BACKGROUND

1.      On May 21, 2025 ("Petition Date"), Broadway Realty I Co., LLC and eighty-one
of its affiliates (collectively, the "Debtors'') filed voluntary petitions for relief under chapter 11
of title 11 of the United States Code (the "Bankruptcy Code").  Since the Petition Date, the
Debtors have continued to operate their businesses in the ordinary course as debtors-in-
possession.  No statutory committee of unsecured creditors has been appointed in these cases.

2.      Collectively, the Debtors own and operate over 90 different properties with
approximately 5,200 residential units. *See Declaration of Ephraim Diamond Pursuant to Local
Bankruptcy Rule 1007-2 in Support of Debtors' Chapter 11 Petitions and First Day Relief*, ECF
No. 10, ¶¶ 9, 11.

3.      On October 1, 2025, this Court entered the *Order (I) Approving Bidding
Procedures, (II) Authorizing Debtors to Offer Stalking Horse Bid Protections, (III) Approving
Assumption Assignment Procedures, and (IV) Granting Related Relief*, ECF No. 571 (the "Bid
Procedures Order").  Pursuant to the Bid Procedures Order, the Debtors were authorized to
conduct a bidding process for their portfolio of residential properties (the "Assets").

4.      On December 23, 2025, the Debtors filed a notice, ECF No. 916, designating
Summit Gold, Inc. ("Summit") as the stalking horse bidder for the Assets.

5.      On December 30, 2025, Corporation Counsel for the City of New York (the
"City") filed its initial Limited *Objections to Confirmation of the Debtors' First Amended Plan
and to approval of the proposed sale of the Assets* (the "Initial Objection") (ECF No. 919).

6.      After the inauguration of Mayor Mamdani on January 1, 2026, the City filed an

*Amended: (I) Request of the City of New York for Thirty Day Adjournment of Auction and*

*Hearing on Approval of Sale of Properties and Confirmation of Plan; and (II) Supplemental*

*Objection to Confirmation of Plan and to Sale of Properties* (the "Amended Objection") (ECF

No. 924) on January 5, 2026 seeking to adjourn the auction and object to the Plan.

7.      On January 7, 2026 an emergency hearing was held to hear the City's application

seeking an adjournment of the auction set for January 8, 2026 and amended objections to the

hearing on approval of sale of properties and confirmation of plan. After the City's application

on an adjournment was heard, it was denied.  (ECF No. 942).

8.      On January 8, 2026 the auction was conducted.  On January 9, 2026 a *Notice of*

*Successful Bid and Identity of Successful Bidder* was filed with the Court naming the Stalking

Horse Bidder, Summit Gold Inc. the successful bidder.  (ECF No. 946).

## **FACTUAL BACKGROUND**

9.      The Joining Tenant Union, known as the "Union of Pinnacle Tenants" or "UPT,"
is an unincorporated tenants' union created on September 23, 2025, by aggrieved tenants living
in buildings that are subject to this proceeding.  Since the commencement of this proceeding, the
Joining Tenant Union has established more than 30 tenant associations within buildings owned
by Debtors.  The Tenant Representative Council ("Rep Council") is an elected body composed
of representatives from each building in the UPT.  Elected members of the Rep Council are
empowered to make decisions on behalf of the broader UPT. The individuals listed on Exhibit A
have been appointed by the Rep Council to file this joinder on behalf of the UPT.  A full list of
Assets subject to this Bankruptcy proceeding with tenants that are active members of the Joining
Tenants Union is annexed hereto as Exhibit B.  The properties in which the membership of the
Joining Tenant Union live are Assets subject to the proposed sale transaction.

10.      Pursuant to the Summit bid, all tenant leases, including the leases from the
Joining Tenant Union's membership of tenants, will be assumed and assigned.

11.     The Assets have long been in disrepair with a plethora of New York City Housing Maintenance Code Violations.  According to New York City's Department of Housing Preservation and Development ("HPD")--the department of New York City's government responsible for enforcing the New York City Housing Maintenance Code ("HMC")--there are roughly 6343 outstanding HMC violations issued for the Assets that are subject to this proceeding.  Among these HMC violations, 1918 are "class C" immediately hazardous violations, 3381 are "class B" hazardous violations, and 1044 are "class A" non-hazardous violations.  Class A violations, while defined as non-hazardous because they do not pose an immediate health or safety risk, are still violations that affect the habitability of New York City apartments and require correction under the law.

12.     As the HPD violation reports for the Assets confirm, the tenants that comprise the Joining Tenant Union have endured unlivable and dangerous conditions for years, and the Debtors have breached their obligation to provide the Joining Tenant Union and its members with safe and habitable homes.

13.     At the Assets, the open HMC violations run the gamut in type, severity and quantity.  The violations relate to a variety of conditions including: insufficient heat and hot water, missing radiators, loose/broken bathroom washbasin, roach and rodent infestations, fire damage, broken or defective light fixtures, leaks, mold, missing, broken or defective smoke alarms and carbon monoxide detectors, broken toilet flushing apparatuses, broken or defective plastered surfaces and floors, lead-based paint hazards, broken self-closing doors, inadequate water supply, broken kitchen cabinets, and inadequate gas supply.

14.    Since the Petition Date, tenants have submitted letters to this Court regarding the severe disrepair and hazardous conditions in their homes that have been ignored by the Debtors and gone unabated.  According to these letters, the Debtors' tenants have endured, among other things, rodents and pests, leaks, mold, water damage, broken windows, lack of heat and hot water, plumbing and electrical problems, and broken elevators that have trapped many residents. *See e.g.,* ECF Nos. 806, 807, 808, 810, 811, 812, 813, 819, 824, 912, 913, 918, 920, 927, 929, 932, 933.  The complaints and concerns from these letters are representative of the Debtors' treatment of the portfolio of Assets as a whole and show that the Debtors have long neglected many of the Assets to be sold.

15.    Although Debtors propose to assume and assign all tenant leases to Summit and notwithstanding the grave defaults by Debtors that exist under those leases, as of this filing, the Joining Tenant Union, the many tenants who have submitted letters on their behalf, and the City have not received any proof or adequate assurance information from Summit that would indicate their ability and willingness to properly maintain the Assets.  The Joining Tenant Union and the City are entitled to adequate assurance information, including but not limited to, information on Summit's history with residential leasing, housing related litigation history, allegations and findings of tenant harassment, and financial data supporting its ability to perform all repairs necessary to make the Assets habitable.  *See* 11 U.S.C. 365(b)(1).

16.     In response to several tenants' correspondence submitted to this Court voicing their concerns about the Debtors and Summit as the next potential owner of the Assets, this Court issued an order on January 9, 2026 noting that it is "sympathetic and concerned about these reports" but that there was no formal relief was sought at that time.  *See* ECF No. 948.  The Joining Tenants Union thus seeks an order rejecting the proposed sale absent additional assurances and proof of the feasibility of a plan based on the proposed Summit purchase, and an adjournment of the confirmation hearing on January 15, 2026, for the reasons set forth below.

### Grounds for Objection to Confirmation

17.     The Joining Tenant Union joins in the City's Initial Objection filed on December 30, 2025 as well as the Amended Objections filed on January 6, 2026 and January 11, 2026 respectively. In joining the City's objections, we concur that Section 1129 of the Bankruptcy Code, requires the Debtors to show that the Plan is feasible, and that confirmation of the Plan is not likely to be followed by liquidation or financial reorganization of the Debtors or any successor in interest. 11 U.S.C. § 1129(a)(11).  This Court should deny the Debtors' request for entry of the Proposed Sale Order and approval of the Stalking Horse Agreement, based on currently available information, since the Plan has not been shown to be feasible and the Joining Tenant Union is entitled to adequate assurance of future performance which they have not yet received.

17.     In a statement appended to the Debtor's Notice of Successful Bid, Summit alleges

that its investment has undergone a "rigorous underwriting process that that aligns the purchase

price, ongoing maintenance costs, and debt structure to support sustainable operations over the

long term."  Summit also promises to retain a new management company "ensure focused

execution, regulatory compliance, and responsive resident services."  *See* ECF No. 946 *at* 4.

18.     The Joining Tenant Union agrees that the issues raised in Summit's statement are

essential for evaluating the feasibility of any plan based on the proposed Summit purchase, but

note that Summit and the Debtor have provided no data or evidence whatsoever in support of any

of the claims in Summit's statement.  The Joining Tenant Union therefore joins the City in its

objection to approval of the sale, and alternatively requests that the hearing on approval of the

proposed sale be adjourned until such data is provided to all interested parties and to the Court.

19.     Moreover, publicly available information and the concerns raised by tenants, the

Office of the Attorney General of the State of New York, and the City, at the very least give

cause for concern regarding Summit's ability to properly maintain and provide services to a

portfolio that is double its current size.

20.     Upon information and belief, Summit Gold Inc. is a holding company for Summit Properties USA. *See* ECF No. 946. Summit Properties USA is a real estate investment company that is a subsidiary and holding company of Summit Properties Ltd. *See* https://www.summit-properties.com/company.html. *Id*. Upon information and belief, Summit's local managing partner operating their portfolio is Denali Management that, upon information and belief, is owned by Jonathan Wiener.  Upon information and belief, Jonathan Weiner is the brother of Joel Weiner who is the principal of the Debtor in this proceeding.  Jonathan Weiner also owns Chestnut Holdings of New York.  Chestnut Holdings of New York has a well-documented history of owning and managing properties with HMC violations and habitability issues.  In 2020 the Office of the Attorney General ("OAG") filed a lawsuit against Chestnut Holdings of New York alleging that Chestnut repeatedly failed to adhere to the New York City Childhood Lead Poisoning Prevention Act.  *See The People of the State of New York, by Letitia James, Attorney General of the State of New York, v. Chestnut Holdings of New York Inc.* (NYSCEF Docket No. 22837/2020E).

21.     Upon information and belief, the relationship between the principals of the Debtor and Proposed Purchaser at least raises questions as to whether the Proposed Purchase is an arm's length transaction, and whether the Debtor has evaluated in an objective manner Summit's ability to manage a greatly expanded portfolio in a sustainable manner as required for a feasible plan.

22.     Upon information and belief, Summit has owned its real estate portfolio since 2021 and has over 3000 units in roughly 90 buildings.  *See* https://www.summit-properties.com/downloads/2025-04-24_SPL_FS_2024.pdf, at 29.  Many of their buildings contain troubling numbers of violations.

23.     2390 Creston Avenue for example, is a 21 unit building in the Bronx that Summit owns and operates within its portfolio.  *See* https://www.summit-us.com/properties/2390-creston-avenue.  According to HPD, the building has 193 open Housing Maintenance Code violations, 94 of which are immediately hazardous class "C" violations.  Among these class "C" violations since September 2025 are violations that were placed for: lack of heat and hot water, broken windows, mice and roach infestations within apartments, lack of cooking gas, unsafe and inadequate electrical service supply, and broken/defective bathroom wash basins.

24.     Another 20 unit building in the Bronx that is currently owned by Summit, 1025 Longwood Avenue aka 801 Southern Blvd, has similarly poor conditions. *See* https://www.summit-us.com/properties/801-southern-boulevard. According to HPD Online records, the building has 139 open Housing Maintenance Code violations, 47 of which are immediately hazardous class "C" violations.  Since 2025 alone, these class "C" violations include lack of heat and hot water building wide, roach and mice infestations, broken floors tiles, broken self-closing security doors in the building vestibule, and broken/defective window guards.

25.     Given Summit's ownership and management experience, it is reasonable to believe that the Assets may fall into even greater disrepair resulting in an increased burden on the tenants, and the City, to address emergency repairs.  The failure to address habitability issues sometimes results in constructive eviction, where tenants are left with little option other than to move out to find safe and dignified housing elsewhere.   Summit's failure to maintain buildings in its current portfolio, and the mounting expenses it will continue to incur both with its current portfolio and the potential adoption of one twice its size, might lead to the need for additional bankruptcies or reorganizations.

26.     In addition to the arguments raised by the City and echoed above, the Joining Tenant Union objects to the entry of the Proposed Sale Order and approval of the Stalking Horse Agreement absent sufficient proof of feasibility that Summit can and will properly manage the Assets.  To that end, a showing of proof by Summit is required and additional time prior to the confirmation of sale which is currently set for January 15, 2026, is both necessary and appropriate in order to give the Debtors, the Joining Tenant Union, the City, and any other parties in interest time to obtain and review evidence regarding Summit's ability to manage the portfolio of Assets.   In agreement with the United States Trustee for Region 2 (the "U.S. Trustee") we believe that "there do not appear to be any exigencies in this Plan that mandate an accelerated timeline."  *See Objection of the United States Trustee to Confirmation of the First Amended Joint Chapter 11 Plan*, ECF No. 939.  As such, we are requesting an adjournment of the confirmation hearing set for January 15, 2026.

27.     The Joining Tenant Union hereby reserves all rights to raise further objections regarding the proposed sale to Summit or any other eventual bidder.

**WHEREFORE** the Joining Tenant Union respectfully requests: (i) that the proposed sale of the Assets not be approved; (ii) that the confirmation hearing be adjourned at least thirty (30) days; (iii) that the Court grant to the Joining Tenant Union such other and further relief as it determined to be just and warranted.

Dated: New York, New York
      January 11, 2026

Respectfully submitted,

**THE LEGAL AID SOCIETY**

By: *Edward Josephson*

Edward Josephson
Director, Civil Law Reform Unit
The Legal Aid Society
49 Thomas Street, 5th floor
New York, NY 10013
(212) 298-5221

*Attorneys for the Joining Tenant Union*

## **Exhibit A**

## **Duly Elected Tenant Representatives of the Union of Pinnacle Tenants**

Maggie Morrison

Vivian Kuo

Afua McKinney Cooper

Heather Woodfield

Jennifer Fiore

Rachel Bowers

Violet MacDonald

Zara Cadoux

**Exhibit B**


**List of Assets Represented by the Joining Tenant Union with HMC Violation Information**

| Property Address | A Violations | B Violations | C Violations |
|---|---:|---:|---:|
| 4530 BROADWAY | 22 | 89 | 34 |
| 681 WEST 193 STREET | 13 | 85 | 64 |
| 240 EAST 18 STREET | 9 | 31 | 38 |
| 544 WEST 50 STREET | 6 | 12 | 3 |
| 546 WEST 50 STREET | 1 | | 2 |
| 548 WEST 50 STREET | | 7 | |
| 115 EAST 21 STREET | 51 | 165 | 117 |
| 509 WEST 155 STREET | 5 | 19 | 7 |
| 639 WEST 207 STREET | 14 | 83 | 38 |
| 241 SHERMAN AVENUE | 36 | 101 | 37 |
| 402 WEST 148 STREET | | 8 | 10 |
| 412 WEST 148 STREET | 13 | 90 | 27 |
| 1362 OCEAN AVENUE | 70 | 191 | 111 |
| 225 PARKSIDE AVENUE | 77 | 200 | 94 |
| 681 OCEAN AVENUE | 77 | 152 | 81 |
| 85 CLARKSON AVENUE | 30 | 134 | 39 |
| 916 CARROLL STREET | 9 | 15 | 20 |
| 991-993 CARROLL STREET | 49 | 182 | 52 |
| 1296 PACIFIC STREET | 45 | 88 | 47 |
| 961 WASHINGTON AVENUE | 9 | 35 | 30 |
| 1038 UNION STREET | 8 | 39 | 13 |
| 1042 UNION STREET | 5 | 51 | 19 |

| | | | |
|---|---:|---:|---:|
| 1048 UNION STREET | 2 | 4 | 13 |
| 1060 UNION STREET | 8 | 25 | 8 |
| 1601 BEDFORD AVENUE | | 9 | 11 |
| 1597 BEDFORD AVENUE | | 4 | 4 |
| 470 OCEAN AVENUE | 15 | 68 | 47 |
| 2102 BEVERLY ROAD | 8 | 20 | 9 |
| 536 ISHAM STREET | 10 | 62 | 23 |
| **TOTAL** | **592** | **1969** | **998** |