David W. Dykhouse
Kimberly A. Black
**PATTERSON BELKNAP WEBB & TYLER LLP**
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone: (212) 336-2000
Facsimile: (212) 336-2222
dwdykhouse@pbwt.com
kblack@pbwt.com

Elizabeth-Ann Tierney*
**THE LEGAL AID SOCIETY**
**HOUSING JUSTICE UNIT**
2090 Adam Clayton Powell Jr. Blvd. 3rd Fl.
New York, NY 10027
Telephone: (646) 629-0226
etierney@legal-aid.org

*Attorneys for the Objecting Tenants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
In re:

Broadway Realty I Co., LLC,

Debtors.[1]

---------------------------------------------------------------X

Chapter 11

Case No. 25-11050 (DSJ)

Jointly Administered

**OBJECTION, JOINDER, AND RESERVATION OF RIGHTS**
**IN RESPONSE TO (I) PROPOSED SALE OF DEBTORS' ASSETS**
**AND (II) ASSUMPTION AND ASSIGNMENT OF TENANT LEASES**

The individuals listed on Exhibit A hereto (collectively, the "Objecting Tenants"), by and through their undersigned counsel, respectfully submit this objection ("Objection") to the Debtors' proposed sale of their portfolio of residential properties and respectfully state as follows:

---

[1] The last four digits of Broadway Realty I Co., LLC's tax identification number are 5426. A complete list of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/broadwayrealty. The Debtors' mailing addresses are located at 2 Grand Central Tower, 140 East 45th Street 12th Floor, New York, NY 10017.

\* Not admitted in the Southern District of New York.

**BACKGROUND**

    A.    <u>The Objecting Tenants' Interests</u>

    1.    The Objecting Tenants reside at 639-645 West 207th Street, New York, NY ("<u>West 207 St</u>") or 222 Lenox Road, Brooklyn NY ("<u>222 Lenox Rd</u>" and together with West 207 St, the "<u>Properties</u>"). Both Properties are owned and operated by the Debtors. *See Declaration of Ephraim Diamond Pursuant to Local Bankruptcy Rule 1007-2 in Support of Debtors' Chapter 11 Petitions and First Day Relief*, ECF No. 10, Schedule 6.

    2.    For years, the Debtors have failed to maintain the Properties, which has forced the Objecting Tenants to live in unsafe and unsanitary conditions. At West 207 St, there are currently 130 open violations pending with New York City's Department of Housing Preservation and Development ("<u>HPD</u>"), which is the department of New York City's government responsible for enforcing the New York City Housing Maintenance Code on behalf of tenants.[2] Meanwhile, at 222 Lenox Rd, there are nearly 80 open violations dating back to 2019.[3]

    3.    Notably, when a complaint is made to HPD, HPD sends an inspector to confirm that the complained-of condition exists and, if the inspector finds that it does, then he or she writes a violation. See N.Y.C. Admin. Code § 27-2115. If a violation is written, the owner is notified and required to correct the underlying condition. *Id*. Once the condition is corrected, the owner can file a certification of compliance, but "failure to file such certification of compliance shall establish a prima facie case that such violation has not been corrected." N.Y.C.

---

[2] HPD maintains a publicly available website with open complaints and violations. https://hpdonline.nyc.gov/hpdonline/building/43709/overview. This website is entitled to judicial notice and available at: https://hpdonline.nyc.gov/hpdonline/. *See Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234 (S.D.N.Y. 2025) ("Authority in this Circuit supports that the Court may take judicial notice of the content of webpages").
[3] *See* https://hpdonline.nyc.gov/hpdonline/building/324112/overview.

Admin. Code § 27-2115(f)(7).  Thus, the fact that these violations are still open is proof that the unsafe and unsanitary conditions persist.

4.   At the Properties, the open violations relate to a variety of issues, including, but not limited to, roach and rodent infestations, fire damage, broken or defective light fixtures, leaks, mold, missing, broken or defective smoke alarms and carbon monoxide detectors, broken or defective plastered surfaces and floors, defective plumbing and electrical outlets, lead-based paint hazards, inadequate water or hot water supply, and inadequate gas supply.  The vast majority of open violations at both Properties are either class B or class C violations, meaning the violations are classified as either "hazardous" or "immediately hazardous."[4]

5.   Notably, the issues at West 207 St were also the subject of a litigation brought by a group of tenants in September 2023 in the Civil Court of the City of New York, County of Kings: Housing Part B, index no. 319250-23 (the "Housing Court Litigation").  The Housing Court Litigation was settled in February 2025 pursuant to a stipulation of settlement filed in the Housing Court Litigation at docket 59 (the "Settlement Agreement").[5]  According to the Settlement Agreement, all HPD violations recorded through February 28, 2025, were supposed to be corrected by the end of June (within 120 days from February 28, 2025).  The Debtors failed to make the necessary corrections by that date since the open HPD violations date from 2023.

B.   Bankruptcy Filing and Sale Process

6.   On May 21, 2025 ("Petition Date"), Broadway Realty I Co., LLC and 81 of its affiliates (collectively, the "Debtors'') filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Since the Petition Date, the Debtors

---

[4] Further information on HPD's violation codes and classification system can be found on its website at https://hpd-signs.nyc/nyc-hpd-violation-description-by-code-number.
[5] https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=JWJH5LLEx9A2h/vCSkPGMw==.

-3-

have continued to operate their businesses in the ordinary course as debtors-in-possession, including collecting rent from the Objecting Tenants.

7. Collectively, the Debtors own and operate over 90 properties with approximately 5,200 residential units. *Declaration of Ephraim Diamond Pursuant to Local Bankruptcy Rule 1007-2 in Support of Debtors' Chapter 11 Petitions and First Day Relief*, ECF No. 10, ¶¶ 9, 11.

8. On October 1, 2025, this Court entered the *Order (I) Approving Bidding Procedures, (II) Authorizing Debtors to Offer Stalking Horse Bid Protections, (III) Approving Assumption Assignment Procedures, and (IV) Granting Related Relief*, ECF No. 571 (the "Bid Procedures Order"). The Bid Procedures Order authorized the Debtors to conduct a bidding process for their portfolio of residential properties (the "Assets"), which includes the Properties. On December 23, 2025, the Debtors filed a notice, ECF No. 916, designating Summit Gold, Inc. ("Summit") as the stalking horse bidder for the Assets. The notice included the proposed sale agreement (the "Stalking Horse Agreement") as well as the proposed order approving the sale transaction (the "Proposed Sale Order"). As a part of the proposed sale transaction with Summit, all of the Debtors' leases with residential tenants (collectively, the "Leases"), including the Objecting Tenants' leases, will be assumed and assigned to Summit.

9. On January 6, 2026, the Objecting Tenants, jointly with another interested tenant group, sent an issues list to the Debtors and requested information regarding Summit, including financial and operational information demonstrating Summit's ability to operate the Assets and resolve outstanding violations. Debtors' counsel declined to provide any information on Summit or any other bidder until after the auction, scheduled for January 8, 2026, concluded and a successful bidder was chosen.

10. On January 9, 2026, the Debtors filed a notice of winning bidder announcing Summit as the winning bidder. *See* ECF No. 946. The notice included a statement from Summit asserting that it is well-capitalized and has sufficient resources to honor and perform all obligations under existing leases. However, the statement from Summit does not include any financial data to backup these statements or details on Summit's experience owning and operating residential buildings subject to rent regulations.

11. On January 9, 2026, the Objecting Tenants together with another group of interested tenants reached out to Summit's counsel to share the same issues list and to request information on the new residential management firms that Summit intends to retain. As of this filing, the Interested Tenants have not received any additional adequate assurance information or a substantive response from Summit.

**OBJECTION TO THE PROPOSED SALE AND ASSUMPTION OF LEASES**

12. This Court should deny the Debtors' request for entry of the Proposed Sale Order and approval of the Stalking Horse Agreement. The Objecting Tenants are entitled to adequate assurance of future performance. As noted above, the Objecting Tenants are living in deplorable conditions. As such, the Debtors have violated the warranty of habitability, which constitutes a breach of the Objecting Tenant's Leases. *See* N.Y. Real Prop. Law § 235-b (noting that every lease contains a promise that the premises will be fit for human habitation and that the occupants will not be subjected to any dangerous or hazardous conditions).

13. Section 365 of the Bankruptcy Code provides that, if there has been a default in an unexpired lease of the debtor, the lease cannot be assumed unless the debtor provides adequate assurance of future performance. *See* 11 U.S.C. § 365(b)(1)(C). This language is not limited to monetary performance.

-5-

14. Notably, the Objecting Tenants' Leases are not the only ones that the Debtors have apparently breached. Recent news coverage reports that the Debtors have "racked up more than 5,000 violations and 14,000 complaints in 83 buildings."[6] In addition, since the Petition Date, many tenants have submitted letters to this Court regarding the severe disrepair and hazardous conditions in their homes that have been ignored by the Debtors and gone unabated. *See e.g.,* ECF Nos. 806, 807, 808, 810, 811, 812, 813, 819, 824, 912, 913, 918, 920, 927, 928, 929, 932, 933, 941, 943, 944.

15. Although Summit insists that it is well-capitalized and has sufficient resources to honor and perform all obligations under existing leases, Summit has provided no information to support these conclusory statements such as financial information providing Summit's financial capabilities or a list of buildings that Summit runs proving it has experience with operating rent-regulated buildings. Furthermore, given the hefty purchase price, and the number of violations and complaints that apparently need to be resolved at the Assets, the Objecting Tenants do not believe that Summit has proven it has the financial wherewithal to operate the Assets and remedy all unsafe or unsanitary conditions.

## JOINDER

16. On January 12, 2026, New York City filed their *Restated and Supplemental Objection to Confirmation of Plan and to Sale of Properties*. *See* ECF No. 950 (the "City's Objection"). The Objecting Tenants respectfully support and join the City's Objection, including all legal arguments and authorities cited therein.

---

[6] *See* Emma Goldberg, *Mamdani Acts on Vow to Protect Renters With Move Against a Big Landlord*, N.Y. TIMES, January 3, 2026, https://www.nytimes.com/2026/01/03/nyregion/mamdani-pinnacle-housing.html.

-6-

## **RESERVATION OF RIGHTS**

17.     On January 7, 2026, counsel for the Objecting Tenants and counsel for the Debtors discussed a number of issues related to the Proposed Sale Order.  Except as set forth herein, the Objecting Tenants believe that those issues can be amicably resolved, but negotiations are ongoing.

18.     The Objecting Tenants hereby reserve all rights to raise further objections regarding the proposed sale.  Nothing contained herein shall constitute a waiver of any rights or remedies of the Objecting Tenants, including to raise additional arguments at the Sale Hearing.

*[Remainder of Page Left Blank Intentionally]*

**WHEREFORE** the Objecting Tenants respectfully request this Court grant this Objection, deny the relief requested by the Debtors, and grant such other and further relief as appropriate.

| | |
|---|---|
| Dated: New York, New York<br>January 12, 2026 | Respectfully submitted,<br><br>**PATTERSON BELKNAP WEBB & TYLER LLP**<br><br>By: */s/ David W. Dykhouse*<br><br>David W. Dykhouse<br>Kimberly A. Black<br>1133 Avenue of the Americas<br>New York, NY 10036-6710<br>Telephone: (212) 336-2000<br>Facsimile: (212) 336-2222<br>Email: dwdykhouse@pbwt.com<br>Email: kblack@pbwt.com<br><br>Elizabeth-Ann Tierney\*<br>**THE LEGAL AID SOCIETY HOUSING JUSTICE UNIT**<br>2090 Adam Clayton Powell Jr. Blvd.<br>3rd Fl.<br>New York, NY 10027<br>Telephone: (646) 629-0226<br>etierney@legal-aid.org<br><br>*Attorneys for the Objecting Tenants* |

\*Not admitted in the Southern District.

## **Exhibit A**

Tenants Residing at 639-645 West 207th Street.

| | |
|---|---|
| Nelly | Aramboles |
| Maritza | Baez |
| Talbott | Dowst |
| Lisa | Estreich |
| Felicia | Gutierrez |
| Richard | Hughes |
| Elizabeth | McKee |
| Gabriel | Mendez |
| Marcelo | Murlo |
| John | Nunez |
| Francisco | Peralta |
| Leigh | Pomeranz |
| Heath | Saunders |
| Natalie | Gutierrez |
| Richard | Haynes |

Tenants Residing at 222 Lenox Road.

| | |
|---|---|
| Candia | Canning |
| Denise | Prince |
| Gerril | McBurnie |
| Nina S. | Mickens |
| Nolan | Atterbury |
| Stanley M. | Pierce |
| Chelsea | Gross |
| Cassandra | Andrews-Perez |
| Briana | West |
| Rachelle | O'Neil |
| Alma | Sawney |
| Ginger | Albertson |

**CERTIFICATE OF SERVICE**

I certify that on January 12, 2026, a copy of the foregoing pleading was served electronically on all parties receiving electronic notices pursuant to the Court's cm/ecf system.

 _/s/ David W. Dykhouse_
David W. Dykhouse
